**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

PARTNERS IN HEALTH CARE ASSOCIATION, INC. *et al.*,

Defendants.

**Case No. 14-cv-23109**

***CORRECTED* PRELIMINARY INJUNCTION AGAINST PARTNERS IN HEALTH CARE ASSOCIATION, INC. AND GARY L. KIEPER**

On August 25, 2014, the Federal Trade Commission ("FTC" or "Commission") filed its Complaint for Permanent Injunction and Other Equitable Relief pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"). The Court subsequently entered a Temporary Restraining Order with an Asset Freeze, Appointment of a Temporary Receiver, Immediate Access, Other Equitable Relief, and for an Order to Show Cause Why a Preliminary Injunction Should Not Issue (the "TRO") on August 25, 2014.

The preliminary injunction hearing took place on September 4, 2014. All parties attended and presented evidence and arguments. Based on the evidence and arguments presented in connection with the Commission's motion for a temporary restraining order and at the preliminary injunction hearing, the Court finds that there is a likelihood that the Commission will succeed in showing that defendants Partners In Health Care Association, Inc. and Gary L. Kieper (the "PIHC Defendants") have violated Section 5(a) of the FTC Act and the Telemarketing Sales Rule as alleged in the

Complaint. The Court orders that the Receiver cease operations of Partners In Health Care Association, Inc., and its affiliated entities, including, but not limited to, TRI Resource Group Ltd., Senior Advantage of Wisconsin Inc., and PIHC Inc. and the Court now issues this Preliminary Injunction (the "Order") against the PIHC Defendants.

Now, therefore, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

## I. FINDINGS OF FACT

1. This Court has jurisdiction over the subject matter of this case, and there is good cause to believe that it will have jurisdiction over all parties hereto and that venue in this district is proper;

2. There is good cause to believe that the PIHC Defendants have engaged in and are likely to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FTC's Trade Regulation Rule entitled "Telemarketing Sales Rule" ("TSR"), 16 C.F.R. Part 310, and that the FTC is therefore likely to prevail on the merits of this action. As demonstrated by the more than 20 consumer declarations and the additional documentation filed by the FTC, the FTC has established the likelihood of success in showing that the PIHC Defendants have made serious misrepresentations leading consumers to believe, among other things, that the PIHC Defendants offer health insurance or the equivalent of such insurance when, in fact, they market and sell a "medical discount" card.

3. There is good cause to believe that immediate and irreparable harm will result from the PIHC Defendants' ongoing violations of the FTC Act unless the PIHC Defendants are restrained and enjoined by Order of this Court.

4. Good cause also exists for: (a) the continued appointment of a Receiver over Partners In Health Care Association, Inc.; (b) the freezing of the PIHC Defendants' Assets; and (c) the ancillary relief ordered below. The FTC has demonstrated a likelihood that Gary L. Kieper is individually liable and properly subject to an asset freeze. *See F. T. C. v. Gem Merchandising Corp.*, 87 F.3d 466, 470 (11th Cir. 1996). Specifically, FTC has demonstrated that it will likely prevail in showing that Defendant Gary L. Kieper has the ability to control Partners In Health Care Association, Inc., because he is an officer, director, or manager of Partners In Health Care Association, Inc. Similarly, the FTC has demonstrated it will likely prevail in showing that Defendant Gary L. Kieper either had knowledge of the misrepresentations, were recklessly indifferent to the fact that misrepresentations were being made, or were aware that there was a high probability that misrepresentations were made but intentionally avoided the truth.

5. After weighing the equities and considering the FTC's likelihood of ultimate success on the merits, a preliminary injunction with an asset freeze and the appointment of a Receiver is in the public interest; and

6. The FTC is an independent agency of the United States of America and no security is required of any agency of the United States for issuance of a preliminary injunction. Fed. R. Civ. P. 65(c).

## II. DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

**1. "Asset"** means any legal or equitable interest in, right to, or claim to, any real, personal, or intellectual property including chattel, goods, instruments, equipment,

fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, shares or stock, securities, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), insurance policies, lines of credit, cash, trusts (including asset protection trusts), lists of consumer names and reserve funds or any other accounts associated with any payments processed by, or on behalf of, any PIHC Defendant, including such reserve funds held by payment processors, credit card processors, banks or other financial institutions.

**2.** "**Assisting Others**" includes providing any of the following goods or services to another entity: (1) performing customer service functions, including charging consumers for products or services, or receiving or responding to consumer complaints; (2) formulating or providing, or arranging for the formulation or provision of, any sales script or other marketing material; (3) providing names of, or assisting in the generation of, potential customers; (4) performing or providing marketing or billing services of any kind; (5) processing credit and debit card payments; (6) acting as an officer or director of a business, corporation or other entity; or (7) providing any other substantial help or assistance.

