```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION

 3                    Case 14-23109-CV-SCOLA

 4

   FEDERAL TRADE COMMISSION,
 5                                          COURTROOM 12-3

            Plaintiff,
 6                                          MIAMI, FLORIDA

       vs.
 7                                          SEPTEMBER 4, 2014
   PARTNERS IN HEALTH CARE ASSOCIATION, INC.,
 8 doing business as Partners in Health Care,
   INC., GARY L. KIEPER, UNITED SOLUTIONS GROUP,
 9 INC., WALTER S. VARGAS, CONSTANZA GOMEZ VARGAS,

10                                          (Pages 1 - 120)

            Defendants.
11 _____

12                    PRELIMINARY INJUNCTION HEARING
              BEFORE THE HONORABLE ROBERT N. SCOLA, JR.
13                    UNITED STATES DISTRICT JUDGE
   _____

14

15

16 APPEARANCES:

17 FOR THE PLAINTIFF:      GARY L. IVENS, ESQ.    202.326.2230
                           CHRISTOPHER BROWN, ESQ.  202.326.2825
18                         Federal Trade Commission
                           600 Pennsylvania Avenue NW
19                         Washington, DC 20580
                           givens@ftc.gov, cbrown3@ftc.gov
20

21 FOR THE DEFENDANTS:     KEITH THOMAS GRUMER, ESQ.
                           Grumer & Macaluso, P.A.
22                         1 East Broward Boulevard, Suite 1501
                           Fort Lauderdale, FL 33301 954.713.2700
23                         kgrumer@grumerlaw.com

24

25
```

```
 1                              BRUCE S. ROGOW, ESQ.
                                TARA A. CAMPION, ESQ.
 2                              Bruce S. Rogow, P.A.
                                500 East Broward Boulevard, Suite 1930
 3                              Fort Lauderdale, FL 33394 954.767.8909
                                brogow@rogowlaw.com
 4                              tcampion@rogowlaw.com

 5


 6
     REPORTED BY:              JOSEPH A. MILLIKAN, RPR-CM-NSC-FCRR
 7                             Official United States Court Reporter
                               Federally Certified Realtime Reporter
 8                             Wilkie D. Ferguson Jr. U.S. Courthouse
                               400 North Miami Avenue, Suite 12-3
 9                             Miami, FL  33128        305.523.5148
                               josephamillikan@gmail.com
10


11


12                        TABLE OF CONTENTS

13                                                     Page
```

14 Manuela Esparza .......................................... 14

15      Direct Examination by Mr. Brown ...................... 14

16      Cross-Examination by Mr. Rogow ....................... 28

17      Cross-Examination by Mr. Grumer ...................... 28

18 Walter Steven Vargas ..................................... 29

19      Direct Examination by Mr. Rogow ...................... 29

20      Cross-Examination by Mr. Brown ....................... 43

21 Constanza Gomez .......................................... 46

22      Direct Examination by Mr. Rogow ...................... 46

23      Cross-Examination by Mr. Ivens ....................... 49

```
24


25
```

John Aiken ................................................ 51

    Direct Examination by Mr. Ivens ........................ 51

    Cross-Examination by Mr. Grumer ........................ 57

Gary Kieper .............................................. 63

    Direct Examination by Mr. Grumer ....................... 63

    Cross-Examination by Mr. Ivens ......................... 78

Reporter's Certificate .................................. 111

**EXHIBITS**

| Exhibits | Marked for Identification | | Received in Evidence | |
|---|---|---|---|---|
| Description | Page | Line | Page | Line |
| Plaintiff Exhibit 33 ............................... | 53 | | | 12 |
| Plaintiff Exhibit 35 ............................... | 54 | | | 22 |
| Plaintiff Exhibit 37 ............................... | 56 | | | 11 |
| Plaintiff Exhibit 40 ............................... | 20 | | | 13 |
| Plaintiff Exhibit 41 ............................... | 23 | | | 6 |
| Plaintiff Exhibit 42 ............................... | 24 | | | 14 |
| Plaintiff Exhibit 43 ............................... | 26 | | | 23 |

Preliminary Injunction Hearing

4

| | | |
|---|---|---|
| 09:12:41 | 1 | THE COURT:  Good morning everyone.  Welcome.  Please be |
| 09:12:44 | 2 | seated. |
| 09:13:12 | 3 | All right.  Our first matter this morning is the |
| 09:13:16 | 4 | Federal Trade Commission v. Partners in Health Care Association, |
| 09:13:22 | 5 | Inc., et al. |
| 09:13:23 | 6 | Who is here on behalf of the Federal Trade Commission? |
| 09:13:27 | 7 | MR. IVENS:  Gary Ivens for the Federal Trade |
| 09:13:29 | 8 | Commission. |
| 09:13:30 | 9 | THE COURT:  You need to speak into the microphone.  Is |
| 09:13:32 | 10 | there a microphone there? |
| 09:13:33 | 11 | MR. IVENS:  Gary Ivens for the Federal Trade |
| 09:13:35 | 12 | Commission. |
| 09:13:37 | 13 | MR. BROWN:  Good morning, Your Honor.  Christopher |
| 09:13:39 | 14 | Brown also for the Federal Trade Commission. |
| 09:13:40 | 15 | THE COURT:  Good morning.  Who is here on behalf of |
| 09:13:42 | 16 | Partners in Health Care Association, Inc.? |
| 09:13:44 | 17 | MR. GRUMER:  Keith Grumer and Madeline Macaluso on |
| 09:13:48 | 18 | behalf of Partners in Health Care and also on behalf of Gary L. |
| 09:13:52 | 19 | Kieper. |
| 09:13:55 | 20 | THE COURT:  All right.  Good morning.  Who is here on |
| 09:13:56 | 21 | behalf of United Solutions Group, Inc.? |
| 09:14:00 | 22 | MR. ROGOW:  Bruce Rogow and Tara Campion for United |
| 09:14:04 | 23 | Solutions and for the Vargas defendants. |
| 09:14:08 | 24 | THE COURT:  Walter S. Vargas and Constanza Gomez |
| 09:14:15 | 25 | Vargas? |

September 4, 2014

| | | |
|---|---|---|
| 09:14:17 | 1 | MR. ROGOW:  Yes. |
| 09:14:17 | 2 | THE COURT:  Are there any other defendants or any other |
| 09:14:18 | 3 | appearances? |
| 09:14:18 | 4 | MR. ROGOW:  There are not.  Also with me, Your Honor, |
| 09:14:19 | 5 | is Resa Vargas who is a paralegal with us, who is the daughter |
| 09:14:26 | 6 | of Constanza Vargas. |
| 09:14:28 | 7 | THE COURT:  All right.  And who is here on behalf of |
| 09:14:32 | 8 | the receiver? |
| 09:14:34 | 9 | MR. PECAN:  Good morning, Your Honor.  Larry Pecan on |
| 09:14:37 | 10 | behalf of the receiver, Peter Russin. |
| 09:14:39 | 11 | THE COURT:  All right.  Good morning.  This is set for |
| 09:14:41 | 12 | a preliminary injunction hearing.  Is everybody ready to go |
| 09:14:45 | 13 | forward with the hearing? |
| 09:14:46 | 14 | MR. IVENS:  Yes, Your Honor. |
| 09:14:50 | 15 | MR. GRUMER:  We are, Your Honor. |
| 09:14:50 | 16 | THE COURT:  Okay.  So go ahead. |
| 09:14:59 | 17 | MR. IVENS:  Your Honor, the Federal Trade Commission -- |
| 09:15:05 | 18 | it seems a bit loud -- as you know, obtained a temporary |
| 09:15:09 | 19 | restraining order on August 25th.  We served the order on August |
| 09:15:13 | 20 | 27th and went into the premises of the corporate defendants |
| 09:15:17 | 21 | after the receiver was appointed. |
| 09:15:20 | 22 | We have brought with us, if the Court deems it |
| 09:15:22 | 23 | necessary to have live testimony, two Federal Trade Commission |
| 09:15:26 | 24 | investigators, John Aiken who was present at the Wisconsin site |
| 09:15:30 | 25 | and Manuela Esparza who was present at the Miami site. |

| 09:15:35 | 1 | We have contacted consumers who recently purchased the |
|---|---|---|

09:15:35  1        We have contacted consumers who recently purchased the

09:15:39  2   medical discount card that is at issue in the case.  Although we

09:15:42  3   haven't been able to give notice to the Court or to the other

09:15:45  4   side, some consumers are available by telephone, again if the

09:15:48  5   Court decides that it wants to hear live testimony about the

09:15:51  6   ongoing misrepresentations that were being made with respect to

09:15:54  7   health insurance and the actual delivery of the medical discount

09:15:58  8   card.

09:15:59  9        But to make a long story short --

09:16:01  10        THE COURT:  You are asking if the Court wants to hear

09:16:03  11   it.  It is your burden.  Obviously, I was allowed to rely on the

09:16:11  12   affidavits and information in issuing the original order.  At a

09:16:13  13   hearing am I allowed to just rely on all the affidavits and

09:16:17  14   information without live testimony?

09:16:19  15        MR. IVENS:  You certainly can, Your Honor.  You can

09:16:21  16   certainly take it by argument.  You can also rely on

09:16:27  17   receivership testimony if that is what you prefer.  The way the

09:16:31  18   temporary restraining order was structured, this was to be --

09:16:33  19        THE COURT:  I prefer that all my cases are settled and

09:16:35  20   I can play golf and tennis all day long.  Once we are in a

09:16:40  21   contested hearing, it is your case.  You tell me what you want

09:16:43  22   to put on.  I don't have any preference for anything.  Whatever

09:16:46  23   the legal standing you think you need to meet is, you go forward

09:16:50  24   and put on whatever evidence you want to present.

09:16:52  25        I don't tell you.  If I am in a trial, I don't say,

Preliminary Injunction Hearing

7

| | | |
|---|---|---|
| 09:16:55 | 1 | "Look, I would like the Government to put on this witness," even |
| 09:16:59 | 2 | if it is a nonjury trial.  It is your case, so whatever you |
| 09:17:02 | 3 | think you need to prove it. |
| 09:17:04 | 4 | If you are telling me legally I can rely on all these |
| 09:17:07 | 5 | things and you are not going to put on any live witnesses, then |
| 09:17:11 | 6 | fine.  If you want to put on anything else that you think you |
| 09:17:14 | 7 | need to prove whatever you need to prove, then do that.  I don't |
| 09:17:17 | 8 | have any preferences. |
| 09:17:18 | 9 | MR. IVENS:  Then, Your Honor, we would put on very |
| 09:17:20 | 10 | limited live testimony to show what was discovered since the |
| 09:17:22 | 11 | issuance of the temporary restraining order further to support |
| 09:17:27 | 12 | our show cause motion for the preliminary injunction. |
| 09:17:30 | 13 | THE COURT:  Okay.  So who is the first witness you want |
| 09:17:32 | 14 | to call? |
| 09:17:32 | 15 | MR. IVENS:  We call John Aiken to the stand. |
| 09:17:35 | 16 | THE COURT:  All right.  Please come forward. |
| 09:17:42 | 17 | MR. ROGOW:  Your Honor, may I be heard because I think |
| 09:17:45 | 18 | we can shorten some of this, and I think there is really just |
| 09:17:48 | 19 | one issue in the case. |
| 09:17:49 | 20 | THE COURT:  Okay. |
| 09:17:55 | 21 | MR. ROGOW:  Mr. Ivens and I have spoken.  There really |
| 09:17:59 | 22 | is no factual dispute in terms of the restraining order.  In |
| 09:18:04 | 23 | fact, my company, United Solutions, is not going to do business |
| 09:18:08 | 24 | any more, so there is no real need to do anything with them |
| 09:18:13 | 25 | other than we can agree -- we don't agree with all of the |

Preliminary Injunction Hearing

8

| | | |
|---|---|---|
| 09:18:17 | 1 | characterizations, but we can agree they are not going to do |
| 09:18:20 | 2 | business any more. |
| 09:18:21 | 3 | THE COURT:  Okay. |
| 09:18:22 | 4 | MR. ROGOW:  The only issue for United Solutions and the |
| 09:18:25 | 5 | Vargases -- and I can't speak for Partners in Health Care |
| 09:18:28 | 6 | obviously -- is whether or not Banestral, a company that shares |
| 09:18:32 | 7 | space with them and has Walter Vargas on both sides, Banestral |
| 09:18:38 | 8 | and United Solutions, whether or not Banestral can be carved out |
| 09:18:43 | 9 | of this restraining order. |
| 09:18:44 | 10 | When the FTC came in -- and this TRO which was very |
| 09:18:49 | 11 | broadly phrased in term of affiliates -- they swooped up |
| 09:18:55 | 12 | Banestral.  Banestral is a company that sells vacations.  They |
| 09:18:59 | 13 | are on the 9th Floor of 28 West Flagler. |
| 09:19:03 | 14 | The company is owned by Walter Vargas, Banestral.  He |
| 09:19:12 | 15 | is a director of Banestral and an officer, and he also happens |
| 09:19:17 | 16 | to be an officer of United Solutions, and that is what has |
| 09:19:21 | 17 | caused the Government some problems. |
| 09:19:22 | 18 | They think the two are affiliated, and I need to carve |
| 09:19:26 | 19 | out Banestral.  My discussion with Mr. Ivens has been:  Can we |
| 09:19:30 | 20 | carve out Banestral?  He seems not to be convinced yet that |
| 09:19:34 | 21 | Banestral is a separate entity. |
| 09:19:36 | 22 | Now, Mr. and Mrs. Vargas were divorced in 2010, but |
| 09:19:40 | 23 | nicely they share space on the 9th Floor of this building. |
| 09:19:45 | 24 | United Solutions is a separate company, and Banestral is |
| 09:19:49 | 25 | separate from United Solutions. |

| | | |
|---|---|---|
| 09:19:52 | 1 | The overlap seems to be the son, Walter Vargas, who is |
| 09:19:56 | 2 | 22 years old, who is a much better English speaker, and so he |
| 09:20:00 | 3 | has done some things for United Solutions, but that doesn't make |
| 09:20:04 | 4 | Banestral an affiliate of United Solutions. |
| 09:20:08 | 5 | So for me the only evidence I want to put on is |
| 09:20:11 | 6 | evidence that would carve out Banestral.  I don't want to have |
| 09:20:14 | 7 | to cross-examine any of this other evidence.  I need Banestral |
| 09:20:18 | 8 | to be separated.  If Banestral is separated, they can afford to |
| 09:20:22 | 9 | pay counsel for United Solutions and the fact that the Vargases |
| 09:20:27 | 10 | are together, even though they are divorced, I think is a very |
| 09:20:30 | 11 | nice and commendable thing. |
| 09:20:32 | 12 | But the fact that they are working on the same floor, |
| 09:20:35 | 13 | that the offices are on the same floor, the fact that there is, |
| 09:20:38 | 14 | because of Walter Vargas, some commonalty has led the FTC to be |
| 09:20:43 | 15 | concerned about letting go of Banestral, but that's what this |
| 09:20:49 | 16 | case is all about as far as we are concerned:  Can Banestral be |
| 09:20:52 | 17 | carved out? |
| 09:20:53 | 18 | I am ready to put on testimony and have it be subject |
| 09:20:57 | 19 | to cross-examination about why Banestral is a separate company. |
| 09:21:01 | 20 | So that is the only issue for us in this case. |
| 09:21:04 | 21 | THE COURT:  Okay.  All right.  Mr. Grumer, let me hear |
| 09:21:09 | 22 | your position on this morning's proceedings. |
| 09:21:15 | 23 | MR. GRUMER:  Thank you, sir.  We, too, have a similar |
| 09:21:21 | 24 | situation inasmuch as we're prepared and we extended to the |
| 09:21:27 | 25 | Federal Trade Commission, Mr. Ivens, a willingness to stipulate |

| | | |
|---|---|---|
| 09:21:33 | 1 | as to not to violate FTC telemarketing restrictions in the |
| 09:21:39 | 2 | future and to immediately enter into such injunction; however, |
| 09:21:49 | 3 | my client, Mr. Kieper, believes that this is a legitimate |
| 09:21:55 | 4 | business and wishes to operate it and has proposed reopening, |
| 09:22:04 | 5 | not the telemarketing aspect of this business, but servicing the |
| 09:22:08 | 6 | customers and the subscribers that are currently in place. |
| 09:22:14 | 7 | We are in a situation where, because the receiver has |
| 09:22:20 | 8 | locked out Mr. Kieper from his Wisconsin facilities and has |
| 09:22:26 | 9 | seized all of the records, we are incredibly handcuffed and |
| 09:22:32 | 10 | blindfolded. |
| 09:22:34 | 11 | 1.  We cannot complete the court-ordered forms without |
| 09:22:37 | 12 | access to our own records which the receiver announced yesterday |
| 09:22:43 | 13 | in his filing that he has already duplicated. |
| 09:22:47 | 14 | So why do those restrictions remain in place?  We have |
| 09:22:51 | 15 | attempted to reach the receiver and have asked for access, but |
| 09:22:55 | 16 | as of yesterday, even before the filing of that report, those |
| 09:22:58 | 17 | calls went unresponded to. |
| 09:23:01 | 18 | 2.  We proposed a business plan going forward, but the |
| 09:23:07 | 19 | receiver wants that business plan in writing but without access |
| 09:23:13 | 20 | to not only the records, but there is a computer software called |
| 09:23:18 | 21 | Enrollment 1-2-3, those items have been frozen and we have no |
| 09:23:24 | 22 | access to them and we cannot complete the additional requirement |
| 09:23:28 | 23 | imposed upon us, not in your order, but by the receiver to |
| 09:23:33 | 24 | submit a written business plan. |
| 09:23:35 | 25 | THE COURT:  But I thought that that software was to |

Preliminary Injunction Hearing

11

| | | |
|---|---|---|
| 09:23:37 | 1 | sign up new clients.  If your business plan going forward is |
| 09:23:40 | 2 | just to service existing customers, why would you need that? |
| 09:23:44 | 3 | MR. GRUMER:  Once they are enrolled, all of their |
| 09:23:46 | 4 | information is in that. |
| 09:23:48 | 5 | THE COURT:  You need that software to find out who is |
| 09:23:50 | 6 | already in the program so you can service them? |
| 09:23:53 | 7 | MR. GRUMER:  Yes. |
| 09:23:54 | 8 | THE COURT:  Okay. |
| 09:23:55 | 9 | MR. GRUMER:  As well as we have health care providers. |
| 09:23:59 | 10 | For example, the Tri-Resource Group is the branch of this |
| 09:24:04 | 11 | business that does customer service. |
| 09:24:06 | 12 | THE COURT:  Okay. |
| 09:24:07 | 13 | MR. GRUMER:  Tri-Resource Group, not a named defendant, |
| 09:24:11 | 14 | that has been frozen.  We are locked out.  The phones were |
| 09:24:17 | 15 | receiving 40 to 50 calls sometimes per hour, not from |
| 09:24:22 | 16 | solicitations but from existing enrollees, and they cannot be |
| 09:24:27 | 17 | serviced, so we would propose two steps. |
| 09:24:30 | 18 | The first step would be to allow Tri-Resource to |
| 09:24:36 | 19 | service the existing enrollees, of course under receivership |
| 09:24:43 | 20 | supervision, but we have also gone out and have engaged a |
| 09:24:46 | 21 | specialized telemarketing compliance firm and I believe the FTC |
| 09:24:55 | 22 | counsel is already familiar with Dean and Andrew Garfinkle who |
| 09:25:02 | 23 | have written several of the manuals and are used by other courts |
| 09:25:05 | 24 | in these types of situations, so they have already been vetted. |
| 09:25:10 | 25 | They are preapproved in a number of proceedings. |

Preliminary Injunction Hearing

12

| | | |
|--|--|--|
| 09:25:13 | 1 | We would seek, obviously, the Court's approval.  We |
| 09:25:15 | 2 | need to be able to retain them as well as specialized counsel |
| 09:25:20 | 3 | focusing on getting the proper authorization, Mitch Roth out of |
| 09:25:27 | 4 | Washington, D.C., and once we have -- then we would consider, |
| 09:25:32 | 5 | with the Court's permission, opening up the other phase of this |
| 09:25:36 | 6 | business. |
| 09:25:36 | 7 | The disagreement that we currently have with the |
| 09:25:39 | 8 | receiver is we believe the receiver is advocating that this is |
| 09:25:45 | 9 | not a legitimate business.  It is our position it is a |
| 09:25:48 | 10 | legitimate business.  It is not an insurance business and if it |
| 09:25:53 | 11 | has been misrepresented in those calls, that's prohibited and we |
| 09:25:59 | 12 | consent to that aspect of the injunction. |
| 09:26:02 | 13 | Mr. Kieper was in the process of terminating |
| 09:26:07 | 14 | independent phone solicitors and was in the process of opening |
| 09:26:11 | 15 | his own call center under his direct supervision and had |
| 09:26:16 | 16 | actually terminated several of these independent companies prior |
| 09:26:21 | 17 | to the FTC coming in, and had there been any sort of advance |
| 09:26:26 | 18 | notice there could have been some discussion, but be that as it |
| 09:26:28 | 19 | may, we are prepared to work with the FTC and come into |
| 09:26:33 | 20 | compliance before reopening that aspect of the business. |
| 09:26:38 | 21 | But we believe that we should be able to and we won't |
| 09:26:42 | 22 | stipulate to the freezing of the current servicing of those |
| 09:26:45 | 23 | enrolled parties. |
| 09:26:48 | 24 | THE COURT:  Let me ask you a question:  Of the people |
| 09:26:50 | 25 | who are enrolled, is there an ongoing monthly payment that they |

Preliminary Injunction Hearing

13

| | |
|---|---|
| 09:26:55 | 1 | have to make to continue to be enrolled? |
| 09:26:57 | 2 | MR. GRUMER:  Yes. |
| 09:26:58 | 3 | THE COURT:  So if those people were -- at least some of |
| 09:27:02 | 4 | them defrauded into getting into it, then by just like |
| 09:27:05 | 5 | continuing to service the customer, they are paying money into |
| 09:27:11 | 6 | something on a continuing basis that they should never pay |
| 09:27:16 | 7 | anything for. |
| 09:27:17 | 8 | MR. GRUMER:  We understand that there were excessive |
| 09:27:22 | 9 | misrepresentations done by the independent phone solicitors.  We |
| 09:27:27 | 10 | don't believe that there have been those misrepresentations made |
| 09:27:32 | 11 | by the in-house group and we have made it clear -- there are |
| 09:27:37 | 12 | several places where it is put out that this is not insurance. |
| 09:27:41 | 13 | We understand the high burden and the skepticism with |
| 09:27:46 | 14 | which we appear before the Court, but Mr. Kieper has been in the |
| 09:27:51 | 15 | business in excess of 40 years.  A fair amount of his experience |
| 09:27:57 | 16 | was in selling insurance products to senior citizens and, yes, |
| 09:28:01 | 17 | there were agents that sold and stole money from these people. |
| 09:28:06 | 18 | Yes, there was bad behavior, but he immediately terminated any |
| 09:28:11 | 19 | such prior incident and was in the process of addressing this |
| 09:28:16 | 20 | business. |
| 09:28:16 | 21 | Perhaps he grew it too fast.  Perhaps he lost controls. |
| 09:28:22 | 22 | We are prepared to engage the professionals to place those |
| 09:28:26 | 23 | proper controls in there. |
| 09:28:28 | 24 | So from an evidentiary standpoint, we stipulate that |
| 09:28:35 | 25 | violations occurred and further stipulate that we will not |

Preliminary Injunction Hearing

14

| | | |
|---|---|---|
| 09:28:39 | 1 | violate in the future.  What we request is more in the lines of |
| 09:28:44 | 2 | the scope and breadth of the injunction and we were unable to |
| 09:28:53 | 3 | resolve that with the FTC or the receiver yesterday. |
| 09:28:55 | 4 | THE COURT:  Okay.  All right.  Thank you. |
| 09:28:57 | 5 | Now that we have that understanding, it seems -- yes. |
| 09:29:04 | 6 | MR. PECAN:  Would you like to hear from -- |
| 09:29:06 | 7 | THE COURT:  Not yet. |
| 09:29:07 | 8 | MR. PECAN:  Thank you. |
| 09:29:08 | 9 | THE COURT:  It seems to me that the issues relating to |
| 09:29:09 | 10 | the Partners in Health Associations and the United Solutions |
| 09:29:13 | 11 | Group are kind of different, so let's start with -- Mr. Rogow |
| 09:29:21 | 12 | brought it up first.  Let's start with his issue relating to the |
| 09:29:24 | 13 | connection or lack of connection between Banestral and United |
| 09:29:27 | 14 | Solutions. |
| 09:29:27 | 15 | Do you want to put on -- would it be the same witness |
| 09:29:29 | 16 | you would be calling on that issue or is there somebody else you |
| 09:29:32 | 17 | want to call? |
| 09:29:33 | 18 | MR. IVENS:  We would call a different witness for that |
| 09:29:36 | 19 | aspect of the case, Your Honor. |
| 09:29:37 | 20 | THE COURT:  Okay.  Who is that witness? |
| 09:29:39 | 21 | MR. IVENS:  We call -- |
| 09:29:42 | 22 | MR. BROWN:  Manuela Esparza, Your Honor. |
| 09:29:45 | 23 | THE COURT:  You almost made it on the stand. |
| | 24 | MANUELA ESPARZA, PLAINTIFF'S WITNESS, SWORN. |
| 09:30:17 | 25 | THE WITNESS:  Manuela Esparza, E-s-p-a-r-z-a. |

September 4, 2014

Esparza - Direct

15

|  | 1 | DIRECT EXAMINATION |
| 09:30:24 | 2 | [Beginning at 9:30 a.m., 9/4/14.] |
| 09:30:25 | 3 | BY MR. BROWN: |
| 09:30:25 | 4 | Q.  Good morning, Ms. Esparza. |
| 09:30:28 | 5 | A.  Good morning. |
| 09:30:28 | 6 | Q.  Could you state for the Court where it is that you are |
| 09:30:30 | 7 | employed? |
| 09:30:31 | 8 | A.  I work for the Federal Trade Commission. |
| 09:30:32 | 9 | Q.  What do you do for the Federal Trade Commission? |
| 09:30:35 | 10 | A.  I am an investigator. |
| 09:30:36 | 11 | Q.  And are you solely an English investigator or do you speak |
| 09:30:41 | 12 | other languages? |
| 09:30:42 | 13 | A.  No, I'm sorry.  I am a bilingual investigator.  I speak |
| 09:30:45 | 14 | Spanish as well. |
| 09:30:45 | 15 | Q.  What are your responsibilities at the Federal Trade |
| 09:30:47 | 16 | Commission as an investigator? |
| 09:30:48 | 17 | A.  Some of my responsibilities are -- we receive customer |
| 09:30:51 | 18 | complaints and we investigate them.  I look into the complaint, |
| 09:30:56 | 19 | look into companies and see if they are following the rules that |
| 09:30:59 | 20 | we have in place and if not, then we seek a certain, I guess, |
| 09:31:07 | 21 | law to make them obey, but anyways, we -- so in this case, we go |
| 09:31:11 | 22 | to immediate access which is basically where we enter the |
| 09:31:15 | 23 | premises and gather additional evidence in support of our -- |
| 09:31:18 | 24 | already our previous claims. |
| 09:31:21 | 25 | Q.  Are you familiar with the case at issue before us today? |

Esparza - Direct

16

| | | |
|---|---|---|
| 09:31:24 | 1 | A.  Yes, I am. |
| 09:31:24 | 2 | Q.  And what was the nature of your involvement in this case? |
| 09:31:28 | 3 | A.  I was one of the assigned investigators.  I also did the |
| 09:31:31 | 4 | undercover -- some of the undercover work and I was assigned to |
| 09:31:35 | 5 | come down to Miami to do the immediate access. |
| 09:31:37 | 6 | Q.  You mentioned this term "immediate access."  Could you |
| 09:31:39 | 7 | describe for the Court what that is? |
| 09:31:41 | 8 | A.  Yes.  Immediate access is when the Court grants us |
| 09:31:44 | 9 | permission to have access to the business premises and gather |
| 09:31:48 | 10 | additional information that we need to support our claims. |
| 09:31:51 | 11 | Q.  And where did the immediate access occur that you were |
| 09:31:54 | 12 | involved in? |
| 09:31:55 | 13 | A.  It was here in Miami, 28 West Flagler Street in Suite 900. |
| 09:32:02 | 14 | Q.  Could you describe when that immediate access occurred? |
| 09:32:06 | 15 | A.  Yes.  It was the 27th, I believe, yes, last Wednesday. |
| 09:32:10 | 16 | Q.  And can you describe how that immediate access progressed? |
| 09:32:13 | 17 | A.  Yes.  We entered the premises along -- well, first the |
| 09:32:17 | 18 | receiver and law enforcement enter the premises.  Then, after |
| 09:32:20 | 19 | they secured the location, then the FTC was allowed to enter and |
| 09:32:26 | 20 | just basically begin searching for our evidence. |
| 09:32:29 | 21 | Q.  Upon entering the 28 West Flagler Street, Suite 900 business |
| 09:32:34 | 22 | premises, what did you see? |
| 09:32:35 | 23 | A.  There was -- initially when you enter there were one, two -- |
| 09:32:38 | 24 | there were four offices there.  On the left there was Mr. Jaime |
| 09:32:43 | 25 | Vargas, then Ivan González, Ms. Constanza Gomez and Walter |

Esparza - Direct

17

| | | |
|---|---|---|
| 09:32:48 | 1 | Vargas and then on the right side there were two boiler rooms. |
| 09:32:51 | 2 | THE COURT:  I'm sorry.  You said Jaime Vargas? |
| 09:32:54 | 3 | THE WITNESS:  Jaime Vargas, Ivan González, Constanza |
| 09:32:59 | 4 | Gomez and Walter Vargas. |
| 09:33:04 | 5 | BY MR. BROWN: |
| 09:33:04 | 6 | Q.  What else did you see in addition to those four offices? |
| 09:33:06 | 7 | A.  There were two boiler rooms or customer service rooms where |
| 09:33:12 | 8 | telemarketers sit and make or receive calls. |
| 09:33:17 | 9 | Q.  Based on your entry and your examination of the premises, |
| 09:33:22 | 10 | who did you understand to be located there at the premises? |
| 09:33:26 | 11 | A.  Well, when we initially started obviously we thought it was |
| 09:33:28 | 12 | just United Solutions, but then after looking around we realized |
| 09:33:32 | 13 | that there were more companies.  There was Mega Vacaciones, or |
| 09:33:38 | 14 | Mega Vacations in English, and then there was -- we saw some |
| 09:33:42 | 15 | other information for Banestral Group and World Parcel Express |
| 09:33:48 | 16 | Services, WPES. |
| 09:33:51 | 17 | THE COURT:  Say that again. |
| 09:33:52 | 18 | THE WITNESS:  World Parcel Express Services, also known |
| 09:33:55 | 19 | as WPES. |
| 09:33:59 | 20 | BY MR. BROWN: |
| 09:33:59 | 21 | Q.  So what did you first do upon entering the premises? |
| 09:34:03 | 22 | A.  Well, I started gathering evidence in the customer service |
| 09:34:07 | 23 | area for United Solutions and, you know, just gathered what we |
| 09:34:11 | 24 | needed to support our claim, scripts, anything that we could |
| 09:34:14 | 25 | find, and then I moved to the offices. |

Esparza - Direct

18

| 09:34:18 | 1 | One of them was Walter Vargas' and started looking |

09:34:18  1          One of them was Walter Vargas' and started looking

09:34:22  2   through his paperwork and just -- like I said, we are trying to

09:34:24  3   find evidence to support our claim so that's what I was looking

09:34:27  4   for.

09:34:27  5   Q.   Okay.  Let me take you back to -- you mentioned the first

09:34:30  6   rooms that you began to enter, the customer service or the

09:34:32  7   boiler rooms?

09:34:33  8   A.   Right.

09:34:33  9   Q.   What kind of documentation did you discover there?

09:34:37  10  A.   We -- I found customer complaints.  There was scripts,

09:34:44  11  customer complaints at both locations, for United Solutions and

09:34:47  12  for Mega Vacaciones and that is basically -- not in the customer

09:34:54  13  service area, but in the receptionist area there was employee

09:34:59  14  lists.

09:35:01  15  Q.   So can you describe the scripts that you found in the

09:35:03  16  customer service area for the Court?

09:35:05  17  A.   Yeah, some of the scripts were when somebody calls in, what

09:35:08  18  do you tell them, and then if somebody complains, hey, this is

09:35:11  19  not insurance, what do you tell them.  So rebuttals to customers

09:35:16  20  either after they receive the card or any kind of rebuttal.

09:35:19  21  There were several rebuttals there pointed out in scripts.

09:35:25  22  Q.   After you gathered documentation from the customer service

09:35:28  23  rooms, then where did you proceed?  Did you proceed anywhere

09:35:31  24  else?

09:35:31  25  A.   Yes.  I went to the offices.

September 4, 2014

Esparza - Direct

19

| | | |
|---|---|---|
| 09:35:34 | 1 | THE COURT:  Getting back to the boiler rooms, were the |
| 09:35:37 | 2 | documents in one boiler-room different, like do they have -- |
| 09:35:42 | 3 | different from the documents in the other boiler-room? |
| 09:35:45 | 4 | THE WITNESS:  Yes, Your Honor, they were. |
| 09:35:46 | 5 | THE COURT:  And how were they different? |
| 09:35:48 | 6 | THE WITNESS:  Well, the United Solutions part focused |
| 09:35:51 | 7 | mainly on the health aspect and the Mega Vacations boiler room |
| 09:35:56 | 8 | had scripts and rebuttals also for customers, just on the |
| 09:36:00 | 9 | vacation aspect of it. |
| 09:36:02 | 10 | THE COURT:  It would appear that one of the rooms was |
| 09:36:04 | 11 | used for United Solutions and the other room was used for Mega |
| 09:36:08 | 12 | Vacations? |
| 09:36:09 | 13 | THE WITNESS:  Correct, yes. |
| 09:36:10 | 14 | THE COURT:  Okay. |
| 09:36:11 | 15 | BY MR. BROWN: |
| 09:36:11 | 16 | Q.  So what room did you enter into next after the boiler room? |
| 09:36:15 | 17 | A.  I went into the office of, I believe it was Walter Vargas. |
| 09:36:19 | 18 | Q.  Okay.  What documentation, if any, did you discover there? |
| 09:36:23 | 19 | A.  I found it was a check, a check that was paid to, I believe, |
| 09:36:30 | 20 | the renter or -- it appeared to be -- from World Parcel Express |
| 09:36:35 | 21 | Services to maybe the leasing -- maybe for leasing or something |
| 09:36:39 | 22 | like that, for rent for the premises, for the Suite 900 |
| 09:36:43 | 23 | premises. |
| 09:36:45 | 24 | Q.  Based on your investigation during the immediate access, |
| 09:36:49 | 25 | what is your understanding of who Mr. Walter Vargas is? |

Esparza - Direct

20

| | | |
|---|---|---|
| 09:36:53 | 1 | A.  The CEO of both companies actually based on his business |
| 09:36:57 | 2 | card.  That is what his business card says. |
| 09:36:59 | 3 | Q.  When you say both companies, which companies are you |
| 09:37:02 | 4 | referring to? |
| 09:37:03 | 5 | A.  Actually not both, let me take that back.  Based on his |
| 09:37:06 | 6 | business card, it is Banestral Group, World Parcel Express |
| 09:37:11 | 7 | Services and United Solutions. |
| 09:37:21 | 8 | MR. BROWN:  Your Honor, if I may, I would like to hand |
| 09:37:22 | 9 | up what has been previously marked as Plaintiff's Exhibit |
| 09:37:27 | 10 | Number 40. |
| 09:37:28 | 11 | THE COURT:  All right.  Do you have any objection to |
| 09:37:30 | 12 | that? |
| 09:37:33 | 13 | MR. ROGOW:  I haven't seen it, Your Honor.  No |
| 09:37:44 | 14 | objection. |
| | 15 | [Plaintiff Exhibit 40 received in evidence at 9:44 a.m.] |
| 09:37:44 | 16 | THE COURT:  You can show it on the ELMO. |
| 09:38:05 | 17 | BY MR. BROWN: |
| 09:38:05 | 18 | Q.  Ms. Esparza, do you recognize this document? |
| 09:38:09 | 19 | A.  Yes, I do. |
| 09:38:09 | 20 | Q.  How do you recognize this document? |
| 09:38:11 | 21 | A.  It was one of the business cards obtained from Mr. Vargas' |
| 09:38:19 | 22 | office. |
| 09:38:19 | 23 | THE COURT:  You were telling us it was Walter Vargas' |
| 09:38:21 | 24 | office.  Who is Steven Vargas? |
| 09:38:22 | 25 | THE WITNESS:  I don't know if that is his middle name |

Esparza - Direct

21

| | | |
|---|---|---|
| 09:38:25 | 1 | or how -- Walter Steven Vargas, but he goes by both so I don't |
| 09:38:29 | 2 | know how that works. |
| 09:38:31 | 3 | THE COURT:  Okay. |
| 09:38:32 | 4 | BY MR. BROWN: |
| 09:38:32 | 5 | Q.  Could you describe the business card for the Court?  When |
| 09:38:35 | 6 | you obtained this, what did you notice about the business card, |
| 09:38:38 | 7 | if anything? |
| 09:38:38 | 8 | A.  Well, I noticed that he was first the CEO for both |
| 09:38:42 | 9 | companies, United Solutions and WPES International and that is |
| 09:38:46 | 10 | on the front of the card and on the back of the card I noticed |
| 09:38:49 | 11 | that he represented -- there was four businesses on the back of |
| 09:38:51 | 12 | his card which is, like I said before, Banestral Group, United |
| 09:38:58 | 13 | Solutions, WPES and Mega Vacations. |
| 09:38:59 | 14 | Q.  Who is WPES International?  What is your understanding of |
| 09:39:04 | 15 | what that entity is? |
| 09:39:05 | 16 | A.  Based on some of the payment information that I saw, it |
| 09:39:08 | 17 | appears that they are either processing payments for Banestral |
| 09:39:11 | 18 | Group or Mega Vacations so that is what I -- based on the |
| 09:39:16 | 19 | payment sources that we saw. |
| 09:39:17 | 20 | Q.  And could you describe -- based on your investigation of the |
| 09:39:20 | 21 | premises, can you describe the entity known as Mega Vacations? |
| 09:39:27 | 22 | A.  Mega Vacations, based on what I saw, is a company that |
| 09:39:32 | 23 | advertises vacation packages to South America, specifically |
| 09:39:35 | 24 | Colombia, Perú and Mexico, and they offer very inexpensive |
| 09:39:42 | 25 | packages for people to come and, you know, take a vacation here |

