**Exhibit "A"**

DECLARATION OF GARY KIEPER

PURSUANT TO 28 U.S.C. §1746

I, Gary L. Kieper, declare as follows:

1. My name is Gary L. Kieper and have personal knowledge of the facts stated in this Declaration.

2. I am a Defendant in the case styled *Federal Trade Commission v. Partners in Health Care Association*, et al., Case No. 14-cv-23109 pending in the U.S. District Court for the Southern District of Florida.

3. This Declaration is submitted in response to the Receiver's Motion for Turnover of Receivership Funds Transferred to Grumer & Macaluso, P.A. and Funds Withdrawn from Tri Resource Group, Ltd. Account.

4. The Receiver's Motion seeks the return of $20,000 in funds that I caused to be delivered by wire transfer to Grumer & Macaluso, P.A. on August 28, 2014 to retain them as counsel for myself and Partners In Health, in connection with this proceeding. The Motion also seeks return of $5,500.00 in funds that I withdrew on September 4-5, 2014. The source of all funds was the Associated Bank account for Tri Resource Group, Ltd.

5. At the time the funds were withdrawn, it was my belief and understanding that the withdrawal was consistent with the Temporary Restraining Order, and not in violation of any court directive.

6. From the time I first learned of the commencement of the FTC Complaint and entry of Temporary Restraining Order, which coincided with the Receiver's entry onto my business premises, my staff and I cooperated fully with the Receiver's demands for information and records. At no time was it my intention to interfere with the execution of the Court's order or the Receiver's authority.

7. My staff and I turned over all information at our disposal regarding the different businesses that operated out of the Appleton, Wisconsin offices that housed Partners in Health. The

documentation delivered to the Receiver included location and identification of all bank accounts for all companies operating out the Appleton offices, including the Associated Bank account for Tri Resource Group.

8. Tri Resource Group, Ltd. is an independent customer service company whose primary function is to provide customer service and member services, and negotiate discounts, for Partners in Health customers enrolled in the Partners In Health care health care discount product.

9. Tri Resource provides these services and is compensated pursuant to an arm's length agreement with Partners in Health.

10. Independently of any services provided to Partners in Health, Tri Resource also receives earned commissions and overrides stemming from insurance sales. These monthly commissions are approximately $2,000 per month. Partners in Health has never been a licensed insurance agent and bears no relationship to this aspect of Tri Resource Group's business.

11. Nor does Tri Resource Group participate in the marketing side of Partners in Health. The Partners in Health product is sold through other marketing entities, and not Tri Resource Group, Ltd. who never engaged in any sales, nor telephone sales or solicitations, or any of the conduct alleged by the FTC.

12. Tri Resource Group is a distinct entity with its own federal tax identification number, files separate corporate tax returns, maintains separate accounts, hires and employs separate employees, and performs an entirely separate function from that of Partners in Health.

13. I was informed that the bank accounts for Partners in Health, the Health Center, and my personal account would be frozen and subject to the Receiver's control. At no time did the Receiver inform me that the Associated Bank account for Tri Resource Group was subject to the asset freeze under the Temporary Restraining Order. The Temporary Restraining Order did not identify Tri Resource Group as being subject to the asset freeze.

14. In all my discussions with the Receiver, the focus was always on the telemarketing side of Partners in Health's product, namely, the function of the Health Center, and not the customer service function of Tri Resource Group.

15. At the time I delivered the legal retainer funds to Grumer & Macaluso, P.A., the account for Tri Resource Group was not frozen by the Receiver, and the account was not frozen by the Receiver until well after the September 4, 2014 hearing before the Court.

16. Other than the Tri Resource account, I did not (and presently do not) have any other funds at my disposal with which to retain attorneys. From inception, the Receiver took control over my personal banking account and all credit cards as well.

17. I have not delivered any other funds or assets of any kind to Grumer & Macaluso, P.A.

18. Between September 4-5, 2014, I withdrew $5,500 from the Tri Resource Account at Associated Bank, which was not frozen at the time.

19. These funds were necessary for immediate and fundamental living expenses, and to help compensate my closest staff members (Chris Francek and Deeanna Moore) for approximately one month of their work and invaluable time and assistance in helping me with the completion of the financial disclosures required to be made to the FTC and the Received under the Court orders. This involved several visits to the Appleton office, and innumerable hours locating, reviewing and gathering computerized accounting records which I am not familiar with and could not have accomplished alone. Were it not for their assistance, I would not have been able to comply with the Court directives for the financial disclosures to the FTC.

20. A breakdown of how the funds were spent (and funds still owed) is as follows:

    Paid Chris Francek $400 x4   $1600
    Rent September               $1000
    Water Bill                   $186.00
    Cell Phone                   $ 250.00
    Rent October                 $1000

```
Gas/Electric                $396 (still owed)
Transportation              $425
Car Repair                  $200
Parking Return from Miami   $42
Food                        $650
Deeanna Moore  (employee)$1600 still owed
```

21. I have not withdrawn, nor attempted to withdrawn, any other funds from any of the other business accounts.

22. As a result of the Court orders and the Receiver's actions, I have no present source of income and no funds at my disposal to pay for my legal defense or for personal living expenses. Except for payment to Mr. Francek, none of the funds were expended on unnecessary items, and were incurred on basic living expenses related to housing, transportation and food.

23. In the immediate future, I will have no alternative but to rely on and live off borrowed funds, and do not presently know how I will be able to pay for legal services.

I state under penalty and perjury that the foregoing statement is true and correct.

Executed on __/__ day of October, 2014, in Appleton, Wisconsin.

_____
Gary L. Kieper