UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14- 23109-CIV-SCOLA

FEDERAL TRADE COMMISSION,

       Plaintiff,

v.

PARTNERS IN HEALTH CARE ASSOCIATION, INC. (also d/b/a/ Partners In Health Care, Inc.),
GARY L. KIEPER (individually and as officer or director of Partners In Health Care Association, Inc.),
UNITED SOLUTIONS GROUP INC. (also d/b/a Debt Relief Experts, Inc.),
WALTER S. VARGAS (individually and as an officer or director of United Solutions Group Inc.),
CONSTANZA GOMEZ VARGAS (individually and as a director or manager of United Solutions Group Inc.),

       Defendants.

_____/

**RESPONSE TO RECEIVER'S MOTION FOR TURNOVER OF RECEIVERSHIP FUNDS [DE 46]**

    Defendants PARTNERS IN HEALTH CARE ASSOCIATION, INC., and GARY L. KIEPER ("Defendants"), and their counsel GRUMER & MACALUSO, P.A. ("G & M")(together the "Responding Parties"), respond to the Receiver's Motion for Turnover of Receivership Funds Transferred to Grumer & Macaluso, P.A. and Funds Withdrawn from the Tri Resource Group, Ltd. Account [DE 46], as follows:

1.      Summary of Response: The Receiver's Motion must be denied, as at the time the G & M took delivery of the $20,000 funds to retain their legal services on August 28, 2014, and based upon the information at G &M's disposal, G & M determined that the assets of Tri Resource Group were not subject to Temporary Restraining Order entered on August 25, 2014. It was not until the entry of the September 11, 2014 Corrected Preliminary Injunction Order that Tri Resource Group was expressly identified as being subjected to the Court's order and asset freeze. Indeed, it was sometime after September 5, 2014 (although the Responding Parties do not know when) that the Receiver first froze the Associated Bank account of Tri Resource Group. The remainder of the funds withdrawn by Mr. Kieper on September 4-5, 2014, also from the Tri Resource account, were used strictly for basic living expenses and to compensate one of his employees, Chris Francek, who assisted the Defendants in complying with the Court's orders mandating various personal and corporate financial disclosures. *See Declarations of Gary L. Kieper and Keith T. Grumer, filed together with this Response.*

As is set forth more fully below, the Responding Parties have not knowingly or intentionally skirted or violated the Court-ordered asset freeze of Defendants or their affiliates. The asset freeze is intended to preserve assets of the Defendants Partners in Health and Gary L. Kieper so as to permit the FTC's recovery of damages as may ultimately be awarded by the Court. On the contrary, the thrust of G & M's efforts were to distinguish Tri Resource Group from that of the enjoined Defendants and to permit its continued customer service operations.

2.      G & M Retained on August 28, 2014: G & M was contacted shortly before Noon on August 28, 2014 by Mr. Kieper who sought legal representation in connection with this proceeding. Mr. Kieper advised of his current circumstances, the Receiver's presence at his Appleton, Wisconsin office, and of the entry of the Temporary Restraining Order, which he later

emailed to the undersigned for review. G & M appreciated the urgency of Mr. Kieper's situation and the imminent deadlines and hearing date (September 4, 2014) set forth in the Court's Temporary Restraining Order, and the need for a quick decision regarding representation. G & M and Mr. Kieper agreed to the terms of the representation, and that afternoon Mr. Kieper wired $20,000.00 to G & M from a bank account in Wisconsin that G & M later learned belonged to Tri Resource Group.

3. <u>G & M's Preliminary Investigation and Determination</u>: At the time of the retention of G & M on August 28, 2014, the Receiver had already taken possession of Mr. Kieper's Appleton Wisconsin office and all company records. G & M learned that Mr. Kieper and his staff fully cooperated with the Receiver's requests for information and documentation, and Mr. Kieper had not removed any company records from the offices. No records were available for G & M's review. Indeed, of utmost importance to Mr. Kieper, and G & M, was full cooperation with the Receiver and compliance with the Court's directives.

However, as all business records were in the Receiver's control, G & M only had at its disposal the Complaint and the Temporary Injunction Order, and the information gleaned from interviewing Mr. Kieper to determine whether Tri Resource Group was an independent entity, and whether it fell within the Court's Order. G & M attempted to reach the Receiver by telephone to discuss these matters, but he was unavailable until the following day.

The Complaint did not identify Tri Resource Group as a Defendant and Tri Resource Group was not named in the Temporary Injunction Order. Based upon the limited information available to G & M, the undersigned determined that Tri Resource Group did not participate in any of the alleged unlawful telemarketing activities, or any sales or telemarketing activities that were the subject of the Complaint, and that no relief was sought against it in the lawsuit. Tri

Resource Group was an independent and distinct customer service entity, and did not engage in any sales or telemarketing whatsoever.  G & M learned that all personal and business accounts were frozen by the Receiver, except for the Tri Resource operating account, which was in keeping with G & M's belief that this entity did not fall within the Court's directive.

