UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 1:14-cv-23109-SCOLA

FEDERAL TRADE COMMISSION,

      Plaintiff,

v.

PARTNERS IN HEALTH CARE
ASSOCIATION, INC., *et al.,*

      Defendants.

_____/

### RECEIVER'S MOTION FOR THE ENTRY OF AN ORDER APPROVING THE SETTLEMENT WITH BUSINESS BANK AND THE AUCTION SALE OF THE PIHC COMPANIES' PERSONAL PROPERTY

Peter D. Russin, in his capacity as receiver (the "***Receiver***") of Partners in Health Care Association, Inc.; United Solutions Group Inc.; and their subsidiaries, affiliates, successors and assigns (collectively the "***Receivership Entities***"),[1] appointed pursuant to this Court's Temporary Restraining Order dated August 25, 2014 [ECF No. 9] (the "***TRO***"); the Stipulated Preliminary Injunction Against United Solutions Group Inc., Constanza Gomez Vargas, and Walter S. Vargas [ECF No. 31] (the ***"USGI Preliminary Injunction"***); and the Corrected Preliminary Injunction Against Partners In Health Care Association, Inc., and Gary L. Kieper [ECF No. 36] (the ***"PIHC Preliminary Injunction"***)[2] files this motion for the entry of an order approving the settlement with Business Bank and the auction sale of the Receivership Entities' personal property (the ***"Motion"***) and states:

---

[1] The administration of the Receivership Entities is referred to herein as the ***"Estate."***

[2] Collectively the USGI Preliminary Injunction and PIHC Preliminary Injunction are referred to as the ***"Preliminary Injunctions."***

{Firm Clients/5522/5522-1/01523114.DOCX.}

## BACKGROUND

1.      The United States Federal Trade Commission (the "*FTC*") initiated this marketing fraud enforcement action (the "*Action*"), seeking to enjoin the sale of medical discount plans, which the FTC asserts were marketed falsely, at least in part, as health insurance.

2.      On August 25, 2014, at the request of the Plaintiff and based upon a preliminary showing of marketing fraud, the Court issued the TRO.

3.      On August 27, 2014, the Receiver entered the office of Partners In Health Care Association, Inc., determined that PIHC, Inc.; Tri Resource Group, Ltd., and Senior Advantage of Wisconsin, Inc. were affiliates of Partners In Health Care Association, Inc., and assumed control of all four entities (the "*PIHC Companies*").

4.      At the evidentiary hearing held on September 4, 2014 on this Court's Order to Show Cause why this Court should not enter a preliminary injunction, the Court ruled that a preliminary injunction against the Receivership Entities should be entered, and further directed that the operations of the PIHC Companies shall cease.

5.      Due to the asset freeze provisions in the PIHC Injunction, the Estate is currently in possession of the following funds:

- ○      $13,096.25    Senior Advantage of Wisconsin, Inc.
- ○      $53,040.84    United Solutions Group, Inc.
- ○      $141,430.61   PIHC, Inc.
- ○      $26,273.24    Tri Resource Group, Ltd.

6.      PIHC, Inc. is the lessee (the "*Lease*") of the space at 518 South Westland Drive, Appleton, WI 54912 (the "*Facility*"). The Receiver believes that the lease, having already expired, is currently week-to-week, pursuant to a pre-receivership agreement between the landlord, Business Bank, and PIHC, Inc. The weekly lease payment is $1,000.00. A copy of the Lease (including the amendments) is attached as Exhibit A. The Receiver believes that the

continued payment of such amount for the non-operating PIHC Companies to have possession of the Facility is detrimental to the Estate.

7.      Separately, PIHC, Inc. is a party to a contract to purchase the Facility from Business Bank. (the *"PSA"*). Pursuant to the PSA, as amended by the agreement of the parties to the PSA, PIHC, Inc. made a $7,500.00 deposit, of which, $5,000.00 is refundable under certain circumstances. A copy of the PSA is attached as Exhibit B.

8.      The Receiver and the Business Bank have agreed, subject to this Court's approval, to allow Business Bank to retain the $5,000.00 deposit, and set such amount off against the arrearage in rent on the Lease (currently approximately $6,000.00). In exchange, Business Bank will return the $2,500.00 security deposit it holds under the Lease, waive any claim against the Receivership estate other than past-due base rent, and the parties shall terminate the Lease upon one week's notice, immediately after the Receiver auctions the Property located at the Facility, if approved by this Court. The Receiver will cure (with funds from the PIHC, Inc. account) the post-Receivership arrearage and will make regular weekly payments of $1,000.00 until the lease is terminated (collectively, the *"Settlement"*).

9.      Additionally, the Receiver has obtained a proposal (the *"Proposal"*) for the auction of the personal property located at the Facility from a Wisconsin-based auctioneer, Hansen & Young Auctioneers, Inc. (the *"Auctioneer"*). A copy of the Proposal is attached as Exhibit C.  Pursuant to the Proposal, the Auctioneer will market and sell the personal property at an online auction, which the Receiver and the Auctioneer believe will result in the highest and best price. Notably, the Auctioneer will sell all computer equipment, but will remove hard drives to ensure no Protected Health Information, as defined in the Health Insurance Portability and Accountability Act of 1996 (*"HIPAA"*), is sold or otherwise compromised.  Moreover, the hard

drives have been imaged and preseved by the FTC's forensic IT consultants, so there is no danger of data loss.