**3. "Clear and Conspicuous"** or **"Clearly and Conspicuously"** mean:

a. In print communications, a message that is presented in a manner that stands out from the accompanying text, so that it is sufficiently prominent, because of its type size, contrast to the background against which it appears, location, or other characteristics, for an ordinary consumer to notice, read, and comprehend it in relation to any claim it may be modifying;

b. In communications made through an electronic medium (e.g., television, Internet, telephone, etc.), a message that is presented simultaneously in both the audio

and visual portions of the communication. In any communication presented solely through visual or audio means, the message shall be made through the same means in which the communication is presented. In any communication disseminated by means of an interactive electronic medium (e.g., Internet), a disclosure must be unavoidable and presented prior to the consumer incurring any financial obligation. Any audio message shall be delivered in a volume and cadence sufficient for an ordinary consumer to hear and comprehend it in relation to any claim it may be modifying. Any visual message shall be presented in a manner that stands out in the context in which it is presented, so that it is sufficiently prominent, because of its size and shade, contrast to the background against which it appears, length of time it appears on the screen, and its location, for an ordinary consumer to notice, read, and comprehend it in relation to any claim it may be modifying; and

c. Regardless of the medium used to disseminate it, a message that uses only understandable language and syntax. Nothing contrary to, inconsistent with, or in mitigation of the message shall be used in any communication.

**4. "Corporate Defendant"** means Partners In Health Care Association, Inc., and its subsidiaries, affiliates, successors, and assigns, including, but not limited to, TRI Resource Group Ltd., Senior Advantage of Wisconsin Inc., and PIHC Inc.

**5. "Document" or "Documents"** is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and any other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

**6.** "**FTC Act**" means the Federal Trade Commission Act codified at 15 U.S.C. §§ 41-58.

**7.** **"Individual Defendant"** means Gary L. Kieper.

**8.** "**Person**" means a natural person, organization, or other legal entity, including a corporation, limited liability company, partnership, proprietorship, association, cooperative, government or governmental subdivision or agency, or any other group or combination acting as an entity.

**9.** **"PIHC Defendant**" means either Gary L. Kieper or Partners In Health Care Association, Inc., and its subsidiaries, affiliates, successors, and assigns, including, but not limited to, TRI Resource Group Ltd., Senior Advantage of Wisconsin Inc., and PIHC Inc.

**10.** **"Plaintiff**" or "**Commission**" or "**FTC**" means the Federal Trade Commission.

**11.** **"Receiver"** means the receiver appointed in Section XIV of this Order and any deputy receivers that shall be named by the receiver.

**12.** **"Receivership Defendant"** means the Corporate Defendant.

**13.** "**Representative"** or **"Representatives"** means the PIHC Defendants' officers, agents, servants, employees, and attorneys, and any other person or entity in active concert or participation with them, who receives actual notice of this Order by personal service or otherwise.

**14.** **"Telemarketer"** means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor. 16 C.F.R. § 310.2(bb).

**15.** "**Telemarketing**" means any plan, program, or campaign that is conducted to induce the purchase of goods or services or a charitable contribution by use of one or more telephones.

**16.** "**Telemarketing Sales Rule**" or "**TSR**" means the Telemarketing Sales Rule set forth in 16 C.F.R. Part 310.

## III. PROHIBITED MISREPRESENTATIONS

**IT IS HEREBY ORDERED** that the PIHC Defendants and their Representatives, whether acting directly or indirectly through any entity, corporation, subsidiary, division, director, officer, manager, member, affiliate, agent, independent contractor, accountant, financial advisor, or other device, in connection with the marketing, advertising, promotion, distribution, offer for sale of any goods or services, or sale of Medical Discount Cards, are hereby restrained and enjoined from misrepresenting, directly or indirectly, expressly or by implication, any material fact including the following:

**A.** That the PIHC Defendants are selling or marketing health insurance or the equivalent of such insurance;

**B.** That the good or service that the PIHC Defendants are selling or marketing is commensurate to, superior to, or a replacement for health insurance;

**C.** That the good or service that the PIHC Defendants are selling or marketing is related to, associated with, affiliated with, endorsed by or in any way connected to a state or government affiliated health insurance program, including programs created under the Patient Protection and Affordable Care Act of 2010, 42 U.S.C. § 18001 *et seq.*;

**D.** Any Material terms regarding the total cost to purchase, receive, or use, and the quantity of, any goods or services that are sold or marketed by the PIHC Defendants; and

**E.** Any Material restrictions, limitations, or conditions to purchase, receive, or use any products or services sold or marketed by the PIHC Defendants.