Esparza - Direct

22

| | | |
|---|---|---|
| 09:39:47 | 1 | or Dominican Republic, Cancún, other places. |
| 09:39:51 | 2 | Q.   Where does Mega Vacations market its travel packages? |
| 09:39:55 | 3 | A.   What I saw was Colombia, was the main one, Perú and Mexico. |
| 09:40:01 | 4 | Q.   And do you know if Mega Vacations has a presence in any of |
| 09:40:06 | 5 | those countries? |
| 09:40:07 | 6 | A.   I do.  I do based on some of the research I did and they do |
| 09:40:13 | 7 | have a presence in all three. |
| 09:40:16 | 8 | Q.   During your investigation pursuant to the immediate access, |
| 09:40:21 | 9 | did you discover any other business cards at the premises? |
| 09:40:23 | 10 | A.   Yes.  I also saw Mr. Jaime Vargas' card and Ms. Constanza |
| 09:40:27 | 11 | Gomez's card. |
| 09:40:28 | 12 | Q.   Who is Mr. Jaime Vargas? |
| 09:40:31 | 13 | A.   He is an officer for Mega Vacaciones.  Well, based on his |
| 09:40:36 | 14 | business card, on the back of the business card is exactly like |
| 09:40:40 | 15 | Mr. Steven Vargas.  It has the four companies, which are |
| 09:40:43 | 16 | Banestral, United Solutions, Mega Vacations and WPES and he is |
| 09:40:48 | 17 | an officer for Mega Vacations. |
| 09:40:51 | 18 | Q.   You said you also found a business card for Constanza Gomez? |
| 09:40:56 | 19 | A.   Correct. |
| 09:40:56 | 20 | Q.   Could you describe her business card for the Court? |
| 09:40:59 | 21 | A.   Yes.  Her business card is exactly like Mr. Vargas' except |
| 09:41:03 | 22 | that her job title is different, but on the back of the card it |
| 09:41:06 | 23 | also represents WPES, Banestral Group, Mega Vacations and United |
| 09:41:12 | 24 | Solutions and she is also listed as an officer for the |
| 09:41:14 | 25 | company -- one of the companies. |

Esparza - Direct

23

| | | |
|---|---|---|
| 09:41:20 | 1 | MR. BROWN:  Your Honor, I would like to show the |
| 09:41:22 | 2 | witness what has been marked as Plaintiff's Exhibit Number 41 if |
| 09:41:24 | 3 | I may. |
| 09:41:25 | 4 | THE COURT:  All right.  Show it to opposing counsel. |
| 09:41:31 | 5 | MR. ROGOW:  No objection. |
| 09:41:35 | 6 | THE COURT:  All right.  So that will be received in |
| 09:41:37 | 7 | evidence for this hearing. |
| | 8 | [Plaintiff Exhibit 41 received in evidence at 9:44 a.m.] |
| 09:41:46 | 9 | BY MR. BROWN: |
| 09:41:46 | 10 | Q.  Ms. Esparza, I am showing you what has been previously |
| 09:41:56 | 11 | marked as Plaintiff's Exhibit 41.  Do you recognize this |
| 09:41:58 | 12 | document? |
| 09:41:59 | 13 | A.  Yes, but can you move it -- can you move it a little bit |
| 09:42:03 | 14 | down on my screen, it is not showing the top, please.  There. |
| 09:42:08 | 15 | Thank you. |
| 09:42:22 | 16 | Q.  How do you recognize -- do you recognize this document? |
| 09:42:24 | 17 | A.  Yes.  It was a document that was obtained during the |
| 09:42:28 | 18 | immediate access from the receptionist area. |
| 09:42:33 | 19 | Q.  And can you describe this document for the Court? |
| 09:42:36 | 20 | A.  Yes.  The document is Banestral Group USA and it lists -- it |
| 09:42:41 | 21 | has all the employees that work under Banestral Group and it has |
| 09:42:48 | 22 | their name, it has their position and it has their department |
| 09:42:50 | 23 | for which they work for under Banestral Group. |
| 09:42:54 | 24 | Q.  Okay.  Based on this document, what is your understanding of |
| 09:42:58 | 25 | the departments that make up Banestral Group? |

Esparza - Direct

24

| | | |
|---|---|---|
| 09:43:00 | 1 | A.  Based on it, they have a salud department, which is health, |
| 09:43:09 | 2 | customer service and reservations -- I can read it in English or |
| 09:43:14 | 3 | Spanish. |
| 09:43:14 | 4 | THE COURT:  Do it in English. |
| 09:43:16 | 5 | THE WITNESS:  Okay.  Reservations, health, sales and |
| 09:43:23 | 6 | verifications. |
| 09:43:35 | 7 | MR. BROWN:  Your Honor, I request that this document be |
| 09:43:38 | 8 | moved in evidence. |
| 09:43:39 | 9 | THE COURT:  It is in. |
| 09:43:41 | 10 | MR. ROGOW:  No objection. |
| 09:43:43 | 11 | MR. BROWN:  Your Honor, I would also like to show |
| 09:43:44 | 12 | Ms. Esparza what is labeled as Plaintiff's Exhibit 42. |
| 09:44:03 | 13 | MR. ROGOW:  No objection, Your Honor. |
| 09:44:04 | 14 | THE COURT:  All right.  42 will be received for this |
| 09:44:06 | 15 | hearing. |
| 09:44:07 | 16 | [Plaintiff Exhibit 42 received in evidence at 9:44 a.m.] |
| 09:44:17 | 17 | THE COURT:  Is there a heading on that that we can't |
| 09:44:19 | 18 | see?  That is the top?  Okay. |
| 09:44:26 | 19 | BY MR. BROWN: |
| 09:44:26 | 20 | Q.  Ms. Esparza, do you recognize this document? |
| 09:44:29 | 21 | A.  Yes, I do. |
| 09:44:29 | 22 | Q.  And how do you recognize this document? |
| 09:44:31 | 23 | A.  It was also obtained during the immediate access and it was |
| 09:44:36 | 24 | also around the receptionist area. |
| 09:44:38 | 25 | MR. ROGOW:  I couldn't hear the last answer, please, |

Esparza - Direct

25

| | | |
|---|---|---|
| 09:44:40 | 1 | Your Honor. |
| 09:44:41 | 2 | THE WITNESS:  It was obtained during the immediate |
| 09:44:42 | 3 | access.  It was found in the receptionist area. |
| 09:44:46 | 4 | BY MR. BROWN: |
| 09:44:46 | 5 | Q.  So was this kept in the same location as Plaintiff's Exhibit |
| 09:44:50 | 6 | 41? |
| 09:44:50 | 7 | A.  Yes. |
| 09:44:51 | 8 | Q.  The employee list for Banestral Group? |
| 09:44:53 | 9 | A.  Correct. |
| 09:44:54 | 10 | Q.  Okay.  What is your understanding of what this exhibit is, |
| 09:44:57 | 11 | Plaintiff's Exhibit 42? |
| 09:44:59 | 12 | A.  This shows the name of the employees, which department or |
| 09:45:04 | 13 | which company they work for and the address. |
| 09:45:09 | 14 | Q.  And you said it shows the names of the employees.  Which |
| 09:45:12 | 15 | companies are represented here in this list? |
| 09:45:14 | 16 | A.  Mega Vacations and United Solutions. |
| 09:45:24 | 17 | Q.  Who are the employees that are listed under the company |
| 09:45:29 | 18 | United Solutions? |
| 09:45:30 | 19 | A.  The employees that are listed under United Solutions are the |
| 09:45:34 | 20 | same employees that are listed on Banestral Group's health |
| 09:45:39 | 21 | department. |
| 09:45:42 | 22 | THE COURT:  Is that referring back to the other |
| 09:45:44 | 23 | exhibit? |
| 09:45:44 | 24 | THE WITNESS:  Yes, I am sorry.  Yes, it is. |
| 09:45:57 | 25 | THE COURT:  And where they are listed in 41, does it |

September 4, 2014

Esparza - Direct

26

| | | |
|---|---|---|
| 09:46:02 | 1 | list them on the right in the department as health? |
| 09:46:04 | 2 | THE WITNESS:  Yes, on the Banestral Group USA Corp. |
| 09:46:07 | 3 | employee list it says the employee name and then the department |
| 09:46:10 | 4 | says salud, and if you find the name on Banestral Group and you |
| 09:46:14 | 5 | go to the other, Exhibit 42 I believe, you go to United |
| 09:46:20 | 6 | Solutions, under United Solutions their name appears on there, |
| 09:46:23 | 7 | too. |
| 09:46:23 | 8 | THE COURT:  Okay. |
| 09:46:25 | 9 | BY MR. BROWN: |
| 09:46:25 | 10 | Q.  So is everybody listed under United Solutions in Plaintiff's |
| 09:46:30 | 11 | Exhibit 42 also listed as an employee under the Banestral Group |
| 09:46:33 | 12 | employee list? |
| 09:46:34 | 13 | A.  There is one person that was listed under the Banestral |
| 09:46:36 | 14 | Group employee list, but not listed under United Solutions and I |
| 09:46:40 | 15 | believe her name was -- Lucia Silva was not listed under the |
| 09:46:48 | 16 | United Solutions. |
| 09:46:48 | 17 | Q.  Other than Lucia Silva, every employee listed as an employee |
| 09:46:53 | 18 | of United Solutions is also listed under Banestral Group? |
| 09:46:57 | 19 | A.  Correct. |
| 09:47:04 | 20 | MR. BROWN:  Your Honor, I would like to move in |
| 09:47:07 | 21 | evidence Plaintiff's Exhibit 43. |
| 09:47:13 | 22 | MR. ROGOW:  No objection. |
| 09:47:16 | 23 | THE COURT:  All right.  That will be received in |
| 09:47:17 | 24 | evidence. |
| 09:47:26 | 25 | [Plaintiff Exhibit 43 received in evidence at 9:47 a.m.] |

Esparza - Direct

27

| | | |
|---|---|---|
| 09:47:28 | 1 | BY MR. BROWN: |
| 09:47:28 | 2 | Q.  Ms. Esparza, I am showing you what has been marked as |
| 09:47:34 | 3 | Plaintiff's Exhibit 43.  Do you recognize this document? |
| 09:47:37 | 4 | A.  Yes.  It is one of the checks I found in Mr. Walter or |
| 09:47:43 | 5 | Steven Vargas' office. |
| 09:47:46 | 6 | Q.  And what is your understanding of what this document is? |
| 09:47:49 | 7 | A.  It's -- it appears to be for the lease that they pay for at |
| 09:47:54 | 8 | 28 West Flagler, Suite 900. |
| 09:47:56 | 9 | Q.  And you say they.  To whom are you referring when you say |
| 09:48:00 | 10 | "they" pay the lease? |
| 09:48:01 | 11 | A.  World Parcel Express Services, Inc. |
| 09:48:07 | 12 | Q.  And where did you say you found this document? |
| 09:48:09 | 13 | A.  Mr. Steven Vargas. |
| 09:48:15 | 14 | Q.  Maybe it is difficult to see, but are you able to determine |
| 09:48:17 | 15 | who it was that signed this check? |
| 09:48:19 | 16 | A.  Just by looking at the check, no, but by looking at other |
| 09:48:23 | 17 | documents that we found, it appears that it is Mr. Steven |
| 09:48:27 | 18 | Vargas' signature. |
| 09:48:29 | 19 | MR. BROWN:  Your Honor, I would like to move this |
| 09:48:31 | 20 | exhibit into evidence. |
| 09:48:32 | 21 | MR. ROGOW:  No objection. |
| 09:48:33 | 22 | THE COURT:  All right.  It is in evidence. |
| 09:48:35 | 23 | MR. BROWN:  Your Honor, no further questions for |
| 09:48:37 | 24 | Ms. Esparza. |
| 09:48:38 | 25 | THE COURT:  All right.  Any cross-examination, |

Esparza - Cross

28

| 09:48:40 | 1 | Mr. Rogow? |

2            CROSS-EXAMINATION

09:48:42  3 [Beginning at 9:48 a.m., 9/4/14.]

09:48:43  4 BY MR. ROGOW:

09:48:43  5 Q.  Did you have occasion, Ms. Esparza, to speak to Walter

09:48:55  6 Steven Vargas?

09:48:56  7 A.  No, sir, I did not.

09:48:57  8 Q.  Did you speak to Constanza Vargas?

09:48:59  9 A.  No, I did not.

09:49:01  10 Q.  Did you speak to Jaime Vargas?

09:49:04  11 A.  No, I did mot.

09:49:04  12 Q.  And so these are the documents from which you determined

09:49:08  13 that Banestral was somehow related to United Solutions?

09:49:12  14 A.  Some of the documents, yes.

09:49:16  15         MR. ROGOW:  Okay.  I don't have anything further.

09:49:18  16         THE COURT:  Thank you.  Do you have any questions?

17            CROSS-EXAMINATION

09:49:22  18 [Beginning at 9:49 a.m., 9/4/14.]

09:49:23  19 BY MR. GRUMER:

09:49:23  20 Q.  Good morning, Ms. Esparza.  My name is Keith Grumer.  I

09:49:32  21 represent Partners in Health Care and Mr. Kieper.

09:49:35  22         In your review of the scripts and in your review of the

09:49:42  23 documentation found at the boiler room and those offices, did

09:49:46  24 you see any communications from either Mr. Kieper or Partners in

09:49:52  25 Health Care approving the scripts or having the opportunity to

Vargas - Direct

29

| | | |
|---|---|---|
| 09:49:57 | 1 | review those scripts? |
| 09:49:59 | 2 | MR. BROWN:  Your Honor, I am going to object.  That is |
| 09:50:01 | 3 | beyond the scope of the direct examination. |
| 09:50:02 | 4 | THE COURT:  Overruled. |
| 09:50:03 | 5 | THE WITNESS:  I did not. |
| 09:50:06 | 6 | MR. GRUMER:  Thank you very much.  No further |
| 09:50:07 | 7 | questions. |
| 09:50:08 | 8 | THE COURT:  All right.  Thank you. |
| 09:50:10 | 9 | Thank you.  You can step down. |
| 09:50:11 | 10 | [The witness leaves the stand at 9:50 a.m.] |
| 09:50:12 | 11 | THE COURT:  Who is the next witness? |
| 09:50:15 | 12 | MR. IVENS:  Your Honor, we have no further witnesses. |
| 09:50:17 | 13 | THE COURT:  Okay.  Any witnesses you want to put on or |
| 09:50:19 | 14 | any evidence? |
| 09:50:21 | 15 | MR. ROGOW:  I do, Your Honor.  We will call Walter |
| 09:50:23 | 16 | Steven Vargas. |
| | 17 | WALTER STEVEN VARGAS, DEFENDANTS' WITNESS, SWORN. |
| 09:50:52 | 18 | THE WITNESS:  Walter Steven Vargas, V-a-r-g-a-s. |
| | 19 | DIRECT EXAMINATION |
| 09:50:58 | 20 | [Beginning at 9:50 a.m., 9/4/14.] |
| 09:50:58 | 21 | BY MR. ROGOW: |
| 09:50:58 | 22 | Q.  Mr. Vargas, sometimes you are called Walter, sometimes you |
| 09:51:01 | 23 | are called Steven.  Would you explain to the Court how that |
| 09:51:04 | 24 | distinction is made? |
| 09:51:06 | 25 | A.  My legal name is Walter Steven Vargas, but since I was |

Vargas - Direct

| | | |
|---|---|---|
| 09:51:09 | 1 | little my parents and my whole family have always called me |
| 09:51:12 | 2 | Steven and I just always liked that name better, so I just |
| 09:51:15 | 3 | decided, once I am able to kind of associate myself with other |
| 09:51:18 | 4 | people, I would always go by Steven. |
| 09:51:21 | 5 | Q.  And are you employed, Mr. Vargas? |
| 09:51:22 | 6 | A.  I am. |
| 09:51:24 | 7 | Q.  Where are you employed? |
| 09:51:25 | 8 | A.  Banestral Group. |
| 09:51:26 | 9 | Q.  And where is their office? |
| 09:51:28 | 10 | A.  28 West Flagler Street. |
| 09:51:31 | 11 | Q.  How long have you been employed by Banestral Group? |
| 09:51:33 | 12 | A.  About three years. |
| 09:51:35 | 13 | Q.  What does Banestral Group do? |
| 09:51:37 | 14 | A.  We sell vacation packages to Colombia, Perú and Mexico. |
| 09:51:42 | 15 | Q.  Tell us how that works, please. |
| 09:51:43 | 16 | A.  Okay.  Well, we make a commercial.  The commercial is |
| 09:51:46 | 17 | usually made on-site or by a production team that we have in |
| 09:51:50 | 18 | Colombia.  We take care of the editing and pretty much all the |
| 09:51:55 | 19 | information that goes into that commercial.  We then release |
| 09:52:00 | 20 | that commercial, approved by the channels in Colombia, Perú and |
| | 21 | Mexico. |
| 09:52:04 | 22 |         Then we have a call center here and in Colombia and |
| 09:52:05 | 23 | Peru that will answer the calls once the commercial comes in, |
| 09:52:09 | 24 | citing the promotion.  The promotion is usually for that day. |
| 09:52:13 | 25 | They would call in and we would obviously give them the |

Vargas - Direct

31

| | | |
|---|---|---|
| 09:52:15 | 1 | information on the destination.  Depending on the commercial, it |
| 09:52:18 | 2 | is a different destination and the client would then go ahead |
| 09:52:22 | 3 | and purchase the package. |
| 09:52:23 | 4 | They have a year to use the package and then we will |
| 09:52:26 | 5 | send them the information and when they are ready, all they have |
| 09:52:30 | 6 | to do is call two to three months before they want to actually |
| 09:52:32 | 7 | vacation and they would call our reservation department and we |
| 09:52:34 | 8 | would make the reservation.  Our reservation department will get |
| 09:52:37 | 9 | in contact with the hotels. |
| 09:52:39 | 10 | Q.  Speak a little more slowly, please.  The court reporter has |
| 09:52:43 | 11 | to take this down. |
| 09:52:44 | 12 | A.  Sorry.  So our reservations department, once the info is |
| 09:52:48 | 13 | sent to the client, will make the reservation with the client |
| 09:52:50 | 14 | once that client determines when he or she wants to actually |
| 09:52:54 | 15 | vacation.  Once that is made, we send that information, the |
| 09:53:00 | 16 | confirmation, to the hotel based on what the hotel gives us and |
| 09:53:05 | 17 | the contract that we have with the hotel and then, that is it. |
| 09:53:08 | 18 | It is input into their system and we send them the itinerary and |
| 09:53:12 | 19 | they travel. |
| 09:53:13 | 20 | Q.  Since August 27, when the FTC came into your offices, what |
| 09:53:20 | 21 | effect has that had on the operation of Banestral? |
| 09:53:24 | 22 | A.  Well, it's been a detriment to Banestral because Banestral |
| 09:53:27 | 23 | is a day-to-day operation where we have to have direct contact |
| 09:53:31 | 24 | with the clients and the hotels at all times.  What is happening |
| 09:53:35 | 25 | now is we -- last month we more or less had about 300 and |

Vargas - Direct

32

| | | |
|---|---|---|
| 09:53:41 | 1 | something families traveling.  So every day the confirmations |
| 09:53:43 | 2 | aren't being met, the hotels aren't being called, the invoices |
| 09:53:46 | 3 | to the hotels aren't being paid.  So when clients get to the |
| 09:53:49 | 4 | hotels, they can't -- they can't be accepted. |
| 09:53:53 | 5 | If they have any issues with their confirmation when |
| 09:53:59 | 6 | they're at the hotel or when they're renting their car they |
| 09:54:02 | 7 | usually call us and we are able to resolve that issue to them, |
| 09:54:05 | 8 | but since we have no contact, then we can't get in contact with |
| 09:54:08 | 9 | the client.  Clients have come to our office here in Miami |
| 09:54:12 | 10 | because we do sell the packages to Colombia, Perú and Mexico, |
| 09:54:15 | 11 | but most of the destinations are here to Orlando and to parts of |
| 09:54:20 | 12 | the United States. |
| 09:54:20 | 13 | So, when clients do come here and they don't get in |
| 09:54:23 | 14 | contact with us, obviously to them it looks a little skeptical |
| 09:54:27 | 15 | and they come and check our offices out and we are not able to |
| 09:54:30 | 16 | answer them at all.  So it has just been a detriment to them and |
| 09:54:35 | 17 | we haven't really been able to -- we have lost contracts with |
| 09:54:38 | 18 | hotels because of this and a lot of clients. |
| 09:54:44 | 19 | Q.  If this continues and Banestral is not able to operate, what |
| 09:54:48 | 20 | will be the effect upon Banestral as a company? |
| 09:54:53 | 21 | A.  Well, it will cease to exist.  It is pretty much solely |
| 09:54:58 | 22 | dependent on the people that work there and the service that we |
| 09:55:00 | 23 | provide to those clients and the contact we have with the |
| 09:55:04 | 24 | clients and the hotel and all the information that we have with |
| 09:55:07 | 25 | the client based on what we have on our system, the documents |

Vargas - Direct

33

| | | |
|---|---|---|
| 09:55:10 | 1 | that we have and on our server, which we have access to none of |
| 09:55:14 | 2 | those three, so if this continues, I am not too sure we can |
| 09:55:18 | 3 | continue with the business for much longer. |
| 09:55:20 | 4 | Q.  Is Banestral an affiliate of United Solutions? |
| 09:55:25 | 5 | A.  It is not.  It has nothing to do with United Solutions. |
| 09:55:27 | 6 | Q.  I don't think you have seen the exhibit that has your card, |
| 09:55:31 | 7 | your business card. |
| 09:55:33 | 8 | A.  Right. |
| 09:55:33 | 9 | Q.  But you are familiar with your business card, are you not? |
| 09:55:36 | 10 | A.  I am. |
| 09:55:36 | 11 | Q.  And does your business card reflect that you are -- let me |
| 09:55:43 | 12 | put it up for you so you can see it.  This is Government Exhibit |
| 09:55:51 | 13 | 40.  Do you see that on your screen? |
| 09:55:55 | 14 | A.  Yes, I do. |
| 09:56:00 | 15 | Q.  Explain to us the fact that your business card has these |
| 09:56:03 | 16 | various businesses listed. |
| 09:56:05 | 17 | A.  Of course.  Well, WPES International was the name of |
| 09:56:09 | 18 | Banestral -- |
| 09:56:11 | 19 | THE COURT:  Can you leave it up there? |
| 09:56:12 | 20 | THE WITNESS:  WPES was the name of Banestral.  About a |
| 09:56:15 | 21 | couple of months ago, or I believe about a year ago we decided |
| 09:56:17 | 22 | to change the name to Banestral Group, so WPES is essentially |
| 09:56:24 | 23 | Banestral, it's just a name change. |
| 09:56:27 | 24 | Mega Vacations is a d/b/a of Banestral.  So that |
| 09:56:31 | 25 | explains the three businesses.  It is not three different |

Vargas - Direct

| | | |
|---|---|---|
| 09:56:32 | 1 | businesses; it is really just one, but because we went by WPES |
| 09:56:36 | 2 | we decided to leave that name.  Banestral is the company that |
| 09:56:40 | 3 | owns Mega Vacations and we decided to put Mega Vacations on |
| 09:56:46 | 4 | there. |
| 09:56:47 | 5 | Since there is obviously a different company in that |
| 09:56:48 | 6 | same vicinity, in that office, we decided to put United |
| 09:56:52 | 7 | Solutions to not make different business cards and that is the |
| 09:56:56 | 8 | reason why all four businesses are on that card. |
| 09:57:00 | 9 | BY MR. ROGOW: |
| 09:57:00 | 10 | Q.  This also says you are the CEO of United Solutions? |
| 09:57:05 | 11 | A.  Right. |
| | 12 | Q.  Are you? |
| 09:57:05 | 13 | A.  I signed -- I am president of United Solutions. |
| 09:57:08 | 14 | Q.  Pardon me? |
| 09:57:09 | 15 | A.  I am CEO of United Solutions, correct. |
| 09:57:13 | 16 | Q.  Is there an affiliation between United Solutions and the |
| 09:57:16 | 17 | Banestral Group other than the fact that you show as a CEO of |
| 09:57:20 | 18 | both? |
| 09:57:21 | 19 | A.  There is not. |
| 09:57:22 | 20 | Q.  Are the employees of Banestral Group employees of United |
| 09:57:27 | 21 | Solutions? |
| 09:57:28 | 22 | A.  They are not. |
| 09:57:29 | 23 | Q.  Do you do -- what do you do for United Solutions? |
| 09:57:34 | 24 | A.  Well, I do the payroll.  Since we have -- we share the same |
| 09:57:38 | 25 | accountant for both Banestral and United Solutions, my |

Vargas - Direct

| | | |
|---|---|---|
| 09:57:42 | 1 | accountant set me up with a Quick Books access so I can run the |
| 09:57:47 | 2 | payroll. |
| 09:57:48 | 3 | THE COURT:  Did you say you share the same accountant |
| 09:57:50 | 4 | or the same accounts? |
| 09:57:52 | 5 | THE WITNESS:  No, accountant, I'm sorry. |
| 09:57:53 | 6 | THE COURT:  You have different bank accounts? |
| 09:57:55 | 7 | THE WITNESS:  Different bank accounts, correct. |
| 09:57:57 | 8 | So we share the same accountant and when he set us up |
| 09:58:00 | 9 | with the payroll system, he set up two different payroll |
| 09:58:04 | 10 | systems, one for Banestral and one for United Solutions.  But |
| 09:58:08 | 11 | since United Solutions has about only three or four employees, I |
| 09:58:11 | 12 | just decided to do the payroll because, since I do the payroll |
| 09:58:16 | 13 | for Banestral Group and I know the system already and he |
| 09:58:19 | 14 | explained it to me, he trained me on the system, it takes me |
| 09:58:22 | 15 | about two minutes to input four different commission checks into |
| 09:58:25 | 16 | the system and I just print them out and sign them.  That is |
| 09:58:29 | 17 | pretty much all I do with United Solutions. |
| 09:58:31 | 18 | Q.  And who does operate United Solutions? |
| 09:58:34 | 19 | A.  Constanza Gomez. |
| 09:58:35 | 20 | Q.  Who is Constanza Gomez in terms of her relation to you? |
| 09:58:41 | 21 | A.  She is my mother. |
| 09:58:41 | 22 | Q.  Do you do anything else to help Constanza Gomez and United |
| 09:58:47 | 23 | Solutions? |
| 09:58:48 | 24 | A.  No. |
| 09:58:48 | 25 | Q.  Is there ever an occasion when you would talk to a vendor or |

September 4, 2014

Vargas - Direct

36

| | | |
|---|---|---|
| 09:58:53 | 1 | someone on behalf of United Solutions, on behalf of your mother? |
| 09:58:56 | 2 | A.   Yes.   Since both my mother and my father, their first |
| 09:59:01 | 3 | language is Spanish, sometimes when she is doing business with |
| 09:59:05 | 4 | other companies, they usually only speak English so I kind of |
| 09:59:09 | 5 | translate for her and sometimes I explain to her what it is that |
| 09:59:13 | 6 | is going on, but that is pretty much my limits to that. |
| 09:59:19 | 7 | Q.   I'm sorry.   Pretty much? |
| 09:59:20 | 8 | A.   That is pretty much the limitation that I have there.   I |
| 09:59:23 | 9 | just translate the information.   When she is talking to -- to a |
| 09:59:28 | 10 | new company that she wants to do business with and when they sit |
| 09:59:32 | 11 | down and speak with my mom, sometimes they get lost in |
| 09:59:35 | 12 | translation, so I am just kind of there to kind of mediate both |
| 09:59:39 | 13 | sides. |
| 09:59:39 | 14 | Q.   Do you make any decisions for United Solutions? |
| 09:59:42 | 15 | A.   No, I do not. |
| 09:59:43 | 16 | Q.   Do you have any say over the telemarketing work that United |
| 09:59:47 | 17 | Solutions does? |
| 09:59:48 | 18 | A.   I do not. |
| 09:59:49 | 19 | Q.   Do you have any authority to hire or fire people for your |
| 09:59:54 | 20 | United Solutions? |
| 09:59:56 | 21 | A.   I do not. |
| 09:59:56 | 22 | Q.   Has there ever been an occasion when you have -- when you |
| 10:00:02 | 23 | have told someone at United Solutions that they are fired? |
| 10:00:06 | 24 | A.   There is.   There has been with the authorization of my mom, |
| 10:00:12 | 25 | Constanza Gomez. |

Vargas - Direct

37

| | | |
|---|---|---|
| 10:00:12 | 1 | Q.  Why would that come about?  How would that happen that you |
| 10:00:16 | 2 | would be the one? |
| 10:00:18 | 3 | A.  The only employee that I have ever terminated, she speaks |
| 10:00:21 | 4 | primarily English and she was in United Solutions for the rare |
| 10:00:27 | 5 | cases that we did have an English client, so I was the one that |
| 10:00:31 | 6 | terminated her because obviously it would be a little more |
| 10:00:34 | 7 | difficult for my mom to do it in English. |
| 10:00:37 | 8 | Q.  Do you have any signing authority for checks for United |
| 10:00:39 | 9 | Solutions? |
| 10:00:40 | 10 | A.  I do. |
| 10:00:40 | 11 | Q.  And why is that? |
| 10:00:46 | 12 | A.  I became on the account because when my mom first started |
| 10:00:50 | 13 | the account she had bad credit, so she decided -- we decided to |
| 10:00:55 | 14 | put my name on the account because -- in case we were to ever |
| 10:00:59 | 15 | run credit on doing a new business deal, then obviously my |
| 10:01:04 | 16 | credit would be more favorable than hers. |
| 10:01:07 | 17 | Q.  How old are you? |
| 10:01:08 | 18 | A.  I am 23 years old. |
| 10:01:09 | 19 | Q.  Are you willing to take your name off of the signing |
| 10:01:13 | 20 | authority account for United Solutions? |
| 10:01:15 | 21 | A.  I am. |
| 10:01:18 | 22 | Q.  Now, let me show you another exhibit that the Government has |
| 10:01:21 | 23 | put up. |
| 10:01:23 | 24 | A.  Okay. |
| 10:01:38 | 25 | Q.  This is Exhibit 41.  Have you seen this document before? |

Vargas - Direct

38

| | | |
|---|---|---|
| 10:01:44 | 1 | A.  Until it was presented to me, I have never seen that |
| 10:01:47 | 2 | document before. |
| 10:01:53 | 3 | Q.  When did you see it? |
| 10:01:55 | 4 | A.  I first saw it yesterday. |
| 10:01:57 | 5 | Q.  And did I show it to you? |
| 10:01:59 | 6 | A.  Yes, you did. |
| 10:02:02 | 7 | Q.  All right.  Did you take a look at the right side of that |
| 10:02:07 | 8 | document and see the departments listed? |
| 10:02:12 | 9 | A.  Yes, I did. |
| 10:02:12 | 10 | Q.  And the word salud in Spanish means what? |
| 10:02:16 | 11 | A.  Health. |
| 10:02:17 | 12 | Q.  And the employees who have the word salud after their name, |
| 10:02:25 | 13 | by whom are those employees employed? |
| 10:02:27 | 14 | A.  They are by United Solutions, but since United Solutions and |
| 10:02:31 | 15 | our office, such a long word, we just go by salud.  It is just |
| 10:02:35 | 16 | an easier way of saying it. |
| 10:02:36 | 17 | Q.  Did you learn yesterday what this document was? |
| 10:02:38 | 18 | A.  I did.  To us, from my understanding, somebody came in to do |
| 10:02:45 | 19 | workers comp, to sell us workers comp, and this is the quote |
| 10:02:50 | 20 | that that person pulled up and basically, for whatever reason, I |
| 10:02:53 | 21 | have no idea why, they put all the employees and their |
| 10:02:58 | 22 | departments in one list, but this is basically a quote that the |
| 10:03:02 | 23 | workers comp person was trying to sell us, but we never |
| 10:03:04 | 24 | purchased it. |
| 10:03:05 | 25 | Q.  And was this list authorized by you to show all of these |

Vargas - Direct

| | | |
|---|---|---|
| 10:03:09 | 1 | employees or anyone, to your knowledge, in Banestral?  Was this |
| 10:03:14 | 2 | list authorized to show all of these employees in one list? |
| 10:03:18 | 3 | A.  To my knowledge, no. |
| 10:03:25 | 4 | Q.  Let me also show you Government Exhibit 42.  Have you seen |
| 10:03:40 | 5 | that list before? |
| 10:03:40 | 6 | A.  I have. |
| 10:03:41 | 7 | Q.  And what is that list? |
| 10:03:44 | 8 | A.  I believe around -- I don't recall, about a year ago we had |
| 10:03:49 | 9 | a secretary.  We decided to make a list of the employees that |
| 10:03:54 | 10 | fall within the office and as you can see, it separates it |
| 10:03:58 | 11 | between Mega Vacations, which is Banestral, that's just a d/b/a, |
| 10:04:02 | 12 | and United Solutions, so you can see the separation between two |
| 10:04:04 | 13 | companies.  The reason why she made this list was to have |
| 10:04:07 | 14 | everybody's name and address and eventually phone number on |
| 10:04:10 | 15 | record in case of an emergency and she did it on one list |
| 10:04:14 | 16 | instead of doing it on two, but there is a clear separation |
| 10:04:17 | 17 | between both companies. |
| 10:04:17 | 18 | Q.  And you say this was a receptionist who made up this list? |
| 10:04:22 | 19 | A.  Right, exactly. |
| 10:04:23 | 20 | Q.  Explain to us what the physical arrangement is on the 9th |
| 10:04:26 | 21 | Floor at 28 West Flagler in relation to Banestral and United |
| 10:04:33 | 22 | Solutions. |
| 10:04:34 | 23 | A.  Okay.  Well, as Ms. Esparza pointed out, when you enter the |
| 10:04:38 | 24 | office -- well, pretty much to start off, the 9th Floor consists |
| 10:04:43 | 25 | of four offices.  When we first started Banestral Group we |

Vargas - Direct

40

| | | |
|---|---|---|
| 10:04:48 | 1 | rented out the first office, and as we expanded, we rented out |
| 10:04:52 | 2 | the two adjacent offices next to us and we just kind of opened |
| 10:04:56 | 3 | the doors and tore down a wall in between so we can have access |
| 10:05:01 | 4 | to all three. |
| 10:05:02 | 5 | Basically, the way that it is laid out is as soon as |
| 10:05:05 | 6 | you walk into the first office you have four offices.  That |
| 10:05:08 | 7 | would be our -- the administrative offices, which would be Jaime |
| 10:05:11 | 8 | Vargas, Evon González, which is my uncle, Constanza Gomez, which |
| 10:05:16 | 9 | is my mom, and my office. |
| 10:05:18 | 10 | THE COURT:  Who is Jaime? |
| 10:05:21 | 11 | THE WITNESS:  Jaime Vargas is my dad.  I'm sorry. |
| 10:05:23 | 12 | THE WITNESS:  Okay. |
| 10:05:23 | 13 | THE WITNESS:  Once you go to the next office -- |
| 10:05:25 | 14 | THE COURT:  Before you get into your office, if you get |
| 10:05:27 | 15 | off the elevator on the 9th Floor and you look towards wherever |
| 10:05:31 | 16 | the entrance is, are there any signs on the wall or the door |
| 10:05:35 | 17 | that say what company is inside 900? |
| 10:05:38 | 18 | THE WITNESS:  No.  There are no signs on the door.  We |
| 10:05:41 | 19 | were actually having a bit of an issue with that because the |
| 10:05:45 | 20 | owner of the building has to put up the sign and for whatever |
| 10:05:47 | 21 | reason he did not.  He did not put up the sign and we are still |
| 10:05:52 | 22 | trying to figure out why. |
| 10:05:53 | 23 | THE COURT:  When you walk in, is there a reception |
| 10:05:56 | 24 | desk? |
| 10:05:56 | 25 | THE WITNESS:  When you get out of the elevator you will |

Vargas - Direct

41

| 10:05:59 | 1 | see four doors and three of those doors belong to one whole |
| 10:06:03 | 2 | office.  So you would walk down the end of the wall, you would |
| 10:06:06 | 3 | make a right to the first door on your right.  You would open |
| 10:06:08 | 4 | the door and there is a secretary or receptionist desk and she |
| 10:06:12 | 5 | would open the door for you. |
| 10:06:13 | 6 | THE COURT:  Are there any signs there that say what |
| 10:06:16 | 7 | businesses might be in that office suite? |
| 10:06:19 | 8 | THE WITNESS:  I don't believe so, no.  There is none. |
| 10:06:21 | 9 | THE COURT:  Okay. |
| 10:06:23 | 10 | BY MR. ROGOW: |
| 10:06:23 | 11 | Q.  Are there any signs downstairs in the lobby of the building |
| 10:06:26 | 12 | that reflect the offices? |
| 10:06:28 | 13 | A.  No, there is not. |
| 10:06:29 | 14 | Q.  Go ahead.  So explain to us what the offices are. |
| 10:06:31 | 15 | A.  So the first office, like I explained, it is the four |
| 10:06:37 | 16 | administrative offices and as soon as you go to the next office |
| 10:06:41 | 17 | which is connected by a door, you have a small sales |
| 10:06:45 | 18 | department/customer service department of United Solutions.  It |
| 10:06:48 | 19 | is about seven to eight seats and at the moment we only have |
| 10:06:53 | 20 | four to five employees. |
| 10:06:54 | 21 | It is completely separated because as soon as you go to |
| 10:06:57 | 22 | the next office, which is another hallway and another door, that |
| 10:07:02 | 23 | is all Mega Vacations which is separated by different rooms, by |
| 10:07:09 | 24 | drywall, and it is the sales department, my verifications |
| 10:07:12 | 25 | department, my reservations department and my customer service |

Vargas - Direct

| 10:07:16 | 1 | department. |
| 10:07:16 | 2 | Q.  When your say "your customer service department," et cetera, |
| 10:07:20 | 3 | that is Banestral's customer service department? |
| 10:07:23 | 4 | A.  Exactly, that's correct. |
| 10:07:25 | 5 | Q.  Has Banestral paid the rent for -- or I think there is a |
| 10:07:31 | 6 | check from World Express.  Have they paid the rent and that rent |
| 10:07:36 | 7 | includes the space for United Solutions, correct? |
| 10:07:38 | 8 | A.  That's correct. |
| 10:07:40 | 9 | Q.  So why doesn't United Solutions pay the rent separately? |
| 10:07:46 | 10 | A.  I believe they don't pay rent separately because our family |
| 10:07:49 | 11 | is pretty close.  Even though my mom and dad are separated, we |
| 10:07:53 | 12 | still remain pretty close as a family.  They have been together |
| 10:07:56 | 13 | since they were 18 years old so -- they came from Colombia |
| 10:08:00 | 14 | together.  So I believe as a favor, as a good gesture -- and |
| 10:08:04 | 15 | obviously my dad still loves our family -- when my mom needed |
| 10:08:08 | 16 | that space, when she was going through a divorce, he obviously |
| 10:08:15 | 17 | let her, obviously gave her the space. |
| 10:08:19 | 18 | MR. ROGOW:  I don't have anything further, Your Honor. |
| 10:08:20 | 19 | THE COURT:  What company does your dad work for? |
| 10:08:23 | 20 | THE WITNESS:  Banestral Group. |
| 10:08:25 | 21 | THE COURT:  What is his position there? |
| 10:08:26 | 22 | THE WITNESS:  He is the director of marketing there. |
| 10:08:29 | 23 | THE COURT:  Are you his boss or he is your boss? |
| 10:08:31 | 24 | THE WITNESS:  Well, technically, on paper I am his |
| 10:08:33 | 25 | boss, but in the office it is kind of equal parts. |