The following day, the undersigned spoke with the Receiver, in an attempt to flesh out the key issues facing Defendants, including the prohibited activities and identity of affiliates.  At no time did the Receiver indicate any improper activity by Tri Resource Group, nor that this entity was engaged in any of the prohibited conduct.

In the subsequent days, and upon further interviews with Mr. Kieper, G & M determined that Tri Resource Group was an independent entity and that its operations were distinct from that of the Defendant Partners in Health Care Association Inc.  The entities had separate and distinct federal tax identification numbers, separate tax returns, separate bank accounts, separate accounting records, separate and distinct offices within the Appleton, Wisconsin facility, and separate employees.  Indeed, none of the customer declarations or declarations of the FTC investigators accused Tri Resource or its employees of any wrongdoing.  The only commonality with Partners in Health was its ownership (Gary Kieper), and its contractual agreement with Partners in Health for provision of customer service functions.   Based upon G & M's preliminary information gathered from Mr. Kieper, G & M assessed that Tri Resource Group was not then, and should not thereafter, be subject to the Temporary Restraining Order. This was the same position espoused by G & M on behalf of Defendants at the September 4, 2014 hearing before the Court.  To date, the focuses of G & M's services have focused on distinguishing and segregating Tri Resource Group from the scope of the Court's injunction.  G & M and

Defendants did not dispute the temporary injunction prohibiting the improper solicitation by Partners In Health, but sought continuation of business operations by Tri Resource Group.

Based upon the foregoing, G & M believed in good faith, that the retainer funds received from Tri Resource Group was not in violation of the Temporary Restraining Order.

For the same reasons, Mr. Kieper cannot be faulted for having removed by Mr. Kieper from the Tri Resource account, which funds were used exclusively for living expenses, and to assist Mr. Kieper in hiring the help he required in order to comply with the Court's financial disclosure obligations.

4.   Temporary Injunction Order and Corrected Order:   The Court's written orders vacillated, and were less than clear with regard to the subjects of the Court - ordered asset freeze. The Temporary Restraining Order referred to the named Corporate Defendants and their "affiliates." Like the Temporary Restraining order, the Temporary Injunction Order entered September 9, 2014 did not expressly include Tri Resource Group within the asset freeze. In the September 9, 2014 Order, the Asset Freeze covered the PIHC Defendants and their Representatives from transferring the defendant's assets[1]; the PIHC Defendants were defined as Partners in Health and Mr. Kieper and did not include affiliates or Tri Resource Group.   It was not until the Court's Corrected Temporary Injunction Order, entered September 11, 2014, that the Court's written Order expressly denoted Tri Resource Group as being subject to the Court's asset freeze.

5.   Hindsight is 20/20:   The Receiver's Motion is based upon information presently known, and benefits from hindsight, as well as the Court's September 11, 2014 Corrected Temporary Injunction Order, which leaves no issue as to the scope of the asset freeze.   The Receiver's Motion does not take into account the limited information available to G & M at the time of the

---

[1] The September 9, 2014 Order referred in error to the assets of the "Stipulating Defendants."

receipt of the retainer funds, and upon which a good faith determination was made that the funds were properly received.

6. <u>Reasonable Fees Payable From Frozen Assets With Court Permission</u>: Should this Court determine that G & M's subjective determination and acceptance of the funds on August 28, 2014, was mistaken, then the Responding Parties request the Receiver's Motion be denied nonetheless, to permit payment of Defendants' reasonable legal expenses, as the Court has the legal authority to carve out an exception to the asset freeze for legal fees. *FTC v. American Tax Relief LLC*, 751 F. Supp. 2d 972, 987 (N.D. Ill. 2010); *FTC v. Amy Travel Service, Inc.*, 875 F.2d 564, 575-76 (7th Cir. 1989). Per Mr. Grumer's Declaration, all of the legal fees have been earned.

7. <u>Conclusion</u>: For these reasons, the Responding Parties request the Court deny the Receiver's Motion. Should the Court be inclined to grant the Motion, the Responding Parties request 60 days in which to comply with any directive ordering the return of the funds in dispute.

Respectfully submitted,

GRUMER & MACALUSO, P.A.
Attorneys for DEFENDANTS
One East Broward Boulevard, Suite 1501
Fort Lauderdale, Florida 33301
(954) 713-2700
(954) 713-2713 (fax)
Primary Email:      Service@grumerlaw.com
Secondary Emails:   kgrumer@grumerlaw.com
                    slopez@grumerlaw.com

By: __/s/ Keith T. Grumer_____
      KEITH T. GRUMER
      FLORIDA BAR No.: 550416

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on 1st day of October, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties either via transmission of Notices of Electronic Filing generated by CM/ECF or vial U.S. Mail for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Keith T. Grumer