10.　　The Receiver has determined that it is burdensome to the Estate to continue to pay rent solely for the purpose of maintaining the status quo. As such, the Receiver believes it is in the best interest of the Estate and its creditors that the Lease be terminated, and that, absent continuing operations, it is not in the Estate's interests to close on the PSA. Finally, if the Lease is terminated, the Receiver believes that all Estate personal property located at the Facility should be sold at auction to the highest and best bidder, rather than incurring the expense to move and store such property.

## RELIEF REQUESTED

11.　　The Receiver requests this Court enter an Order approving the Settlement and authorizing both the retention of the Auctioneer and the auction sale of the personal property located at the Facility pursuant to the Proposal.

## MEMORANDUM OF LAW

12.　　A district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership. *See S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992); *SEC v. Safety Finance Service, Inc.*, 674 F.2d 368, 372 (5th Cir. 1982); *S.E.C. v. Lincoln Thrift Ass'n*, 577 F.2d 600, 609 (9th Cir. 1978). A district court's determination will not be disturbed absent a showing of an abuse of discretion. *See Elliott*, 953 F.2d at 1569-70; *see also S.E.C. v. Arkansas Loan & Thrift Corp.*, 427 F. 2d 1171, 1172 (8th Cir. 1972).

13.　　Upon notice to parties in interest, the District Court has authority to approve settlement agreements between an equity receiver and other parties. *See generally S.E.C. v. Utsick*, 06-20975-CIV, 2009 WL 1606503 (S.D. Fla. June 4, 2009). Section XV(M) of the PIHC

Preliminary Injunction vests the Receiver with authority to compromise disputes with other parties. Accordingly, approval of the Settlement is within this Court's discretion and is consistent with the PIHC Preliminary Injunction.

14.     Additionally, 28 U.S.C. §§ 2001 and 2004 specifically provide for sale at public auction of property held by the Receiver. Moreover, the employment of professionals, such as the Auctioneer, is specifically permitted under §XV(K) of the PIHC Preliminary Injunction.

15.     The Receiver has determined it is in the best interest of the Estate that the Lease be terminated and the personal property be sold. This will prevent the Estate from continuing to lose funds by incurring rent charges weekly, even though the PIHC Companies are not operating (and are not earning money). The Settlement and auction allow the Receiver to do exactly that. The Receiver believes purposes of the orders appointing him as Receiver, and the Receiver's ability to maintain the assets of the Estate, will be thwarted if the Estate is forced to continue to incur the expense of continued payments under the Lease.

16.     The Receiver, however, recognizes that the effect of the Settlement and an auction of the personal property is, in essence, the liquidation of the existing business, despite the lack (at this point) of a final injunction. However, even before a final judgment is entered, a sale of the property of the receivership defendant is appropriate if there is a substantial likelihood of success on the merits and maintenance of the status quo "will drain money out of the estate . . . that [might] otherwise could be returned to [claimants]." *S.E.C. v. TLC Investments & Trade Co.,* 147 F. Supp. 2d 1031, 1036 (C.D. Cal. 2001).

17.     The Receiver submits that is exactly the case here. The status quo will deplete Estate resources, which are necessary to pay administrative expenses, (and if there are sufficient funds) could ultimately be distributed to claimants pursuant to a claims process ordered by this

Court.[3] Moreover, in entering the Preliminary Injunction, this Court has already ruled that there is a substantial likelihood of success by the FTC on the merits. Accordingly, the Court should grant this Motion.

WHEREFORE, the Receiver requests this Court enter an Order (1) approving the Settlement; (2) approving the auction sale of the personal property located at the Facility; (3) approving the retention of the Auctioneer consistent with the Proposal; (4) authorizing the payment of the Auctioneer as set forth in the Proposal; (5) allowing the Receiver to terminate the Lease; and (6) granting such other and further relief as is just and equitable.

Respectfully submitted,

/s/ Lawrence E.  Pecan
Lawrence E. Pecan, Esquire
Florida Bar No. 99086
lpecan@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
200 South Biscayne Blvd., Ste. 3200
Miami, Florida  33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

*Attorneys for Peter D. Russin, Receiver*

---

[3] This is especially true considering that the Court invited Kieper to suggest a plan to re-emerge from the Receivership in a manner which complies with FTC regulations, yet Kieper has never done so.

{Firm Clients/5522/5522-1/01523114.DOCX.}

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing is being delivered to the following parties via transmission of Notices of Electronic Filing this 23rd day of October, 2014.

/s/ Lawrence E.  Pecan
Lawrence E. Pecan, Esquire

**Gary L. Ivens**
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
202-326-2230
Fax: 326-3395
Email: givens@ftc.gov


**Christopher E. Brown**
U.S. Federal Trade Commission
600 Pennsylvania Ave NW
Mail Stop CC-8509
Washington, DC 20580
202-326-2825
Email: cbrown3@ftc.gov

**Keith Thomas Grumer**
Grumer & Macaluso PA
1 East Broward Boulevard
Suite 1501
Fort Lauderdale, FL 33301
954-713-2700
Fax: 954-713-2713
Email: kgrumer@grumerlaw.com

**Bruce S. Rogow**
Bruce S. Rogow PA
500 East Broward Boulevard
Suite 1930
Fort Lauderdale, FL 33394
954-767-8909
Fax: 954-764-1530
Email: brogow@rogowlaw.com

{Firm Clients/5522/5522-1/01523114.DOCX.}

**Tara A Campion**
Bruce S. Rogow, P.A.
500 East Broward Blvd.
Suite 1930
Fort Lauderdale, FL 33394
(954) 767-8909
Fax: (954) 764-1530
Email: tcampion@rogowlaw.com

{Firm Clients/5522/5522-1/01523114.DOCX.}