## IV. CONDUCT PROHIBITIONS REGARDING TELEMARKETING

**IT IS FURTHER ORDERED** that the PIHC Defendants and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, officer, director, manager, member, affiliate, agent, independent contractor, accountant, financial advisor, or other device, in connection with the Telemarketing, advertising, marketing, promotion, offering for sale, or sale of any product or service, are hereby restrained and enjoined from:

**A.** Using any false or misleading statement to induce any person to pay for goods or services;

**B.** Misrepresenting any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of the sales offer;

**C.** Providing substantial assistance or support to any seller or telemarketer when the PIHC Defendants know or consciously avoid knowing that their sellers or telemarketers are engaged in any of the conduct set forth in this Section; and

**D.** Violating the Telemarketing Sales Rule, 16 C.F.R. Part 310, attached as Appendix A.

## V. REQUIRED DISCLOSURES

**IT IS HEREBY ORDERED** that the PIHC Defendants and their Representatives, whether acting directly or indirectly through any entity, corporation, subsidiary,

division, director, officer, manager, member, affiliate, agent, independent contractor, accountant, financial advisor, or other device, in connection with the marketing, advertising, promotion, distribution, offer for sale of any goods or services, are hereby restrained and enjoined from failing to disclose to consumers before purchase, in a Clear and Conspicuous manner, any material fact including the following:

**A.** Any policy related to obtaining a refund; and

**B.** That a Medical Discount Card is not health insurance or the equivalent of such insurance. The PIHC Defendants must include the following disclaimer, in a Clear and Conspicuous manner, in all written or oral communications with consumers: "The product that we offer is NOT Health Insurance. It cannot replace Health Insurance."

## VI. ASSET FREEZE

**IT IS FURTHER ORDERED** that the PIHC Defendants and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, director, manager, member, affiliate, independent contractor, accountant, financial advisor, or other device, are hereby restrained and enjoined from:

**A.** Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing any funds, real or personal property, accounts, contracts, shares of stock, lists of consumer names, or other Assets, or any interest therein, wherever located, including outside the United States, that are:

1. owned, controlled or held, in whole or in part, by any PIHC Defendant;

2. held, in whole or in part, for the direct or indirect benefit of, any PIHC Defendant;
3. in the actual or constructive possession of any PIHC Defendant;
4. held by an agent of any PIHC Defendant as a retainer for the agent's provision of services to the PIHC Defendants;
5. owned or controlled by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any of the PIHC Defendants, or of which any PIHC Defendant is an officer, director, member, or manager. This includes, but is not limited to, any Assets held by, for, or subject to access by, any of the PIHC Defendants at any bank or savings and loan institution, or at/with any broker-dealer, escrow agent, title company, insurance company, commodity trading company, precious metal dealer, payment processor, credit card processor, acquiring bank, merchant bank, independent sales organization, third party processor, payment gateway or other financial institution or depository of any kind; or
6. held in any account for which any PIHC Defendant is, or was on the date that this Order was signed, an authorized signor.

**B.** Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any PIHC Defendant, either individually or jointly, or subject to access by any PIHC Defendant, except as necessary to comply with Section XVI of this Order;

**C.** Obtaining a personal or secured loan encumbering the Assets of any PIHC Defendant, or subject to access by any PIHC Defendant;

**D.** Incurring liens or other encumbrances on real property, personal property, or other Assets in the name, individually or jointly, of any PIHC Defendant or of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any PIHC Defendant ; or

**E.** Incurring charges or cash advances on any credit or bank card issued in the name, individually or jointly, of any Corporate Defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any PIHC Defendant or of which any PIHC Defendant is an Officer, Director, Member, or Manager. This includes, but is not limited to, any corporate bank card or corporate credit card account for which any PIHC Defendant is, or was on the date that this Order was signed, an authorized signor.

**PROVIDED** that the Assets affected by this Section shall include: (a) all Assets of the Corporate Defendant; and (b) all Assets of the Individual Defendant existing as of the date this Order was entered, or acquired by any Individual Defendant following entry of this Order, if such Assets are derived from any activity that is the subject of the Commission's Complaint or that is prohibited by this Order.