Vargas - Cross

43

| | | |
|---|---|---|
| 10:08:37 | 1 | THE COURT:  Okay.  All right.  Mr. Grumer, do you have |
| 10:08:43 | 2 | any questions? |
| 10:08:44 | 3 | MR. GRUMER:  No, sir, thank you. |
| 10:08:45 | 4 | THE COURT:  All right.  Mr. Brown or Mr. Ivens, any |
| 10:08:47 | 5 | questions? |
| 10:08:48 | 6 | MR. BROWN:  Yes, Your Honor, just a couple of |
| 10:08:50 | 7 | questions. |
| | 8 | CROSS-EXAMINATION |
| 10:08:50 | 9 | [Beginning at 10:08 a.m., 9/4/14.] |
| 10:08:51 | 10 | BY MR. BROWN: |
| 10:08:51 | 11 | Q.  Mr. Vargas, you are the sole shareholder of United Solutions |
| 10:09:00 | 12 | Group, correct? |
| 10:09:00 | 13 | A.  That is correct. |
| 10:09:03 | 14 | Q.  You were describing the offices there at West Flagler, the |
| 10:09:08 | 15 | 28 West Flagler address.  There's only one receptionist on the |
| 10:09:14 | 16 | premises, correct? |
| 10:09:14 | 17 | A.  At the moment we don't have a receptionist. |
| 10:09:18 | 18 | Q.  When you say "we don't have a receptionist" -- |
| 10:09:19 | 19 | A.  Banestral Group does not have a receptionist. |
| 10:09:21 | 20 | Q.  Who is the first point of contact, then, when someone comes |
| 10:09:24 | 21 | to speak with Banestral Group? |
| 10:09:25 | 22 | A.  That would be Carolina.  She works for our social media |
| 10:09:33 | 23 | department. |
| 10:09:34 | 24 | Q.  So you have signed at least one contract on behalf of United |
| 10:09:36 | 25 | Solutions, correct? |

Vargas - Cross

44

| | | |
|---|---|---|
| 10:09:37 | 1 | A.  To my recollection, I don't know. |
| 10:09:42 | 2 | Q.  I couldn't hear you. |
| 10:09:43 | 3 | A.  To my recollection, I can't recall. |
| 10:09:44 | 4 | Q.  You have never signed any contracts on behalf of United |
| 10:09:46 | 5 | Solutions? |
| 10:09:47 | 6 | A.  I can't recall if I have. |
| 10:09:47 | 7 | Q.  You have terminated at least one employee on behalf of |
| 10:09:50 | 8 | United Solutions? |
| 10:09:50 | 9 | A.  That is correct. |
| 10:09:51 | 10 | Q.  And what was the name of that employee? |
| 10:09:55 | 11 | A.  Yasnary Negron. |
| 10:10:01 | 12 | THE COURT:  How do you spell that? |
| 10:10:01 | 13 | THE WITNESS:  Y-a-s-n-a-r-y, N-e-g-r-o-n. |
| 10:10:03 | 14 | BY MR. BROWN: |
| 10:10:04 | 15 | Q.  Yasnary Negro only speaks English? |
| 10:10:07 | 16 | A.  She speaks Spanish as well, but her primary language is |
| 10:10:10 | 17 | English.  She has hard time speaking Spanish. |
| 10:10:13 | 18 | Q.  WPES or Mega Vacations has done marketing in -- marketing |
| 10:10:18 | 19 | its vacation travel packages in Colombia, correct? |
| 10:10:21 | 20 | A.  That's correct. |
| 10:10:21 | 21 | Q.  They are not presently marketing in Colombia, correct? |
| 10:10:24 | 22 | A.  We are presently marketing in Colombia. |
| 10:10:26 | 23 | Q.  Isn't it true that your ability -- WPES' ability to market |
| 10:10:31 | 24 | in Colombia was suspended? |
| 10:10:33 | 25 | A.  No, it is not true. |

Vargas - Cross

45

| | | |
|---|---|---|
| 10:10:35 | 1 | Q.  Isn't it also true that WPES, their registration with the |
| 10:10:41 | 2 | National Tourism Registry was suspended in Colombia? |
| 10:10:45 | 3 | A.  That is not true. |
| 10:10:46 | 4 | MR. BROWN:  No further questions, Your Honor. |
| 10:10:47 | 5 | THE COURT:  I know that when I read your application |
| 10:10:50 | 6 | there was something relating to a suspension.  Did you get some |
| 10:10:54 | 7 | notice that you might be suspended? |
| 10:10:56 | 8 | THE WITNESS:  I could elaborate on that.  Pretty much |
| 10:11:00 | 9 | what happened is in Colombia the laws are a little bit different |
| 10:11:04 | 10 | and we had a disclaimer on our packages.  The way our packages |
| 10:11:08 | 11 | work, some of them, basically states that everything is included |
| 10:11:11 | 12 | and what we mean by that is the stay, the food, the drinks, and |
| 10:11:16 | 13 | on the end of the commercial in the print it would say "air fare |
| 10:11:21 | 14 | is not included." |
| 10:11:21 | 15 | Even when the client would call, the sales rep would |
| 10:11:24 | 16 | tell them that air fare is not included and we have a |
| 10:11:27 | 17 | verifications department that is completely separated from the |
| 10:11:31 | 18 | sales team that would verify that the air fare was not included. |
| 10:11:34 | 19 | But the agency there stated that we would have to put it in |
| 10:11:36 | 20 | bigger letters throughout the commercial.  This is a 30-minute |
| 10:11:41 | 21 | commercial spot. |
| 10:11:41 | 22 | Basically, what happened was for one week we had to |
| 10:11:43 | 23 | edit that commercial, so we couldn't come out on that channel |
| 10:11:47 | 24 | for one week because they said until you edit the commercial and |
| 10:11:50 | 25 | put the disclaimer on it in bigger letters, we cannot release it |

Gomez - Direct

46

| | | |
|---|---|---|
| 10:11:54 | 1 | until it is cleared up, but we still had advertising and |
| 10:11:58 | 2 | different commercial spots in different TV stations that would |
| 10:12:02 | 3 | allow us to do so. |
| 10:12:03 | 4 | So that is why when they asked me if we were ever |
| 10:12:07 | 5 | suspended, that is not true because we continued to work.  We |
| 10:12:10 | 6 | still have a National Tourism number that is still active and |
| 10:12:14 | 7 | that was the only thing -- they said that if we didn't put the |
| 10:12:18 | 8 | disclaimer then there would be a penalty. |
| 10:12:20 | 9 | THE COURT:  Do you have any other questions based upon |
| 10:12:21 | 10 | that answer, Mr. Brown? |
| 10:12:22 | 11 | MR. BROWN:  No, Your Honor. |
| 10:12:23 | 12 | THE COURT:  All right.  Mr. Rogow, anything else? |
| 10:12:25 | 13 | MR. ROGOW:  No redirect.  I call Constanza Gomez |
| 10:12:28 | 14 | Vargas, please.  You can step down. |
| 10:12:35 | 15 | THE COURT:  Does she need an interpreter? |
| 10:12:37 | 16 | MR. ROGOW:  No. |
| | 17 | CONSTANZA GOMEZ, DEFENDANTS' WITNESS, SWORN. |
| 10:13:04 | 18 | THE WITNESS:  Constanza Gomez, my last name is |
| 10:13:08 | 19 | G-o-m-e-z. |
| | 20 | DIRECT EXAMINATION |
| 10:13:11 | 21 | [Beginning at 10:13 a.m., 9/4/14.] |
| 10:13:11 | 22 | BY MR. ROGOW: |
| 10:13:11 | 23 | Q.  Ms. Gomez, before you were divorced your name was Constanza |
| 10:13:15 | 24 | Gomez-Vargas; is that correct? |
| 10:13:16 | 25 | A.  Before I divorced I was Constanza Vargas.  Then I came back |

Gomez - Direct

47

| | | |
|---|---|---|
| 10:13:21 | 1 | to Constanza Gomez, but because everybody knows me as Vargas, |
| 10:13:24 | 2 | now we became Constanza Gomez-Vargas. |
| 10:13:27 | 3 | Q.  And by whom are you employed? |
| 10:13:30 | 4 | A.  I am employed by United Solutions. |
| 10:13:33 | 5 | Q.  How long have you been employed by United Solutions? |
| 10:13:37 | 6 | A.  Since 2009.  I, myself, opened the corporation. |
| 10:13:43 | 7 | Q.  Is it your intention that United Solutions should continue |
| 10:13:48 | 8 | doing the business that it has been doing? |
| 10:13:51 | 9 | A.  No, it is not. |
| 10:13:52 | 10 | Q.  And why are you no longer going to do that business? |
| 10:13:55 | 11 | A.  Because this is the first time that something happened to me |
| 10:13:58 | 12 | like this.  I don't want problems.  I didn't know that this |
| 10:14:04 | 13 | going to cause these problems.  As a mother, I put my child in a |
| 10:14:09 | 14 | company that I thought it would be great for him and I never |
| 10:14:14 | 15 | expect to have all these problems, bring my son in this.  I |
| 10:14:20 | 16 | don't have -- I never had a problem. |
| 10:14:22 | 17 | The only time I went to court for it was in my divorce. |
| 10:14:26 | 18 | That's it so -- sorry.  So I don't want to do business like |
| 10:14:36 | 19 | that. |
| 10:14:36 | 20 | Q.  And is Banestral a separate company from United Solutions? |
| 10:14:41 | 21 | A.  Yes, it is.  That idea was my brother-in-law, my ex-husband |
| 10:14:47 | 22 | and my son and I never worked with them or for them and we have |
| 10:14:53 | 23 | separate companies. |
| 10:14:55 | 24 | Q.  Why is your son, Steven, the sole shareholder of United |
| 10:15:01 | 25 | Solutions and the person who signs checks for United Solutions? |

Gomez - Direct

48

| | | |
|---|---|---|
| 10:15:06 | 1 | A.   Okay.   As I told you, I went through the divorce so I opened |
| 10:15:12 | 2 | this company, but because I went through a divorce, we went |
| 10:15:19 | 3 | bankrupt.   I am in foreclosure right now.   I am losing my house |
| 10:15:23 | 4 | so I have no credit. |
| 10:15:24 | 5 | So when you want to sign a contract with a company, |
| 10:15:27 | 6 | they always check your credit so I asked Steven, do you have |
| 10:15:32 | 7 | good credit?   Would you?   And he said, yeah, mom.   You never |
| 10:15:37 | 8 | expect that things like this happen.   So he told me as my boy, |
| 10:15:43 | 9 | of course, mom, I can help you and he is in this mess because of |
| 10:15:48 | 10 | me, because he wants to help me, because this is my only income |
| 10:15:52 | 11 | and my only source to survive.   That's it. |
| 10:15:56 | 12 | Q.   Does Steven -- or did Steven make decisions for United |
| 10:16:01 | 13 | Solutions? |
| 10:16:03 | 14 | A.   No.   Steven speak more English so I -- I am the only one who |
| 10:16:10 | 15 | does the training, who does everything for United Solutions |
| 10:16:12 | 16 | because he barely talks Spanish so he does everything for |
| 10:16:18 | 17 | Banestral.   The only thing he does for me is sometimes when I |
| 10:16:23 | 18 | used to work with American people that I do business with, he is |
| 10:16:28 | 19 | faster explaining what I want.   I don't want somebody on the |
| 10:16:33 | 20 | phone waiting for my English to come out to do business, so I |
| 10:16:37 | 21 | ask Steven, could you tell him this and that, explain this to |
| 10:16:41 | 22 | him?   He explain to me what are they saying, so that is why he |
| 10:16:45 | 23 | is helping me with that. |
| 10:16:47 | 24 | The other thing is because he does the payroll for |
| 10:16:51 | 25 | Jaime so I asked him can you do four checks for my company and |

September 4, 2014

Gomez - Cross

49

| 10:16:56 | 1 | that's -- that's the only thing he does for me. |

10:16:56  1  that's -- that's the only thing he does for me.
10:17:00  2  Q.  Do you do anything -- as the person who runs United
10:17:04  3  Solutions, do you do anything for Banestral?
10:17:07  4  A.  No, I don't.  I never done anything for Banestral.
10:17:12  5  Q.  The fact that the Banestral offices are in the same offices
10:17:17  6  of United Solutions, have you kept the two operations separate
10:17:23  7  in your mind?
10:17:24  8  A.  Yes, because remember one thing.  We are divorced and my
10:17:30  9  ex-husband is married so they have their own business, I have my
10:17:34  10  own business, nothing to do in common because I am a stranger
10:17:39  11  now.  So I have my own business with my people, with my things
10:17:44  12  separate.  The only thing, we share office as a favor that he
10:17:47  13  does for me because after 30 years that we have known each
10:17:51  14  other, we love each other so he helps me with that.
10:17:55  15          MR. ROGOW:  Nothing further, Your Honor.
10:17:57  16          THE COURT:  All right.  Mr. Grumer, do you have any
10:18:04  17  questions?
10:18:04  18          MR. GRUMER:  If I may have one moment, Your Honor.  No
10:18:17  19  questions at this time, Your Honor.
10:18:20  20          THE COURT:  All right.  Mr. Ivens or Mr. Brown?
          21                  CROSS-EXAMINATION
10:18:27  22  [Beginning at 10:18 a.m., 9/4/14.]
10:18:28  23  BY MR. IVENS:
10:18:28  24  Q.  Ms. Gomez, you frequently send emails to Gary Kieper, don't
10:18:42  25  you?

September 4, 2014

Gomez - Cross

50

| | | |
|---|---|---|
| 10:18:42 | 1 | A.   Frequently, no, but we sent emails, yes. |
| 10:18:45 | 2 | Q.   Did you ask him to keep the consumers who had bought the |
| 10:18:51 | 3 | medical discount card from talking to an employee that he has |
| 10:18:55 | 4 | named Graciela? |
| 10:18:57 | 5 | A.   I asked him sometimes because Graciela has not a good |
| 10:19:03 | 6 | attitude with the customers and she was very mean, so the |
| 10:19:06 | 7 | customers call us because we sell the plan for him.  They ask us |
| 10:19:12 | 8 | why she speaking so bad to us when we ask for the service and I |
| 10:19:18 | 9 | asked Mr. Kieper to see if we can talk to the customers because |
| 10:19:24 | 10 | she has a bad attitude, not because she does a bad job or she |
| 10:19:29 | 11 | does something that is not good, but she has a bad attitude. |
| 10:19:32 | 12 | She has no patience with the customers as we can see. |
| 10:19:37 | 13 | Q.   So in other words, you wanted Mr. Kieper to keep customers |
| 10:19:42 | 14 | away from Graciela because the refund rate was going up; isn't |
| 10:19:47 | 15 | that true? |
| 10:19:47 | 16 | A.   Yes.  We try to be the medium people with our people, but |
| 10:19:51 | 17 | our people only speak Spanish so because I speak Spanish, I try |
| 10:19:55 | 18 | to -- if they need a service from Mr. Kieper, as a doctor list |
| 10:20:00 | 19 | or anything, I try to be the middleman -- it would be middle |
| 10:20:06 | 20 | woman between those.  Like that I can spend to Mr. Kieper |
| 10:20:11 | 21 | whatever they want and so like that they don't treat the people |
| 10:20:17 | 22 | bad. |
| 10:20:18 | 23 |             MR. IVENS:  I have no further questions, Your Honor. |
| 10:20:19 | 24 |             THE COURT:  Okay. |
| 10:20:22 | 25 |             MR. ROGOW:  No redirect, Your Honor. |

Aiken - Direct

51

| | | |
|---|---|---|
| 10:20:23 | 1 | THE COURT:  All right.  Any other witnesses? |
| 10:20:24 | 2 | MR. ROGOW:  No, sir. |
| 10:20:29 | 3 | THE COURT:  Okay.  Let's take up the issue -- any |
| 10:20:31 | 4 | evidence you want to put on concerning Mr. Grumer's issue |
| 10:20:35 | 5 | relating to the -- allowing Partners in Health to continue in |
| 10:20:46 | 6 | the manner that he suggested? |
| 10:20:49 | 7 | MR. IVENS:  Yes, Your Honor.  We would call John Aiken. |
| 10:20:53 | 8 | THE COURT:  Okay. |
| | 9 | JOHN AIKEN PLAINTIFF'S WITNESS, SWORN. |
| 10:21:14 | 10 | THE WITNESS:  John Aiken, A-i-k-e-n. |
| | 11 | DIRECT EXAMINATION |
| 10:21:18 | 12 | [Beginning at 10:21 a.m., 9/4/14.] |
| 10:21:23 | 13 | BY MR. IVENS: |
| 10:21:23 | 14 | Q.  Good morning, Mr. Aiken.  How are you employed? |
| 10:21:25 | 15 | A.  I am employed as an investigator with the U.S. Federal Trade |
| 10:21:29 | 16 | Commission. |
| 10:21:29 | 17 | Q.  And what do you do as an investigator for the Federal Trade |
| 10:21:32 | 18 | Commission? |
| 10:21:32 | 19 | A.  As an investigator, I investigate deceptive and unfair trade |
| 10:21:36 | 20 | practices.  I review consumer complaints.  I assist in immediate |
| 10:21:40 | 21 | accesses in reviewing digital and electronic evidence. |
| 10:21:43 | 22 | Q.  And we have heard what an immediate access is from |
| 10:21:46 | 23 | Ms. Esparza.  Did you participate in the immediate access at |
| 10:21:49 | 24 | Partners in Health Care premises? |
| 10:21:51 | 25 | A.  Yes, I did. |

Aiken - Direct

52

| 10:21:52 | 1 | Q.  What did you see when you went there? |

10:21:52   1   Q.  What did you see when you went there?

10:21:54   2   A.  Upon entering the facility in Wisconsin, I saw an office

10:22:00   3   that could accommodate about 30 or so employees.  About 20 or so

10:22:04   4   employees looked directly involved in sales, so it was sort of a

10:22:09   5   call center off to the right-hand area.

10:22:11   6           Off to the left there appeared to be about seven or

10:22:13   7   eight workspaces that could accommodate the administrative

10:22:18   8   staff.  One of those suites was Mr. Kieper's office, one was

10:22:22   9   Mr. Francik's workspace and also another area for other

10:22:26  10   administrative staff.

10:22:27  11           THE COURT:  What was the second name?

10:22:29  12           THE WITNESS:  Christopher Francik.

10:22:31  13           THE COURT:  How do you spell that?

10:22:32  14           THE WITNESS:  F-r-a-n-z-i-k, I believe, no, c-i-k.  I'm

10:22:38  15   sorry.

10:22:42  16   BY MR. IVENS:

10:22:42  17   Q.  When you were at the immediate access, describe what you

10:22:45  18   did.

10:22:46  19   A.  Once the law enforcement and the receiver went in and sort

10:22:53  20   of took control of the situation, they escorted -- they took a

10:22:58  21   lot of the -- well, once they came on and escorted the employees

10:23:02  22   out, most of the employees out, I began reviewing the documents,

10:23:07  23   mapping out the area and taking pictures of the sites.  I

10:23:12  24   reviewed digital and electronic evidence and preserved it.

10:23:16  25           MR. IVENS:  Your Honor, may I publish Plaintiff's

Aiken - Direct

53

| | | |
|---|---|---|
| 10:23:18 | 1 | Exhibit 33? |
| 10:23:22 | 2 | THE COURT:  Is there any objection to it coming in? |
| 10:23:27 | 3 | MR. GRUMER:  We haven't seen it yet. |
| 10:23:37 | 4 | MR. ROGOW:  Your Honor, this does not pertain to my |
| 10:23:39 | 5 | client so I have no position. |
| 10:23:44 | 6 | THE COURT:  Okay.  And are the exhibits numbers that |
| 10:23:49 | 7 | you are using today the same exhibits as they were -- as |
| 10:23:55 | 8 | attachments to the original requests? |
| 10:23:58 | 9 | MR. IVENS:  Yes, Your Honor. |
| 10:24:02 | 10 | THE COURT:  Okay.  Any objection, Mr. Grumer? |
| 10:24:09 | 11 | MR. GRUMER:  As to its authenticity, no objection. |
| 10:24:14 | 12 | THE COURT:  All right.  Exhibit 33 will be received |
| 10:24:16 | 13 | into evidence for this hearing. |
| 10:24:18 | 14 | [Plaintiff Exhibit 33 received in evidence at 10:24 a.m.] |
| 10:24:19 | 15 | BY MR. IVENS: |
| 10:24:19 | 16 | Q.  Do you recognize Exhibit 33, Mr. Aiken? |
| 10:24:23 | 17 | A.  Yes, I do. |
| 10:24:23 | 18 | Q.  What is it? |
| 10:24:24 | 19 | A.  This is an email from authorize.net, a processor for the |
| 10:24:28 | 20 | defendants' Partners in Health Care, to Kasina Reganiter, the |
| 10:24:32 | 21 | office manager, dated Thursday, April 24, 2014.  The email |
| 10:24:37 | 22 | essentially says that they are placing the merchant processing |
| 10:24:41 | 23 | account on hold, funding hold, due to excessive chargebacks. |
| 10:24:45 | 24 | Q.  And do you know who Kasina Reganiter is? |
| 10:24:48 | 25 | A.  Yes.  She was the office manager for Partners in Health |

Aiken - Direct

54

| Time | | |
|---|---|---|
| 10:24:52 | 1 | Care, I believe. |
| 10:25:00 | 2 | MR. IVENS:  I would like to admit Exhibit 35. |
| 10:25:21 | 3 | THE COURT:  Any objection? |
| 10:25:43 | 4 | MR. GRUMER:  One more moment, Your Honor. |
| 10:25:45 | 5 | THE COURT:  Okay. |
| 10:26:32 | 6 | MR. GRUMER:  My client can't identify this so we cannot |
| 10:26:37 | 7 | stipulate to its authenticity. |
| 10:26:38 | 8 | THE COURT:  Where did this come from? |
| 10:26:40 | 9 | BY MR. IVENS: |
| 10:26:40 | 10 | Q.  Do you recognize the document, Mr. Aiken? |
| 10:26:42 | 11 | A.  Yes, I do. |
| 10:26:43 | 12 | Q.  What is it? |
| 10:26:44 | 13 | A.  This appears to be part of the script package that was |
| 10:26:47 | 14 | handed out to new employees engaged in sales.  I found it in |
| 10:26:52 | 15 | multiple cubicles on site in Wisconsin, I believe I did.  Also, |
| 10:26:57 | 16 | I found it as part of the HR package handed out by Deanna Moore, |
| 10:27:03 | 17 | the accountant and HR manager. |
| 10:27:07 | 18 | THE COURT:  Hold on.  You are talking too quickly.  You |
| 10:27:08 | 19 | found it in Wisconsin, in the offices, and also where? |
| 10:27:12 | 20 | THE WITNESS:  In the cubicle workspace of Deanna Moore. |
| 10:27:15 | 21 | She performed human resource services for the defendants. |
| 10:27:19 | 22 | THE COURT:  I will overrule the objection and |
| 10:27:20 | 23 | Exhibit 35 will be received in evidence for this hearing. |
| 10:27:23 | 24 | [Plaintiff Exhibit 35 received in evidence at 10:27 a.m.] |
| 10:27:24 | 25 | BY MR. IVENS: |

Aiken - Direct

55

| | | |
|---|---|---|
| 10:27:24 | 1 | Q.  Could you read the second paragraph of Plaintiff's Exhibit |
| 10:27:29 | 2 | 35, please? |
| 10:27:30 | 3 | A.  "Now, blank, the thing that people really have a question |
| 10:27:33 | 4 | about in verification is when they talk about major medical. |
| 10:27:37 | 5 | Usually people think that this means something major in the |
| 10:27:40 | 6 | hospital and that's not what that means.  Because you have no |
| 10:27:44 | 7 | set co-pays and no deductibles in the hospital, and no annual or |
| 10:27:51 | 8 | lifetime caps, it is classified as a medical savings plan, not |
| 10:27:56 | 9 | major medical." |
| 10:27:57 | 10 | Q.  Do you see in that paragraph anywhere where it says this is |
| 10:28:00 | 11 | quote, not insurance, end quote? |
| 10:28:03 | 12 | A.  No. |
| 10:28:03 | 13 | Q.  Do you see anywhere in the document where the medical |
| 10:28:05 | 14 | discount card is described as, quote, not insurance? |
| 10:28:11 | 15 | A.  No. |
| 10:28:11 | 16 | Q.  Going back to the chargeback document which we just saw, did |
| 10:28:16 | 17 | you see other evidence of high chargebacks while you were in |
| 10:28:20 | 18 | Wisconsin? |
| 10:28:21 | 19 | A.  I did, yes. |
| 10:28:23 | 20 | Q.  What did you see? |
| 10:28:25 | 21 | A.  While reviewing the workspace in the defendant's -- Partner |
| 10:28:30 | 22 | in Health Care area, I saw a file cabinet drawer containing -- |
| 10:28:36 | 23 | about this big or so containing chargeback notices and |
| 10:28:42 | 24 | chargeback dispute letters. |
| 10:28:43 | 25 | Q.  In your experience as a Federal Trade Commission |

Aiken - Direct

56

| 10:28:47 | 1 | investigator, what does it mean when you find evidence of a lot |
| 10:28:48 | 2 | of chargebacks? |
| 10:28:49 | 3 | A.  Generally, a consumer will initiate a chargeback when he is |
| 10:28:52 | 4 | trying to seek through his bank some type of refund when he is |
| 10:28:56 | 5 | either unsatisfied with the product or he believes it is |
| 10:28:59 | 6 | fraudulent. |
| 10:29:03 | 7 | MR. IVENS:  We would like to admit Plaintiff's Exhibit |
| 10:29:07 | 8 | 37. |
| 10:29:41 | 9 | THE COURT:  Any objection? |
| 10:29:58 | 10 | MR. GRUMER:  None. |
| 10:29:59 | 11 | THE COURT:  All right.  Exhibit 37 will be received in |
| 10:30:01 | 12 | evidence. |
| 10:30:01 | 13 | [Plaintiff Exhibit 37 received in evidence at 10:30 a.m.] |
| 10:30:02 | 14 | BY MR. IVENS: |
| 10:30:02 | 15 | Q.  Do you recognize Plaintiff's Exhibit 37, Mr. Aiken? |
| 10:30:06 | 16 | A.  Yes, I do. |
| 10:30:07 | 17 | Q.  What is it? |
| 10:30:07 | 18 | A.  This is a report from the customer relationship management |
| 10:30:12 | 19 | system, Enrollment 1-2-3, detailing all sales for the period |
| 10:30:15 | 20 | from January 1, 2011 until September 3, 2014. |
| 10:30:21 | 21 | Q.  And looking at the first column, the one that says |
| 10:30:25 | 22 | "created," what does that represent? |
| 10:30:27 | 23 | A.  I believe these are records that were created in the systems |
| 10:30:30 | 24 | accounting for sales based on the plans off to the left. |
| 10:30:33 | 25 | Q.  Sales of what? |

Aiken - Cross

57

| | | |
|---|---|---|
| 10:30:34 | 1 | A.  Sales of the medical discount cards and plans offered by the |
| 10:30:39 | 2 | defendants Partner in Health Care. |
| 10:30:40 | 3 | Q.  And if you go to the fourth column, what does that |
| 10:30:43 | 4 | represent? |
| 10:30:44 | 5 | A.  I believe this represents sales that were canceled by the |
| 10:30:50 | 6 | defendants Partners in Health Care. |
| 10:30:51 | 7 | Q.  And did you have an opportunity to work out the ratio of the |
| 10:30:56 | 8 | number of canceled plans versus the number of created plans? |
| 10:30:59 | 9 | A.  Yes, sir. |
| 10:30:59 | 10 | Q.  And what was that percentage? |
| 10:31:02 | 11 | A.  Approximately 84.8 percent. |
| 10:31:12 | 12 | MR. IVENS:  I have no further questions, Your Honor. |
| | 13 | THE COURT:  All right.  Mr. Grumer. |
| | 14 | MR. GRUMER:  Thank you, Your Honor. |
| | 15 | CROSS-EXAMINATION |
| 10:31:23 | 16 | [Beginning at 10:31 a.m., 9/4/14.] |
| 10:31:31 | 17 | BY MR. GRUMER: |
| 10:31:31 | 18 | Q.  Mr. Aiken, my name is Keith Grumer.  We have not met before. |
| 10:31:35 | 19 | How are you today? |
| 10:31:36 | 20 | A.  Very well, sir. |
| 10:31:39 | 21 | Q.  Let's begin with the Exhibit 35, the post close script.  Did |
| 10:31:58 | 22 | you find this script anywhere in the call room? |
| 10:32:04 | 23 | A.  Yes, I did. |
| 10:32:05 | 24 | Q.  Where did you find it? |
| 10:32:07 | 25 | A.  I can't exactly remember what cubes, but I believe they were |

Aiken - Cross

58

| 10:32:11 | 1 | in multiple cubes. |
| 10:32:14 | 2 | Q.  Was your testimony earlier that you had found this at |
| 10:32:17 | 3 | Deanna's desk? |
| 10:32:19 | 4 | A.  That's true as well.  This was also part of the employment |
| 10:32:25 | 5 | packet. |
| 10:32:25 | 6 | Q.  Did you interview any employees while you were present? |
| 10:32:29 | 7 | A.  Yes, I did. |
| 10:32:31 | 8 | Q.  You found the employees to be cooperative? |
| 10:32:37 | 9 | A.  Yes, I did. |
| 10:32:39 | 10 | Q.  Did you ask any of the employees if they use this script? |
| 10:32:46 | 11 | A.  No, I did not. |
| 10:32:48 | 12 | Q.  Did you ask any of the supervisors if this script was |
| 10:32:53 | 13 | current? |
| 10:32:54 | 14 | A.  No, I did not. |
| 10:32:55 | 15 | Q.  Do you know, based upon -- well, let me ask this, the |
| 10:33:00 | 16 | predicate.  Did you review any of the recorded conversations |
| 10:33:07 | 17 | either done by the Federal Trade Commission, its investigators, |
| 10:33:12 | 18 | or by any of the consumers?  Did you see this script read? |
| 10:33:19 | 19 | A.  I did not see it. |
| 10:33:23 | 20 | Q.  Are you aware whether this script was ever used by |
| 10:33:31 | 21 | Tri-Resources? |
| 10:33:35 | 22 | A.  No.  I'm sure of that. |
| 10:33:52 | 23 | Q.  Now, in terms of Exhibit 37, is this a report that you were |
| 10:34:08 | 24 | able to print out from the enrollment package? |
| 10:34:13 | 25 | A.  Yes, it was. |

Aiken - Cross

59

| | | |
|---|---|---|
| 10:34:15 | 1 | Q.  In your processing of this report, did you look at the date |
| 10:34:20 | 2 | of cancellation? |
| 10:34:23 | 3 | A.  I didn't have time to do that. |
| 10:34:25 | 4 | Q.  In processing this report, did you look at the source of |
| 10:34:31 | 5 | each of these customers? |
| 10:34:33 | 6 | A.  I'm unclear as to what you mean by source. |
| 10:34:37 | 7 | Q.  Do you have an understanding of how Partners in Health Care |
| 10:34:41 | 8 | operates? |
| 10:34:43 | 9 | A.  Beyond what I saw at the immediate access, not specifically. |
| 10:34:48 | 10 | Q.  Based upon your presence here today, did you have an |
| 10:34:54 | 11 | understanding that Partners in Health Care engaged several |
| 10:35:00 | 12 | independent agencies to participate in phone solicitations? |
| 10:35:07 | 13 | A.  Based on reports I ran, I saw that there were entities known |
| 10:35:11 | 14 | as enrollment agents within the system. |
| 10:35:15 | 15 | Q.  Do you know how many of the cancellations can be attributed |
| 10:35:20 | 16 | to the third-party enrollment agencies? |
| 10:35:25 | 17 | A.  I can't speak to that number right now. |
| 10:35:27 | 18 | Q.  Do you know how many cancellations were incurred or occurred |
| 10:35:36 | 19 | as a result of the direct solicitations from the Wisconsin phone |
| 10:35:41 | 20 | room? |
| 10:35:42 | 21 | A.  I do not know. |
| 10:35:44 | 22 | Q.  Do you know when the Wisconsin phone room commenced its |
| 10:35:49 | 23 | operations? |
| 10:35:50 | 24 | A.  No, I do not. |
| 10:35:53 | 25 | Q.  If I told you that it commenced in January 2014, could you |

Aiken - Cross

60

| | | |
|---|---|---|
| 10:36:01 | 1 | run a report showing cancellations after the Wisconsin phone |
| 10:36:06 | 2 | room began its own solicitations? |
| 10:36:10 | 3 | A.  I could if I had access to the system. |
| 10:36:16 | 4 | Q.  Do you have other reports that can be broken down by time |
| 10:36:22 | 5 | periods that you have printed out? |
| 10:36:25 | 6 | A.  I do. |
| 10:36:27 | 7 | Q.  And where are they? |
| 10:36:30 | 8 | A.  Back at the office. |
| 10:36:34 | 9 | MR. GRUMER:  Excuse me one moment, please. |
| 10:37:05 | 10 | BY MR. GRUMER: |
| 10:37:05 | 11 | Q.  Turning to Exhibit 33, first, let's start with your presence |
| 10:37:12 | 12 | there.  Did the employees give you full access to their emails |
| 10:37:17 | 13 | and their resources? |
| 10:37:20 | 14 | A.  I obtained access through asking for permission to access |
| 10:37:24 | 15 | them through the receiver. |
| 10:37:28 | 16 | Q.  Did Kasina Reganiter consent to your reviewing her email |
| 10:37:37 | 17 | account? |
| 10:37:38 | 18 | A.  I accessed it through asking through the receiver. |
| 10:37:41 | 19 | Q.  Do you know if the receiver obtained permission from Kasina |
| 10:37:45 | 20 | or Jeff or Melissa? |
| 10:37:50 | 21 | A.  I can't speak to that. |
| 10:37:53 | 22 | Q.  Now, do you know whether this merchant risk AMF email |
| 10:38:04 | 23 | related to chargebacks that were originated by the Wisconsin |
| 10:38:09 | 24 | call center? |
| 10:38:12 | 25 | A.  I specifically don't know which merchant billing descriptors |

Aiken - Cross

61

| | | |
|---|---|---|
| 10:38:17 | 1 | it related to other than it related to a processor that had been |
| 10:38:22 | 2 | identified that was used by the defendants Partners in Health |
| 10:38:25 | 3 | Care. |
| 10:38:26 | 4 | Q.  Do you know whether this call back -- I'm sorry, this |
| 10:38:31 | 5 | chargeback concern arose from any of the independent agencies? |
| 10:38:39 | 6 | A.  I can't speak to that. |
| 10:38:45 | 7 | Q.  Are any of these hold backs attributable to Tri-Resource's |
| 10:38:51 | 8 | failure to provide service? |
| 10:38:55 | 9 | A.  Once again, I can only speak to the merchant account listed |
| 10:38:59 | 10 | on the email itself. |
| 10:39:00 | 11 | Q.  Do you know whose merchant account this relates to? |
| 10:39:05 | 12 | A.  It appears, based on the notice, Partners in Health Care is |
| 10:39:09 | 13 | listed at the top, but beyond that I can only -- |
| 10:39:13 | 14 | Q.  Well, do you know who GID is? |
| 10:39:17 | 15 | A.  I don't know if that is a group ID or what that is. |
| 10:39:20 | 16 | Q.  Do you know whether that was one of the independent phone |
| 10:39:24 | 17 | solicitors? |
| 10:39:26 | 18 | A.  I do not. |
| 10:39:36 | 19 | MR. GRUMER:  One moment, please, Your Honor. |
| 10:40:03 | 20 | BY MR. GRUMER: |
| 10:40:04 | 21 | Q.  One last group of questions, Mr. Aiken.  So when you were |
| 10:40:08 | 22 | present in the Wisconsin offices, you described a segregation of |
| 10:40:14 | 23 | workstations? |
| 10:40:16 | 24 | A.  That's correct. |
| 10:40:16 | 25 | Q.  And those were -- there was a phone solicitation group as |

Aiken - Cross

62

| | | |
|---|---|---|
| 10:40:19 | 1 | well as a service group? |
| 10:40:22 | 2 | A.  That's correct, to my understanding. |
| 10:40:24 | 3 | Q.  Did you come to an understanding that the phone solicitation |
| 10:40:29 | 4 | group were the Partners in Health Care? |
| 10:40:33 | 5 | A.  I was under the impression that the entire entity was |
| 10:40:39 | 6 | subdivided between Partners in Health Care and Tri-Resource |
| 10:40:44 | 7 | Group, but certain areas of the office appeared to be |
| 10:40:46 | 8 | segregated, yes. |
| 10:40:47 | 9 | Q.  So there was a separate entity present called Tri-Resource |
| 10:40:53 | 10 | Group? |
| 10:40:55 | 11 | A.  I believe some employees identified with Tri-Resource Group |
| 10:40:58 | 12 | and some employees identified with Health Center or Partners in |
| 10:41:02 | 13 | Health Care but -- |
| 10:41:05 | 14 | Q.  Did any of those employees identify themselves as being part |
| 10:41:13 | 15 | of both groups? |
| 10:41:15 | 16 | A.  I can't recall the exact relationship. |
| 10:41:21 | 17 | Q.  The phone solicitation area was Partners in Health Care for |
| 10:41:27 | 18 | sure? |
| 10:41:27 | 19 | A.  I believe that was actually the Health Center, is what they |
| 10:41:29 | 20 | referred to themselves as. |
| 10:41:34 | 21 | Q.  The service area, the service desks, was that Tri-Resource |
| 10:41:40 | 22 | Group? |
| 10:41:41 | 23 | A.  I can't recall exactly the split, where it was. |
| 10:41:49 | 24 | Q.  Jeff, do you recall his full name? |
| 10:41:54 | 25 | A.  No. |

Aiken - Cross

| | | |
|---|---|---|
| 10:41:54 | 1 | Q.  He is identified here with an email address as Tri-Resource |
| 10:42:01 | 2 | Group.  Do you know if -- let me ask this:  In your |
| 10:42:04 | 3 | investigation, did you inquire as to why Tri-Resource Group and |
| 10:42:14 | 4 | Partners in Health Care have different domain names? |
| 10:42:19 | 5 | A.  I did not. |
| 10:42:19 | 6 | Q.  Do you know whether they shared the same server? |
| 10:42:23 | 7 | A.  I do not know. |
| 10:42:26 | 8 | Q.  Do you know whether members of the Partners in Health Care |
| 10:42:30 | 9 | domain can access Tri-Resource Group's domain? |
| 10:42:35 | 10 | A.  I am uncertain of who can access who's systems. |
| 10:42:44 | 11 | MR. GRUMER:  Thank you, Mr. Aiken.  I have no further |
| 10:42:48 | 12 | questions. |
| 10:42:48 | 13 | MR. IVENS:  No redirect, Your Honor. |
| 10:42:49 | 14 | THE COURT:  Any other witnesses? |
| 10:42:49 | 15 | MR. IVENS:  No, Your Honor. |
| 10:42:50 | 16 | THE COURT:  All right.  Mr. Grumer, do you have any |
| 10:42:52 | 17 | witnesses on that issue or the issues that you are contesting? |
| 10:42:56 | 18 | MR. GRUMER:  Yes, Mr. Kieper, please. |
| 10:43:06 | 19 | THE COURT:  All right.  Come on up. |
| | 20 | GARY KIEPER, DEFENDANTS' WITNESS, SWORN. |
| 10:43:30 | 21 | THE WITNESS:  Gary Kieper, K-i-e-p-e-r. |
| 10:43:35 | 22 | THE COURT:  P, as in Peter? |
| 10:43:37 | 23 | THE WITNESS:  Pardon me, sir? |
| 10:43:38 | 24 | THE COURT:  P, as in Peter? |
| 10:43:41 | 25 | THE WITNESS:  Yes, sir. |