**VII. DUTIES OF HOLDERS OF THE PIHC DEFENDANTS' ASSETS**

**IT IS FURTHER ORDERED** that any financial or brokerage institution, credit card processor, payment processor, merchant bank, acquiring bank, independent sales organization, third party processor, payment gateway, insurance company, business entity, or person served with a copy of this Order that (a) holds, controls, or maintains custody of any account or Asset of any PIHC Defendant , (b) holds, controls, or

maintains custody of any Asset associated with credits, debits or charges made on behalf of any PIHC Defendant , including reserve funds held by payment processors, credit card processors, payment merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies or other entities, or (c) has held, controlled, or maintained custody of any such account or Asset at any time since the date of entry of this Order shall:

**A.** Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, or other disposal of any such Assets, as well as all Documents or other property related to such Assets, except by further order of this Court;

**B.** Deny any person, except the Receiver acting pursuant to Section XV of this Order, access to any safe deposit box, commercial mail box, or storage facility that is:

1. titled in the name of any PIHC Defendant, either individually or jointly; or
2. otherwise subject to access by any PIHC Defendant;

**C.** Provide the FTC's counsel and the Receiver, within five (5) days of receiving a copy of this Order, a sworn statement setting forth:

1. the identification number of each account or Asset:
   a) titled in the name, individually or jointly, of any of the PIHC Defendants;
   b) held on behalf of, or for the benefit of, any of the PIHC Defendants; or

c) associated with credit or debit charges made on behalf of the PIHC Defendants;

2. the balance of each such account, or a description of the nature and value of each such Asset as of the close of business on the day on which this Order is served, and, if the account or other Asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other Asset was remitted; and

3. the identification of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of any of the PIHC Defendants, or is otherwise subject to access by any of the PIHC Defendants; and

**D.** Upon the request of the FTC or the Receiver, promptly provide the FTC and the Receiver with copies of all records or other Documentation pertaining to such account or Asset, including originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, including wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and all logs and records pertaining to such safe deposit boxes, commercial mail boxes and storage facilities.

## VIII. FINANCIAL REPORTS

**IT IS FURTHER ORDERED** that each PIHC Defendant, to the extent it has not already been done pursuant to the TRO issued in this case, within three (3) days of

service of this Order upon them, shall prepare and deliver to Counsel for the Commission and the Receiver:

A. Completed financial statements on the forms attached to this Order as **Attachment A** (Financial Statement of Individual Defendant) for themselves individually, and **Attachment B** (Financial Statement of Corporate Defendant) for each business entity under which they conduct business or of which they are an officer, and for each trust for which any PIHC Defendant is a trustee. The financial statements shall be accurate as of the date of entry of this Order and signed under penalty of perjury. Each PIHC Defendant shall include in the financial statements all information requested in the statements, including a full description of all funds and Assets, whether located inside or outside of the United States, that are: (a) titled in the name of such PIHC Defendant, jointly, severally, or individually; (b) held by any person or entity for the benefit of such Defendant; or (c) under the direct or indirect control of such PIHC Defendant. The PIHC Defendants shall attach to these completed financial statements copies of all local, state, provincial, and federal income and property tax returns, with attachments and schedules, as called for by the instructions to the financial statements;

B. A completed statement, signed under penalty of perjury, of all payments, transfers, or assignments of Assets worth $1,000 or more since 2011. Such statement shall include: (1) the amount transferred or assigned; (2) the name of each transferee or assignee; (3) the date of transfer or assignment; and (4) the type and amount of consideration paid to any PIHC Defendant. Each statement shall specify the name and address of each financial institution and brokerage firm at which any PIHC Defendant has accounts or safe deposit boxes. These statements shall include Assets held in foreign and domestic accounts; and

C. A completed IRS Form 4506, appended to this Order as **Attachment D**, requesting tax returns for the past three years be sent to counsel for the FTC at the following address:

Gary Ivens
Federal Trade Commission
600 Pennsylvania Avenue NW
Mail Stop CC-8528
Washington, DC 20580
(202) 326-2330

**IX. FOREIGN ASSET REPATRIATION**

**IT IS FURTHER ORDERED** that within five (5) days following the service of this Order, each PIHC Defendant shall, to the extent it has not already been done pursuant to the TRO issued in this case:

**A.** Provide the Commission and the Receiver with a full description, verified under oath and accurate as of the date of this Order, of all funds, Documents, and Assets outside of the United States which are: (1) titled in the name, individually or jointly, of any Defendant; or (2) held by any person or entity for the benefit of any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant; and

**B.** Provide the Commission and Receiver access to all records of accounts or Assets of any PIHC Defendant held by financial institutions located outside the territorial United States by signing the Consent to Release of Financial Records appended to this Order as **Attachment C**.

**C.** Transfer to the territory of the United States and deliver to the Receiver all funds, Documents, and Assets located in foreign countries which are: (1) titled in the name individually or jointly of any PIHC Defendant; or (2) held by any person or entity,

for the benefit of any PIHC Defendant; or (3) under the direct or indirect control of any PIHC Defendant, whether jointly or singly.