Kieper - Direct

64

|   | |
|---|---|
| 1 | DIRECT EXAMINATION |
| 10:43:41 2 | [Beginning at 10:43 a.m., 9/4/14.] |
| 10:43:44 3 | BY MR. GRUMER: |
| 10:43:44 4 | Q.  Good morning, Mr. Kieper.  Introduce yourself to the Court, |
| 10:43:46 5 | please. |
| 10:43:46 6 | A.  I am Gary Kieper.  I am the president and owner of Partners |
| 10:43:50 7 | in Health Care. |
| 10:43:50 8 | Q.  Could you give us a brief description of your background, |
| 10:43:54 9 | military service? |
| 10:43:56 10 | A.  I served in the United States Marine Corps. from 1968 to |
| 10:44:00 11 | 1972.  I had meritorious promotions in the Marine Corps.  I got |
| 10:44:04 12 | out as an E-5.  Prior to becoming an NCO, noncommissioned |
| 10:44:13 13 | officer, they issue pro and con marks rather than fitness |
| 10:44:16 14 | reports and I had 5, 0 pro and con marks. |
| 10:44:20 15 |         When I returned from the Marine Corps, I went into -- I |
| 10:44:24 16 | worked in a factory and then got into sales, sold insurance from |
| 10:44:28 17 | 1973 until I sold my agency in 1999.  We marketed to the senior |
| 10:44:35 18 | market, which is Medicare supplements and life insurance.  I |
| 10:44:39 19 | marketed 36 states.  I had about 5,000 brokers and anywhere from |
| 10:44:46 20 | 3 to 500 captive agents. |
| 10:44:49 21 |         In that 28 years that I was in Rockland, Illinois my |
| 10:44:54 22 | agency, which is very well scrutinized by insurance departments |
| 10:44:59 23 | and every politician, never had one justifiable insurance |
| 10:45:01 24 | department complaint.  Did I have agents that misrepresented the |
| 10:45:04 25 | product?  Yes.  But we adjusted it, we took care of it, we |

Kieper - Direct

65

| | | |
|---|---|---|
| 10:45:09 | 1 | terminated the agent.  We always made sure that the client was |
| 10:45:12 | 2 | whole. |
| 10:45:13 | 3 | We also ran a telemarketing room out of Rockland which |
| 10:45:19 | 4 | created leads for our sales representatives.  Again, we never |
| 10:45:23 | 5 | had a problem with any of the FTC people, state or local |
| 10:45:29 | 6 | insurance departments. |
| 10:45:30 | 7 | I got out of that and came back to Wisconsin and |
| 10:45:32 | 8 | started helping people save money by purchasing medications from |
| 10:45:36 | 9 | Canada and India.  In 2005, when the Federal Government came out |
| 10:45:41 | 10 | with the Part D plan, that was a better program for the majority |
| 10:45:44 | 11 | of my members than what I could do, so I encouraged them to |
| 10:45:48 | 12 | enroll in the Medicare Part D. |
| 10:45:51 | 13 | Then I developed Partners in Health Care where we |
| 10:45:53 | 14 | started to try to find different services that were -- could be |
| 10:45:58 | 15 | made available to people to reduce health care costs.  Our motto |
| 10:46:07 | 16 | at Partners in Health Care is reduce health care costs through |
| 10:46:08 | 17 | trust and education, and that takes me to today. |
| 10:46:11 | 18 | Q.  Does Partners in Care operate by itself or are there other |
| 10:46:14 | 19 | entities that are currently operating once customers enroll? |
| 10:46:20 | 20 | A.  It operates by itself.  Customer service -- because Partners |
| 10:46:26 | 21 | in Health Care has no employees, I'm the only person, I had to |
| 10:46:31 | 22 | employee people through Tri-Resource Group to do my customer |
| 10:46:34 | 23 | service. |
| 10:46:35 | 24 | Q.  And what does Tri-Resource Group do? |
| 10:46:38 | 25 | A.  Tri-Resource Group has some insurance agents that are |

Kieper - Direct

66

| | | |
|---|---|---|
| 10:46:42 | 1 | attached to it, but the majority of its activity and |
| 10:46:47 | 2 | responsibility is to supply our members with customer service. |
| 10:46:54 | 3 | Q.  Is there a -- |
| 10:46:56 | 4 | THE COURT:  Can I interrupt?  I want to make sure I |
| 10:46:59 | 5 | understand.  You are saying that the only person and employee of |
| 10:47:05 | 6 | Partners in Health Care is you? |
| 10:47:07 | 7 | THE WITNESS:  Yes, sir, and I am actually not an |
| 10:47:09 | 8 | employee.  The only thing I get is a very small commission from |
| 10:47:12 | 9 | the company.  It does not pay me a salary.  Tri-Resource Group |
| 10:47:16 | 10 | does as part of my management of Tri-Resource Group and the |
| 10:47:22 | 11 | customer service people. |
| 10:47:35 | 12 | BY MR. GRUMER: |
| 10:47:35 | 13 | Q.  And what are the products that are offered to -- through |
| 10:47:41 | 14 | Tri-Resource Group? |
| 10:47:42 | 15 | A.  Tri-Resource Group does not offer products.  Tri-Resource |
| 10:47:45 | 16 | Group offers service only. |
| 10:47:46 | 17 | Q.  And what are the services that Tri-Resource Group offers? |
| 10:47:49 | 18 | A.  They supply our members -- after a person is enrolled and |
| 10:47:56 | 19 | the enrollment package is mailed out, their responsibility is to |
| 10:48:00 | 20 | call each member and it is a welcome call and that welcome call |
| 10:48:06 | 21 | is designed to go through our entire handbook with that |
| 10:48:10 | 22 | individual.  So we call them and the first thing our customer |
| 10:48:13 | 23 | service representative asks is have you received your handbook. |
| 10:48:17 | 24 | If they have not, we ask them that they should get it in the |
| 10:48:21 | 25 | next couple of days and please call us back.  We would like to |

Kieper - Direct

67

| | | |
|---|---|---|
| 10:48:24 | 1 | complete a welcome call. |
| 10:48:25 | 2 |        If they have received it, our customer service people |
| 10:48:28 | 3 | go through that book page-by-page and goes through every one of |
| 10:48:32 | 4 | the services that are available to them.  When we get to our |
| 10:48:36 | 5 | telemedicine, which telemedicine is a product of the future, |
| 10:48:41 | 6 | especially with the plans out there today with the high |
| 10:48:44 | 7 | deductibles, we enroll them in a telemedicine program |
| 10:48:49 | 8 | immediately so that they have access to those benefits |
| 10:48:52 | 9 | immediately. |
| 10:48:53 | 10 |        THE COURT:  I am just -- maybe I'm not understanding. |
| 10:48:55 | 11 | If you are the only employee of Partners in Health -- |
| 10:48:59 | 12 |        THE WITNESS:  Yes, sir. |
| 10:49:00 | 13 |        THE COURT:  -- and the only thing Tri-Resource does is |
| 10:49:02 | 14 | once somebody is enrolled, they service it, so that means you |
| 10:49:05 | 15 | are the person who is enrolling the people in Partners in |
| 10:49:08 | 16 | Health? |
| 10:49:09 | 17 |        THE WITNESS:  No, sir.  Partners in Health Care has |
| 10:49:12 | 18 | contracts with third parties. |
| 10:49:14 | 19 |        THE COURT:  Okay. |
| 10:49:14 | 20 |        THE WITNESS:  Including some insurance agencies, some |
| 10:49:17 | 21 | associations that are not telemarketing, but have direct access |
| 10:49:22 | 22 | to members that enroll people as well. |
| 10:49:25 | 23 |        THE COURT:  Okay. |
| 10:49:27 | 24 | BY MR. GRUMER: |
| 10:49:27 | 25 | Q.  Mr. Kieper, attached to the FTC complaint and the exhibits |

Kieper - Direct

68

| 10:49:35 | 1 | is an Exhibit 8 and that is a member handbook.  Is this the |
|---|---|---|
| 10:49:42 | 2 | materials that are prepared for members of Partners in Health |
| 10:49:47 | 3 | Care? |
| 10:49:48 | 4 | A.  Yes, and that is what is mailed to them. |
| 10:49:51 | 5 | Q.  Okay.  And is this the material that is described in the |
| 10:49:56 | 6 | welcome call? |
| 10:49:59 | 7 | A.  Yes. |
| 10:49:59 | 8 | Q.  And are these discount services provided to all members? |
| 10:50:06 | 9 | A.  Yes, they are. |
| 10:50:10 | 10 | Q.  Are you currently able to provide those services with -- |
| 10:50:17 | 11 | A.  No, I am not. |
| 10:50:20 | 12 | Q.  What is happening with the phones today? |
| 10:50:23 | 13 | A.  The receiver has shut them off. |
| 10:50:28 | 14 | Q.  Has there been -- well, prior to the receiver shutting them |
| 10:50:34 | 15 | off, can you will describe the membership participation on a |
| 10:50:37 | 16 | daily basis? |
| 10:50:38 | 17 | A.  When we look at averages, we average about 159 calls a day |
| 10:50:43 | 18 | from our members and the majority of them are for prescription |
| 10:50:48 | 19 | drug services and/or telemedicine or our mediation.  I have had |
| 10:50:55 | 20 | some of my employees or past employees receive emails from |
| 10:51:00 | 21 | people because they email back and forth, and they even give out |
| 10:51:04 | 22 | their private cell phones numbers because we service the people |
| 10:51:08 | 23 | 24/7, and they are calling them wondering why they can't get |
| 10:51:12 | 24 | their patient assistant program medications and why we haven't |
| 10:51:14 | 25 | responded and we haven't been able to give them an answer |

Kieper - Direct

69

| | | |
|---|---|---|
| 10:51:17 | 1 | because the receiver has not allowed us access to our records. |
| 10:51:26 | 2 | Q.  At the present time are you -- well, let's start with this. |
| 10:51:32 | 3 | How was Partners in Health Care marketing its service? |
| 10:51:41 | 4 | A.  When I originally started, we went out to third parties. |
| 10:51:45 | 5 | Because of my 40 years in the insurance business I knew a lot of |
| 10:51:49 | 6 | people, licensed agents that my product -- the services fit, |
| 10:51:54 | 7 | where they could use it for the benefit of their insureds.  So |
| 10:51:59 | 8 | it was marketed through health insurance agents and then I |
| 10:52:02 | 9 | started contacting some third-party call centers and grew from |
| 10:52:09 | 10 | there and had contracts. |
| 10:52:10 | 11 | I have terminated some because obviously they have |
| 10:52:13 | 12 | misrepresented my product.  I had a person down in this county, |
| 10:52:17 | 13 | in fact -- I'm sorry, not this county, in Fort Lauderdale, that |
| 10:52:20 | 14 | I even went to the Attorney General and the Broward County |
| 10:52:25 | 15 | District Attorney to try and have him prosecuted and nobody did |
| 10:52:28 | 16 | anything about it and the guy was not an honest person. |
| 10:52:32 | 17 | So that's where we go with it. |
| 10:52:36 | 18 | Q.  As you experience the operation of these independent |
| 10:52:42 | 19 | parties, did you have high cancellations? |
| 10:52:48 | 20 | A.  Some we did.  When you look at those numbers, that's over a |
| 10:52:52 | 21 | three-year period of time.  A lot of people will enroll in our |
| 10:52:58 | 22 | plan because they may be in between jobs and we do help them. |
| 10:53:01 | 23 | They use our telemedicine.  We do use our medication services. |
| 10:53:06 | 24 | We went back with people that have bills three years old and we |
| 10:53:11 | 25 | are very successful in getting those bills taken off their |

Kieper - Direct

70

| | | |
|---|---|---|
| 10:53:16 | 1 | plate.  We try to keep them before they go to collection and we |
| 10:53:20 | 2 | are very successful doing that.  So we went back even where |
| 10:53:23 | 3 | people had bills that were not even created at the time they |
| 10:53:26 | 4 | were enrolled. |
| 10:53:29 | 5 | Our persistency of our block of business, which is |
| 10:53:31 | 6 | always a concern of any business, our survival rate is based off |
| 10:53:35 | 7 | of longevity and we work very diligently and continue to add new |
| 10:53:41 | 8 | services to our program to continue to increase that longevity |
| 10:53:45 | 9 | because it is important to us, but you have people that are in |
| 10:53:49 | 10 | between jobs.  They get a job, or the husband and wife gets a |
| 10:53:51 | 11 | job and, of course, they cancel our plan because they have group |
| 10:53:54 | 12 | insurance and they don't need it. |
| 10:53:57 | 13 | There are people, and I don't doubt that we have had |
| 10:54:03 | 14 | people that were misled and that is part of my cancellation |
| 10:54:07 | 15 | rate, obviously, but in some of the declarations that I have |
| 10:54:12 | 16 | seen people claim that our services don't work.  Well, I have |
| 10:54:18 | 17 | documentation to show you that we have letters -- when we send |
| 10:54:20 | 18 | out a provider network list to anybody, there is a letter that |
| 10:54:24 | 19 | goes along with it and in that letter it says, please call us, |
| 10:54:30 | 20 | find a provider and call us.  We will call the providers and |
| 10:54:33 | 21 | make sure they are taking new members and that they understand |
| 10:54:36 | 22 | our program.  In the declarations that I have seen people just |
| 10:54:41 | 23 | went to their provider.  It is not ever presented that way.  Our |
| 10:54:43 | 24 | welcome call does not tell them to do it that way. |
| 10:54:47 | 25 | Our welcome call explains we will send you the |

Kieper - Direct

| | | |
|---|---|---|
| 10:54:50 | 1 | providers.  You tell us who you want to see and we will call |
| 10:54:53 | 2 | those and make sure that they are available to you. |
| 10:54:55 | 3 | THE COURT:  In your 40 years of experience in the |
| 10:54:57 | 4 | insurance industry, what is the average rate of cancellations? |
| 10:55:01 | 5 | THE WITNESS:  Sir, in the senior market, it varied |
| 10:55:05 | 6 | based off of different Government changes.  My persistency in my |
| 10:55:10 | 7 | Medicare supplement business was 79 percent. |
| 10:55:14 | 8 | THE COURT:  Cancellations? |
| 10:55:15 | 9 | THE WITNESS:  No, of persistency.  My cancellation rate |
| 10:55:18 | 10 | was -- |
| 10:55:19 | 11 | THE COURT:  21 percent? |
| 10:55:20 | 12 | THE WITNESS:  -- very little. |
| 10:55:21 | 13 | THE COURT:  Okay. |
| 10:55:23 | 14 | THE WITNESS:  When I say persistency, I'm talking about |
| 10:55:25 | 15 | a 13-month persistency rate which the insurance industry uses. |
| 10:55:30 | 16 | BY MR. GRUMER: |
| 10:55:30 | 17 | Q.  Looking at your cancellation rate as shown over a |
| 10:55:33 | 18 | three-and-a-half-year period in the Partners in Health Care |
| 10:55:38 | 19 | business -- well, first let's start with this:  Does Partners in |
| 10:55:42 | 20 | Health Care use an enrollment software? |
| 10:55:46 | 21 | A.  Yes, they do, sir. |
| 10:55:47 | 22 | Q.  And is this report out of the Enrollment 1-2-3 software? |
| 10:55:54 | 23 | A.  Yes, sir, I would say it is. |
| 10:55:55 | 24 | Q.  Have you been able to access this software since the |
| 10:56:01 | 25 | receiver took over? |

Kieper - Direct

| | | |
|---|---|---|
| 10:56:02 | 1 | A.   No, I have not.  I have requested, but have been denied. |
| 10:56:08 | 2 | Q.   All right.  Now, in terms of the cancellation rates, can you |
| 10:56:11 | 3 | determine from this report how many cancellations are as a |
| 10:56:17 | 4 | result of the independent phone solicitators? |
| 10:56:20 | 5 | A.   No, I cannot. |
| 10:56:21 | 6 | Q.   What is your impression of your Wisconsin solicitation |
| 10:56:29 | 7 | retention rate? |
| 10:56:30 | 8 | A.   I believe that you will see that there is a big change, |
| 10:56:33 | 9 | obviously, because we have total control and we do training on a |
| 10:56:39 | 10 | daily basis.  Our cancellation rate of what I -- again -- |
| 10:56:43 | 11 | THE COURT:  How do you have more control in Wisconsin? |
| 10:56:46 | 12 | I thought you used only third-party contracts to do the |
| 10:56:49 | 13 | solicitations. |
| 10:56:50 | 14 | THE WITNESS:  We did, sir, up until the time that we |
| 10:56:51 | 15 | opened our call center in Appleton, which has been since January |
| 10:56:56 | 16 | which my attorney had mentioned earlier. |
| 10:56:59 | 17 | THE COURT:  So your call center is staffed by employees |
| 10:57:03 | 18 | of Partners in Health Care? |
| 10:57:04 | 19 | THE WITNESS:  No, sir, the Health Center and they are |
| 10:57:07 | 20 | employees of the Health Center, which is a totally different |
| 10:57:11 | 21 | company. |
| 10:57:11 | 22 | THE COURT:  It is a different company, but that you own |
| 10:57:13 | 23 | and control? |
| 10:57:14 | 24 | THE WITNESS:  Yes, sir. |
| 10:57:14 | 25 | THE COURT:  Okay. |

Kieper - Direct

73

| | | |
|---|---|---|
| 10:57:15 | 1 | BY MR. GRUMER: |
| 10:57:15 | 2 | Q.  And when did the call center go into effect? |
| 10:57:19 | 3 | A.  Sometime in January.  We probably started with two or three |
| 10:57:23 | 4 | people and then built from there. |
| 10:57:25 | 5 | Q.  And what was, until the receiver came in, the number of |
| 10:57:30 | 6 | employees for the call center in Wisconsin? |
| 10:57:33 | 7 | A.  The number of what, sir? |
| 10:57:34 | 8 | Q.  Of employees. |
| 10:57:38 | 9 | A.  I happened to be in California that week.  Our numbers would |
| 10:57:42 | 10 | go from 14 to 18 to 20 people.  Obviously people that didn't |
| 10:57:49 | 11 | follow our scripts were let go and we constantly looked to |
| 10:57:53 | 12 | upgrade our employee status and so that was always going to |
| 10:58:01 | 13 | fluctuate. |
| 10:58:02 | 14 | Q.  Let me draw your attention, then to a post close script that |
| 10:58:06 | 15 | came into evidence as Exhibit 35.  Is this a current script? |
| 10:58:12 | 16 | A.  I have not seen that.  I am not saying it hasn't been |
| 10:58:16 | 17 | something that happened years ago.  The phone number on there |
| 10:58:19 | 18 | doesn't even make sense to me, the 888-866-2670.  I am not |
| 10:58:24 | 19 | saying it wasn't mine at one time, but I don't recognize it. |
| 10:58:30 | 20 | I mean, obviously we have forms laying around the |
| 10:58:36 | 21 | office that have been there since 2005, when I started the |
| 10:58:38 | 22 | organization.  Are they still in practice?  No.  Am I kind of a |
| 10:58:43 | 23 | hoarder of everything?  Yes, I am.  I keep everything and when |
| 10:58:48 | 24 | you go through my laptop you will find I have emails on there |
| 10:58:53 | 25 | from many years back and, again, I kept them there to build and |

September 4, 2014

Kieper - Direct

74

| | | |
|---|---|---|
| 10:58:58 | 1 | document things that we do. |
| 10:58:59 | 2 | Q.  If allowed to service the customers, would you put into |
| 10:59:06 | 3 | effect other remediation practices? |
| 10:59:11 | 4 | A.  Oh, absolutely.  I mean, I have no problem having every one |
| 10:59:14 | 5 | of my customer service calls recorded from start to finish.  I |
| 10:59:20 | 6 | mean, my -- my customer service people -- if any of the |
| 10:59:26 | 7 | investigators would have interviewed them, they would have said |
| 10:59:30 | 8 | if anybody calls and says is this insurance, they were to |
| 10:59:33 | 9 | immediately tell them no.  They do not play games with it.  They |
| 10:59:36 | 10 | don't hem and haw around. |
| 10:59:38 | 11 | If you go through that booklet, which has been approved |
| 10:59:40 | 12 | by other DMPOs, which is discount medical plan organizations, I |
| 10:59:45 | 13 | am not a licensed discount medical plan organization and I don't |
| 10:59:48 | 14 | need to be because I don't own any of those discount medical |
| 10:59:52 | 15 | plan benefits which is dental, vision, hearing, chiropractic or |
| 10:59:57 | 16 | doctor.  Those are not under my roof.  The DMPO has also listed |
| 11:00:02 | 17 | it in the handbooks if there is one in there. |
| 11:00:05 | 18 | Q.  Have you made arrangements to engage a telemarketing |
| 11:00:11 | 19 | compliance program? |
| 11:00:13 | 20 | A.  Yes, we have.  We had a conversation with them for probably |
| 11:00:20 | 21 | an hour yesterday on what our plans are, what we need.  Dean and |
| 11:00:23 | 22 | his wife, Angela, are very familiar with the industry, 20-plus |
| 11:00:29 | 23 | years in it.  They belong to Pace so this is not a -- this is |
| 11:00:33 | 24 | not a fly-by-night organization.  That is not what we look for. |
| 11:00:36 | 25 | We look for quality and they are two very quality people. |

Kieper - Direct

| 11:00:41 | 1 | They have sent us a business proposal, which I believe |
| 11:00:44 | 2 | you have copies of, and with my ability to pay the retainer, |
| 11:00:51 | 3 | they will come in and do the right thing and have no problem |
| 11:00:54 | 4 | submitting our plan to the Court for approval for continuous |
| 11:00:58 | 5 | business. |
| 11:00:59 | 6 | Q.  And is this the proposal that you received yesterday from |
| 11:01:04 | 7 | Quality Contact Solutions? |
| 11:01:07 | 8 | A.  Yes, sir. |
| 11:01:08 | 9 | Q.  And they supervise a telemarketing call room? |
| 11:01:15 | 10 | A.  Yes, sir.  In fact, they supervise some of the larger |
| 11:01:18 | 11 | insurance companies that have also been employed by them. |
| 11:01:22 | 12 | Q.  And did they also recommend an administrative compliance |
| 11:01:25 | 13 | counsel? |
| 11:01:25 | 14 | A.  Yes, they did, sir. |
| 11:01:26 | 15 | Q.  And did you speak with him as well? |
| 11:01:29 | 16 | A.  Yes, we did and he is willing to also come on board with us |
| 11:01:32 | 17 | based off the information we shared with him and his association |
| 11:01:37 | 18 | with Dean and Angela. |
| 11:01:41 | 19 | Q.  And is this Mr. Roth from the Roth, Donner, Jackson firm in |
| 11:01:47 | 20 | Washington? |
| 11:01:48 | 21 | A.  Yes, sir. |
| 11:01:49 | 22 | Q.  And your ability to retain these people requires funds.  Do |
| 11:01:54 | 23 | you have access to any funds at this time? |
| 11:01:58 | 24 | A.  No, sir. |
| 11:01:58 | 25 | Q.  What bank accounts are frozen? |

Kieper - Direct

76

| | | |
|---|---|---|
| 11:02:00 | 1 | A.  All of the Associated Bank and Northshore accounts, which |
| 11:02:05 | 2 | are Partners in Health Care, Senior Advantage of Wisconsin, |
| 11:02:10 | 3 | which is actually an insurance agency, but we have a d/b/a which |
| 11:02:13 | 4 | is a health center doing business under Senior Advantage of |
| 11:02:19 | 5 | Wisconsin that is also froze. |
| 11:02:20 | 6 | Q.  Does Tri-Resource have an account? |
| 11:02:22 | 7 | A.  Yes, they do and that is not frozen. |
| 11:02:24 | 8 | Q.  But its phones have been turned off? |
| 11:02:26 | 9 | A.  Yes. |
| 11:02:26 | 10 | Q.  Has internet -- |
| 11:02:27 | 11 | A.  Internet has been turned off as well, right.  So now what |
| 11:02:31 | 12 | happens, when my clients call, members call in, it is just dead |
| 11:02:35 | 13 | and obviously, should the Court grant me the permission to |
| 11:02:39 | 14 | service my people, I have some problems to overcome because I |
| 11:02:44 | 15 | have got -- since the 25th, I believe, is when the receiver shut |
| 11:02:48 | 16 | it off until today, I have got people that obviously are upset |
| 11:02:52 | 17 | because they can't get ahold of us. |
| 11:02:54 | 18 | We have got people -- their medication -- their life is |
| 11:02:59 | 19 | determined by us providing them the medications.  The receiver |
| 11:03:03 | 20 | has got copies of testimonies.  We just had a lady send us |
| 11:03:09 | 21 | unsolicited testimony.  We saved her $29,000 her first year. |
| 11:03:14 | 22 | She was unable to take all the medications that she needed |
| 11:03:17 | 23 | because she couldn't afford them.  We perform a valuable service |
| 11:03:20 | 24 | regardless of the declarations and some of the statements saying |
| 11:03:25 | 25 | that it is a useless card. |

Kieper - Direct

77

| 11:03:27 | 1 | We have testimonies from people saying you are a |
| 11:03:30 | 2 | lifesaver to us, so that is how we do our business.  We help |
| 11:03:34 | 3 | people that need help. |
| 11:03:37 | 4 | Q.  Mr. Kieper, could you describe, please, for the Court the |
| 11:03:41 | 5 | telemed service? |
| 11:03:44 | 6 | A.  Well, that is one of our strongest advocates obviously |
| 11:03:49 | 7 | because we are creatures of habit and we always look for |
| 11:03:52 | 8 | conveniences.  The telemedicine industry, I have been using it |
| 11:03:58 | 9 | or engaged in it and encouraged people to use it since 2005.  I |
| 11:04:02 | 10 | started out with a company called Consult a Doc.  At that time |
| 11:04:07 | 11 | there was -- Consult a Doc and Tell a Doc were the two largest |
| 11:04:11 | 12 | organizations that were in the industry.  I have had a great |
| 11:04:14 | 13 | relationship with Consult a Doc up until about six months ago. |
| 11:04:18 | 14 | They and Tell a Doc merged so our contract went from Consult a |
| 11:04:22 | 15 | Doc to Tell a Doc. |
| 11:04:25 | 16 | Q.  What does Tell a Doc do? |
| 11:04:26 | 17 | A.  What happens is it gives people access to a physician 24 |
| 11:04:29 | 18 | hours a day, seven days a week from the comfort of their home, |
| 11:04:33 | 19 | an iPhone or a computer.  If they went on the Internet and |
| 11:04:37 | 20 | enrolled or joined one of these companies by themselves, they |
| 11:04:41 | 21 | would pay anywhere from $35 to $65, depending on the Tell a Doc |
| 11:04:48 | 22 | service they enrolled in for each and every phone call that they |
| 11:04:52 | 23 | would make to that physician. |
| 11:04:55 | 24 | In our program they have unlimited use and access to |
| 11:05:00 | 25 | doctors 24 hours a day, seven days a week and if they have to |

Kieper - Cross

78

| | | |
|---|---|---|
| 11:05:03 | 1 | call five times a day, they will get to talk to a board |
| 11:05:07 | 2 | certified physician five times a day and they are not charged a |
| 11:05:10 | 3 | penny. |
| 11:05:10 | 4 | Q.  And is that service available to your enrollees today? |
| 11:05:18 | 5 | A.  No, today it is not.  Nothing is available to any of them |
| 11:05:21 | 6 | that they have been paying for all this time.  So when you look |
| 11:05:26 | 7 | at the loss of business, it is going to be tremendous because |
| 11:05:29 | 8 | these people -- you know, it is like an insurance policy in |
| 11:05:33 | 9 | respect because that is what everybody wants to compare me with. |
| 11:05:37 | 10 | If I pay a premium for ten years and all of a sudden the |
| 11:05:40 | 11 | insurance company goes out of business, that doesn't do me any |
| 11:05:44 | 12 | good.  As long as that insurance company stays in business |
| 11:05:47 | 13 | obviously my chances -- as time goes on, the usage of that plan |
| 11:05:51 | 14 | or policy is a lot greater. |
| 11:05:54 | 15 | My members are the same way, but the retention of our |
| 11:05:57 | 16 | people is we do have value.  People would not continue to pay a |
| 11:06:03 | 17 | fee to us and continue to call us if we had zero value to them. |
| 11:06:09 | 18 | Our phones wouldn't ring.  We would be like the Maytag |
| 11:06:16 | 19 | repairman. |
| 11:06:17 | 20 | MR. GRUMER:  I have no further questions.  Thank you, |
| 11:06:18 | 21 | Mr. Kieper. |
| 11:06:19 | 22 | THE COURT:  All right.  Mr. Ivens. |
| | 23 | CROSS-EXAMINATION |
| 11:06:31 | 24 | [Beginning at 11:06 a.m., 9/4/14.] |
| 11:06:32 | 25 | BY MR. IVENS: |

Kieper - Cross

79

| | | |
|---|---|---|
| 11:06:32 | 1 | Q.  Good morning, Mr. Kieper. |
| | 2 | A.  Good morning. |
| 11:06:33 | 3 | Q.  You don't monitor what is actually said in the sales calls |
| 11:06:36 | 4 | that your third-party representatives use, do you? |
| 11:06:40 | 5 | A.  Well, all the scripts should be approved through us.  No, I |
| 11:06:45 | 6 | can't monitor what each independent operation does.  We do |
| 11:06:50 | 7 | require them to do a verification and I know the receiver and |
| 11:06:59 | 8 | the FTC currently has some problems with what they feel our |
| 11:07:06 | 9 | verification does and what we feel it does. |
| 11:07:08 | 10 | We started the verification as a process for us to |
| 11:07:11 | 11 | give -- to give us an opportunity to have some access to that |
| 11:07:17 | 12 | sales call.  In the verification script it does say what you are |
| 11:07:21 | 13 | enrolling in is an advantage health savings discount program. |
| 11:07:26 | 14 | This is not a major medical nor is it intended to replace a |
| 11:07:30 | 15 | major medical.  It also will give them the fees they will pay |
| 11:07:34 | 16 | and also gives our cancellation policy. |
| 11:07:37 | 17 | Q.  Well, that is substantially what we just saw in that post |
| 11:07:40 | 18 | close script, isn't it?  You say it is not major medical -- |
| 11:07:43 | 19 | A.  That is not the script that is used. |
| 11:07:45 | 20 | Q.  You could require each and every one of your outside vendors |
| 11:07:50 | 21 | to record the actual sales calls, couldn't you? |
| 11:07:52 | 22 | A.  And I am going to do that, sir, yes.  If I retain any of |
| 11:07:57 | 23 | them and the Court allows me to be in business they all will be |
| 11:08:01 | 24 | recorded, you are absolutely right, sir. |
| 11:08:02 | 25 | Q.  But you could have done it before and you never did it, |

Kieper - Cross

80

| | | |
|---|---|---|
| 11:08:05 | 1 | right? |
| 11:08:05 | 2 | A.  Yes, I could have.  I didn't realize the need for it.  I |
| 11:08:08 | 3 | didn't -- as a business person and somebody that has ethics, I |
| 11:08:12 | 4 | did not see anybody being unethical and represent a product for |
| 11:08:16 | 5 | something that it is not because it has great value for the |
| 11:08:19 | 6 | market that we serve. |
| 11:08:20 | 7 | Q.  The Federal Trade Commission served on you the temporary |
| 11:08:25 | 8 | restraining order that had a financial form for individuals to |
| 11:08:29 | 9 | fill out.  You haven't filled that out, have you? |
| 11:08:31 | 10 | A.  I have not been able to because I do not have access to my |
| 11:08:33 | 11 | office where my records are at.  I do not have access to any of |
| 11:08:37 | 12 | the files.  I don't have access to any of my bank accounts.  I |
| 11:08:42 | 13 | am locked out of them.  I have requested that and not received |
| 11:08:44 | 14 | it. |
| 11:08:44 | 15 | Q.  You have access to your own personal computer, don't you, |
| 11:08:47 | 16 | Mr. Kieper? |
| 11:08:48 | 17 | A.  Yes, I do, sir. |
| 11:08:49 | 18 | Q.  The person who imaged your computer gave it back to you the |
| 11:08:57 | 19 | same day; isn't that correct? |
| 11:08:58 | 20 | A.  Yes, sir. |
| 11:08:59 | 21 | Q.  And you said that you have a lot of stuff on your computer. |
| 11:09:02 | 22 | You don't have any of your own financial information on your own |
| 11:09:06 | 23 | computer? |
| 11:09:06 | 24 | A.  No. |
| 11:09:06 | 25 | Q.  Did your ask the receiver whether you could go back into the |

Kieper - Cross

81

| | | |
|---|---|---|
| 11:09:09 | 1 | premises to -- |
| 11:09:10 | 2 | A.  Yes, I did and I also asked to have access to 1, 2, 3 and my |
| 11:09:14 | 3 | records so that I could at least give an answer to the |
| 11:09:18 | 4 | declarations that I was furnished with.  Yes, I have asked. |
| 11:09:23 | 5 | Q.  Did you attempt to log into 1, 2, 3 -- |
| 11:09:25 | 6 | A.  I have not.  I was told explicitly not to try to access any |
| 11:09:30 | 7 | bank records or try to access 1, 2, 3 because I was not allowed |
| 11:09:36 | 8 | to and abided by what I was told by the receiver. |
| 11:09:39 | 9 | Q.  You mentioned a company call Senior Advantage of Wisconsin? |
| 11:09:43 | 10 | A.  Yes. |
| 11:09:43 | 11 | Q.  That is actually doing business as the Health Center, right? |
| 11:09:46 | 12 | A.  No, sir.  This is a corporation with -- as a d/b/a the |
| 11:09:50 | 13 | Health Center, so the Health Center is underneath Senior |
| 11:09:55 | 14 | Advantage of Wisconsin as a d/b/a. |
| 11:09:59 | 15 | Q.  So who owns Health Center? |
| 11:10:01 | 16 | A.  I do. |
| 11:10:01 | 17 | Q.  Where is it incorporated? |
| 11:10:04 | 18 | A.  Pardon? |
| | 19 | Q.  Where -- |
| 11:10:04 | 20 | A.  It is not incorporated.  It is a d/b/a under Senior |
| 11:10:08 | 21 | Advantage of Wisconsin. |
| 11:10:09 | 22 | Q.  Where is Senior Advantage of Wisconsin incorporated? |
| 11:10:11 | 23 | A.  Wisconsin. |
| 11:10:13 | 24 | Q.  And you are the sole owner? |
| 11:10:14 | 25 | A.  Yes, sir. |

Kieper - Cross

82

| | | |
|---|---|---|
| 11:10:15 | 1 | Q.  And it operates in the same premises as Tri-Resource Group |
| 11:10:17 | 2 | and Partners in Health Care, correct? |
| 11:10:19 | 3 | A.  If you are talking about the same physical location, yes, |
| 11:10:22 | 4 | sir. |
| 11:10:22 | 5 | Q.  And every person who you say is getting the prescription |
| 11:10:27 | 6 | drug benefit or the medical mediation benefit, each and every |
| 11:10:31 | 7 | one of those consumers came through the door by getting sold the |
| 11:10:35 | 8 | medical discount card program; isn't that correct? |
| 11:10:37 | 9 | A.  No, it was not sold as a medical discount card.  We don't |
| 11:10:41 | 10 | sell medical discount cards.  If you all -- the medical -- we |
| 11:10:45 | 11 | sell an advantage health savings program.  Our presentation is |
| 11:10:49 | 12 | based off of a lot of benefits or services, if you will, not a |
| 11:10:54 | 13 | medical discount card. |
| 11:10:55 | 14 | Q.  The point much my question really is:  Anybody who is taking |
| 11:10:59 | 15 | advantage of these price mediations either for prescription |
| 11:11:02 | 16 | drugs or medical care, they got through the door by getting that |
| 11:11:05 | 17 | package that you just mentioned? |
| 11:11:07 | 18 | A.  No, that is not a true statement. |
| 11:11:08 | 19 | Q.  Then where did they come from? |
| 11:11:09 | 20 | A.  Because when we do our marketing, we will buy opt-in data of |
| 11:11:16 | 21 | people taking two or more medications a day and we solicit -- |
| 11:11:22 | 22 | and you will see in those numbers it says the premium RX plan, |
| 11:11:27 | 23 | those are people that only bought prescription drug services. |
| 11:11:31 | 24 | That was what they needed and that is what they were sold. |
| 11:11:33 | 25 | You will see in there we also do the telemedicine |

Kieper - Cross

83

| | | |
|---|---|---|
| 11:11:36 | 1 | prescription drug services by themselves.  That is what they |
| 11:11:40 | 2 | needed and that is what they were enrolled in, not a discount |
| 11:11:43 | 3 | card plan, sir. |
| 11:11:44 | 4 | Q.  But who sold that program to those consumers? |
| 11:11:46 | 5 | A.  We did. |
| 11:11:48 | 6 | Q.  Which entity? |
| 11:11:49 | 7 | A.  I can't tell you unless you let me into 1, 2, 3.  I can |
| 11:11:52 | 8 | identify every one of them.  I can give you by name what each |
| 11:11:56 | 9 | individual enrolled in. |
| 11:11:57 | 10 | Q.  Does Tri-Resources Group sell anything? |
| 11:12:00 | 11 | A.  No, it does not, sir. |
| 11:12:00 | 12 | Q.  Does Partners in Health Care sell anything? |
| 11:12:05 | 13 | A.  No, it does not, sir. |
| 11:12:05 | 14 | Q.  Therefore there is only one entity that you control that |
| 11:12:07 | 15 | sells these plans; isn't that correct? |
| 11:12:08 | 16 | A.  No, sir.  Well, that I personally control, yes, which is the |
| 11:12:10 | 17 | Health Center. |
| 11:12:11 | 18 | MR. IVENS:  I have no further questions, Your Honor. |
| 11:12:13 | 19 | THE COURT:  All right.  Anything further from this |
| 11:12:13 | 20 | witness.  All right.  Mr. Kieper, you can step down. |
| 11:12:18 | 21 | THE WITNESS:  Thank you, sir. |
| 11:12:19 | 22 | THE COURT:  Any other witnesses? |
| 11:12:25 | 23 | MR. GRUMER:  No, sir. |
| 11:12:26 | 24 | MR. ROGOW:  No, sir. |
| 11:12:27 | 25 | THE COURT:  All right.  We have been here for two |

Kieper - Cross

84

| | | |
|---|---|---|
| 11:12:28 | 1 | hours.  Let's take a 10-minute break.  We will come back and |
| 11:12:33 | 2 | hear arguments.  Okay. |
| 11:12:36 | 3 | [There was a short recess taken at 11:12 a.m.] |
| 11:23:49 | 4 | THE COURT:  Welcome back everyone and please be seated. |
| 11:23:49 | 5 | Let's start with Mr. Rogow's issue with his clients and |
| 11:23:53 | 6 | what is the FTC's position concerning how, if at all, we can |
| 11:23:58 | 7 | segregate Banestral after hearing from the witnesses? |
| 11:24:02 | 8 | MR. IVENS:  I think after hearing from the witnesses, |
| 11:24:04 | 9 | Your Honor, the Federal Trade Commission cannot agree that |
| 11:24:08 | 10 | Banestral is not unaffiliated with United Solutions Group. |
| 11:24:15 | 11 | There is still the common ownership.  Clearly Banestral pays the |
| 11:24:20 | 12 | rent. |
| 11:24:21 | 13 | THE COURT:  Yes.  It is clear there is some |
| 11:24:23 | 14 | affiliation, but the question is:  Should they be shut down? |
| 11:24:29 | 15 | MR. IVENS:  I think that is an issue for the |
| 11:24:31 | 16 | receivership.  I think the receiver should try to decide |
| 11:24:35 | 17 | whether, just like any other entity that is affiliated with |
| 11:24:38 | 18 | United Solutions Group, it can be carved out and can operate at |
| 11:24:43 | 19 | a profit legally. |
| 11:24:45 | 20 | We have evidence, and some of that came out during the |
| 11:24:50 | 21 | examination of Ms. Gomez, that this business operates with a |
| 11:24:56 | 22 | similar model of calling people, making misrepresentations with |
| 11:25:00 | 23 | respect to a travel business instead.  It has clearly been |
| 11:25:06 | 24 | sanctioned by the government of Colombia, although Walter Vargas |
| 11:25:10 | 25 | couldn't testify to what exactly that sanction meant. |