**D.** The same business day as any repatriation, (1) notify counsel for the Commission of the name and location of the financial institution or other entity that is the recipient of such funds, documents, or assets; and (2) serve this Order on any such financial institution or other entity; and

**E.** Provide the Commission access to all records of accounts or assets of any PIHC Defendant held by financial institutions located outside the territorial United States by signing the Consent to Release of Financial Records appended to this Order as Attachment C.

## X. INTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that the PIHC Defendants and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, director, manager, member, affiliate, independent contractor, accountant, financial advisor, or other device, are hereby restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign Assets, or in the hindrance of the repatriation required by Section IX of this Order, including, but not limited to:

**A.** Sending any statement, letter, fax, email or wire transmission, or telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all of the PIHC Defendants' Assets have been fully repatriated pursuant to Section IX of this Order; or

**B.** Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation

is required pursuant to a court order, until such time that all of the PIHC Defendants' Assets have been fully repatriated pursuant to Section IX of this Order.

## XI. CONSUMER CREDIT REPORTS

**IT IS FURTHER ORDERED** that pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(1), any consumer reporting agency served with this Order shall promptly furnish consumer reports as requested concerning any PIHC Defendant to counsel for the Commission.

## XII. PRESERVATION OF RECORDS AND REPORT OF NEW BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that the PIHC Defendants and their Representatives, as well as any document custodians receiving actual notice of this Order, whether acting directly or through any entity, corporation, subsidiary, division, director, manager, member, affiliate, independent contractor, accountant, financial advisor, or other device, are hereby restrained and enjoined from:

**A.** Destroying, erasing, falsifying, writing over, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, Documents that relate to: (1) the business, business practices, Assets, or business or personal finances of any PIHC Defendant, (2) the business practices or finances of entities directly or indirectly under the control of any PIHC Defendant, or (3) the business practices or finances of entities directly or indirectly under common control with any other PIHC Defendant, including: any and all marketing materials, Internet pages, consumer complaints, call detail records, telephone logs, telephone scripts, contracts, correspondence, email, corporate books and records, accounting data, financial statements, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, calendars, appointment books, and tax returns;

**B.** Failing to create and maintain Documents that, in reasonable detail, accurately, fairly, and completely reflect the PIHC Defendants' incomes, disbursements, transactions, and use of the PIHC Defendants' Assets; and

**C.** Creating, operating, or exercising any control over any new business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing counsel for the Commission with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

## XIII. PROHIBITION ON RELEASE OF CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that the PIHC Defendants and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, director, manager, member, affiliate, independent contractor, accountant, financial advisor, or other device, are hereby restrained and enjoined from:

**A.** Selling, renting, leasing, transferring, or otherwise disclosing the name, address, telephone number, credit card number, bank account number, email address, or other identifying information of any person who paid money to a PIHC Defendant for a Medical Discount Card or who were contacted or are on a list to be contacted by any PIHC Defendant; and

**B.** Benefitting from or using the name, address, birth date, telephone number, email address, Social Security number, Social Insurance number, credit card number, bank account number, or other financial or identifying personal information of

any Person from whom or about whom any PIHC Defendant obtained such information in connection with any activity that pertains to the subject matter of this Order.

Provided, however, that the PIHC Defendants may disclose such identifying information to a law enforcement agency or as required by any law, regulation, or court order.

## XIV. APPOINTMENT OF RECEIVER

**IT IS FURTHER ORDERED** that Peter D. Russin, Esq. continue as the appointed receiver for the Receivership Defendant and any of their affiliates, subsidiaries, divisions, or telephone sales or customer service operations, wherever located, with the full power of an equity receiver. The Receiver shall be the agent of this Court, and solely the agent of this Court, in acting as Receiver under this Order. The Receiver shall be accountable directly to this Court.

## XV. RECEIVER'S DUTIES AND AUTHORITIES

**IT IS FURTHER ORDERED** that the Receiver is authorized and directed to accomplish the following:

**A.** Assume full control of the Receivership Defendant by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of any of the Receivership Defendant, including any PIHC Defendant, from control of, management of, or participation in, the affairs of the Receivership Defendant;

**B.** Take exclusive custody, control, and possession of all Assets and Documents of, or in the possession, custody, or under the control of, the Receivership Defendant, wherever situated. The Receiver shall have full power to divert mail and to sue for, collect, receive, take in possession, hold, and manage all Assets and Documents

of the Receivership Defendant and other persons or entities whose interests are now under the direction, possession, custody, or control of, the Receivership Defendant. The Receiver shall assume control over the Receivership Defendant's income and profits and all sums of money now or hereafter due or owing to the Receivership Defendant. Provided, however, that the Receiver shall not attempt to collect any amount from a consumer if the Receiver believes the consumer was a victim of the deceptive acts or practices or other violations of law alleged in the Complaint in this matter, without prior Court approval;