Kieper - Cross

85

| | | |
|---|---|---|
| 11:25:11 | 1 | THE COURT:  He did testify.  He testified exactly what |
| 11:25:13 | 2 | it meant.  Nobody else testified to something different from |
| 11:25:17 | 3 | that. |
| 11:25:20 | 4 | MR. IVENS:  To me, Your Honor, again I don't know that |
| 11:25:22 | 5 | it can be operated properly and legally and I think it is |
| 11:25:26 | 6 | affiliated. |
| 11:25:27 | 7 | THE COURT:  Mr. Russin, do you have a position on that? |
| 11:25:29 | 8 | MR. RUSSIN:  Your Honor, just so you understand the |
| 11:25:31 | 9 | background of -- |
| 11:25:31 | 10 | THE COURT:  You need to move the microphone closer. |
| 11:25:35 | 11 | MR. RUSSIN:  I will just come to the podium, Your |
| 11:25:41 | 12 | Honor. |
| 11:25:43 | 13 | In exercising our duty or authority under the TRO, our |
| 11:25:49 | 14 | view was very simply that the plain language of the TRO included |
| 11:25:55 | 15 | affiliates.  When we entered the premises it was clear that, at |
| 11:25:58 | 16 | a minimum, these entities were run out of the same location with |
| 11:26:01 | 17 | a tremendous amount of overlap.  So our view was that to the |
| 11:26:07 | 18 | extent that this Court intended that all entities affiliated |
| 11:26:12 | 19 | with United Solutions Group not continue with FTC violations |
| 11:26:18 | 20 | that had been found that supported the TRO, our view was that |
| 11:26:23 | 21 | we, as receiver, could not continue or allow it to continue. |
| 11:26:27 | 22 | THE COURT:  And I think that was a correct view in |
| 11:26:29 | 23 | light of the information that you had and the language in the -- |
| 11:26:32 | 24 | but now we have heard more explanation of what the son's |
| 11:26:35 | 25 | involvement was and why he was doing it and their agreement to |

Kieper - Cross

| | | |
|---|---|---|
| 11:26:38 | 1 | shut down the company that was the subject of the TRO. |
| 11:26:43 | 2 | MR. RUSSIN:  Yes, and let me be direct.  During that |
| 11:26:47 | 3 | entire communication, or during the last week -- it has only |
| 11:26:49 | 4 | been a week.  It has really been less than a week in terms of |
| 11:26:53 | 5 | business days.  We did have concerns about the fact that they |
| 11:26:56 | 6 | sold vacation plans and not health plans or health memberships, |
| 11:27:00 | 7 | so there was clearly a difference. |
| 11:27:01 | 8 | So what we suggested to Mr. Rogow -- who, by the way, |
| 11:27:05 | 9 | came in later last week as opposed to prior counsel and we |
| 11:27:14 | 10 | weren't getting a lot of information because they were concerned |
| 11:27:16 | 11 | about Fifth Amendment issues, I don't know why, but they were |
| 11:27:18 | 12 | concerned about that.  So what I simply suggested was give me a |
| 11:27:22 | 13 | plan of remediation.  Tell me what it is you are going to do |
| 11:27:25 | 14 | that will make sure that I, as a receiver, don't look foolish; |
| 11:27:29 | 15 | that you don't continue -- or we can monitor that you don't |
| 11:27:34 | 16 | continue to violate FTC regulations and I am happy to consider |
| 11:27:38 | 17 | it. |
| 11:27:38 | 18 | So I suppose that if they were to provide some plan, |
| 11:27:43 | 19 | some oversight, recording of sales conversations, whatever it is |
| 11:27:49 | 20 | that would be appropriate to ensure that no FTC violations are |
| 11:27:54 | 21 | occurring, I don't see any reason why they should not continue |
| 11:27:58 | 22 | in business.  The problem is that there is no way of knowing |
| 11:28:04 | 23 | precisely what it is their sale process is.  There is no way of |
| 11:28:10 | 24 | knowing what they are representing. |
| 11:28:11 | 25 | THE COURT:  But they weren't the subject of the TRO. |

Kieper - Cross

87

| | | |
|---|---|---|
| 11:28:13 | 1 | MR. RUSSIN:  You are right. |
| 11:28:15 | 2 | THE COURT:  Even if they are a legitimate business and |
| 11:28:17 | 3 | doing everything legitimately, but United is funnelling all |
| 11:28:21 | 4 | their money that they make to them, now there is a question, |
| 11:28:24 | 5 | okay, how are we going to recover money, we may need to go after |
| 11:28:28 | 6 | Banestral to get the money.  I didn't really when that that is |
| 11:28:32 | 7 | what happened. |
| 11:28:33 | 8 | You are talking about a company that is doing business |
| 11:28:36 | 9 | in the same physical location and one of those principals of |
| 11:28:39 | 10 | that business was also involved in the other one, but I just |
| 11:28:43 | 11 | don't -- I don't know. |
| 11:28:45 | 12 | MR. RUSSIN:  Your Honor, it is really Your Honor that |
| 11:28:47 | 13 | needs to determine whether you want a broader scope or not.  I |
| 11:28:50 | 14 | understand the difference between travel plans, et cetera.  Of |
| 11:28:53 | 15 | course, to the extent that they are not representing that air |
| 11:28:56 | 16 | fare is not included just as an example, that is a concern, but |
| 11:29:00 | 17 | again this TRO was directed at health plans.  It wasn't directed |
| 11:29:05 | 18 | at travel.  So again, I am at the discretion of the Court.  I |
| 11:29:08 | 19 | would do anything Your Honor wishes or nothing with regard to |
| 11:29:12 | 20 | Banestral. |
| 11:29:13 | 21 | THE COURT:  Is there any evidence that you have |
| 11:29:15 | 22 | uncovered that shows that any of the assets, the monies from |
| 11:29:20 | 23 | United, are being held by Banestral? |
| 11:29:23 | 24 | MR. RUSSIN:  We have been unable, actually, to discern |
| 11:29:28 | 25 | that because we have not been told or given cooperation one way |

Kieper - Cross

| | | |
|---|---|---|
| 11:29:32 | 1 | or the other with regard to how the accounts are held.  However, |
| 11:29:36 | 2 | if Mr. Rogow wishes to sit down with me, we open up the office |
| 11:29:41 | 3 | and we can see whether there is any due to from the two |
| 11:29:47 | 4 | companies, whether there is any funding of USG or by USG of |
| 11:29:53 | 5 | Banestral, whether money is owed one way or the other, I'm happy |
| 11:29:56 | 6 | to consider those issues. |
| 11:29:57 | 7 | Of course, it has only been a few business days so |
| 11:30:00 | 8 | whatever mirroring has occurred we haven't been able to analyze |
| 11:30:05 | 9 | to this point to determine whether there is -- I am sure there |
| 11:30:07 | 10 | are separate accounts, most likely, but that is not the |
| 11:30:09 | 11 | question.  The question is whether there are funds flowing back |
| 11:30:13 | 12 | and forth and I don't know the answer to that. |
| 11:30:14 | 13 | THE COURT:  Where is your suggestion, Mr. Rogow? |
| 11:30:16 | 14 | MR. ROGOW:  My suggestion is that Banestral is not an |
| 11:30:19 | 15 | affiliate.  The evidence is clear Banestral is not an affiliate. |
| 11:30:23 | 16 | Mr. Russin is right.  When I came in, we gave them the |
| 11:30:27 | 17 | information.  We told them we were shutting down United.  I |
| 11:30:30 | 18 | don't think there is any need for a restraining order with |
| 11:30:33 | 19 | regard to United.  I think this is a matter -- |
| 11:30:36 | 20 | THE COURT:  You mean with regard to Banestral? |
| 11:30:38 | 21 | MR. ROGOW:  I want to say United.  This is a hearing on |
| 11:30:41 | 22 | preliminary injunction with regard to United. |
| 11:30:45 | 23 | THE COURT:  Right. |
| 11:30:45 | 24 | MR. ROGOW:  So I am saying with regard to that, given |
| 11:30:48 | 25 | the fact that we are not operating the company any more, that |

Kieper - Cross

89

| | | |
|---|---|---|
| 11:30:52 | 1 | issue is moot, although we do need the receiver to wind it down |
| 11:30:56 | 2 | because that is all that is going to happen.  It will be wound |
| 11:30:58 | 3 | down.  Whatever the monies are in the accounts they will take a |
| 11:31:01 | 4 | look at and that is all. |
| 11:31:02 | 5 | Banestral needs -- it needs to be made clear that |
| 11:31:06 | 6 | Banestral is not an affiliate and that Banestral is free to |
| 11:31:12 | 7 | operate and be able to go back, get access to its servers. |
| 11:31:18 | 8 | There is no problem about sharing with them what the accounts |
| 11:31:18 | 9 | are.  There has never been any secret about that.  There is very |
| 11:31:20 | 10 | little money in the accounts, but that's fine. |
| 11:31:23 | 11 | So I just -- what I would like is the Court to deny the |
| 11:31:28 | 12 | preliminary injunction against United.  There actually has been |
| 11:31:33 | 13 | no evidence about United in terms of its operation or -- |
| 11:31:38 | 14 | THE COURT:  Because you stipulated. |
| 11:31:40 | 15 | MR. ROGOW:  I stipulated that we are shutting down and |
| 11:31:42 | 16 | there is no need to do anything, so I agree.  Basically I am |
| 11:31:46 | 17 | saying that the case against United -- |
| 11:31:49 | 18 | THE COURT:  If she leaves court today and says, thank |
| 11:31:51 | 19 | you, Mr. Rogow, and then tomorrow starts the business, there is |
| 11:31:55 | 20 | no order that is in effect that she is violating.  Basically, |
| 11:32:00 | 21 | you are -- you are basically agreeing to the injunction by |
| 11:32:03 | 22 | saying she is going to stop operating the business. |
| 11:32:06 | 23 | MR. ROGOW:  That's right.  I am agreeing to the |
| 11:32:07 | 24 | injunction.  Without any of all these findings that they need to |
| 11:32:10 | 25 | make, we are in agreement that United shall be enjoined, that |

Kieper - Cross

90

| | | |
|---|---|---|
| 11:32:15 | 1 | the receiver -- |
| 11:32:16 | 2 | THE COURT:  I am sure you and Ms. Ivens and Mr. Brown |
| 11:32:24 | 3 | can come up with some language that enters an injunction without |
| 11:32:25 | 4 | agreeing to any of the underlying reasons, just saying we agree |
| 11:32:26 | 5 | to the relief that the FTC is seeking without agreeing to any of |
| 11:32:31 | 6 | the factual assertions.  That takes care of United. |
| 11:32:34 | 7 | MR. ROGOW:  Exactly.  Okay. |
| 11:32:35 | 8 | THE COURT:  But as to Banestral -- |
| 11:32:37 | 9 | MR. ROGOW:  And a finding from the Court that Banestral |
| 11:32:40 | 10 | is not an affiliate of United and that Banestral is free to |
| 11:32:44 | 11 | operate.  This discussion about Banestral's marketing in |
| 11:32:48 | 12 | Colombia is completely irrelevant to anything here.  This |
| 11:32:52 | 13 | lawsuit was not against Banestral.  Banestral just happens to |
| 11:32:55 | 14 | be -- |
| 11:32:56 | 15 | THE COURT:  To me it is an affiliate.  The question is |
| 11:32:58 | 16 | whether it is an affiliate that needs to have some Court |
| 11:33:01 | 17 | intervention. |
| 11:33:02 | 18 | MR. ROGOW:  And the answer is no.  The answer is no. |
| 11:33:05 | 19 | THE COURT:  Okay. |
| 11:33:05 | 20 | MR. ROGOW:  And so the order should make it clear that |
| 11:33:07 | 21 | Banestral is not precluded from conducting its business, should |
| 11:33:12 | 22 | have access to its business operations and -- |
| 11:33:16 | 23 | THE COURT:  How can we address Mr. Russin's concerns |
| 11:33:20 | 24 | about getting the bank records to see that there is no money |
| 11:33:22 | 25 | that -- |

Kieper - Cross

91

| | | |
|---|---|---|
| 11:33:23 | 1 | MR. ROGOW:  The court order can say that the bank |
| 11:33:26 | 2 | records shall be provided so the receiver shall have full |
| 11:33:28 | 3 | knowledge of what the assets are of Banestral and then the |
| 11:33:32 | 4 | receiver at some point, I am sure, when he sees these will |
| 11:33:35 | 5 | inform the Court that there has been no money sent from United |
| 11:33:39 | 6 | to Banestral. |
| 11:33:40 | 7 | THE COURT:  How quickly can we do that?  It is you |
| 11:33:42 | 8 | 11:30 on Thursday.  Is that something that can be done today and |
| 11:33:46 | 9 | tomorrow? |
| 11:33:47 | 10 | MR. ROGOW:  I hope today and tomorrow.  My thought |
| 11:33:49 | 11 | about this was I needed to get it resolved soon because I am |
| 11:33:53 | 12 | about to go to Africa so I want to get it done. |
| 11:33:55 | 13 | THE COURT:  When are you leaving? |
| 11:33:57 | 14 | MR. ROGOW:  I leave on the 10th, but I have an argument |
| 11:34:00 | 15 | here so the next two days I am kind of tied up, but we can get |
| 11:34:04 | 16 | it done.  I have a paralegal to work with.  Ms. Vargas is a |
| 11:34:08 | 17 | graduate -- |
| 11:34:09 | 18 | THE COURT:  What argument do you have here? |
| 11:34:12 | 19 | MR. ROGOW:  I have the Wachovia, Wells Fargo argument |
| 11:34:16 | 20 | on the bank overdraft case in the Court of Appeals on Tuesday |
| 11:34:18 | 21 | and then I fly right after that. |
| 11:34:19 | 22 | THE COURT:  Here is what I am going to do.  On this |
| 11:34:22 | 23 | case, on this part of the case involving you -- your clients, I |
| 11:34:25 | 24 | am going to set a hearing at nine o'clock on Monday, the 8th, |
| 11:34:31 | 25 | with the hope that there won't be a hearing.  So today and |

Kieper - Cross

92

| | | |
|---|---|---|
| 11:34:34 | 1 | tomorrow you and Mr. Russin can get together and if you can |
| 11:34:38 | 2 | agree, okay, to -- if you can satisfy him that there was no |
| 11:34:45 | 3 | money going from United to Banestral, we can just enter an |
| 11:34:50 | 4 | agreed order -- as to United, you and Mr. Ivens and Mr. Brown |
| 11:34:54 | 5 | can enter an agreed order today and come up with language that |
| 11:34:58 | 6 | is satisfactory to both of you, with Mr. Russin and you.  If you |
| 11:35:03 | 7 | can get me an order by sometime tomorrow then we can cancel the |
| 11:35:05 | 8 | hearing Monday. |
| 11:35:06 | 9 | MR. ROGOW:  Can we get Banestral in operation in the |
| 11:35:09 | 10 | meantime?  If the only issue with Mr. Russin is the issue of |
| 11:35:13 | 11 | monies, the question of shutting Banestral down for another day |
| 11:35:17 | 12 | or two is -- |
| 11:35:17 | 13 | THE COURT:  I am saying if you want to go with him this |
| 11:35:20 | 14 | afternoon and he tells me this afternoon that he has looked at |
| 11:35:23 | 15 | the bank records and it is okay to let them go back in business, |
| 11:35:27 | 16 | give me an order and I will sign it as soon as I get it. |
| 11:35:30 | 17 | MR. RUSSIN:  Your Honor, two clarifications I just want |
| 11:35:33 | 18 | to make sure of. |
| 11:35:35 | 19 | THE COURT:  Okay. |
| 11:35:36 | 20 | MR. RUSSIN:  One is that whatever order we would enter |
| 11:35:40 | 21 | into, or the Court would enter would clearly state that |
| 11:35:43 | 22 | Banestral is an affiliate of USG -- |
| 11:35:46 | 23 | THE COURT:  I just said that. |
| 11:35:47 | 24 | MR. RUSSIN:  -- but that Banestral would not be |
| 11:35:50 | 25 | included in the TRO or the preliminary injunction and the other |

Kieper - Cross

93

| | | |
|---|---|---|
| 11:35:52 | 1 | is a matter of cost.  Obviously the efforts of the receiver and |
| 11:35:58 | 2 | I am assuming the FTC were not inexpensive.  We spent a |
| 11:36:03 | 3 | considerable amount of time over the last week and because |
| 11:36:06 | 4 | Banestral was under the TRO, I just want to make it clear that |
| 11:36:11 | 5 | there has to be some review by this Court as to who should pay |
| 11:36:15 | 6 | the associated expenses associated with this effort that |
| 11:36:18 | 7 | Banestral was drawn into because it was an affiliate of United |
| 11:36:21 | 8 | Solutions Group.  I just want to hold that issue open. |
| 11:36:24 | 9 | THE COURT:  Just reserve jurisdiction to determine |
| 11:36:30 | 10 | what, if any, part of the fee should be assessed against them? |
| 11:36:33 | 11 | MR. RUSSIN:  Sure. |
| 11:36:34 | 12 | THE COURT:  A finding that they would have to pay |
| 11:36:38 | 13 | anything, just reserve jurisdiction in case that is an issue. |
| 11:36:40 | 14 | MR. RUSSIN:  Exactly, Your Honor.  That is my main two |
| 11:36:41 | 15 | concerns at this point, but I am happy to work as quickly as |
| 11:36:45 | 16 | Mr. Rogow's group can work to try to get Banestral back in |
| 11:36:49 | 17 | operation, assuming that the FTC doesn't have more to say about |
| 11:36:52 | 18 | this in front of Your Honor.  Thank you. |
| 11:36:55 | 19 | MR. ROGOW:  I think we have an understanding, Your |
| 11:37:02 | 20 | Honor. |
| 11:37:02 | 21 | THE COURT:  Okay.  Let's take up the issue involving |
| 11:37:04 | 22 | Mr. Kieper and Partners in Health.  Just looking at my notes |
| 11:37:14 | 23 | from the very beginning this morning, there are several things |
| 11:37:15 | 24 | that you wanted.  One of them was access to copies of the |
| 11:37:21 | 25 | records of the company.  You said they have made duplicates. |

Kieper - Cross

94

| | | |
|---|---|---|
| 11:37:25 | 1 | What about that, Mr. Ivens and Mr. Brown? |
| 11:37:31 | 2 | MR. IVENS:  Your Honor, Paragraph 23 of the TRO gives |
| 11:37:34 | 3 | the receiver the opportunity to let anybody -- not anybody, |
| 11:37:38 | 4 | parties into the premises to review records.  By my |
| 11:37:42 | 5 | understanding, the receiver has not allowed the defendants to go |
| 11:37:45 | 6 | back into the premises because he doesn't want them to continue |
| 11:37:49 | 7 | to perpetrate a fraud.  In the Federal Trade Commission's eyes |
| 11:37:53 | 8 | every consumer who was given a representation that they were |
| 11:37:56 | 9 | buying health insurance and did not get health insurance was |
| 11:37:59 | 10 | defrauded. |
| 11:38:00 | 11 | THE COURT:  The issue is just getting copies.  That is |
| 11:38:01 | 12 | a finite issue.  Any problem with Mr. Kieper or his company |
| 11:38:06 | 13 | getting copies of records that he wants? |
| 11:38:07 | 14 | MR. IVENS:  The Federal Trade Commission has no |
| 11:38:09 | 15 | objection to that whatsoever, Your Honor. |
| 11:38:11 | 16 | THE COURT:  Okay.  Mr. Russin, what is your position? |
| 11:38:12 | 17 | MR. RUSSIN:  Absolutely no objection to allowing them |
| 11:38:15 | 18 | back in to get copies of documents, not a problem. |
| 11:38:19 | 19 | THE COURT:  How is it going to be done though? |
| 11:38:22 | 20 | MR. RUSSIN:  We have local counsel in Wisconsin who we |
| 11:38:26 | 21 | can have oversee entry into the premises.  We would need to, |
| 11:38:31 | 22 | obviously, reinvigorate the computers so that they may enter |
| 11:38:36 | 23 | back into the computer system. |
| 11:38:39 | 24 | THE COURT:  Mr. Grumer, are you talking about making |
| 11:38:41 | 25 | copies of computer records so you can just bring in thumb drives |

Kieper - Cross

95

| | | |
|---|---|---|
| 11:38:44 | 1 | or disks or external hard drives to make copies or papers also? |
| 11:38:48 | 2 | MR. GRUMER:  I don't know enough about the Enrollment |
| 11:38:50 | 3 | 1-2-3 program to determine whether it can be thumb drived or |
| 11:38:57 | 4 | duplicated.  I don't know enough about the proprietary nature, |
| 11:39:03 | 5 | for example, a crude example perhaps, but Quick Books -- if you |
| 11:39:07 | 6 | are given a Quick Books data file without the program which is |
| 11:39:11 | 7 | itself proprietary, having the data is insufficient.  So I |
| 11:39:18 | 8 | suspect the Enrollment program must operate in order to access |
| 11:39:22 | 9 | the data. |
| 11:39:23 | 10 | THE COURT:  Let's put that issue aside because if I am |
| 11:39:26 | 11 | going to allow him to run the business, then maybe he needs to |
| 11:39:30 | 12 | have access to that program.  If I am not going to allow him to |
| 11:39:33 | 13 | run the business he may not need it.  In terms of the other |
| 11:39:36 | 14 | documents or other computer information, I am going to allow you |
| 11:39:41 | 15 | to make arrangements through the receiver and the receiver's |
| 11:39:44 | 16 | local counsel in Wisconsin to enter the premises upon reasonable |
| 11:39:47 | 17 | notice and make copies. |
| 11:39:49 | 18 | MR. GRUMER:  Thank you, sir. |
| 11:39:50 | 19 | MR. RUSSIN:  Just so Your Honor knows, we do have |
| 11:39:54 | 20 | information that has already been copied and we can transmit |
| 11:39:59 | 21 | that information, which I just got today actually, to Mr. Grumer |
| 11:40:03 | 22 | and his client of everything that we copied so that they have it |
| 11:40:06 | 23 | and that includes general ledgers of each of the three entities |
| 11:40:11 | 24 | that were operating out of the Wisconsin location. |
| 11:40:14 | 25 | THE COURT:  Okay.  Then the second issue is your claim, |

Kieper - Cross

96

| | | |
|---|---|---|
| 11:40:16 | 1 | Mr. Grumer, that this is a legitimate business and you want to |
| 11:40:19 | 2 | service existing customers.  Let me hear your argument about |
| 11:40:23 | 3 | that. |
| 11:40:23 | 4 | MR. GRUMER:  Exhibit 37 which plaintiff moved into |
| 11:40:28 | 5 | evidence demonstrates a certain reality and that is that |
| 11:40:35 | 6 | regardless of their date of enrollment, regardless of who |
| 11:40:39 | 7 | enrolled them, there are currently active 1,746 members.  The |
| 11:40:49 | 8 | testimony, unrebutted, by Mr. Kieper was that they were fielding |
| 11:40:54 | 9 | 150 calls per week.  That is 600 calls per month. |
| 11:41:00 | 10 | THE COURT:  I thought it was 150 calls a day. |
| 11:41:02 | 11 | MR. GRUMER:  A day.  All the better.  Okay. |
| 11:41:06 | 12 | THE COURT:  Yeah.  Go ahead. |
| 11:41:07 | 13 | MR. GRUMER:  You are right, Your Honor.  You have a |
| 11:41:09 | 14 | better recollection than we put it together.  So the people that |
| 11:41:16 | 15 | enrolled and are still active obviously are active |
| 11:41:20 | 16 | participants -- |
| 11:41:21 | 17 | THE COURT:  Right. |
| 11:41:21 | 18 | MR. GRUMER:  -- and they need to be serviced. |
| 11:41:25 | 19 | THE COURT:  Okay.  My question to you is:  Why do you |
| 11:41:28 | 20 | believe this is a legitimate business in spite of all the other |
| 11:41:34 | 21 | documents that I have reviewed? |
| 11:41:35 | 22 | MR. GRUMER:  There is nothing that says Mr. Kieper's |
| 11:41:41 | 23 | plan is illegal.  There is nothing that prohibits the enrollment |
| 11:41:48 | 24 | in telemed, Tell a Doc, the obtaining of mediation for disputes |
| 11:41:55 | 25 | over medical bills, the direction of patients to low cost |

Kieper - Cross

97

| 11:42:02 | 1 | clinics.  There is nothing that is prohibited. |

11:42:05   2       What is prohibited is the selling of insurance without

11:42:12   3   license and proper registration.  This is not insurance by

11:42:17   4   definition.  It is not the pooling of money and so -- but what

11:42:24   5   we acknowledge is wrong is the representation by anybody that

11:42:30   6   this is insurance, so that's why we started out with this is a

11:42:35   7   two-step phase.  Phase number 1 should be the people that are

11:42:39   8   active and the people that are calling and are participating

11:42:44   9   need to be serviced.  That's their obligation.

11:42:48  10       Otherwise, another 1,700 people will withdraw and you

11:42:51  11   will have demand for refunds and the limited resources of the

11:42:55  12   funds that have been frozen will be exhausted just in refunding

11:42:59  13   these people because the receiver has prohibited the operation

11:43:03  14   of a business that was not named in this lawsuit, Tri-Resource,

11:43:08  15   and not a single allegation of Tri-Resource's activities was --

11:43:16  16       THE COURT:  Isn't it named as an affiliate?

11:43:18  17       MR. GRUMER:  It would be identified as an affiliate,

11:43:22  18   however there is not a single complaint on the service side.  As

11:43:26  19   we reviewed the affidavits, even the live testimony of the

11:43:30  20   witnesses here today, there is no indication that, A,

11:43:34  21   Tri-Resource Group solicits, and we have already consented to

11:43:38  22   know further solicitation; and, B, there is no indicia that

11:43:44  23   Tri-Resource Group is doing anything improper.  There is not

11:43:48  24   even a single factual statement that -- yes, it is an affiliate

11:43:53  25   in the sense that it provides -- it is the service arm.

Kieper - Cross

98

| | | |
|---|---|---|
| 11:43:57 | 1 | THE COURT:  Okay. |
| 11:43:58 | 2 | MR. GRUMER:  Now, at some point we are going to come |
| 11:44:03 | 3 | back in and say to the Court we now have in place an FTC |
| 11:44:10 | 4 | approved supervisor, supervised process, supervised scripts.  We |
| 11:44:17 | 5 | have run it all the by the receiver and we also have full |
| 11:44:22 | 6 | compliance so that in the event of any violation, you are going |
| 11:44:29 | 7 | to have a recording of it.  You can shut us down.  You can come |
| 11:44:32 | 8 | back down -- I am sure it will be a zero tolerance policy from |
| 11:44:37 | 9 | the Court if the Wisconsin call room violates any such item, but |
| 11:44:41 | 10 | in terms of today, we wish to have Tri-Resource back and |
| 11:44:49 | 11 | functioning. |
| 11:44:50 | 12 | We wish to have access to, of course with full |
| 11:44:55 | 13 | disclosure, however it may work, the funds that have been frozen |
| 11:44:59 | 14 | so that we can retain the professionals necessary to put |
| 11:45:05 | 15 | together the appropriate plan with appropriate controls, but |
| 11:45:10 | 16 | other than that, there will be no solicitation until approved by |
| 11:45:17 | 17 | the Court.  Mr. Kieper, the receiver in his -- and Mr. Russin |
| 11:45:23 | 18 | and I know each other for a long time.  The receiver, for |
| 11:45:27 | 19 | example, took his ex-wife's Mercedes title and he has to go get |
| 11:45:33 | 20 | the car serviced for his ex-wife or face other issues in his |
| 11:45:37 | 21 | divorce.  We need the title back.  We need -- |
| 11:45:40 | 22 | THE COURT:  Why do you need title to a car to get |
| 11:45:43 | 23 | repairs?  I have never had anybody ask me for a title. |
| 11:45:46 | 24 | MR. GRUMER:  We will return it upon -- he doesn't -- he |
| 11:45:48 | 25 | has to show he is entitled.  That is literally the explanation I |

Kieper - Cross

99

```
11:45:54    1   have been given, but this is minutia for you and I, Judge, and
11:46:00    2   for this Court but --
11:46:01    3           THE COURT:  You still haven't answered my question.
11:46:03    4   That makes no sense.  I have never seen a repair place -- I take
11:46:06    5   my car to Jiffy Lube.  I've never had them say, look, we can't
11:46:11    6   change your oil unless I see the title to your car.
11:46:13    7           MR. KIEPER:  Your Honor, because I am not the owner of
11:46:15    8   the car, they have to show that I have the title to have the car
11:46:17    9   serviced.  My ex-wife is the owner.  She lives in Florida now.
11:46:22   10           THE COURT:  What company requires you to show title?
           11           MR. KIEPER:  Ferguson Mercedes-Benz in Appleton,
11:46:31   12   Wisconsin.  You can call them, but that's what is required of
11:46:32   13   me.  I have no problem --
11:46:34   14           THE COURT:  I am sure Mr. Russin can fax them over a
11:46:36   15   scan and send a copy of the title to them so they will do the
11:46:41   16   repairs.
11:46:41   17           MR. KIEPER:  They won't take a fax.
11:46:44   18           MR. RUSSIN:  Just so Your Honor knows, all of these
11:46:45   19   items are in the safekeeping of our local counsel in Wisconsin.
11:46:48   20   We have access to them but, you know --
11:46:51   21           THE COURT:  Okay.  That makes no sense.
11:46:53   22           MR. GRUMER:  I understand that.
11:46:55   23           THE COURT:  You have a copy of the title to your car
11:46:58   24   and they are not going to fix your car unless you give them the
11:47:01   25   original title?
```

Kieper - Cross

100

| | | |
|---|---|---|
| 11:47:03 | 1 | MR. KIEPER:  That is what they told me when I took it |
| 11:47:05 | 2 | three weeks ago, sir. |
| 11:47:06 | 3 | THE COURT:  Okay.  What is the next thing? |
| 11:47:10 | 4 | MR. GRUMER:  So we agree to comply with all FTC |
| 11:47:14 | 5 | requirements.  We will not renew solicitations until a plan is |
| 11:47:21 | 6 | approved and in place and the plan will, of course, have to be |
| 11:47:26 | 7 | reviewed by the receiver, but this is where the fork in the road |
| 11:47:35 | 8 | occurs. |
| 11:47:36 | 9 | We believe that the Tri-Resource Group services are |
| 11:47:43 | 10 | legal and FTC and Mr. Russin believe that the services are being |
| 11:47:51 | 11 | provided, for want of a better analogy, as fruit of a poisonous |
| 11:47:55 | 12 | tree, that these people were improperly solicited into the plan. |
| 11:48:00 | 13 | So we would suggest, A, that if any of these people |
| 11:48:05 | 14 | request a refund, that we immediately process it and notify the |
| 11:48:11 | 15 | Court as to how many of the 1,746 active participants seek a |
| 11:48:18 | 16 | refund and request permission to access the money that is frozen |
| 11:48:26 | 17 | of Partners in Health Care's money to provide these refunds and |
| 11:48:30 | 18 | will set up whatever controls over the telephone bank if they |
| 11:48:35 | 19 | want, every call recorded of Tri-Resource Group, they can |
| 11:48:38 | 20 | certainly have that. |
| 11:48:40 | 21 | So the two-step phase that we would request is allow |
| 11:48:44 | 22 | Tri-Resource Group to reopen Monday and allow much like -- as |
| 11:48:53 | 23 | Mr. Russin is a Bankruptcy Court practitioner, much like a |
| 11:48:59 | 24 | Bankruptcy Court, we would go in with an operating plan and come |
| 11:49:03 | 25 | to him with here is what we need some money for since he has |

September 4, 2014

Kieper - Cross

101

| | | |
|---|---|---|
| 11:49:08 | 1 | control over Partners in Health Care's bank account. |
| 11:49:12 | 2 | And then, once these people are being serviced, I think |
| 11:49:17 | 3 | we can have -- and I am speaking for third-party professionals |
| 11:49:23 | 4 | that I don't know -- but I would imagine that we could have a |
| 11:49:27 | 5 | plan to the receiver within ten days that would -- if |
| 11:49:31 | 6 | solicitation will be permitted in the future, it will be |
| 11:49:36 | 7 | submitted and approved by the Court.  It will not occur in the |
| 11:49:40 | 8 | absence of Court approval. |
| 11:49:41 | 9 | THE COURT:  Okay. |
| 11:49:44 | 10 | MR. GRUMER:  That is the division as we envision it |
| 11:49:48 | 11 | and, frankly, Mr. Kieper was already well on his way to doing it |
| 11:49:57 | 12 | himself and it is unfortunate that this has come down this way, |
| 11:50:02 | 13 | but it is going to happen much faster. |
| 11:50:04 | 14 | THE COURT:  Okay.  Let me say now, having heard all the |
| 11:50:09 | 15 | evidence today and reviewing all the submissions of the FTC, I |
| 11:50:13 | 16 | find that Partners in Health Care was not operating legitimately |
| 11:50:18 | 17 | and that the vast number of the customers were fraudulently led |
| 11:50:26 | 18 | to buy the product. |
| 11:50:28 | 19 | So, Mr. Ivens and Mr. Brown, whoever wants to answer |
| 11:50:31 | 20 | first on behalf of the FTC, there are two distinct issues here |
| 11:50:35 | 21 | yet to be resolved and that is, number one, what about |
| 11:50:41 | 22 | Mr. Grumer's suggestion that some type of compliance remediation |
| 11:50:48 | 23 | program be set up to allow them to solicit clients in the |
| 11:50:53 | 24 | future; and, secondly, what do we do about the existing |
| 11:50:59 | 25 | customers irrespective of that first issue. |

Kieper - Cross

102

| 11:51:00 | 1 | Let's start with the first issue.  Do you agree that if |
| 11:51:03 | 2 | they do some remediations, they can go back in business or do |
| 11:51:09 | 3 | you want them to be shut down? |
| 11:51:11 | 4 | MR. IVENS:  Your Honor, we want them to be shut down. |
| 11:51:13 | 5 | There is not enough money to compensate all the consumers that |
| 11:51:18 | 6 | have already been defrauded.  As I mentioned earlier, even the |
| 11:51:23 | 7 | people who do continue to pay, we haven't had time to ascertain |
| 11:51:26 | 8 | why there are 1,700 -- |
| 11:51:27 | 9 | THE COURT:  That is a separate issue. |
| 11:51:29 | 10 | MR. IVENS:  Yes.  We don't believe that this company |
| 11:51:32 | 11 | should continue to exist and we will be seeking, when we file |
| 11:51:35 | 12 | our summary judgment papers, to have Mr. Kieper banned from this |
| 11:51:40 | 13 | industry.  I don't think he can do it legitimately, so that is |
| 11:51:42 | 14 | the first issue. |
| 11:51:43 | 15 | THE COURT:  Okay.  And what about the existing |
| 11:51:45 | 16 | customers?  Is that an accurate number, the 1,700 or so existing |
| 11:51:51 | 17 | customers? |
| 11:51:51 | 18 | MR. IVENS:  From the initial reports that we have been |
| 11:51:54 | 19 | able to run, it seems overstated but, again, we haven't done -- |
| 11:51:58 | 20 | THE COURT:  Let's assume it's -- whether it is ten |
| 11:52:00 | 21 | people or 1,000 people -- |
| 11:52:01 | 22 | MR. IVENS:  Your Honor -- |
| 11:52:03 | 23 | THE COURT:  -- what is going to happen with them? |
| 11:52:05 | 24 | MR. IVENS:  We believe they were defrauded in the first |
| 11:52:08 | 25 | instance.  They have done whatever they can to try to get some |

Kieper - Cross

| | | |
|---|---|---|
| 11:52:10 | 1 | benefit out of the program.  They should be given the |
| 11:52:12 | 2 | opportunity to cancel. |
| 11:52:13 | 3 | THE COURT:  How is that going to be done?  Is somebody |
| 11:52:17 | 4 | going to affirmatively reach out to each one of them and say, |
| 11:52:21 | 5 | here is what happened in court; there has been a finding by the |
| 11:52:24 | 6 | judge you can continue to pay the enrollment fee each month and |
| 11:52:28 | 7 | get the service if you want, but if you want to withdraw or |
| 11:52:31 | 8 | cancel you are allowed to do that, too? |
| 11:52:34 | 9 | MR. IVENS:  I wouldn't want to -- the Federal Trade |
| 11:52:37 | 10 | Commission's view is that they were defrauded in the first |
| 11:52:40 | 11 | instance.  I think every one of those contracts should be |
| 11:52:42 | 12 | canceled.  They shouldn't be billed any further and they should |
| 11:52:46 | 13 | be given a notice as to what happened in this case.  That is |
| 11:52:48 | 14 | what the Federal Trade Commission -- how we view the situation, |
| 11:52:51 | 15 | Your Honor. |
| 11:52:53 | 16 | If they are getting remediation services -- |
| 11:52:56 | 17 | THE COURT:  If I go to buy a car and I am told by the |
| 11:52:58 | 18 | seller this car -- it is a 1999 car, but it was driven by a |
| 11:53:04 | 19 | little old lady and only has 5,000 miles on it, and then I later |
| 11:53:08 | 20 | found out it had 50,000 miles, but I love the car, and somebody |
| 11:53:14 | 21 | comes to me and says, look, you were ripped off and we are |
| 11:53:16 | 22 | taking the car back from you, I might say no.  I understand |
| 11:53:19 | 23 | that, but I still want to keep the car. |
| 11:53:22 | 24 | So even if these people were fraudulently induced into |
| 11:53:27 | 25 | getting this program, if they are in the program and they like |