**C.** Take all steps necessary to secure and take exclusive custody of the location from which the Receivership Defendant operates its businesses. Such steps may include, but are not limited to, any of the following, as the Receiver deems necessary or advisable: (1) serving this Order; (2) completing a written inventory of all Receivership Assets; (3) obtaining pertinent information from all employees and other agents of the Receivership Defendant, including the name, home address, Social Security Number, job description, company history, passwords or access codes, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent; (4) photographing and videotaping any or all portions of the location; (5) securing the location by changing the locks and disconnecting any internet access or other means of access to the computers, internet or records maintained at that location; and (6) requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises Documents or Assets of the Receivership Defendant.

**D.** Law enforcement personnel, including police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the peace and maintain security. If requested by the Receiver, the United States Marshal will provide appropriate and necessary assistance to the Receiver to implement this Order and is authorized to use any necessary and reasonable force to do so;

**E.** Conserve, hold, and manage all Assets of the Receivership Defendant, and perform all acts necessary or advisable to preserve the value of those Assets in order to prevent any irreparable loss, damage, or injury to consumers or creditors of the Receivership Defendant, including determining the available Assets and preventing the unauthorized transfer, withdrawal, or misapplication of Assets;

**F.** Enter into and cancel contracts, and purchase insurance as advisable or necessary;

**G.** Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendant;

**H.** Manage and administer the business of the Receivership Defendant until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary, which includes but is not limited to retaining, hiring, or dismissing any employees, independent contractors, or agents, provided that the Receiver shall suspend business operations of the Receivership Defendant if, in the judgment of the Receiver, such operations cannot be continued legally or profitably;

**I.** Prevent the destruction or erasure of any web page or website registered to and operated, in whole or in part, by Receivership Defendant;

**J.** Take all steps necessary to ensure that any of the Receivership Defendant's web pages or websites relating to Medical Discount Cards cannot be accessed by the public, or are modified for consumer education and/or informational purposes;

**K.** Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

**L.** Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendant prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure Assets of the Receivership Defendant, such as rental payments;

**M.** Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Defendant, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order, including actions challenging fraudulent or voidable transfers;

**N.** Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or against the Receivership Defendant, as the Receiver deems necessary and

advisable to preserve the Assets of the Receivership Defendant, or as the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

**O.** Issue subpoenas to obtain Documents and records pertaining to the Receivership, and conduct discovery in this action on behalf of the Receivership estate;

**P.** Open one or more bank accounts as designated depositories for funds of the Receivership Defendant. The Receiver shall deposit all funds of the Receivership Defendant in such a designated account and shall make all payments and disbursements from the Receivership estate from such an account. The Receiver shall serve copies of monthly account statements on all parties;

**Q.** Maintain accurate records of all receipts and expenditures incurred as Receiver;

**R.** Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency; and

**S.** File timely reports with the Court at reasonable intervals, or as otherwise directed by the Court.

**XVI. TRANSFER OF RECEIVERSHIP PROPERTY TO RECEIVER**

**IT IS FURTHER ORDERED** that the PIHC Defendants, their Representatives, and any other person, with possession, custody or control of property of or records relating to the Receivership Defendant shall, upon notice of this Order by personal service or otherwise, immediately notify the Receiver of, and, upon receiving a request from the Receiver, immediately transfer or deliver to the Receiver possession, custody, and control of, the following:

**A.** All Assets of the Receivership Defendant;

**B.** All Documents of the Receivership Defendant, including books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title Documents and other papers;

**C.** All computers, electronic devices and machines and data in whatever form used to conduct the business of the Receivership Defendant;

**D.** All Assets and Documents belonging to other persons or entities whose interests are under the direction, possession, custody, or control of the Receivership Defendant; and

**E.** All keys, codes, user names and passwords necessary to gain or to secure access to any Assets or Documents of the Receivership Defendant, including access to their business premises, means of communication, accounts, computer systems, or other property.

In the event that any person or entity fails to deliver or transfer any Asset or Document, or otherwise fails to comply with any provision of this Section, the Receiver may file *ex parte* an Affidavit of Non-Compliance regarding the failure. Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver. The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county, or any other federal or state law enforcement officer, to seize the Asset, Document, or other item covered by this Section and to deliver it to the Receiver.