Kieper - Cross

104

| | | |
|---|---|---|
| 11:53:31 | 1 | it and want to keep it, we are depriving them of that |
| 11:53:33 | 2 | opportunity. |
| 11:53:34 | 3 | MR. IVENS:  Your Honor, I don't believe it is a |
| 11:53:36 | 4 | sustainable model.  The only reason that Partners in Health Care |
| 11:53:41 | 5 | was actually even able to pay for the employees that were doing |
| 11:53:44 | 6 | the prescription drug mediation and the medical benefit |
| 11:53:46 | 7 | mediation for all of those -- if there are 1,700, let's assume |
| 11:53:50 | 8 | there are -- was because they were getting so much money from |
| 11:53:52 | 9 | the other consumers who were being ripped off.  It was almost |
| 11:53:57 | 10 | like a Ponzi scheme in that respect. |
| 11:54:00 | 11 | I don't know that is a sustainable business model.  If |
| 11:54:03 | 12 | they were advertising medical mediation services and |
| 11:54:05 | 13 | prescription drug mediation services and they could actually |
| 11:54:07 | 14 | make a go of it, maybe I would -- |
| 11:54:08 | 15 | THE COURT:  It is not like the money is going to Blue |
| 11:54:12 | 16 | Cross and Blue Shield or something each month, so if we shut |
| 11:54:14 | 17 | down this company, they will just go on their merry way.  The |
| 11:54:17 | 18 | company has to get the money to continue to do what they are |
| 11:54:21 | 19 | doing to service them? |
| 11:54:23 | 20 | MR. IVENS:  I think those consumers will probably find |
| 11:54:25 | 21 | a better or a legitimate source to get prescription drug |
| 11:54:31 | 22 | mediation, for example from Warner Lambert or from Pfizer or |
| 11:54:36 | 23 | whatever else, self-help or legitimate business they can find to |
| 11:54:40 | 24 | replace the one that they were fraudulently induced into. |
| 11:54:43 | 25 | THE COURT:  What is the receiver's position on those |

| | | |
|---|---|---|
| 11:54:45 | 1 | two issues? |
| 11:54:49 | 2 | MR. RUSSIN:  Your Honor, first -- thank you, Your |
| 11:54:52 | 3 | Honor.  Let me comment on who we are talking about here so it is |
| 11:54:55 | 4 | very clear what entities we found operating in the premises. |
| 11:54:59 | 5 | There is Health Center.  Health Center is, as you |
| 11:55:02 | 6 | heard, a d/b/a of Senior Advantage.  That is the call center |
| 11:55:07 | 7 | that Mr. Kieper was building up since January to sell the plans. |
| 11:55:13 | 8 | Then there is PIHC, Partners in Health Care, or PIHC, |
| 11:55:19 | 9 | Inc., which is a seemingly separate entity that Tri-Resource is |
| 11:55:26 | 10 | clearly associated with.  Tri-Resource seems to be the umbrella |
| 11:55:29 | 11 | entity that is doing the administration, verification or |
| 11:55:34 | 12 | whatever of the plans that are sold. |
| 11:55:36 | 13 | Our view is that Tri-Resource, Senior Advantage and |
| 11:55:43 | 14 | PIHC, all of those entities are at stake within this temporary |
| 11:55:50 | 15 | restraining order operating together, essentially as one to run |
| 11:55:55 | 16 | this business. |
| 11:55:56 | 17 | Having said that, I do not see how it is possible from |
| 11:55:59 | 18 | a business perspective to service whatever customers exist |
| 11:56:07 | 19 | without an administrative operation going on of several people |
| 11:56:12 | 20 | and how that would be paid for.  I don't know what the revenue |
| 11:56:15 | 21 | source would be for that to the extent that there are customers |
| 11:56:19 | 22 | remaining that are still willing to pay.  I don't know that that |
| 11:56:22 | 23 | would be sufficient to cover the overhead. |
| 11:56:26 | 24 | There is a lease.  We have to pay, I think, $1,000 a |
| 11:56:31 | 25 | week for the lease.  There are administrative assistants, Deanna |

Kieper - Cross

106

| | | |
|---|---|---|
| 11:56:35 | 1 | Moore and Kasina Reganiter who are not selling anything and not |
| 11:56:42 | 2 | servicing customers that need their salary paid who, by the way, |
| 11:56:46 | 3 | were quite cooperative, and there are other folks that need to |
| 11:56:51 | 4 | be paid.  So I don't see where that revenue would come from. |
| 11:56:56 | 5 |       If Mr. Kieper could convince me or the Court that there |
| 11:57:00 | 6 | is a budget and they could have sufficient revenue to operate a |
| 11:57:04 | 7 | business, I guess we could see that, but I don't see that |
| 11:57:06 | 8 | because I believe, based on what we have seen, that again the |
| 11:57:10 | 9 | revenue source were the sales for the new customers for as long |
| 11:57:15 | 10 | as they remained, a month, two months, three months, until they |
| 11:57:20 | 11 | either sought a chargeback, a refund, or et cetera. |
| 11:57:24 | 12 |       Just Chris' forensic job, just so Your Honor |
| 11:57:28 | 13 | understands as he explained it to me, was to fight the |
| 11:57:32 | 14 | chargebacks so as to preserve as much money as possible that |
| 11:57:35 | 15 | might otherwise be taken away from the company. |
| 11:57:38 | 16 |       So when you combine all of these facts, I don't see it. |
| 11:57:42 | 17 | I am happy to be open and consider any plan they submit, but I |
| 11:57:46 | 18 | don't see it as being possible. |
| 11:57:48 | 19 |       The other alternative would be that we basically have a |
| 11:57:52 | 20 | claims process.  Let me go back for a moment.  The current |
| 11:58:01 | 21 | members have a choice if they are not getting their phone calls |
| 11:58:04 | 22 | answered.  They either can move on and file a claim, we can have |
| 11:58:07 | 23 | a claims process put in place for this receivership, or I |
| 11:58:12 | 24 | suppose if a notice is sent to everybody, they can call me and |
| 11:58:16 | 25 | they can tell us that they still want the services. |

Kieper - Cross

107

| | | |
|---|---|---|
| 11:58:20 | 1 | I am skeptical, it is not fact, it is not evidence, but |
| 11:58:23 | 2 | I am skeptical that anyone would do so if they had a clear |
| 11:58:29 | 3 | understanding of what they bought.  So I think, in my view, what |
| 11:58:34 | 4 | I have seen -- and again this is somewhat speculative and based |
| 11:58:39 | 5 | on limited information after a week, but our view is that I |
| 11:58:41 | 6 | don't see how this business can operate without continuing to |
| 11:58:46 | 7 | sell new memberships to service -- or to fund the operations. |
| 11:58:52 | 8 | THE COURT:  Okay. |
| 11:58:53 | 9 | MR. RUSSIN:  Was there another issue Your Honor wanted |
| 11:58:55 | 10 | me to address? |
| 11:58:56 | 11 | THE COURT:  No. |
| 11:58:57 | 12 | MR. RUSSIN:  Okay.  Thank you, Your Honor. |
| 11:58:58 | 13 | THE COURT:  All right.  So after considering -- do you |
| 11:59:00 | 14 | want to have the last word? |
| 11:59:03 | 15 | MR. GRUMER:  Just an observation, Your Honor, and that |
| 11:59:05 | 16 | is that the receiver's role has now become a business judgment |
| 11:59:11 | 17 | role and obviously Mr. Kieper is the one who has taken this risk |
| 11:59:18 | 18 | and Mr. Russin has now substituted his business judgment for |
| 11:59:24 | 19 | that of the entrepreneur who has funded and is backing this and |
| 11:59:30 | 20 | is financially the guarantor in this litigation of its |
| 11:59:36 | 21 | performance and operation. |
| 11:59:38 | 22 | So if he is going to shut down these 1,700 people, his |
| 11:59:45 | 23 | bond sure better reflect what is at stake here for everybody, |
| 11:59:49 | 24 | but we really think that the receiver's role is to operate the |
| 11:59:56 | 25 | enterprise, report to the Court, allow Mr. Kieper to operate and |

Kieper - Cross

108

| 12:00:02 | 1 | report to him, some sort of liaison as between the Court and the |
| 12:00:08 | 2 | entity, but it is his business judgment.  He is the entrepreneur |
| 12:00:14 | 3 | who set up this business.  He has been in the entry for 40 |
| 12:00:19 | 4 | years.  He thought he had a working plan.  He has learned and |
| 12:00:23 | 5 | will immediately -- he has learned that using third parties was |
| 12:00:26 | 6 | a disaster. |
| 12:00:28 | 7 | THE COURT:  Let me ask you a question.  I am not saying |
| 12:00:30 | 8 | this exists in this case, but every single Ponzi scheme that is |
| 12:00:34 | 9 | in existence, when a receiver comes in, doesn't that person make |
| 12:00:38 | 10 | a judgment that, hey, this is a Ponzi scheme, it can only |
| 12:00:42 | 11 | continue to stay in business by continuing to rip-off new |
| 12:00:47 | 12 | people?  Doesn't the person who was the Ponzi person to begin |
| 12:00:52 | 13 | with always say, hey, receiver, my business would have made it |
| 12:00:59 | 14 | except the receiver shut me down? |
| 12:01:01 | 15 | First of all, the receiver is not shutting anybody |
| 12:01:03 | 16 | down.  I am going to shut somebody down.  Okay.  I listened to |
| 12:01:04 | 17 | everybody, but if you think I am going to do something because |
| 12:01:07 | 18 | somebody else told me to do it, you haven't been paying |
| 12:01:10 | 19 | attention to me for the last 20 years as a judge.  Any decision |
| 12:01:14 | 20 | I make is my decision after considering everybody's input, one |
| 12:01:18 | 21 | of which is the receiver.  He is not shutting anybody down. |
| 12:01:20 | 22 | MR. GRUMER:  Well, by denying us access, even though |
| 12:01:24 | 23 | the FTC in its own injunction -- and this was part of the |
| 12:01:30 | 24 | tension that we experienced yesterday.  I have the FTC telling |
| 12:01:36 | 25 | me we can have access and I have the receiver telling me we |

Kieper - Cross

109

| | | |
|---|---|---|
| 12:01:41 | 1 | cannot. |
| 12:01:41 | 2 | So part of that access and our ability to even comply |
| 12:01:45 | 3 | with the Court's order was frustrated by this dichotomy.  I |
| 12:01:54 | 4 | understand the receiver's position, but the 1,700 people that |
| 12:02:00 | 5 | are still active believe that they are getting a product, a |
| 12:02:06 | 6 | product that is not illegal, a product that whether -- there may |
| 12:02:09 | 7 | be better ways of doing it.  Sure, they can call the insurance |
| 12:02:13 | 8 | companies or drug companies directly.  Yeah, that may be a |
| 12:02:17 | 9 | better solution.  Maybe they want somebody to do it for them. |
| 12:02:20 | 10 | Either way, they are prepared to pay that monthly premium. |
| 12:02:25 | 11 | Tri-Resource is not engaged, no one has come in and |
| 12:02:29 | 12 | said this activity is illegal by Tri-Resource.  It is the sale |
| 12:02:36 | 13 | purporting to be insurance that is the illegal activity and we |
| 12:02:40 | 14 | have immediately agreed.  We are not fighting that issue.  It is |
| 12:02:44 | 15 | improper.  We are going to correct it.  We will not engage in |
| 12:02:48 | 16 | that activity until we have proper stop gaps in place. |
| 12:02:51 | 17 | THE COURT:  All right.  Thank you. |
| 12:02:52 | 18 | After considering all the testimony and submissions, I |
| 12:02:55 | 19 | am going to grant the FTC's request for preliminary injunction |
| 12:02:59 | 20 | as to Mr. Kieper and all of the entities, the Partners in Health |
| 12:03:04 | 21 | and all the other affiliate entities.  This is a preliminary |
| 12:03:10 | 22 | injunction.  You have time, if you want to talk to the FTC and |
| 12:03:13 | 23 | Mr. Russin and give them some other suggestions, before any |
| 12:03:20 | 24 | permanent decision is made. |
| 12:03:21 | 25 | So I am finding that Partners in Health Care and all |

Kieper - Cross

12:03:30  1  the affiliates will be shut down.  As to the existing customers,

12:03:33  2  I think that the receiver should make an effort to -- if there

12:03:36  3  is a way to identify them and notify them either by phone, email

12:03:40  4  or letter of the pending order of the Court, because that might

12:03:45  5  take time to get that information and notify them, if there is a

12:03:51  6  way to have like a -- when people call the number, to have like

12:03:55  7  a recorded message just telling them, look, there has been an

12:04:00  8  order from a judge shutting this down.  If you have any

12:04:04  9  questions, or whatever the options are to keep going or cancel

12:04:08  10  it, to contact the receiver.

12:04:11  11          That way, starting right away at least people who are

12:04:13  12  calling in will know they better start making other arrangements

12:04:17  13  if they want to do so.

12:04:21  14          I don't believe any additional bond to be posted by the

12:04:26  15  receiver is necessary.

12:04:29  16          Anything else we can do this morning?

12:04:33  17          MR. ROGOW:  No, sir.

12:04:34  18          THE COURT:  Or now this afternoon?

12:04:36  19          MR. IVENS:  Your Honor, we don't have a stipulated

12:04:38  20  preliminary injunction with United Solutions Group yet, so if

12:04:41  21  they agree on the record to extend the temporary restraining

12:04:46  22  order until a stipulated preliminary injunction can be filed,

12:04:49  23  then they won't have an issue of the temporary --

12:04:51  24          THE COURT:  I think he did stipulate to that.  I think

12:04:53  25  he said he is stipulating to the injunction without agreeing to

| | | |
|---|---|---|
| 12:04:56 | 1 | any of the findings or the accusations. |
| 12:04:59 | 2 | MR. IVENS:  Your Honor, I only need to put something on |
| 12:05:02 | 3 | the record so the temporary restraining order doesn't expire. |
| 12:05:05 | 4 | That's all. |
| 12:05:05 | 5 | MR. ROGOW:  It does not expire.  I understand it is |
| 12:05:07 | 6 | still in operation. |
| 12:05:08 | 7 | THE COURT:  All right.  Thank you all for your |
| 12:05:09 | 8 | presentations.  You are going to get me both of those orders or |
| 12:05:14 | 9 | one order? |
| 12:05:16 | 10 | MR. ROGOW:  I am going to work on an order. |
| 12:05:17 | 11 | THE COURT:  Your order, and then Mr. Ivens and |
| 12:05:22 | 12 | Mr. Russin, get me the preliminary injunction order as to the |
| 12:05:25 | 13 | other entities. |
| 12:05:25 | 14 | MR. IVENS:  Yes.  I will have to email that to the |
| 12:05:27 | 15 | Court. |
| 12:05:28 | 16 | THE COURT:  Okay.  Thank you. |
| 12:05:29 | 17 | [The proceedings conclude at 12:05 p.m., 9/4/14.] |
| | 18 | C E R T I F I C A T E |
| | 19 | I hereby certify that the foregoing is an accurate |
| | 20 | transcription of proceedings in the above-entitled matter. |
| | 21 | |
| | 22 | ___09.06.14___ |
| | | DATE |
| | 23 | JOSEPH A. MILLIKAN, RPR-CM-NSC-FCRR |
| | | Official United States Court Reporter |
| | 24 | Wilkie D. Ferguson Jr U.S. Courthouse |
| | | 400 North Miami Avenue, Suite 12-3 |
| | | Miami, FL  33128        305.523.5148 |
| | 25 | josephamillikan@gmail.com |

**A**

abided 81:8
ability 44:23,23 75:2,22 109:2
able 6:3 12:2,21 27:14 30:3 32:7,15,17
32:19 58:24 68:10,25 71:24 80:10
88:8 89:7 102:19 104:5
above-entitled 111:20
absence 101:8
absolutely 74:4 79:24 94:17
accepted 32:4
access 10:12,15,19,22 15:22 16:5,6,8,9
16:11,14,16 19:24 22:8 23:18 24:23
25:3 33:1 35:1 40:3 51:22,23 52:17
59:9 60:3,12,14,14 63:9,10 67:8,21
69:1 71:24 75:23 77:17,24 79:11
80:10,11,12,15 81:2,6,7 89:7 90:22
93:24 95:8,12 98:12 99:20 100:16
108:22,25 109:2
accessed 60:18
accesses 51:21
accommodate 52:3,7
account 37:12,13,14,20 53:23 60:17
61:9,11 76:6 101:1
accountant 34:25 35:1,3,5,8 54:17
accounting 56:24
accounts 35:4,6,7 75:25 76:1 80:12
88:1,10 89:3,8,10
accurate 102:16 111:19
accusations 111:1
acknowledge 97:5
active 46:6 96:7,15,15 97:8 100:15
109:5
activities 97:15
activity 66:1 109:12,13,16
actual 6:7 79:21
add 70:7
addition 17:6
additional 10:22 15:23 16:10 110:14
address 25:13 39:14 43:15 63:1 90:23
107:10
addressing 13:19
adjacent 40:2
adjusted 64:25
administration 105:11
administrative 40:7 41:16 52:7,10
75:12 105:19,25
admit 54:2 56:7
advance 12:17
advantage 76:2,4 79:13 81:9,14,21,22
82:11,15 105:6,13
advertises 21:23
advertising 46:1 104:12
advocates 77:6
advocating 12:8
affidavits 6:12,13 97:19
affiliate 9:4 33:4 88:15,15 89:6 90:10
90:15,16 92:22 93:7 97:16,17,24
109:21
affiliated 8:18 84:17 85:6,18
affiliates 8:11 85:15 110:1
affiliation 34:16 84:14
affirmatively 103:4
afford 9:8 76:23
Africa 91:12
afternoon 92:14,14 110:18
agencies 59:12,16 61:5 67:20
agency 45:19 64:17,22 76:3
agent 65:1
agents 13:17 59:14 64:20,24 65:25
69:6,8
ago 33:21,21 39:8 73:17 77:13 100:2
agree 7:25,25 8:1 84:9 89:16 90:4 92:2
100:4 102:1 110:21
agreed 92:4,5 109:14
agreeing 89:21,23 90:4,5 110:25
agreement 85:25 89:25
ahead 5:16 31:2 41:14 96:12
ahold 76:17
Aiken 3:1 5:24 7:15 51:7,9,10,14
53:16 54:10 56:15 57:18 61:21
63:11
air 45:13,16,18 87:15
al 4:5
allegation 97:15
allow 11:18 46:3 85:21 95:11,12,14
100:21,22 101:23 107:25
allowed 6:11,13 16:19 69:1 74:2 81:7
allowing 51:5 94:17
allows 79:23
alternative 106:19
Amendment 86:11
America 21:23
American 48:18
AMF 60:22
amount 13:15 85:17 93:3
analogy 100:11
analyze 88:8
Andrew 11:22
and/or 68:19
Angela 74:22 75:18
announced 10:12
annual 55:7
answer 24:25 30:23 32:16 46:10 68:25
81:3 88:12 90:18,18 101:19
answered 99:3 106:22
anybody 70:18 74:8 80:4 82:14 94:3,3
97:5 98:23 108:15,21
anyways 15:21
Appeals 91:20
appear 13:14 19:10
appearances 1:16 5:3
appeared 19:20 52:6 62:7
appears 21:17 26:6 27:7,17 54:13
61:12
Appleton 72:15 99:11
application 45:5
appointed 5:21
appropriate 86:20 98:15,15
approval 12:1 75:4 101:8
approved 30:20 74:11 79:5 98:4,16
100:6 101:7
approving 28:25
Approximately 57:11
April 53:21
area 17:23 18:13,13,16 23:18 24:24
25:3 52:5,9,23 55:22 62:17,21
areas 62:7
aren't 32:2,2,3
argument 6:16 91:14,18,19 96:2
arguments 84:2
arm 57:25
arose 61:5
arrangement 39:20
arrangements 74:18 95:15 110:12
ascertain 102:7
aside 95:10
asked 10:15 46:4 48:6,25 50:5,9 81:2
81:4
asking 6:10 60:14,18
asks 66:23
aspect 10:5 12:12,20 14:19 19:7,9
assertions 90:6
assessed 93:10
assets 87:22 91:3
assigned 16:3,4
assist 51:20
assistant 68:24
assistants 105:25
associate 30:3
associated 76:1 93:6,6 105:10
association 1:7 4:4,16 75:17
associations 14:10 67:21
assume 102:20 104:7
assuming 93:2,17
attached 66:17 67:25
attachments 53:8
attempt 81:5
attempted 10:15
attention 73:14 108:19
attitude 50:6,10,11
attorney 69:14,15 72:16
attributable 81:7
attributed 59:15
August 5:19,19 31:20
authenticity 53:11 54:7
authority 36:19 37:8,20 85:13
authorization 12:3 36:24
authorized 38:25 39:2
authorize.net 53:19
available 6:4 65:15 67:4 71:2 78:4,5
Avenue 1:18 2:8 111:24
average 68:17 71:4
averages 68:17
aware 58:20

**A-i-k-e-n** 51:10
a.m. 15:2 20:15 23:8 24:16 26:25 28:3
28:18 29:10,20 43:9 46:21 49:22
51:12 53:14 54:24 56:13 57:16 64:2
78:24 84:3

**B**

B 97:22
back 18:5 19:1 20:5 21:10,11 22:14,22
25:22 46:25 55:16 60:8 61:4 65:7
66:25 68:21 69:24 70:2 73:25 80:18
80:25 84:1,4 88:11 89:7 92:15
93:16 94:6,18,23 98:3,8,10,21
102:2 103:22 106:20
background 64:8 85:9
backing 107:19
backs 61:7
bad 13:18 37:13 50:8,10,10,11,22
Banestral 8:6,7,8,12,12,14,15,19,20
8:21,24 9:4,6,7,8,15,16,19 14:13
17:15 20:6 21:12,17 22:16,23 23:20
23:21,23,25 25:8,20 26:2,4,11,13,18
28:13 30:8,11,13 31:21,22,22 32:19
32:20 33:4,18,20,22,23 34:4 37:4,7
34:20,25 35:10,13 39:1,11,21,25
42:5,20 43:19,21 47:20 48:17 49:3
49:4,5 84:7,10,11 87:6,20,23 88:5
88:14,15,20 89:5,6,6 90:8,9,10,13
90:13,21 91:3,6 92:3,9,11,22,24
93:4,7,16
Banestral's 42:3 90:11
bank 35:6,7 56:4 75:25 76:1 80:12
81:7 90:24 91:1,20 92:15 100:18
101:1
bankrupt 48:3
Bankruptcy 103:23,24
banned 102:13
barely 48:16
based 17:9 19:24 20:1,5 21:16,18,20
21:22 22:6,13 23:24 24:1 31:16
32:25 46:9 56:24 58:15 59:10,13
61:12 70:6 71:6 75:17 82:12 106:8
107:4
basically 15:22 16:20 18:12 38:20,22
40:5 45:11,22 89:16,20,21 106:19
basis 13:6 68:16 72:10
becoming 64:12
began 16:8 52:22 60:2
beginning 15:2 28:3,18 29:20 43:9
46:21 49:22 51:12 57:16 64:2 78:24
93:23
behalf 4:6,15,18,18,21 5:7,10 36:1,1
43:24 44:4,7 101:20
behavior 13:18
believe 11:21 12:8,21 13:10 16:15
19:17,19 26:5,15 33:21 39:8 41:8
42:10,14 52:14 54:1,15 56:23 57:5
57:25 62:11,19 72:8 75:1 76:15
96:20 100:9,10 102:10,24 104:3
106:8 109:5 110:14
believes 103:5 56:5
belong 41:1 74:23
benefit 69:7 82:6,6 103:1 104:6
benefits 67:8 74:15 82:12
better 9:2 30:2 65:10 96:11,14 100:11
104:21 107:23 109:7,9 110:12
beyond 29:3 59:9 61:13
big 55:23 72:8
bigger 45:20,25
bilingual 15:13
billed 103:12
bills 69:24,25 70:3 96:25
bit 5:18 23:13 40:19 45:9
blank 55:3
blindfolded 10:10
block 70:5
Blue 104:15,16
board 75:16 78:1
boiler 17:1,7 18:7 19:1,7,16 28:23
boiler-room 19:2,3
bond 107:23 110:14
book 67:3
booklet 74:11
Books 35:1 95:5,6
boss 42:23,23,25
bought 50:2 82:23 107:3

Boulevard 1:22 2:2
boy 48:8
branch 11:10
breadth 14:2
break 84:1
brief 64:8
bring 47:15 94:25
broader 87:13
broadly 8:11
brogow@rogowlaw.com 2:3
broken 60:4
brokers 64:19
brother-in-law 47:21
brought 5:22 14:12
Broward 1:22 2:2 69:14
Brown 1:17 2:15,20 4:13,14 14:22
15:3 17:5,20 19:15 20:8,17 21:4
23:1,9 24:7,11,19 25:4 26:9,20 27:1
27:19,23 29:2 43:4,6,10 44:14 45:4
46:10,11 49:20 90:2 92:4 94:1
101:19
Bruce 2:1,2 4:22
budget 106:6
build 73:25
building 8:23 40:20 41:11 105:7
built 73:4
burden 6:11 13:13
business 1:8 7:23 8:2 10:4,5,18,19,24
11:1,11 12:6,9,10,10,20 13:15,20
16:9,21 20:1,2,6,21 21:5,6 22:9,14
22:14,18,20,21 33:3,7,9,11,15 34:7
36:3,10 37:15 47:8,10,18 48:18,20
49:9,10,11 69:5 70:5,6 71:7,19 75:1
75:5 76:4 77:2 78:7,11,12 79:23
80:3 81:11 84:21,23 86:5,22 87:2,8
87:10 88:7 89:19,22 90:21,22 92:15
95:11,13 96:1,20 97:14 102:2
104:11,23 105:16,18 106:7 107:6
107:16,18 108:2,3,11,13
businesses 21:13 31:16,25 34:1,8 41:7
buy 82:20 101:18 103:17
buying 94:9

**C**

C 111:18,18
cabinet 55:22
California 73:9
call 7:14,15 12:15 14:17,18,21 29:15
30:22,25 31:6,7 32:7 45:15 46:13
50:7 51:7 52:5 57:22 60:24 61:4
66:20,20,20,22,25 67:1 68:6 69:9
70:19,20,20,24,25 71:1 72:15,17
73:2,6 75:9 76:12,12 77:23 78:1,17
79:12 81:9 98:9 99:12 100:19 105:6
106:24 109:7 110:6
called 10:20 29:22,23 30:1 32:2 62:9
77:10
calling 14:16 68:23 84:22 97:8 110:12
calls 10:17 11:15 12:11 17:8 18:17
30:23 68:17 74:5,8 79:3,21 96:9,9
96:10 106:21
Campion 2:1 4:22
Canada 65:9
cancel 70:11 92:7 103:2,8 110:9
canceled 57:5,8 103:12
cancellation 59:2 70:14 71:9,17 72:2
72:10 79:16
cancellations 59:15,18 60:1 69:19
71:4,8 72:3
Cancún 22:1
can't 8:5 24:17 32:4,4,8 44:3,6 54:6
57:25 59:17 60:21 61:6 62:16,23
68:23 76:17 79:6 83:7 99:5
caps 55:8
captive 64:20
car 32:6 98:20,22 99:5,6,8,8,23,24
103:17,18,18,20,22,23
card 6:2,8 18:20 20:2,2,6 21:5,6,10,10
21:12,22 10,11,14,14,18,20,21,22
33:6,7,9,11,15 34:8 50:3 55:14
76:25 82:8,9,13 83:3
cards 20:21 22:9 34:7 57:1 82:10
care 1:7,8 4:4,16,18 8:5 11:9 28:21,25
30:18 51:24 53:20 54:1 55:22 57:2
57:6 59:7,11 61:3,12 62:4,6,13,17
63:4,8 64:7,25 65:13,15,16,18,21
66:6 67:17 68:3 69:3 71:18,20

113

72:18 76:2 82:2,16 83:12 90:6
101:16 104:4 105:8 109:25
**Care's** 100:17 101:1
**Carolina** 43:22
**carve** 8:18,20 9:6
**carved** 8:8 9:17 84:18
**case** 1:3 6:2,21 7:2,19 9:16,20 14:19
15:21,25 16:2 37:14 39:15 89:17
91:20,23,23 93:13 103:13 108:8
**cases** 6:19 37:15
**cause** 7:12 47:13
**caused** 8:17
**cbrown3@ftc.gov** 1:19
**cease** 32:21
**cell** 68:22
**center** 12:15 30:22 52:5 60:24 62:12
62:19 72:15,17,19,20 73:2,6 76:4
81:11,13,13,15 83:17 105:5,5,6
**centers** 69:9
**CEO** 20:1 21:8 34:10,15,17
**certain** 15:20 62:7 96:5
**certainly** 6:15,16 100:20
**Certificate** 3:7
**certified** 2:7 78:2
**certify** 111:19
**cetera** 42:2 87:14 106:11
**chances** 78:13
**change** 33:22,23 72:8 99:6
**changes** 71:6
**channel** 45:23
**channels** 30:20
**characterizations** 8:1
**chargeback** 55:16,23,24 56:3 61:5
106:11
**chargebacks** 53:23 55:17 56:2 60:23
106:14
**charged** 78:2
**check** 19:19,19 27:15,16 32:15 42:6
48:6
**checks** 27:4 35:15 37:8 47:25 48:25
**child** 47:13
**chiropractic** 74:15
**choice** 106:21
**Chris** 106:12
**Christopher** 1:17 4:13 52:12
**citing** 30:24
**citizens** 13:16
**claim** 17:24 18:3 70:16 95:25 106:22
**claims** 15:24 16:10 106:20,23
**clarifications** 92:17
**classified** 55:8
**clear** 13:11 39:16 84:13 85:15 88:15
89:5 90:20 93:4 105:4 107:2
**cleared** 46:1
**clearly** 84:11,23 86:7 92:21 105:10
**client** 10:3 31:2,13,13,14 32:9,25 37:5
45:15 53:5 54:6 65:1 95:22
**clients** 11:1 31:24 32:3,9,13,18,23,24
76:12 84:5 91:23 101:23
**clinics** 97:1
**close** 42:11,12 57:21 73:14 79:18
**closer** 85:10
**collection** 70:1
**Colombia** 21:24 22:3 30:14,18,20,22
32:10 42:13 44:19,21,22,24 45:2,9
84:24 90:12
**column** 56:21 57:3
**combine** 106:16
**come** 7:16 12:19 16:5 21:25 32:9,13
32:15 37:1 45:23 48:20 54:8 62:3
63:19 75:3,16 82:19 84:1 85:11
90:3 92:5 98:2,7 100:24 101:12
106:4 109:11
**comes** 30:23 43:20 103:21 108:9
**comfort** 77:18
**coming** 12:17 53:2
**commenced** 59:22,25
**commendable** 9:11
**comment** 105:3
**commercial** 30:16,16,19,20,23 31:1
45:13,20,21,23 24 46:2
**commission** 1:4,18 4:4,6,8,12,14 5:17
5:23 9:25 15:8,9,16 35:15 51:16,18
55:25 58:17 66:8 80:7 84:9 94:14
103:14
**Commission's** 94:7 103:10
**common** 49:10 84:11
**commonly** 9:14

**communication** 86:3
**communications** 28:24
**comp** 38:19,23
**companies** 12:16 15:19 17:13 20:1,3,3
21:9 22:15,25 25:15 36:4 39:13,17
47:23 75:11 77:20 88:4 109:8,8
**company** 7:23 8:6,12,14,24 9:19 21:22
22:25 25:13,17 27:22 34:5,6,10
40:17 42:19 47:14,20 48:2,5,25
66:9 72:21,22 77:10 78:11,12 81:9
86:1 87:8 88:25 93:25 94:12 99:10
102:10 104:17,18 106:15
**compare** 78:9
**compensate** 102:5
**complains** 18:18
**complaint** 15:18 64:24 67:25 97:18
**complaints** 15:18 18:10,11 51:20
**complete** 10:11,22 67:1
**completely** 41:21 45:17 90:12
**compliance** 11:21 12:20 74:19 75:12
98:6 101:22
**comply** 100:4 109:2
**computer** 10:20 77:19 80:15,18,21,23
94:23,25 95:14
**computers** 94:22
**con** 64:13,14
**concern** 61:5 70:6 87:16
**concerned** 9:15,16 86:10,12
**concerning** 51:4 84:6
**concerns** 86:5 90:23 93:15
**conclude** 111:17
**conducting** 90:21
**confirmation** 31:16 32:5
**confirmations** 32:1
**connected** 41:17
**connection** 14:13,13
**consent** 12:12 60:16
**consented** 97:21
**consider** 12:4 86:16 88:6 106:17
**considerable** 93:3
**considering** 107:13 108:20 109:18
**consists** 39:24
**constantly** 73:11
**Constanza** 1:9 2:21 4:24 5:6 16:25
17:3 22:10,18 28:8 35:19,20,22
36:24 40:8 46:13,17,18,23,25 47:1
47:2
**Consult** 77:10,11,13,14
**consumer** 51:20 56:3 94:8
**consumers** 6:1,4 50:2 58:18 82:7 83:4
102:5 104:9,20
**contact** 31:9,23 32:8,8,14,23 43:20
75:7 110:10
**contacted** 6:1
**contacting** 69:9
**containing** 55:22,23
**CONTENTS** 2:12
**contested** 6:21
**contesting** 63:17
**continue** 13:1 33:3 47:7 51:5 70:7,8
78:16,17 85:19,21,21 86:15,16,21
94:6 102:7,11 103:6 104:18 108:11
**continued** 46:5
**continues** 32:19 33:2
**continuing** 13:5,6 107:6 108:11
**continuous** 75:4
**contract** 31:17 43:24 48:5 77:14
72:12 103:11
**control** 52:20 72:9,11,23 83:14,16
101:1
**controls** 13:21,23 98:15 100:18
**conveniences** 77:8
**conversation** 74:20
**conversations** 58:16 86:19
**convince** 106:5
**convinced** 8:20
**cooperate** 87:25
**cooperative** 53:8 106:3
**copied** 95:20,22
**copies** 75:2 76:20 93:24 94:11,13,18
94:25 95:1,17
**copy** 99:15,23
**Corp** 26:2
**corporate** 5:20
**corporation** 47:6 81:12
**Corps** 64:10,11,15
**correct** 19:13 22:19 25:9 26:19 34:15

35:7 42:4,7,8 43:12,13,16,25 44:9
44:19,20,21 46:24 61:24 62:2 80:19
82:2,8 83:15 85:22 109:15
**cost** 93:1 96:25
**costs** 65:15,16
**couldn't** 24:25 44:2 45:23 76:23 79:21
84:25
**counsel** 9:9 11:22 12:2 23:4 75:13
86:9 94:20 95:16 99:19
**countries** 22:5
**county** 69:12,13,14
**couple** 33:21 43:6 66:25
**course** 11:19 33:17 48:9 70:11 87:15
88:7 98:12 100:6
**Courthouse** 2:8 111:23
**COURTROOM** 1:5
**courts** 11:23
**Court's** 12:1,5 109:3
**court-ordered** 10:11
**cover** 105:23
**co-pays** 55:7
**created** 56:22,23 57:8 65:4 70:3
**creatures** 77:7
**credit** 37:13,15,16 48:4,6,7
**Cross** 104:16
**cross-examination** 2:16,17,20,23 3:3
3:6 9:19 27:25 28:2,17 43:8 49:21
57:15 78:23
**cross-examine** 9:7
**crude** 95:5
**cubes** 57:25 58:1
**cubicle** 54:20
**cubicles** 54:15
**current** 12:22 58:13 73:15 106:20
**currently** 10:6,12 7 65:19 68:10 79:8
96:7
**customer** 11:11 13:5 15:17 17:7,22
18:6,10,11,12,16,22 24:2 41:25
42:2,3 56:18 65:20,22 66:2,11,22
67:2 74:5,6
**customers** 10:6 11:2 18:19 19:8 50:6,7
50:9,12,13 59:5 65:19 74:2 96:2
101:17,25 102:16,17 105:18,21
106:2,9 110:1
**c-i-k** 52:14

**D**

**D** 2:8 65:10,12 111:23
**dad** 40:11 42:11,15,19
**daily** 68:16 72:10
**data** 82:20 95:6,7,9
**date** 59:1 96:6 111:22
**dated** 53:21
**daughter** 5:5
**day** 6:20 30:24 32:1 68:17 77:18,25
78:12 80:19 82:21 92:11 96:10,11
101:5
**days** 66:25 77:18,25 86:5 88:7 91:15
101:5
**day-to-day** 31:23
**DC** 1:19
**dead** 76:12
**deal** 37:15
**Dean** 11:22 74:21 75:18
**Deanna** 54:16,20 105:25
**Deanna's** 58:3
**deceive** 51:19
**decide** 84:16
**decided** 30:3 33:21 34:2,3,6 35:12
37:13,13 39:9
**decides** 6:5
**decision** 108:19,20 109:24
**decisions** 36:14 48:12
**declarations** 70:15,22 76:24 81:4
**deductibles** 55:7 67:7
**deems** 5:22
**defendant** 11:13
**defendants** 1:10,21 4:23 5:2,20 29:17
46:17 53:20 54:21 57:2,6 61:2
63:20 94:5
**defendant's** 55:21
**definition** 97:4
**defrauded** 13:4 94:10 102:6,24
103:10
**delivery** 6:7
**demand** 97:11
**demonstrates** 96:5
**denied** 72:1

**dental** 74:15
**deny** 89:11
**denying** 108:22
**department** 23:22 24:1 25:12,21 26:1
26:3 31:7,8,12 41:18,24,25,25 42:1
42:2,3 43:23 45:17 64:24
**departments** 23:25 38:8,22 64:22
65:6
**department/customer** 41:18
**dependent** 32:22
**depending** 31:1 77:21
**depriving** 104:1
**describe** 16:7,14,16 18:15 21:5,20,21
22:20 23:19 52:17 68:15 77:4
**described** 55:14 61:22 68:5
**describing** 43:14
**description** 3:11 64:8
**descriptors** 60:25
**designed** 66:21
**desk** 40:24 41:4 58:3
**desks** 62:21
**destination** 31:1,2
**destinations** 32:11
**detailing** 56:19
**determine** 27:14 72:3 87:13 88:9 93:9
95:3
**determined** 28:12 76:19
**determines** 31:14
**detriment** 31:22 32:16
**developed** 65:13
**dichotomy** 109:3
**didn't** 46:7 47:12 59:3 73:10 80:2,3
87:6
**difference** 86:7 87:14
**different** 14:11,18 19:2,3,5 22:22 31:2
33:25 34:5,7 35:6,7,9,15 41:23 45:9
46:2,2 63:4 65:14 71:6 72:20,22
85:2
**difficult** 27:14 37:7
**digital** 51:21 52:24
**diligently** 70:7
**direct** 2:15,19,22 3:2,5 12:15 15:1
29:3,19 31:23 46:20 51:11 59:19
64:1 67:21 86:2
**directed** 87:17,17
**direction** 96:25
**directly** 52:4 109:8
**director** 8:15 42:22
**disagreement** 12:7
**disaster** 108:6
**discern** 87:24
**disclaimer** 45:10,25 46:8
**disclosure** 98:13
**discount** 6:2,7 50:3 55:14 57:1 68:8
74:12,13,14 79:13 82:8,9,10,13
83:2
**discover** 18:9 19:18 22:9
**discovered** 7:10
**discretion** 87:18
**discussion** 8:19 12:18 90:11
**disks** 95:1
**dispute** 7:22 55:24
**disputes** 96:24
**distinct** 101:20
**distinction** 29:24
**District** 1:1,1,13 69:15
**division** 1:2 101:10
**divorce** 42:16 47:17 48:1,2 98:21
**divorced** 8:22 9:10 46:23,25 49:8
**DMPO** 74:16
**DMPOs** 74:12
**Doc** 1:7,10,11,11,13,14,15,15,16,21
96:24
**doctor** 50:18 74:16
**doctors** 77:25
**document** 20:18,20 23:12,16,17,19,20
23:24 24:7,20,22 27:3,6,12 37:25
38:2,8,17 54:10 55:13,16 74:1
**documentation** 18:9,22 19:18 28:23
70:17
**documents** 19:2,3 27:17 28:12,14
32:25 52:22 94:18 95:14 96:21
**doesn't** 9:3 42:9 73:18 78:11 93:17
94:6 98:24 108:9,12 111:3
**doing** 1:8 36:3 37:15 39:16 47:8,8
70:2 76:4 81:11 85:25 87:3,8 97:23
101:11 104:5,19 105:11 109:7
**domain** 63:4,9,9