## XVII. PROVISION OF INFORMATION TO RECEIVER

**IT IS FURTHER ORDERED** that the PIHC Defendants shall provide to the Receiver, immediately upon request, the following:

**A.** A list of all Assets and property, including accounts, of the Receivership Defendant that are held in any name other than the name of a Receivership Defendant, or by any person or entity other than a Receivership Defendant; and

**B.** A list of all agents, employees, officers, servants or those persons in active concert and participation with the PIHC Defendants, who have been associated or done business with the Receivership Defendant.

## XVIII. COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that the PIHC Defendants, their Representatives, and any other person served with a copy of this Order shall fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the Assets and Documents of the Receivership Defendant. This cooperation and assistance shall include, but not be limited to: providing information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any password required to access any computer, electronic file, or telephonic data in any medium; advising all persons who owe money to the Receivership Defendant that all debts should be paid directly to the Receiver; and transferring funds at the Receiver's direction and producing records related to the Assets and sales of the Receivership Defendant. The entities obligated to cooperate with the Receiver under this provision include, but are not limited to, banks, broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies, precious metals dealers, credit card processors, payment processors,

merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies and other financial institutions and depositories of any kind, as well as all common carriers, telecommunications companies and third-party billing agents.

## XIX. INTERFERENCE WITH THE RECEIVER

**IT IS FURTHER ORDERED** that the PIHC Defendants and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, director, manager, member, affiliate, independent contractor, accountant, financial advisor, or other device, except as provided herein, as stipulated by the parties, or as directed by further order of the Court, are hereby restrained and enjoined from:

**A.** Interfering with the Receiver's efforts to manage, or take custody, control, or possession of, the Assets or Documents subject to this Receivership;

**B.** Transacting any of the business of the Receivership Defendant;

**C.** Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendant or the Receiver; and

**D.** Refusing to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## XX. STAY OF ACTIONS AGAINST RECEIVERSHIP DEFENDANT

**IT IS FURTHER ORDERED** that, except by leave of this Court, during pendency of the Receivership ordered herein, the PIHC Defendants, their Representatives, corporations, subsidiaries, divisions, or affiliates, and all investors,

creditors, stockholders, lessors, customers and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of the PIHC Defendants, and all others acting for or on behalf of such persons, are hereby enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Defendant, including, but not limited to:

**A.** Petitioning, or assisting in the filing of a petition, that would cause any Receivership Defendant to be placed in bankruptcy;

**B.** Commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against the Receivership Defendant, including the issuance or employment of process against the Receivership Defendant, except that such actions may be commenced if necessary to toll any applicable statute of limitations;

**C.** Filing or enforcing any lien on any Asset of the Receivership Defendant, taking or attempting to take possession, custody, or control of any Asset of the Receivership Defendant, or attempting to foreclose, forfeit, alter, or terminate any interest in any Asset of the Receivership Defendant, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

**D.** Initiating any other process or proceeding that would interfere with the Receiver's efforts to manage or take custody, control, or possession of, the Assets or Documents subject to this receivership.

*Provided that*, this Order does not stay: (i) the commencement or continuation of a criminal action or proceeding; (ii) the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or (iii) the enforcement of a judgment, other than a money judgment,

obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

## XXI. COMPENSATION OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by, the Receivership Defendant. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of entry of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XXII. RECEIVER'S BOND

**IT IS FURTHER ORDERED** that the Receiver, if he has not already done so, shall file with the Clerk of this Court a bond in the sum of $10,000 with sureties to be approved by the Court, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs. 28 U.S.C. § 754.

## XXIII. ACCESS TO BUSINESS OFFICES AND RECORDS

**IT IS FURTHER ORDERED** that, in order to allow the Commission and the Receiver to preserve Assets and evidence relevant to this action, and to expedite discovery, Plaintiff and Receiver, and their agents, and assistants, shall have immediate access to the business premises of the Receivership Defendant. Such locations include, but are not limited to: 520 South Westland Drive, Appleton, Wisconsin; and 28 West

Flagler Street, Miami, Florida. The Commission and the Receiver, and their representatives, agents, and assistants, are authorized to obtain the assistance of the U.S. Marshal's office and other federal, state and local law enforcement officers as they deem necessary to effect service and to implement peacefully the provisions of this Order. The Commission and the Receiver, and their representatives, agents, and assistants, are authorized to remove Documents from the Receivership Defendant's premises in order that they may be inspected, inventoried, and copied for the purpose of preserving discoverable material in connection with this action.

Furthermore, the Receiver shall allow the PIHC Defendants reasonable access to the premises and business records of the Receivership Defendant within his possession for the purpose of inspecting and copying materials relevant to this action. The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.