**Dominican** 22:1
**Donner** 75:19
**don't** 6:22,25,25 7:7,25 9:6 13:10
20:25 21:1 28:15 32:13 33:6 39:8
41:8 42:10,18 43:17,18 44:1 47:12
47:16,18 48:19 49:4,24 50:21 60:25
61:15 70:12,13,16 73:19 74:10,13
74:14 79:3 80:12,15,22 83:9 85:4
86:11,14,15,15,21 87:11,11 88:12
88:18 95:2,4 101:4 102:10,13 104:3
104:11 105:20,22 106:4,7,16,18
107:6 110:14,19
**door** 40:16,18 41:3,4,5,17,22 82:7,16
**doors** 40:3 41:1,1
**doubt** 70:13
**downstairs** 41:11
**draw** 73:14
**drawer** 55:22
**drawn** 93:7
**drinks** 45:12
**drived** 95:3
**driven** 103:18
**drives** 94:25 95:1
**drug** 68:19 82:6,23 83:1 104:6,13,21
109:8
**drugs** 82:16
**drywall** 41:24
**due** 53:23 88:3
**duplicated** 10:13 95:4
**duplicates** 93:25
**duty** 85:13
**D.C** 12:4
**d/b/a** 33:24 39:11 76:3 81:12,14,20
105:6

**E**

**E** 111:18,18
**earlier** 58:2 72:16 102:6
**easier** 38:16
**East** 1:22 2:2
**edit** 45:23,24
**editing** 30:18
**education** 65:17
**effect** 31:21 32:20 73:2 74:3 89:20
**effort** 93:6 110:2
**efforts** 93:1
**eight** 41:19 52:7
**either** 18:20 21:17 28:24 56:5 58:17
82:15 106:11,22 109:10 110:3
**elaborate** 45:8
**electronic** 51:21 52:24
**elevator** 40:15,25
**ELMO** 20:16
**email** 53:19,21 60:16,22 61:10 63:1
68:21 110:3 111:14
**emails** 49:24 50:1 60:12 68:20 73:24
**emergency** 39:15
**employed** 3:9,10 53:6,7 67:25
47:5 51:14,15 75:11
**employee** 18:13 25:8 26:3,3,11,12,14
26:17,17 37:3 44:7,10 50:3 65:22
66:5,8 67:11 73:12
**employees** 23:21 25:12,14,17,19,20
34:20,20 35:11 38:12,13,21 39:1,2
39:9 41:20 52:3,4,21,22 54:14 58:6
58:8,10 60:12 62:11,12,14 65:21
68:20,20 72:17,20 73:6,8 104:5
**employment** 58:4
**encouraged** 65:11 77:9
**enforcement** 16:18 52:19
**engage** 13:22 74:18 109:15
**engaged** 11:20 54:14 59:11 77:9
109:11
**English** 9:2 15:11 17:14 24:2,4 36:4
37:4,5,7 44:15,17 48:14,20
**enjoined** 89:25
**enroll** 65:12,19 67:7,22 69:21
**enrolled** 11:3 12:23,25 13:1 66:18
67:14 70:4 77:20,22 83:2,9 96:7,15
**enrollees** 11:16,19 78:4
**enrolling** 67:15 79:13
**enrollment** 10:21 56:19 58:24 59:14
59:16 66:19 71:20,22 95:2,8 96:6
96:23 103:6
**ensure** 86:20
**enter** 10:2 15:22 16:18,19,23 18:6
19:16 39:23 92:3,5,20,21 94:22

95:16
**entered** 16:17 85:15
**entering** 16:21 17:21 52:2
**enterprise** 107:25
**enters** 90:3
**entire** 62:5 66:21 86:3
**entities** 59:13 65:19 85:16,18 95:23
105:4,14 109:20,21 111:13
**entitled** 98:25
**entity** 8:21 21:15,21 62:5,9 83:6,14
84:17 105:9,11 108:2
**entrance** 40:16
**entrepreneur** 107:19 108:2
**entry** 17:9 94:21 108:3
**envision** 101:10
**equal** 42:25
**escorted** 52:20,21
**Esparza** 2:14 5:25 14:22,24,25 15:4
20:18 23:10 24:12,20 27:2,24 28:5
28:20 39:23 51:23
**especially** 67:6
**ESQ** 1:17,17,21 2:1,1
**essentially** 33:22 53:22 105:15
**et** 4:5 42:2 87:14 106:11
**ethics** 80:3
**event** 98:6
**eventually** 39:14
**everybody** 5:12 26:10 47:1 78:9
106:24 107:23 108:17
**everybody's** 39:14 108:20
**evidence** 3:10 6:24 9:5,6,7 15:23
16:20 17:22 18:3 20:15 23:7,8 24:8
24:16 26:21,24,25 27:20,22 29:14
51:4,21 52:24 53:13,14 54:23,24
55:17 56:1,12,13 73:15 84:20 87:21
88:15 89:13 96:5 101:15 107:1
**evidentiary** 13:24
**Evon** 40:8
**exact** 62:16
**exactly** 22:14,21 39:19 42:4 57:25
62:23 84:25 85:1 90:7 93:14
**examination** 2:15,19,22 3:2,5 15:1
17:9 29:3,19 46:20 51:11 64:1
84:21
**example** 1:10 87:16 95:5,5 98:19
104:22
**excess** 13:15
**excessive** 13:8 53:23
**Excuse** 60:9
**exercising** 85:13
**exhausted** 97:12
**exhibit** 3:12,13,14,15,16,17,18 20:9,15
23:2,8,11 24:12,16 25:5,10,11,23
26:5,11,21,25 27:3,20 33:6,12
37:22,25 39:4 53:1,12,14,16 54:2
54:23,24 55:1 56:7,11,13,15 57:21
58:23 60:11 68:1 73:15 96:4
**exhibits** 3:9,10 53:6,7 67:25
**exist** 32:21 102:11 105:18
**existence** 108:9
**existing** 11:2,16,19 96:2 101:24
102:15,16 110:1
**exists** 108:8
**expanded** 40:1
**expect** 47:15 48:8
**expenses** 93:6
**experience** 13:15 55:25 69:18 71:3
**experienced** 108:24
**expire** 111:3,5
**explain** 29:23 33:15 36:5 39:20 41:14
48:21,22
**explained** 35:14 41:15 106:13
**explaining** 48:19
**explains** 33:25 70:25
**explanation** 85:24 98:25
**explicitly** 81:6
**Express** 17:15,18 19:20 20:6 27:11
42:6
**extend** 110:21
**extended** 9:24
**extent** 85:18 87:15 105:21
**external** 45:1
**ex-husband** 47:21 49:9
**ex-wife** 98:20 99:9
**ex-wife's** 98:19
**eyes** 94:7
**E-s-p-a-r-z-a** 14:25
**E-5** 64:12

**F**

**F** 111:18
**face** 98:20
**facilities** 10:8
**facility** 52:2
**fact** 7:23 9:9,12,13 33:15 34:17 49:5
69:13 75:10 86:5 88:25 107:1
**factory** 64:16
**facts** 106:16
**factual** 72:2 90:6 97:24
**failure** 61:8
**fair** 13:15
**fall** 39:10
**familiar** 11:22 15:25 33:9 74:22
**families** 32:1
**family** 30:1 42:10,12,15
**far** 9:16
**fare** 45:13,16,18 87:16
**Fargo** 91:19
**fast** 13:21
**faster** 48:19 101:13
**father** 36:2
**favor** 42:14 49:12
**favorable** 37:16
**fax** 99:14,17
**Federal** 1:4,18 4:4,6,7,11,14 5:17,23
9:25 15:8,9,15 51:15,17 55:25
58:17 65:9 80:7 84:9 94:7,14 103:9
103:14
**Federally** 2:7
**fee** 78:17 93:10 103:6
**feel** 79:8,9
**fees** 79:15
**Ferguson** 2:8 99:11 111:23
**fielding** 96:8
**Fifth** 86:11
**fight** 106:13
**fighting** 109:14
**figure** 40:22
**file** 55:22 95:6 102:11 106:22
**filed** 110:22
**files** 80:12
**filing** 10:13,16
**fill** 80:9
**filled** 80:8
**financial** 80:8,22
**financially** 107:20
**find** 11:5 17:25 18:3 26:4 56:1 57:22
57:24 65:14 70:20 73:24 101:16
104:20,23
**finding** 90:9 93:12 103:5 109:25
**findings** 89:24 111:1
**fine** 7:6 89:10
**finish** 74:5
**finite** 94:12
**fire** 36:19
**fired** 36:23
**firm** 11:21 75:19
**first** 4:3 7:13 11:18 14:12 16:17 17:21
18:5 21:8 36:2 37:3 39:25 40:1,6 41:3,15 43:20 47:11 56:21
60:11 66:22 71:19 76:21 101:20,25
102:1,14,24 103:10 105:2 108:15
**fit** 69:16
**fitness** 64:13
**five** 41:20 78:1,2
**fix** 99:24
**FL** 1:22 2:3,9 111:24
**Flagler** 8:13 16:13,21 27:8 30:10
39:21 43:14,15
**floor** 8:13,23 9:12,13,21 27:8 40:15
**Florida** 1:1,6 99:9
**flowing** 88:11
**fluctuate** 73:13
**fly** 91:21
**fly-by-night** 74:24
**focused** 19:6
**focusing** 12:3
**folks** 106:3
**follow** 73:11
**following** 15:19
**food** 45:12
**foolish** 86:14
**foreclosure** 48:3
**foregoing** 111:19
**forensic** 106:12
**fork** 100:7

**form** 80:8
**forms** 10:11 73:20
**Fort** 1:22 2:3 69:13
**forth** 68:21 88:12
**forward** 5:13 6:23 7:16 10:18 11:1
**found** 18:10,15 19:19 22:18 25:3 27:4
27:12,17 28:23 54:14,16,19 58:2,8
85:20 103:20 105:4
**four** 16:24 17:6 21:11 22:15 34:8
35:11,15 39:25 40:6 41:1,15,20
105:22
**fourth** 57:3
**Franck** 52:12
**Franck's** 52:9
**frankly** 101:11
**fraud** 94:7
**fraudulent** 56:6
**fraudulently** 101:17 103:24 104:24
**free** 89:6 90:10
**freezing** 12:22
**frequently** 49:24 50:1
**front** 21:10 93:18
**froze** 76:5
**frozen** 10:21 11:14 75:25 76:7 97:12
98:13 100:16
**fruit** 100:11
**frustrated** 109:3
**FTC** 8:10 9:14 10:1 11:21 12:17,19
14:3 16:19 31:20 65:5 67:25 79:8
85:19 86:16,20 90:5 93:2,17 98:3
100:4,10 101:15,20 108:23,24
109:22
**FTC's** 84:6 109:19
**full** 60:12 62:24 91:2 98:5,12
**functioning** 98:11
**fund** 107:19
**funded** 53:23 88:4
**funding** 53:23 88:4
**funds** 75:22,23 88:11 97:12 98:13
**funnelling** 87:3
**furnished** 81:4
**further** 7:11 13:25 27:23 28:15 29:6
29:12 42:18 45:4 49:15 50:23 57:12
63:11 78:20 83:18,19 97:22 103:12
**future** 10:2 14:1 67:5 101:6,24
**F-r-a-n-z-i-k** 52:14

**G**

**games** 74:9
**gaps** 109:16
**Garfinkle** 11:22
**Gary** 1:8,17 3:4 4:7,11,18 49:24 63:20
63:21 64:6
**gather** 15:23 16:9
**gathered** 17:23 18:22
**gathering** 12:22
**general** 69:14 95:23
**Generally** 56:3
**gesture** 42:14
**getting** 12:3 13:4 19:1 69:25 82:5,7,16
86:10 90:24 94:11,13 103:16,25
104:8 106:21 109:5
**GID** 61:14
**give** 6:3 30:25 60:12 64:8 68:21,25
79:11,11,15 81:3 83:8 86:12 92:16
99:24 109:23
**given** 87:25 88:24 94:8 95:6 99:1
103:1,13
**givens@ftc.gov** 1:19
**gives** 31:16 77:17 79:16 94:2
**go** 5:12,16 6:23 9:15 15:21 26:5,5 30:4
31:2 38:15 40:13 41:14,16,21 57:3
66:21 67:3 69:17 70:1 73:2,10,11
73:24 74:11 80:25 87:5 89:7 91:12
92:13,15 94:5 96:12 98:19 100:24
102:2 103:17 104:14,17 106:20
**goes** 21:1 30:19 67:3 70:19 78:11,13
**going** 7:5,23 8:1 10:18 11:1 23:2 36:6
42:16 47:10,13 50:14 55:16 73:12
78:7 79:22 86:13 87:5 89:2,22
91:22,24 92:3 94:19 95:11,12,14
98:2,6 99:24 101:13 102:23 103:3,4
104:15 105:19 107:22 108:16,17
109:15,19 110:9 111:8,10
**golf** 6:20
**Gomez** 1:9 2:21 4:24 16:25 17:4 22:18
35:19,20,22 36:25 40:8 46:13,17,18

46:23 47:1 49:24 84:21
**Gomez's** 22:11
**Gomez-Vargas** 46:24 47:2
**González** 16:25 17:3 40:8
**good** 4:1,13,15,20 5:9,11 15:4,5 28:20
  42:14 48:7 50:5,11 51:14 64:4
  78:12 79:1,2
**government** 7:1 8:17 33:12 37:22
  39:4 65:9 71:6 84:24
**Graciela** 50:4,5,14
**graduate** 91:17
**grant** 76:13 109:19
**grants** 16:8
**great** 47:14 77:12 80:5
**greater** 78:14
**grew** 13:21 69:9
**group** 1:8 4:21 11:10,13 13:11 14:11
  17:15 20:6 21:12,18 22:23 23:20,21
  23:23,25 25:8 26:2,4,11,14,18 30:8
  30:11,13 33:22 34:17,20 35:13
  39:25 42:20 43:12,19 21 61:15,21
  61:25 62:1,4,7,10,11,22 63:2,3
  65:22,24,25 66:9,10,14,15,16,17
  70:11 82:1 83:10 84:10,18 85:19
  93:8,16 97:21,23 100:9,19,22
  110:20
**groups** 62:15
**Group's** 25:20 63:9
**Grumer** 1:21,21 2:17 3:3,5 4:17,17
  5:15 9:21,23 11:3,7,9,13 13:2,8
  28:19,20 29:6 43:1,3 49:16,18 53:3
  53:10,11 54:4,6 56:10 57:13,14,17
  57:18 60:9,10 61:19,20 63:11,16,18
  64:3 66:12 67:24 71:16 73:1 78:20
  83:23 94:24 95:2,18,21 96:1,4,11
  96:13,18,22 97:17 98:2,24 99:22
  100:4 101:10 107:15 108:22
**Grumer's** 51:4 101:22
**guarantor** 107:20
**guess** 15:20 106:7
**guy** 69:16
**G-o-m-e-z** 46:19

---

**H**

**habit** 77:7
**hallway** 41:22
**hand** 20:8
**handbook** 66:21,23 68:1
**handbooks** 74:17
**handcuffed** 10:9
**handed** 54:14,16
**happen** 37:1 48:8 89:2 101:13 102:23
**happened** 45:9,22 47:11 73:9,17 87:7
  103:5,13
**happening** 31:24 68:12
**happens** 8:15 76:12 77:17 90:13
**happy** 86:16 88:5 93:15 106:17
**hard** 44:17 95:1
**hasn't** 73:16
**haven't** 6:3 20:13 32:17 53:3 68:24,25
  80:9 88:8 99:3 102:7,19 108:18
**haw** 74:10
**heading** 24:17
**health** 1:7,8 4:4,16,18 6:7 8:5 11:9
  14:10 19:7 24:1,5 25:20 26:1 28:21
  28:25 38:11 51:5,24 53:20,25 55:22
  57:2,6 59:7,11 61:2,12 62:4,6,12,13
  62:17,19 63:4,8 64:7 65:13,15,16
  65:16,21 66:6 67:11,16,17 68:2
  69:3,8 71:18,20 72:18,19,20 76:2,4
  79:13 81:11,13,13,15 82:2,11 83:12
  83:17 86:6,6 87:17 93:22 94:9,9
  100:17 101:1,16 104:4 105:5,5,8
  109:20,25
**hear** 6:5,10 9:21 14:6 24:25 44:2 84:2
  96:2
**heard** 7:17 51:22 85:24 101:14 105:6
**hearing** 1:12 5:12,13 6:13,21 23:7
  24:15 53:13 54:23 74:15 84:7,8
  88:21 91:24,25 92:8
**held** 87:23 88:1
**help** 35:22 48:9,10 69:22 77:2,3
**helping** 48:23 65:8
**helps** 49:14
**hem** 74:10
**hey** 18:18 108:10,13
**high** 13:13 55:17 67:6 69:19

---

**hire** 36:19
**hoarder** 73:23
**hold** 53:23,23 54:18 61:7 93:8
**home** 77:18
**honest** 69:16
**Honor** 4:13 5:4,9,14,15,17 6:15 7:9,17
  14:19,22 19:4 20:8,13 23:1 24:7,11
  24:13 25:1 26:20 27:19,23 29:2,12
  29:15 42:18 43:6 45:4 46:11 49:15
  49:18,19 50:23,25 51:7 52:25 53:4
  53:9 54:4 57:12,14 61:19 63:13,15
  83:18 84:9 85:4,8,12 87:12,12,19
  92:17 93:14,18,20 94:1,5,15 95:19
  96:13 99:7,18 102:4,22 103:15
  104:3 105:2,3 106:12 107:9,12,15
  110:19 111:2
**HONORABLE** 1:12
**hope** 91:10,25
**hospital** 55:6,7
**hotel** 31:16,16,17 32:6,24
**hotels** 31:9,24 32:2,3,4,18
**hour** 11:15 74:21
**hours** 77:18,25 84:1
**house** 48:3
**HR** 54:16,17
**human** 54:21
**husband** 70:10

---

**I**

**idea** 38:21 47:21
**Identification** 3:10
**identified** 61:2 62:11,12 63:1 97:17
**identify** 54:6 62:14 83:8 110:3
**illegal** 96:23 109:6,12,13
**Illinois** 64:21
**imaged** 80:18
**imagine** 101:4
**immediate** 15:22 16:5,6,8,11,14,16
  19:24 22:8 23:18 24:23 25:2 51:20
  51:22,23 52:17 59:9
**immediately** 10:2 13:18 67:8,9 74:9
  100:14 108:5 109:14
**important** 70:9
**imposed** 10:23
**impression** 62:5 72:6
**improper** 97:23 109:15
**improperly** 100:12
**inasmuch** 9:24
**incident** 13:19
**included** 45:11,14,16,18 85:14 87:16
  92:25
**includes** 42:7 95:23
**Including** 67:20
**income** 48:10
**incorporated** 81:17,20,22
**increase** 70:8
**incredibly** 10:9
**incurred** 59:18
**independent** 12:14,16 13:9 59:12 61:5
  61:16 69:18 72:4 79:6
**India** 65:9
**indication** 97:20
**indicia** 97:22
**individual** 66:22 83:9
**individuals** 80:8
**induced** 10:24 104:24
**industry** 71:4,15 74:22 77:8,12 102:13
**inexpensive** 21:24 93:2
**info** 31:12
**inform** 91:5
**information** 6:12,14 11:4 16:10 17:15
  21:16 30:19 31:1,5,15 32:24 36:9
  75:17 80:22 85:23 86:10 88:17
  95:14,20,21 107:5 110:5
**initial** 102:18
**initially** 16:23 17:11
**initiate** 56:3
**injunction** 1:12 5:12 7:12 10:2 12:12
  14:2 88:22 89:12,21,24 90:3 92:25
  108:23 109:19,22 110:20,22,25
  111:12
**input** 31:18 35:15 108:20
**inquire** 63:11
**inside** 40:17
**instance** 102:25 103:11
**insufficient** 95:7
**insurance** 6:7 12:10 13:12,16 18:19

---

55:11,14 64:16,18,22,23 65:6,25
  67:20 69:5,8 70:12 71:4,15 74:8
  75:1 76:7 78:8,11,12 94:9,9 97:2,3
  97:6 109:7,13
**insureds** 69:7
**intended** 79:14 85:18
**intention** 47:7
**International** 21:9,14 33:17
**internet** 76:10,11 77:19
**interpreter** 46:15
**interrupt** 66:4
**intervention** 90:17
**interview** 58:6
**interviewed** 74:7
**Introduce** 64:4
**investigate** 15:18 51:19
**investigation** 19:24 21:20 22:8 63:3
**investigator** 15:10,11,13,16 51:15,17
  51:19 56:1
**investigators** 5:24 16:3 58:17 74:7
**invoices** 32:2
**involved** 16:12 52:4 87:10
**involvement** 16:2 85:25
**involving** 91:23 93:21
**in-house** 13:11
**iPhone** 77:19
**irrelevant** 90:12
**irrespective** 101:25
**isn't** 44:23 45:1 50:14 79:18 80:19
  82:8 83:15 97:16
**issuance** 7:11
**issue** 6:2 7:19 8:4 9:20 14:12,16 15:25
  32:7 40:19 51:3,4 67:4 74:13 84:5
  84:15 89:1 92:10,10 93:8,13,21
  94:11,12 95:10,25 101:25 102:1,9
  102:14 107:9 109:14 110:23
**issues** 14:9 32:5 63:17 86:11 88:6
  98:20 101:20 105:1
**issuing** 6:12
**item** 98:9
**items** 10:21 99:19
**itinerary** 31:18
**it's** 27:7 31:22 33:23 102:20
**Ivan** 16:25 17:3
**Ivens** 1:17 2:23 3:2,6 4:7,7,11,11 5:14
  5:17 6:15 7:9,15,21 8:19 9:25 14:18
  14:21 29:12 43:4 49:20,23 50:23
  51:7,13 52:16,25 53:9,15 54:2,9,25
  56:7,14 57:12 63:13,15 78:22,25
  83:18 84:8,15 85:4 90:2 92:4 94:1,2
  94:14 101:19 102:4,10,18,22,24
  103:9 104:3,20 110:19 111:2,11,14
**I'm** 15:13 17:23 35:5 36:7 40:11 52:14
  58:22 59:6 61:4 65:21 67:10 69:13
  71:14 88:5
**I've** 99:5

---

**J**

**Jackson** 75:19
**Jaime** 16,24 17:2,3 22:10,12 28:10
  40:7,10,11 48:25
**January** 56:20 59:25 72:15 73:3 105:7
**Jeff** 60:20 62:24
**Jiffy** 99:5
**job** 22:22 50:10 70:10,11 106:12
**jobs** 69:22 70:10
**John** 3:1 5:24 7:15 51:7,9,10
**joined** 77:20
**JOSEPH** 2:6 111:22
  josephamillikan@gmail.com 2:9
  111:25
**Jr** 1:12 2:8 111:23
**judge** 1:13 99:1 103:6 108:19 110:8
**judgment** 102:12 107:16,18 108:2,10
**jurisdiction** 93:9,13
**justifiable** 64:23

---

**K**

**Kasina** 53:20,24 60:16,19 106:1
**keep** 50:2,13 70:1 73:23 103:23 104:1
  110:9
**Keith** 1:21 4:17 28:20 57:18
**kept** 25:5 49:6 73:25
  kgrumer@grumerlaw.com 1:23
**Kieper** 1:8 3:4 4:19 10:3,8 12:13
  13:14 28:21,24 49:24 50:9,13,18,20
  63:18,20,21 64:4,6 67:25 77:4

---

78:21 79:1 80:16 83:20 93:22 94:12
  96:8 98:17 99:7,11,17 100:1 101:11
  102:12 105:7 106:5 107:17,25
  109:20
**Kieper's** 52:8 96:22
**kind** 14:11 18:9,20 30:3 36:4,12,12
  40:2 42:25 73:22 91:15
**knew** 69:5
**know** 5:18 17:23 20:25 21:2,25 22:4
  35:13 44:1 45:5 47:12 53:24 58:15
  59:15,18,21,22 60:19,22,25 61:4,11
  61:14,15,16 63:2,6,7,8 78:8 79:7
  85:4 86:11 87:11 88:12 95:2,4
  97:22 98:18 99:20 101:4 104:11
  105:20,22 110:12
**knowing** 86:22,24
**knowledge** 39:1,3 91:3
**known** 17:18 21:21 49:13 59:13
**knows** 47:1 95:19 99:18
**K-i-e-p-e-r** 63:21

---

**L**

**L** 1:8,17 4:18
**labeled** 24:12
**lack** 14:13
**lady** 76:20 103:19
**laid** 40:5
**Lambert** 104:22
**language** 36:3 44:16 85:14,23 90:3
  92:5
**languages** 15:12
**laptop** 73:24
**larger** 75:10
**largest** 77:11
**Larry** 5:9
**Lauderdale** 1:22 2:3 69:13
**law** 15:21 16:18 52:19
**laws** 45:9
**lawsuit** 90:13 97:14
**laying** 73:20
**leads** 65:4
**learn** 38:17
**learned** 108:4,5
**lease** 27:7,10 105:24,25
**leasing** 19:21,21
**leave** 33:19 34:2 91:14
**leaves** 29:10 89:18
**leaving** 91:13
**led** 9:14 101:17
**ledgers** 95:23
**left** 16:24 52:6 56:24
**legal** 6:23 29:25 100:10
**legally** 7:4 84:19 85:5
**legitimate** 10:3 12:9,10 87:2 96:1,20
  104:21,23
**legitimately** 87:3 101:16 102:13
**letter** 70:18,19 110:4
**letters** 45:20,25 55:24 70:17
**letting** 9:15
**let's** 14:11,12 51:3 57:21 60:11 69:2
  71:19 84:1,5 93:21 95:10 102:1,20
  104:7
**liaison** 108:1
**license** 97:3
**licensed** 69:6 74:3
**life** 64:18 76:18
**lifesaver** 77:2
**lifetime** 55:8
**light** 85:23
**liked** 30:2
**limitation** 36:8
**limited** 7:10 97:11 107:5
**limits** 36:6
**Line** 3:11,11
**lines** 14:1
**list** 25:8,15 26:1,3,12,14 38:22,25 39:2
  39:2,5,7,9,13,15,18 50:18 70:18
**listed** 22:24 25:17,19,20,25 26:10,11
  26:13,14,15,17,18 33:16 38:8 61:9
  61:13 74:16
**listened** 108:16
**lists** 18:14 23:20
**literally** 98:25
**litigation** 107:20
**little** 13:13 30:1 31:10 32:14 37:6 45:9
  71:12 89:10 103:19
**live** 5:23 6:5,14 7:5,10 97:19

lives 99:9
lobby 41:11
local 65:5 94:20 95:16 99:19
located 17:10
location 16:19 25:5 82:3 85:16 87:9
    95:24
locations 18:11
locked 10:8 11:14 80:13
log 81:5
long 6:9,20 30:11 38:15 47:5 78:12
    98:18 106:9
longer 33:7 47:10
longevity 70:7,8
look 7:1 15:18,19 38:7 40:15 59:1,4
    68:17 69:20 74:24,25 77:7 78:6
    86:14 89:4 99:5 103:21 110:7
looked 52:4 73:11 92:14
looking 17:12 18:1,3 27:16,16 56:21
    71:17 93:22
looks 32:14
losing 48:3
loss 78:7
lost 13:21 32:17 36:11
lot 13:18 52:21 56:1 69:5,21 78:14
    80:21 82:12 86:10
loud 5:18
love 49:14 103:20
loves 42:15
low 96:25
Lube 99:5
Lucia 26:15,17

**M**

Macaluso 1:21 4:17
Madeline 4:17
mailed 66:19 68:4
main 22:3 93:14
major 55:4,5,9 79:14,15,18
majority 65:10 66:1 68:18
making 84:22 94:2 14 110:12
management 56:18 66:10
manager 53:21,25 54:17
manner 51:6
manuals 11:23
Manuela 2:14 5:25 14:22,24,25
mapping 52:23
Marine 64:10,11,15
marked 3:10 20:9 23:2,11 27:2
market 22:2 44:23 64:1 77:5 80:6
marketed 64:17,19 69:8
marketing 42:22 44:18,18,21,22 69:3
    82:20 90:11
marks 64:13,14
married 49:9
material 68:5
materials 68:2
matter 4:3 88:19 93:1 111:20
Maytag 78:18
mean 45:12 50:6 56:1 59:6 73:20 74:4
    74:6 88:20
means 38:10 55:5,6 67:14
meant 84:25 85:2
media 43:22
mediate 36:12
mediation 68:19 82:6 96:24 104:6,7
    104:12,13,22
mediations 82:15
medical 6:2,7 50:3 55:4,8,9,13 57:1
    74:12,13,14 79:14,15,18 82:6,8,9,10
    82:10,13,16 96:25 104:6,12
Medicare 64:18 65:12 71:7
medication 69:23 76:18
medications 65:8 68:24 76:19,22
    82:21
medium 50:16
meet 6:23
Mega 17:13,14 18:12 19:7,11 21:13
    21:18,21,22 22:2,4,13,15,23
    25:16 33:24 34:3,3 39:11 41:23
    44:18
Melissa 60:20
member 66:20 68:1
members 63:15 61 66:2,18 67:22
    68:2,8,18 70:21 76:12 78:15 96:7
    106:21
membership 68:15
memberships 86:6 107:7

mentioned 16:6 18:5 72:16 81:9 82:17
    102:6
Mercedes 98:19
Mercedes-Benz 99:11
merchant 53:22 60:22,25 61:9,11
merged 77:14
meritorious 64:11
merry 104:17
mess 48:9
message 110:7
met 32:2 57:18
Metco 21:24 22:3 30:14,21 32:10
Miami 1:2,6 2:8,9 5:25 16:5,13 32:9
    111:24,24
microphone 4:9,10 85:10
middle 20:25 50:19
middleman 50:19
miles 103:19,20
military 64:9
MILLIKAN 2:6 111:22
mind 49:7
mine 73:19
minimum 85:16
minutes 35:15
minutia 99:1
mirroring 88:8
misled 70:14
misrepresentations 6:6 13:9,10 84:22
misrepresented 12:11 64:24 69:12
Mitch 12:3
model 84:22 104:4,11
mom 36:11,24 37:7,12 40:9 42:11,15
    48:7,9
moment 41:19 43:17 49:18 54:4 60:9
    61:19 106:20
Monday 91:24 92:8 100:22
money 13:5,17 65:8 87:4,5,6 88:5
    89:10 90:24 91:5 92:3 97:4 100:16
    100:17,25 102:5 104:8,15,18
    106:14
monies 87:22 89:3 92:11
monitor 79:23,6 86:15
month 31:25 96:9 103:6 104:16
    106:10
monthly 12:25 109:10
months 31:6 33:21 77:13 106:10,10
Moore 54:16,20 106:1
moot 89:1
morning 4:1,3,13,15,20 5:9,11 15:4,5
    28:20 51:14 64:4 79:1,2 93:23
    110:16
morning's 9:22
mot 28:11
mother 35:21 36:1,2 47:13
motion 7:12
motto 65:15
move 23:13,13 26:20 27:19 85:10
    106:22
moved 17:25 24:8 96:4
multiple 54:15 58:1

**N**

N 1:12
name 20:25 23:22 25:12 26:3,4,6,15
    28:20 29:25 30:2 33:17,20,22,23
    34:2 37:14,19 38:12 39:14 44:10
    46:18,23 52:11 57:18 62:24 83:8
named 11:13 50:4 97:14,16
names 25:14 63:4
National 45:2 46:6
nature 16:2 95:4
NCO 64:12
necessary 5:23 98:14 110:15
need 4:9 6:23 7:3,7,7,24 8:18 9:7 11:2
    11:5 12:2 16:10 46:15 50:18 70:12
    74:14,21 77:3 80:2 85:10 87:5
    88:18 89:1,16,24 94:21 95:13 96:18
    97:9 98:21,21,22 100:25 106:2,3
    111:2
needed 17:24 42:15 76:22 82:24 83:2
    91:11
needs 87:13 89:5,5 90:16 95:11
Negro 44:15
Negron 44:11
network 70:18
never 13:6 38:1,23 44:4 47:14,16,22
    48:7 49:4 64:23 65:4 79:25 89:9

98:23 99:4,5
new 11:1 36:10 37:15 54:14 70:7,21
    106:9 107:7 108:11
nice 9:11
nicely 8:23
nine 91:24
noncommissioned 64:12
nonjury 7:2
North 2:8 111:24
Northshore 76:1
notes 9:23
Notice 6:3 12:18 21:6 45:7 61:12 95:17
    103:13 106:24
noticed 21:8,10
notices 55:23
notify 100:14 110:3,5
number 11:25 20:10 23:2 39:14 46:6
    57:8,8 59:17 73:5,7,17 97:7 101:17
    101:21 102:16 110:6
numbers 53:6 68:22 69:20 73:9 82:22
NW 1:18
N-e-g-r-o-n 44:13

**O**

obey 15:21
object 29:2
objection 20:11,14 23:5 24:10,13
    26:22 27:21 53:2,10,11 54:3,22
    56:9 94:15,17
obligation 97:9
observation 107:15
obtained 5:18 20:21 21:6 23:17 24:23
    25:2 60:14,19
obtaining 96:24
obviously 6:11 8:6 12:1 17:11 30:25
    32:14 34:5 37:6,15 42:15,16,17
    69:11 70:15 72:9 73:10,20 76:13,16
    77:6 78:13 93:1 94:22 96:15 107:17
occasion 28:5 35:25 36:22
occur 16:11 101:7
occurred 13:25 16:14 59:18 88:8
occurring 86:21
occurs 100:8
offer 21:24 66:8
offered 57:1 66:13
offers 66:14
office 19:17 20:22,24 27:5 30:9 32:9
    34:6 38:15 39:10,24 40:1,6,9,13,14
    41:2,7,15,16,22 42:25 49:12 52:2,8
    53:21,25 60:8 62:7 73:21 80:11
    88:2
officer 8:15,16 22:13,17,24 64:13
offices 9:13 16:24 17:6,23 18:25 28:23
    31:20 32:15 39:25 40:2,6,7 41:12
    41:14,16 43:14 49:5,5 54:19 61:22
Official 2:7 111:23
Oh 74:4
oil 99:6
okay 5:16 7:13,20 8:3 9:21 11:8,12
    14:4,20 18:5 19:14,18 21:3 23:24
    24:5,18 25:10 26:8 28:15 29:13
    30:16 37:24 39:23 40:12 41:9 43:1
    48:1 50:24 51:3,8 53:6,10 54:5
    57:5 90:7,19 92:2,2,15,19 93:21
    94:16 95:25 96:11,19 98:1 99:21
    100:3 101:9,14 102:15 107:8,12
    108:16 111:16
old 9:2 37:17,18 42:13 69:24 103:19
once 6:20 11:3 12:4 30:3,23 31:12,14
    31:15 40:13 52:19,21 61:9 65:19
    67:14 101:2
ongoing 6:6 12:25
on-site 30:17
open 41:3,5 88:2 93:8 106:17
opened 40:2 47:6 48:1 72:15
opening 12:5,14
operate 10:4 32:19 35:18 65:18 84:18
    89:7 90:11 95:8 106:6 107:6,24,25
operated 85:5
operates 59:8 65:20 82:1 84:21
operating 65:18 85:25 89:22 95:24
    100:24 101:16 105:4,15
operation 31:21,23 69:18 79:6 89:13
    92:9 93:17 97:13 105:19 107:21
    111:6
operations 49:6 59:23 90:22 107:7

opportunity 28:25 57:7 79:11 94:3
    103:2 104:2
opposed 86:9
opposing 23:4
options 110:9
opt-in 82:20
order 5:19,19 6:12,18 7:11,22 8:9
    10:23 80:8 88:18 89:20 90:20 91:1
    92:4,5,7,16,20 95:8 105:15 109:3
    110:4,8,22 111:3,9,10,11,12
orders 111:8
organization 73:22 74:13,24
organizations 74:12 77:12
original 6:12 53:8 99:25
originally 69:4
originated 60:23
Orlando 32:11
outside 79:20
overcome 76:14
overdraft 91:20
overhead 105:23
overlap 9:1 85:17
overrule 54:22
Overruled 29:4
oversee 94:21
oversight 86:19
overstated 102:19
owed 88:5
owned 8:14
owner 40:20 64:6 81:24 99:7,9
ownership 84:11
owns 34:3 81:15
o'clock 91:24