**XXIV. DISTRIBUTION OF ORDER BY THE PIHC DEFENDANTS**

**IT IS FURTHER ORDERED** that the PIHC Defendants shall immediately provide a copy of this Order to each Representative, affiliate, telemarketer, marketer, sales entity, subsidiary, customer service agent, successor, assign, officer, director, member, manager, employee, independent contractor, client company, agent, spouse, and attorney of the PIHC Defendants, and shall, within five (5) days from the date of entry of this Order, and provide the Commission and the Receiver with a sworn statement that this provision of the Order has been satisfied, which statement shall include the names, physical addresses, phone number, and email addresses of each such person or entity who received a copy of the Order. Furthermore, the PIHC Defendants shall not take any action that would encourage officers, agents, members,

directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns or other persons or entities in active concert or participation with them to disregard this Order or believe that they are not bound by its provisions.

## XXV. LIMITED EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that, notwithstanding the provisions of the Federal Rules of Civil Procedure 26(d) and (f) and 30(a)(2)(c), and pursuant to Federal Rules of Civil Procedure 30(a), 34, and 45, the Commission is granted leave, at any time after service of this Order, to conduct limited expedited discovery as set forth in this Section. For the purpose of discovering the (1) nature, location, status, and extent of the PIHC Defendants' Assets, (2) nature and location of Documents reflecting the PIHC Defendants' businesses, business transactions and operations, (3) the telecommunications providers that the PIHC Defendants utilize to conduct the practices alleged in the FTC's complaint; or (4) compliance with this Order:

**A.** Take the deposition of any Person on 48 hours notice. The limitations and conditions set forth in Rules 30(a)(2)(B) and 31(a)(2)(B) of the Federal Rules of Civil Procedure regarding subsequent depositions of an individual shall not apply to depositions taken pursuant to this Section. Any such deposition taken pursuant to this Section shall not be counted towards the deposition limit set forth in Rules 30(a)(2)(A) and 31(a)(2)(A) and depositions may be taken by telephone or other remote electronic means;

**B.** Demand the production of Documents, on five (5) days of notice, from any Person, whether or not a party, provided that three (3) days of notice shall be deemed

sufficient for the production of any such Documents that are maintained or stored only in an electronic format;

**C.** Service of discovery upon a party to this lawsuit, taken pursuant to this Section, shall be sufficient if made by facsimile, email or by overnight delivery. Any expedited discovery taken pursuant to this Section is in addition to, and is not subject to, the limits on discovery set forth in the Federal Rules of Civil Procedure and Local Rules of this Court;

**D.** If a PIHC Defendant fails to appear for a properly noticed deposition or fails to comply with a request for production or inspection, that PIHC Defendant may be prohibited from introducing evidence at the hearing on the Commission's request for a preliminary injunction;

**E.** The expedited discovery permitted by this Section does not require a meeting or conference of the parties, pursuant to Rules 26(d) & (f) of the Federal Rules of Civil Procedure; and

**F.** The Parties are exempted from making initial disclosures under Federal Rule of Civil Procedure 26(a)(1)(B) until further order of this Court.

## XXVI. SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that this Order may be served on any Person (including any financial institution) that may have possession, custody or control of any property, property right, Document, or Asset of any PIHC Defendant, or that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure, by any means, including U.S. First Class Mail, overnight delivery, facsimile, email, text message, social network, electronic messaging service, or personal service, by agents or employees of Plaintiff, by agents or employees of the Receiver, by

any law enforcement agency, by private process server, or by any person or entity permitted by the Federal Rules of Civil Procedure to effect service. For purposes of this Section, service upon any branch, subsidiary, affiliate or office of any entity shall effect service upon the entire entity. This Order shall bind Persons (including entities) that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure upon such Person's receipt of actual notice, by personal service or otherwise, of this Order. *See* FED. R. CIV. P. 65(d)(2).

## XXVII. CORRESPONDENCE AND SERVICE ON COMMISSION

**IT IS FURTHER ORDERED** that, for the purpose of this Order, all correspondence and service of pleadings on Plaintiff shall be addressed to:

Gary Ivens
Christopher Brown
Federal Trade Commission
600 Pennsylvania Avenue NW
Mail Stop CC-8528
Washington, DC 20580
(202) 326-2330 (Ivens phone)
(202) 326-2825 (Brown phone)
(202) 326-3395 (fax)
givens@ftc.gov
cbrown3@ftc.gov

## XXVIII. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes. This Order shall have no impact on any prior Orders entered by this Court to the extent that those Orders impose any requirements, obligations or

limitations on defendants Walter S. Vargas, Constanza Gomez Vargas, or United Solutions Group Inc.

**SO ORDERED**, this 11th day of Septemeber, 2014.

Robert N. Scola
UNITED STATES DISTRICT JUDGE