**P**

P 63:22,24
Pace 74:23
package 31:3,4 54:13,16 58:24 66:19
    82:17
packages 21:23,25 22:2 30:14 32:10
    44:19 45:10,10
packet 58:5
Page 2:13 3:11,11
Pages 1:10
page-by-page 67:3
paid 19:19 32:3 42:5,6 105:20 106:2,4
paper 42:24
papers 95:1 102:12
paperwork 18:2
paragraph 55:1,10 94:2
paralegal 5:5 91:16
Parcel 17:15,18 19:20 20:6 27:11
Pardon 34:14 63:23 81:18
parents 30:1
part 19:6 54:13,16 58:4 62:14 65:10
    65:12 66:10 70:14 91:23 93:10
    108:23 109:2
participants 96:16 100:15
participate 51:23 59:12
participating 97:8
participation 68:15
parties 12:23 67:18 69:4,19 94:4
    108:5
Partner 55:21 57:2
Partners 1:7,8 4:4,16,18 8:5 14:10
    28:21,24 51:5,24 53:20,25 57:6
    59:7,11 61:2,12 62:4,6,12,17 63:4,8
    64:6 65:13,16,18,20 66:6 67:11,15
    67:17 68:2 69:3 71:18,19 72:18
    76:2 82:2 83:12 93:22 100:17 101:1
    101:16 104:4 105:8 109:20,25
parts 32:11 42:25
patience 50:12
patient 68:24
patients 96:25
pay 9:9 13:6 27:7,10 42:9,10 66:9 75:2
    77:21 78:10,16 79:15 93:5,12 102:7
    103:6 104:5 105:22,24 109:10
paying 13:5 78:6 108:18
payment 12:25 21:16,19
payments 21:17
payroll 34:24 35:2,9,9,12,12 48:24
pays 84:11
Pecan 5:9,9 14:6,8
penalty 46:8
pending 110:4
Pennsylvania 1:18

penny 78:3
people 12:24 13:3,17 21:25 30:4 32:22 36:19 48:18 49:11 50:16,16,17,21 55:3,5 65:5,8,15,22 66:11 67:2,15 67:22 68:21,22 69:6,21,24 70:3,9 70:13,14,16,22 73:4,10,10 74:6,25 75:22 76:14,16,18 77:1,3,9,17 78:8 78:16,16,22,21,23 84:22 96:14 97:7 97:8,10,13 100:12,13 101:2 102:7 102:21,21 103:24 105:19 107:22 108:12 109:4 110:6,11
percent 57:11 71:7,11
percentage 57:10
perform 76:23
performance 107:21
performed 54:21
period 56:19 69:21 71:18
periods 60:5
permanent 109:24
permission 12:5 16:9 60:14,19 76:13 100:16
permitted 101:6
perpetrate 94:7
persistency 70:5 71:6,9,14,15
person 26:13 38:20,23 47:25 49:2 65:21 66:5,18 67:15 69:12,16 80:3 80:18 82:5 108:9,12,12
personal 80:15
personally 83:16
perspective 105:18
pertain 53:4
Peru 30:23
Perú 21:24 22:3 30:14,20 32:10
Peter 5:10 63:22,24
Pfizer 104:22
phase 12:5 97:7,7 100:21
phone 12:14 13:9 39:14 48:20 59:12 59:19,22 60:1 61:16,25 62:3,17 72:4 73:17 77:22 106:21 110:3
phones 11:14 68:12,22 76:8 78:18
phrased 8:11
physical 39:20 82:3 87:9
physician 77:17,23 78:2
pictures 52:23
PIHC 105:8,8,14
place 10:6,14 13:22 15:20 98:3 99:4 100:6 106:23 109:16
places 13:12 22:1
placing 53:22
plain 85:14
plaintiff 1:5,17 3:12,13,14,15,16,17 3:18 20:15 23:8 24:16 26:25 53:14 54:23 56:13 96:4
Plaintiff's 14:24 20:9 23:2,11 24:12 25:5,11 26:10,21 27:3 51:9 52:25 55:1 56:7,15
plan 10:18,19,24 11:1 50:7 55:8 65:10 69:22 70:11 74:12,13,15 75:4 78:13 82:22 83:3 86:13,18 96:23 98:15 100:5,6,12,24 101:5 106:17 108:4
plans 56:24 57:1,8,8 67:6 74:21 83:15 86:6,6 87:14,17 105:7,12
plate 70:1
play 6:20 74:9
please 4:1 7:16 23:14 24:25 30:15 31:10 46:14 55:2 60:9 61:19 63:18 64:5 66:25 70:19 77:4 84:4
podium 85:11
point 43:20 82:14 88:9 91:4 93:15 98:2
pointed 18:21 39:23
poisonous 100:11
policy 78:8,14 79:16 98:8
politician 64:23
Ponzi 104:10 108:8,10,12
pooling 97:4
position 9:22 12:9 23:22 42:21 53:5 84:6 85:7 94:16 104:25 109:4
possible 105:17 106:14,18
post 57:21 73:14 79:17
posted 110:14
practice 73:22
practices 51:20 74:3
practitioner 100:23
preapproved 11:25
precisely 86:23
precluded 90:21
predicate 58:16

prefer 6:17,19
preference 6:22
preferences 7:8
preliminary 1:12 5:12 7:12 88:22 89:12 92:25 109:19,21 110:20,22 111:12
premises 5:20 15:23 16:9,17,18,22 17:9,10,21 19:22,23 21:21 22:9 43:16 51:24 81:1 82:1 85:15 94:4,6 94:21 95:16 105:4
premium 78:10 82:22 109:10
prepared 9:24 12:19 13:22 68:2 109:10
prescription 68:18 82:5,15,23 83:1 104:6,13,21
presence 22:4,7 59:10 60:11
present 5:24,25 6:24 58:6 61:22 62:9 69:2
presentation 82:11
presentations 111:8
presented 38:1 70:23
presently 44:21,22
preserve 106:14
preserved 52:24
president 34:13 64:6
pretty 30:18 32:21 35:17 36:6,7,8 39:24 42:11,12 45:8
previous 81:1
previously 20:9 23:10
price 82:15
primarily 37:4
primary 44:16
principals 87:9
print 35:16 45:13 58:24
printed 60:5
prior 12:16 13:19 64:12 68:14 86:9
private 68:22
pro 64:13,14
probably 73:3 74:20 104:20
problem 47:16 65:5 74:4 75:3 86:22 89:8 94:12,18 99:13
problems 8:17 47:12,13,15 76:14 79:8
proceed 18:23,23
proceedings 9:22 11:25 111:17,20
process 12:13,14 13:19 79:10 86:23 98:4 100:14 106:20,23
processing 21:17 53:22 59:1,4
processor 53:19 61:1
product 56:5 64:25 67:5 69:6,12 80:4 101:18 109:5,6,6
production 30:17
products 13:16 66:13,15
professions 13:22 98:14 101:3
profit 84:19
program 11:6 65:10 67:7 68:24 70:8 70:22 74:19 77:24 79:13 82:8,11 83:23 95:3,6,8,12 101:23 103:1,25 103:25
progressed 16:16
prohibited 12:11 97:1,2,13
prohibits 96:23
promotion 30:24,24
promotions 64:11
proper 12:3 13:23 97:3 109:16
properly 85:5
proposal 75:1,6
propose 11:17
proposed 10:4,18
proprietary 95:4,7
prosecuted 69:15
prove 7:3,7,7
provide 32:23 61:8 68:10 86:18 100:17
provided 68:8 91:2 100:11
provider 70:18,20,23
providers 11:9 70:20 71:1
provides 97:25
providing 76:19
publish 52:25
pulled 38:20
purchase 31:3
purchased 6:1 38:24
purchasing 65:8
purporting 109:13
pursuant 52:8
put 6:22,24 7:1,5,6,9 9:5,18 13:12 14:15 29:13 33:12 34:3,6 37:14,23 38:21 40:20,21 45:19,25 46:7 47:13

51:4 74:2 95:10 96:14 98:14 106:23 111:2
P.A 1:21 2:2
p.m 111:17

Q

quality 74:25,25 75:7
question 12:24 55:3 82:14 84:14 87:4 88:11,11 90:15 92:11 96:19 99:3 108:7
questions 27:23 28:16 29:7 43:2,5,7 45:4 46:9 49:17,19 50:23 57:12 61:21 63:12 78:20 83:18 110:9
Quick 35:1 95:5,6
quickly 54:18 91:7 93:15
quite 106:3
quote 38:19,22 55:11,11,14

R

R 111:18
ran 59:13 65:3
rare 37:4
rate 50:14 70:6,15 71:4,9,15,17 72:7 72:10
rates 72:2
ratio 57:7
reach 10:15 103:4
read 24:2 45:5 55:1 58:18
ready 5:12 9:18 31:5
real 7:24
reality 96:5
realize 80:2
realized 17:12
really 7:18,21 32:17 34:1 55:3 82:14 86:4 87:6,12 107:24
Realtime 2:7
reason 34:8 38:20 39:13 40:21 86:21 104:4
reasonable 95:16
reasons 90:4
rebuttal 18:20
rebuttals 18:19,21 19:8
recall 39:8 44:3,6 62:16,23,24
receive 15:17 17:8 18:20 68:20
received 3:10 20:15 23:6,8 24:14,16 26:23,25 53:12,14 54:23 56:13 56:13 66:23 67:2 75:6 80:13
receiver 5:8,10,21 10:7,12,15,19,23 12:8,8 14:3 16:18 52:19 60:15,18 60:19 68:13,14 69:1 71:25 73:5 76:15,19 79:7 80:25 81:8 84:16 85:21 86:14 89:1 90:1 91:2,4 93:1 94:3,5 95:15 97:13 98:5,17,18 100:7 101:5 108:9,13,14,15,21,25 110:2,10,15
receivership 6:17 11:19 84:16 106:23
receiver's 95:15 104:25 107:16,24 109:4
receiving 11:15
reception 40:23
receptionist 18:13 23:18 24:24 25:3 39:18 41:4 43:15,17,18,19
recess 84:3
recognize 20:18,20 23:11,16,16 24:20 24:22 27:3 53:16 54:10 56:15 73:19
recollection 44:1,3 96:14
recommend 75:12
record 39:15 79:21 110:21 111:3
recorded 58:16 74:5 79:24 100:19 110:7
recording 86:19 98:7
records 10:9,12,20 56:23 69:1 80:11 81:3,7 90:24 91:2 92:15 93:25 94:4 94:13,25
recover 87:5
redirect 46:13 50:25 63:13
reduce 65:15,16
referred 62:20
referring 4:24 25:22 27:9
reflect 33:11 41:12 107:23
refund 50:14 56:4 100:14,16 106:11
refunding 97:12
refunds 97:11 100:17
Reganiter 53:20,24 60:16 106:1
regard 87:19 88:1,19,20,22,24
regardless 74:24 96:6,6
registration 45:1 97:3

Registry 45:2
regulations 86:16
reinvigorate 94:22
related 28:13 60:23 61:1,1
relates 61:11
relating 14:9,12 45:6 51:5
relation 35:20 39:21
relationship 56:18 62:16 77:13
release 30:19 45:25
relief 90:5
rely 6:11,13,16 7:4
remain 10:14 42:12
remained 106:10
remaining 105:22
remediation 74:3 86:13 101:22 103:16
remediations 102:2
remember 49:8 57:25
renew 100:5
renewal 19:22 42:5,6,6,9,10 84:12
rented 40:1,1
renter 19:20
renting 32:6
reopen 100:22
reopening 10:4 12:20
rep 45:15
repair 99:4
repairman 78:19
repairs 98:23 99:16
replace 79:14 104:24
report 10:16 56:18 58:23 59:1,4 60:1 71:22 72:3 107:25 108:1
REPORTED 2:6
reporter 2:7,7 31:10 111:23
Reporter's 3:7
reports 59:13 60:4 64:14 102:18
represent 28:21 56:22 57:4 80:4
representation 94:8 97:5
representative 66:23
representatives 65:4 79:4
represented 21:11 25:15
representing 86:24 87:15
represents 22:23 57:5
Republic 22:1
request 14:1 24:7 100:14,16,21 109:19
requested 72:1 80:13
requests 53:8
require 79:7,20
required 99:12
requirement 10:22
requirements 100:5
requires 75:22 99:10
Resa 5:5
research 22:6
reservation 31:7,8,8,13
reservations 24:2,5 31:12 41:25
reserve 93:9,13
resolve 14:3 32:7
resolved 91:11 101:21
resource 54:21
resources 60:13 97:11
respect 6:6 78:9 84:23 104:10
responded 68:25
responsibilities 15:15,17
responsibility 66:2,19
restraining 5:19 6:18 7:11,22 8:9 80:8 88:18 105:15 110:21 111:3
restrictions 10:1,14
result 59:19 72:4
retain 12:2 75:22 79:22 98:14
retainer 75:2
retention 72:7 78:15
return 98:24
returned 64:15
revenue 105:20 106:4,6,9
review 28:22,22 29:1 51:20 58:16 93:5 94:4
reviewed 52:24 96:21 97:19 100:7
reviewing 51:21 52:22 55:21 60:16 101:15
right 4:3,20 5:7,11 7:16 9:21 14:4 17:1 18:8 20:11 23:4,6 24:14 26:1 26:23 27:22,25 29:8 33:8 34:11 38:7,7 39:19 41:3,3 43:1,4 46:12 48:3 49:16,20 51:1 53:12 56:11 57:13 59:17 63:16,19 72:23 75:3 76:11 78:22 79:24 80:1 81:11 83:19

83:20,25 87:1 88:16,23 89:23 91:21
96:13,17 107:13 109:17 110:11
111:7
**right-hand** 52:5
**ring** 78:18
**ripped** 103:21 104:9
**rip-off** 108:11
**risk** 60:22 107:17
**road** 100:7
**ROBERT** 1:12
**Rockland** 64:21 65:3
**Rogow** 2:1,2,16,19,22 4:22,22 5:1,4
7:17,21 8:4 14:11 20:13 23:5 24:10
24:13,25 26:22 27:21 28:1,4,15
29:15,21 34:9 41:10 42:18 46:12,13
46:16,22 49:15 50:25 51:2 53:4
83:24 86:8 88:2,13,14,21,24 89:15
89:19,23 90:7,9,18,20 91:1,10,14,19
92:9,19 110:17 111:5,10
**Rogow's** 84:5 93:16
**role** 107:16,17,24
**roof** 74:16
**room** 19:7,11,16,16 28:23 57:22 59:20
59:22 60:2 65:3 75:9 98:9
**rooms** 17:1,7,7 18:6,7,23 19:1,10
41:23
**Roth** 12:3 75:19,19
**RPR-CM-NSC-FCRR** 2:6 111:22
**rules** 15:19
**run** 35:1 37:15 60:1 85:16 95:11,13
98:5 102:19 105:15
**runs** 49:2
**Russin** 5:10 85:7,8,11 86:2 87:1,12,24
88:16 92:1,6,10,17,20,24 93:11,14
94:16,17,20 95:19 98:1 99:19 114,18
100:10,23 105:2 107:9,12,18
109:23 111:12
**Russin's** 90:23
**RX** 82:22

---

**S**

**S** 1:9 2:1,2 4:24
**safekeeping** 99:19
**salary** 66:9 106:2
**sale** 86:23 109:12
**sales** 24:5 41:17,24 45:15,18 52:4
54:14 56:19,24,25 57:1,5 64:16
65:4 79:3,12,21 86:19 106:9
**salud** 24:1 26:4 38:10,12,15
**sanction** 84:25
**sanctioned** 84:24
**satisfactory** 92:6
**satisfy** 92:2
**save** 65:8
**saved** 76:21
**savings** 55:8 79:13 82:11
**saw** 17:14 21:16,19,22 22:3,10 38:4
52:2 55:16,22 59:9,13 79:17
**saying** 38:16 48:22 66:5 73:16,19
76:24 77:1 88:24 89:17,22 90:4
92:13 108:7
**says** 20:2 26:3,4 34:10 53:22 55:10
56:21 70:19 74:8 82:22 89:18 96:22
103:21
**scan** 99:15
**scheme** 104:10 108:8,10
**SCOLA** 1:12
**scope** 14:2 29:3 87:13
**screen** 23:14 33:13
**script** 54:13 57:21,22 58:10,12,18,20
73:14,15 79:12,18,19
**scripts** 17:24 18:10,15,17,21 19:8
27:22,25 29:1 73:11 79:5 98:4
**scrutinized** 64:22
**searching** 16:20
**seated** 4:2 84:4
**seats** 41:19
**second** 52:11 55:1 95:25
**secondly** 101:24
**secret** 89:9
**secretary** 39:1 41:4
**secured** 16:19
**see** 15:19 16:22 17:6 24:18 27:14
28:24 33:12,13 38:3,8 39:10,12
41:1 50:9,12 52:1 55:10,13,17,20
58:18,19 71:1 72:8 80:4 82:22,25
86:21 88:3 90:24 99:6 105:17 106:4

106:7,7,16,18 107:6
**seek** 12:1 15:20 56:4 100:15
**seeking** 90:5 102:11
**seemingly** 105:9
**seen** 20:13 33:6 37:25 38:1 39:4 53:3
70:16,22 73:16 99:4 106:8 107:4
**sees** 91:4
**segregate** 84:7
**segregated** 62:8
**segregation** 61:22
**seized** 10:7
**self-help** 104:23
**sell** 30:14 32:10 38:19,23 50:7 82:10
82:11 83:10,12 105:7 107:7
**seller** 103:18
**selling** 13:16 97:2 106:1
**sells** 8:12 83:15
**send** 31:5,15,18 49:24 70:17,25 76:20
99:15
**senior** 13:16 64:17 71:5 76:2,4 81:9,13
81:20,22 105:6,13
**sense** 73:18 97:25 99:4,21
**sent** 31:13 50:1 75:1 91:5 106:24
**separate** 8:21,24,25 9:19 47:20,23
49:6,12 62:9 88:10 102:9 105:9
**separated** 9:8,8 41:21,23 42:11 45:17
**separately** 42:9,10
**separates** 39:10
**separation** 39:12,16
**September** 1 7 56:20
**serve** 80:6
**served** 5:19 64:10 80:7
**server** 33:1 63:6
**servers** 89:7
**service** 11:2,6,11,19 13:5 17:7,22 18:6
18:13,16,22,24 24:2 32:22 41:18,25
42:2,3 50:8,18 61:8 62:1,21,21 64:9
65:20,23 66:2,11,16,23 67:2,14
68:22 69:3 74:2,5,6 76:14,23 77:5
77:22 78:4 96:2 97:18,25 103:7
104:19 105:18 107:7
**serviced** 11:17 96:18 97:9 98:20 99:9
101:2
**services** 17:16,18 19:21 20:7 27:11
54:21 65:14 66:17 67:4 68:8,10,19
69:6,23 70:8,16 82:12,23 83:1
100:9,10 103:16 104:12,13 106:25
**servicing** 10:5 12:22 106:2
**set** 15:3 31:1,8,9 55:7 91:24 100:18
101:23 108:3
**settled** 6:19
**seven** 41:19 52:6 77:18,25
**share** 8:23 34:24 35:3,8 49:12
**shared** 63:6 75:17
**shareholder** 41:17 44:24
**shares** 8:6
**sharing** 89:8
**Shield** 104:16
**short** 6:9 84:3
**shorten** 7:18
**shouldn't** 103:12
**show** 7:10,12 20:16 23:1,4 24:11 34:17
37:22 38:5,25 39:2,4 70:17 98:25
99:8,10
**showing** 23:10,14 27:2 60:1
**shown** 71:17
**shows** 25:12,14 87:22
**shut** 68:13 76:15 84:14 86:1 98:7
102:3,4 104:16 107:22 108:14,16
110:1
**shutting** 68:14 88:17 89:15 92:11
108:15,21 110:8
**side** 6:4 17:1 38:7 97:18
**sides** 8:7 36:13
**sign** 11:1 35:16 40:20,21 48:5 92:16
**signature** 27:18
**signed** 27:15 34:13 43:24 44:4
**signing** 37:8,19
**signs** 40:16,18 41:6,11 47:25
**Silva** 26:15,17
**similar** 9:23 84:22
**simply** 85:14 86:12
**single** 97:15,18,24 108:8
**sir** 9:23 28:7 43:3 51:2 57:9,20 63:23
63:25 66:7 67:12,17 71:5,21,23
72:14,19,24 73:7 75:8,10,14,21,24
79:22,24 80:17,20 81:11 81:22,25 82:4
83:3,11,13,16,21,23,24 95:18 100:2

110:17
**sit** 17:8 36:10 88:2
**site** 5:24,25 54:15
**sites** 52:23
**situation** 9:24 10:7 52:20 103:14
**situations** 11:24
**six** 77:13
**skeptical** 32:14 107:1,2
**skepticism** 13:13
**slowly** 31:10
**small** 41:17 66:8
**social** 43:22
**software** 10:20,25 11:5 71:20,22,24
**sold** 13:17 64:16,17 82:7,9,24 83:4
86:6 105:12
**sole** 43:11 47:24 81:24
**solely** 11:51 32:21
**solicit** 82:21 101:23
**solicitation** 61:25 62:3,17 72:6 97:22
98:16 101:6
**solicitations** 11:16 59:12,19 60:2
72:13 100:5
**solicitators** 72:4
**solicited** 100:12
**solicitors** 12:14 13:9 61:17
**solicits** 97:21
**solution** 109:9
**Solutions** 1:8 4:21,23 7:23 8:4,8,16,24
8:25 9:3,4,9 14:10,14 17:12,23
18:11 19:6,11 20:7 21:9,13 22:16
22:24 25:16,18,19 26:6,6,10,14,16
26:18 28:13 33:4,5 34:7,10,13,15
34:16,21,23,25 35:10,11,17,18,23
36:1,14,17,20,23 37:4,9,20 38:14,14
39:12,22 41:18 42:7,9 43:11,25
44:5,8 47:4,5,7,20,25,25 48:13,15
49:3,6 75:7 84:10,18 85:19 93:8
110:20
**somebody** 14:16 18:17,18 38:18 48:19
67:14 80:3 103:3,20 108:16,18
109:9
**somewhat** 107:4
**son** 9:1 47:15,22,24
**son's** 85:24
**soon** 40:5 41:16,21 91:11 92:16
**sorry** 15:13 17:2 25:24 31:12 35:5
36:7 40:11 47:18 52:15 61:4 69:13
**sort** 12:17 52:4,19 108:1
**sought** 106:11
**source** 48:11 59:4,6 104:21 105:21
106:9
**sources** 21:19
**South** 21:23
**SOUTHERN** 1:1
**space** 8:7,23 42:7,16,17
**Spanish** 15:14 24:3 36:3 38:10 44:16
44:17 48:16 50:17,17
**speak** 4:9 8:5 15:11,13 28:5,8,10
31:1,10 36:4,11 43:21 48:14 50:17,17
59:17 60:21 61:6,9 75:15
**speaker** 9:2
**speaking** 44:17 50:8 101:3
**speaks** 37:3 44:15,16
**specialized** 11:21 12:2
**specifically** 21:23 59:9 60:25
**speculative** 107:4
**spell** 44:12 52:13
**spend** 50:20
**spent** 93:2
**spite** 96:20
**split** 62:23
**spoken** 7:21
**spot** 45:21
**spots** 46:2
**staff** 52:8,10
**staffed** 72:17
**stake** 105:14 107:23
**stand** 7:15 14:23 29:10
**standing** 6:23
**standpoint** 13:24
**start** 14:11,12 39:24 60:11 69:2 71:19
74:5 84:5 102:1 110:12
**started** 17:11,22 18:1 37:12 39:25
65:8,14 69:4,9 73:3,21 77:10 79:10
97:6
**starting** 110:11
**starts** 89:19
**state** 15:6 65:5 92:21

**stated** 45:19
**statement** 82:18 97:24
**statements** 76:24
**states** 1:1,13 2:7 32:12 45:11 64:10,19
111:23
**stations** 46:2
**status** 73:12
**stay** 45:12 108:11
**stays** 78:12
**step** 11:18 29:9 46:14 83:20
**steps** 11:17
**Steven** 2:18 20:24 21:1 22:15 27:5,13
27:17 28:6 29:16,17,18,23,25 30:2
30:4 47:24 48:6,12,12,14,21
**stipulate** 9:25 12:22 13:24,25 54:7
110:24
**stipulated** 89:14,15 110:19,22
**stipulating** 110:25
**stole** 13:17
**stop** 89:22 109:16
**story** 6:9
**stranger** 49:10
**Street** 16:13,21 30:10
**strongest** 77:6
**structured** 6:18
**stuff** 80:21
**subdivided** 62:6
**subject** 9:18 86:1,25
**submissions** 101:15 109:18
**submit** 10:24 106:17
**submitted** 101:7
**submitting** 75:4
**subscribers** 10:6
**substantially** 79:17
**substituted** 107:18
**successful** 69:25 70:2
**sudden** 78:10
**sufficient** 105:23 106:6
**suggest** 100:13
**suggested** 51:6 86:8,12
**suggestion** 88:13,14 101:22
**suggestions** 109:23
**suite** 1:22 2:2,8 16:13,21 19:22 27:8
41:7 111:24
**suites** 52:8
**summary** 102:12
**supervise** 75:9,10
**supervised** 98:4,4
**supervision** 11:20 12:15
**supervisor** 98:4
**supervisors** 58:12
**supplement** 71:7
**supplements** 64:18
**supply** 66:2,18
**support** 7:11 15:23 16:10 17:24 18:3
**supported** 85:20
**suppose** 86:18 106:24
**sure** 33:2 58:22 62:18 65:1 66:4 70:21
71:2 86:14 88:9 90:2 91:4 92:18
93:11 98:8 99:14 107:23 109:7
**survival** 70:6
**survive** 48:11
**suspect** 95:8
**suspended** 44:24 45:2,7 46:5
**suspension** 45:6
**sustainable** 104:4,11
**swooped** 8:11
**SWORN** 14:24 29:17 46:17 51:9
63:20
**system** 31:18 32:25 35:9,13,14,16
56:19 59:14 60:3 94:23
**systems** 35:10 56:23 63:10

---

**T**

**T** 111:18,18
**TABLE** 2:12
**take** 6:16 18:5 20:5 21:25 30:18 31:11
37:19 38:7 51:3 76:22 84:1 89:3
93:21 99:4,17 110:5
**taken** 69:25 84:3 106:15 107:17
**takes** 35:14 65:17 90:6
**talk** 35:25 50:9 55:4 78:1 109:22
**talking** 36:9 50:3 54:18 71:14 82:3
87:8 94:24 105:3
**talks** 48:16
**Tara** 2:1 4:22
**tcampion@rogowlaw.com** 2:4

**team** 30:17 45:18
**technically** 42:24
**telemarketers** 17:8
**telemarketing** 10:1,5 11:21 36:16 65:3 67:21 74:18 75:9
**telemed** 77:5 96:24
**telemedicine** 67:5,5,7 68:19 69:23 77:8 82:25
**telephone** 6:4 100:18
**tell** 6:21,25 18:18,19 30:15 45:16 42:21 80:24 71:1 74:9 77:11,14,15 77:16,21 83:7 86:13 96:24 106:25
**telling** 7:4 20:23 108:24,25 110:7
**tells** 92:14
**temporary** 5:18 6:18 7:11 80:7 105:14 110:21,23 111:3
**ten** 78:10 101:5 102:20
**tennis** 6:20
**tension** 68:23
**term** 8:11 16:6
**terminated** 12:16 13:18 37:3,6 44:7 65:1 69:11
**terminating** 12:13
**terms** 7:22 35:20 58:23 72:2 86:4 89:13 95:13 98:10
**testified** 85:1,2
**testify** 84:25 85:1
**testimonies** 76:20 77:1
**testimony** 5:23 6:5,14,17 7:10 9:18 58:2 76:21 96:8 97:19 109:18
**thank** 9:23 14:4,8 23:15 28:16 29:6,8 29:9 43:3 57:14 63:11 78:20 83:21 89:18 93:18 95:18 105:2 107:12 109:17 111:7,16
**that's** 9:15 12:11 18:3 39:11 42:4,8 44:20 47:18 48:11 49:1,1 55:6 58:4 61:24 62:2 69:17,20 89:10,23 97:6 97:9 99:12 111:4
**There's** 43:15
**they're** 32:6,6
**thing** 9:11 46:7 48:17,24 49:1,8,12 55:3 66:8,22 67:13 75:3 100:3
**things** 7:5 9:3 48:8 49:11 74:1 93:23
**think** 6:23 7:3,6,17,18 8:18 9:10 33:6 42:5 55:5 84:8,15,16 85:5,22 88:18 88:19 93:19 101:2 102:13 103:11 104:20 105:24 107:3,24 108:17 110:2,24,24
**third** 67:18 69:4 108:5
**third-party** 59:16 69:9 72:12 79:4 101:3
**THOMAS** 1:21
**thought** 10:25 17:11 47:14 72:12 91:10 96:10 108:4
**three** 22:7 30:12 31:6 33:2,25,25 35:11 40:4 41:1 69:24 73:3 95:23 100:2 106:10
**three-and-a-half-year** 71:18
**three-year** 69:21
**thumb** 94:25 95:3
**Thursday** 53:21 91:8
**tied** 91:15
**time** 44:17 47:11,17 49:19 59:3 60:4 69:2,21 70:3 72:14 73:19 75:23 77:10 78:6,13 93:3 98:18 102:7 109:22 110:5
**times** 31:24 78:1,2
**title** 22:22 98:19,21,22,23 99:6,8,10,15 99:23,25
**today** 15:25 53:7 57:19 59:10 65:17 67:6 68:12 76:16 78:4,5 89:18 91:8 91:10,25 92:5 95:21 97:20 98:10 101:15
**told** 36:23 48:1,8 59:25 81:6,8 87:25 88:17 100:1 103:17 108:18
**tolerance** 98:8
**tomorrow** 89:19 91:9,10 92:1,7
**top** 23:14 24:18 61:13
**tore** 40:3
**total** 72:9
**totally** 72:20
**Tourism** 45:2 46:6
**trade** 1:4,18 4:4,6,7,11,14 5:17,23 9:25 15:8,9,15 51:15,17,19 55:25 58:17 80:7 84:9 94:7,14 103:9,14
**trained** 35:14
**training** 48:15 72:9
**transcription** 111:20

**translate** 36:5,9
**translation** 36:12
**transmit** 95:20
**travel** 22:3 31:19 44:19 84:23 87:14 87:18
**traveling** 32:1
**treat** 50:21
**tree** 100:12
**tremendous** 78:7 85:17
**trial** 6:25 7:2
**Tri-Resource** 11:10,13,18 62:6,9,11 62:21 63:1,3,9 65:22,24,25 66:9,10 66:14,15,15,17 67:13 76:6 82:1 97:14,21,23 98:10 100:9,19,22 105:9,10,13 109:11,12
**Tri-Resources** 58:21 83:10
**Tri-Resource's** 61:7 97:15
**TRO** 8:10 85:13,14,20 86:1,25 87:17 92:25 93:4 94:2
**true** 44:23,25 45:1,3 46:5 50:15 58:4 82:18
**trust** 65:17
**try** 50:16,17,19 65:14 69:15 70:1 81:6 81:7 84:16 93:16 102:25
**trying** 18:2 38:23 40:22 56:4
**Tuesday** 91:20
**turned** 76:8,11
**Turning** 60:11
**TV** 46:2
**two** 5:23 8:18 11:17 16:23 17:1,7 31:6 35:9,15 39:12,16 40:2 49:6 73:3 74:25 77:11 82:21 83:25 88:3 91:15 92:12,17 93:14 101:20 105:1 106:10
**two-step** 97:7 100:21
**type** 56:4 101:22
**types** 11:24

## U

**umbrella** 105:10
**unable** 14:2 76:22 87:24
**unaffiliated** 84:10
**uncertain** 63:10
**uncle** 40:8
**unclear** 59:6
**uncovered** 87:22
**undercover** 16:4,4
**underlying** 90:4
**underneath** 87:13
**understand** 13:8,13 17:10 66:5 70:21 85:8 87:14 99:22 103:22 109:4 111:5
**understanding** 14:5 19:25 21:14 23:24 25:10 27:6 38:18 59:7,11 62:2,3 67:10 93:19 94:5 107:3
**understands** 106:13
**unethical** 80:4
**unfair** 51:19
**unfortunate** 101:12
**unlimited** 77:24
**unrebutted** 96:8
**unresponded** 10:17
**unsatisfied** 56:5
**unsolicited** 76:21
**upgrade** 73:12
**upset** 76:16
**USA** 23:20 26:2
**usage** 78:13
**use** 31:4 58:10 69:7,23,23 71:20 77:9 77:24 79:4
**useless** 76:25
**uses** 71:15
**USG** 88:4,4 92:22
**usually** 30:17,24 32:7 36:4 55:5
**U.S** 2:8 51:15 111:23

## V

**v** 4:4
**Vacaciones** 17:13 18:12 22:13
**vacation** 19:9 21:23,25 30:14 31:7,15 44:19 86:6
**vacations** 8:12 17:14 19:7,12 21:13,18 21:21,22 22:2,4,16,17,23 25:16 33:24 34:3,3 39:11 41:23 44:18
**valuable** 76:23
**value** 78:16,17 80:5
**Vargas** 1:9,9 2:18 4:23,24,25 5:5,6 8:7

**8:14,22 9:1,14 16:25 17:1,2,3,4 18:1 19:17,25 20:21,23,24 21:1 22:10,12,15,21 27:5,13,18 28:6,8,10 29:16,17,18,22,25 30:5 40:8,11 43:11 46:14,25 47:1 84:24 91:16**
**Vargases** 8:5 9:9
**varied** 71:5
**various** 33:16
**vast** 101:17
**vendor** 35:25
**vendors** 79:20
**verification** 55:4 79:7,9,10,12 105:11
**verifications** 24:6 41:24 45:17
**verify** 45:18
**versus** 57:8
**vetted** 11:24
**view** 85:14,17,20,22 103:10,14 105:13 107:3,5
**violate** 10:1 14:1 86:16
**violates** 98:9
**violating** 89:20
**violation** 98:6
**violations** 13:25 85:19 86:20
**vision** 74:15
**vs** 1:6
**V-a-r-g-a-s** 29:18**

## W

**Wachovia** 91:19
**waiting** 48:20
**walk** 40:6,23 41:2
**wall** 40:3,16 41:2
**Walter** 1:9 2:18 4:24 8:7,14 9:1,14 16:25 17:4 18:1 19:17,25 20:23 21:1 27:4 28:5 29:15,17,18,22,25 84:24
**want** 6:21,24 7:6,13 9:5,6 14:15,17 29:13 31:6 47:12,18 48:5,19,19 50:21 51:4 66:4 71:1 87:13 88:21 91:12 92:13,17 93:4,8 94:6 96:1 100:11,19 102:3,4 103:7,7,9,23 104:1 106:25 107:14 109:9,22 110:13
**wanted** 50:13 93:24 107:9
**wants** 6:5,10 10:19 31:14 36:10 48:10 78:9 94:13 101:19
**Warner** 104:22
**Washington** 1:19 12:4 75:20
**wasn't** 73:19 87:17
**way** 6:17 38:16 40:5 45:10 70:23,24 78:15 86:8,22,23 87:25 88:5 101:11 101:12 104:17 106:2 109:10 110:3 110:6,11
**ways** 109:7
**Wednesday** 16:15
**week** 45:22,24 73:9 77:18,25 86:3,4,4 86:9 93:3 96:9 105:25 107:5
**weeks** 100:2
**welcome** 4:1 66:20,20 67:1 68:6 70:24 70:25 84:4
**Wells** 91:19
**went** 5:20 10:17 18:25 19:17 34:1 47:17 48:1,2,2 52:1,19 64:15 69:4 69:14,24 70:2,23 77:14,19
**weren't** 86:10,25
**West** 8:13 16:13,21 27:8 30:10 39:21 43:14,15
**we're** 9:24
**whatsoever** 94:15
**who's** 63:10
**wife** 70:10 74:22
**Wilkie** 2:8 111:23
**willing** 37:19 75:16 105:22
**willingness** 9:25
**wind** 89:1
**Wisconsin** 5:24 10:8 52:2 54:15,19 55:18 59:19,22 60:1,23 61:22 65:7 72:6,11 73:6 76:2,5 81:9,14,21,22 81:23 94:20 95:16,24 98:9 99:12,19
**wish** 98:10,12
**wishes** 10:4 87:19 88:2
**withdraw** 97:10 103:7
**witness** 7:1,13 14:15,18,20,24,25 17:3 17:18 19:4,6,13 20:25 23:2 24:5 25:2,24 26:2 29:5,10,11,17,18 33:20 35:5,7 40:11,12,13,18,25

**41:8 42:20,22,24 44:13 45:8 46:17 46:18 51:9,10 52:12,14 54:20 63:20 63:21,23,25 66:7 67:12,17,20 71:5 71:9,12,14 72:14,19,24 83:20,21 witnesses** 7:5 29:12,13 51:1 63:14,17 83:22 84:7,8 97:20
**woman** 50:20
**wondering** 68:23
**won't** 12:21 91:25 99:17 110:23
**word** 38:10,12,15 107:14
**words** 50:13
**work** 12:19 15:8 16:4 23:21,23 25:13 32:22 36:16 42:19 45:11 46:5 48:18 57:7 70:7,16 91:16 93:15,16 98:13 111:10
**worked** 47:22 64:16
**workers** 38:19,19,23
**working** 9:12 108:4
**works** 21:2 30:15 43:22
**workspace** 52:9 54:20 55:21
**workspaces** 52:7
**workstations** 61:23
**World** 17:15,18 19:20 20:6 27:11 42:6
**wouldn't** 78:18 103:9
**wound** 89:2
**WPES** 17:16,19 21:9,13,14 22:16,23 33:17,20,22 34:1 44:18,23 45:1
**writing** 10:19
**written** 10:24 11:23
**wrong** 97:5

## Y

**Yasnary** 44:11,15
**yeah** 18:17 48:7 96:12 109:8
**year** 31:4 33:21 39:8 76:21
**years** 9:2 13:15 30:12 37:18 42:13 49:13 64:21 69:5,24 73:1 73:17,25 74:23 78:10 108:4,19
**yesterday** 10:12,16 14:3 38:4,17 74:21 75:6 108:24
**Y-a-s-n-a-r-y** 44:13

## Z

**zero** 78:17 98:8

## $

**$1,000** 105:24
**$29,000** 76:21
**$35** 77:21
**$65** 77:21

## 0

**0** 64:14

## 1

**1** 1:10,22 10:11 56:20 81:2,5,7 83:7 97:7
**1,000** 102:21
**1,700** 97:10 102:8,16 104:7 107:22 109:4
**1,746** 96:7 100:15
**1-2-3** 10:21 56:19 71:22 95:3
**10th** 91:14
**10-minute** 84:1
**10:08** 43:9
**10:13** 46:21
**10:18** 49:22
**10:21** 51:12
**10:24** 53:14
**10:27** 54:24
**10:30** 56:13
**10:31** 57:16
**10:43** 64:2
**11** 3:14
**11:06** 78:24
**11:12** 84:3
**11:30** 91:8
**111** 3:7
**12** 3:12
**12-3** 1:5 2:8 111:24
**12:05** 111:17
**13** 3:15
**13-month** 71:15
**14** 2:14,15 3:17 73:10
**14-23109-CV-SCOLA** 1:3
**150** 96:9,10



**1501** 1:22
**159** 68:17
**18** 42:13 73:10
**1930** 2:2
**1968** 64:10
**1972** 64:11
**1973** 64:17
**1999** 64:17 103:18

---
**2**

**2** 10:18 81:2,5,7 83:7
**20** 3:15 52:3 73:10 108:19
**20-plus** 74:22
**2005** 65:9 73:21 77:9
**2009** 47:6
**2010** 8:22
**2011** 56:20
**2014** 1:7 53:21 56:20 59:25
**202.326.2230** 1:17
**202.326.2825** 1:17
**20580** 1:19
**21** 71:11
**22** 3:13 9:2
**23** 3:16,18 37:18 94:2
**24** 3:17 53:21 77:17,25
**24/7** 68:23
**25th** 5:19 76:15
**26** 3:18
**27** 31:20
**27th** 5:20 16:15
**28** 2:16,17 8:13 16:13,21 27:8 30:10
   39:21 43:15 64:21
**29** 2:18,19

---
**3**

**3** 56:20 64:20 81:2,5,7 83:7
**30** 49:13 52:3
**30-minute** 45:20
**300** 31:25
**305.523.5148** 2:9 111:24
**33** 3:12 53:1,12,14,16 60:11
**33128** 2:9 111:24
**33301** 1:22
**33394** 2:3
**35** 3:13 54:2,23,24 55:2 57:21 73:15
**36** 64:19
**37** 3:14 56:8,11,13,15 58:23 96:4

---
**4**

**4** 1:7
**40** 3:15 11:15 13:15 20:10,15 33:13
   69:5 71:3 108:3
**400** 2:8 111:24
**41** 3:16 23:2,8,11 25:6,25 37:25
**42** 3:17 24:12,14,16 25:11 26:5,11
   39:4
**43** 2:20 3:18 26:21,25 27:3
**46** 2:21,22
**49** 2:23

---
**5**

**5** 64:14
**5,000** 64:19 103:19
**50** 11:15
**50,000** 103:20
**500** 2:2 64:20
**51** 3:1,2
**53** 3:12
**54** 3:13
**56** 3:14
**57** 3:3

---
**6**

**6** 3:16
**600** 1:18 96:9
**63** 3:4,5

---
**7**

**78** 3:6
**79** 71:7

---
**8**

**8** 68:1
**8th** 91:24
**84.8** 57:11

**888-866-2670** 73:18

---
**9**

**9th** 8:13,23 39:20,24 40:15
**9/4/14** 15:2 28:3,18 29:20 43:9 46:21
   49:22 51:12 57:16 64:2 78:24
   111:17
**9:30** 15:2
**9:44** 20:15 23:8 24:16
**9:47** 26:25
**9:48** 28:3
**9:49** 28:18
**9:50** 29:10,20
**900** 16:13,21 19:22 27:8 40:17
**954.713.2700** 1:22
**954.767.8909** 2:3