# LEASE

In consideration of the mutual promises and covenants contained herein, Landlord and Tenant agree as follows:

## Section 1 - Basic Lease Provisions

1.01  Date of Lease.  October 15, 2011.

1.02  Landlord and Address.

> The Business Bank ("Landlord")
> Attn: Cindy Habert, VP – Administration
> P.O. Box 057
> Appleton, WI 54912-0057

1.03  Tenant and Address.

> PIHC Inc. ("Tenant")
> Attn: Gary Lee Kieper, President
> 518 South Westland Drive
> Appleton, WI 54914

1.04  Premises.  Portion of Landlord's building and grounds located at 518 South Westland Drive, Town of Grand Chute, Outagamie County, Wisconsin (the "Premises"), designated by the shaded area of and as outlined on the attached Exhibit A.

1.05  Term.  Fixed term, commencing October 15, 2013 ("Commencement Date") and ending February 28, 2014 ("Termination Date"), subject to the terms and conditions hereof and any applicable notice provisions of Wis. Stat. Chapter 704.

1.06  Monthly Rent.  The sum of $2,500.00 per month.  Tenant shall pay Landlord a prorated sum of $1,250.00 for October 2013 rent on or before the commencement of this Lease on October 15, 2013.  Subsequent monthly rent payments shall commence and be paid on or before the first (1st) day of each month thereafter. All Rent payments to Landlord from Tenant under this Lease shall be mailed to Landlord at Landlord's address in paragraph 1.02 or personally delivered to Landlord's offices at 5643 Waterford Lane, Appleton, Wisconsin 54913.

1.07  Security Deposit.  The sum of $2,500.00, to be paid by Tenant to Landlord upon the execution and delivery of this Lease.

1.08  Utilities.  Heat, light, sewer and water are not included in Rent.  Tenant shall be responsible for and shall promptly pay as and when due forty percent (40%) of all charges for heat, water, gas, electricity and sewer, as well as forty percent (40%) of all charges for any other utility

used or consumed in, on or upon the Premises. Landlord shall promptly provide Tenant with any invoice or billing statement for utilities with respect to the Premises. Within ten (10) days of Tenant's receipt of such invoice or billing statement, Tenant shall pay Landlord forty percent (40%) thereof.

1.09 Taxes. Commencing on the Commencement Date and continuing throughout the Termination Date of this Lease, Landlord shall be responsible for and shall promptly pay all taxes, charges and assessments, general and special, ordinary and extraordinary, of every kind and nature whatsoever, whether such taxes, charges or assessments shall be for city, county, state, federal or any other purpose whatsoever (collectively referred to hereinafter as "Taxes"). Such Taxes shall include without limitation all general real property taxes, all general, special, or area-wide assessments, charges and fees for transit, police, fire, water, sewer, or other governmental services or purported benefits to the Premises, and any service payments in lieu of or in addition to real property taxes, that may be now or hereafter levied, imposed, or assessed against the Premises or Tenant by the United States of America, the State of Wisconsin, Outagamie County, the Town of Grand Chute, or any political subdivision, public corporation, district or other political or public entity; provided, however, that such Taxes shall not include any income tax, personal property tax, or franchise tax levied, imposed, assessed, due or payable upon or against Tenant or fees, charges, or assessments attributable because of or in connection with Tenant's use, possession, occupancy, or tenancy of the Premises.

1.10 Permitted Use. The Premises shall be used by Tenant for the following purpose only, and for no other purpose without the prior written consent of Landlord which shall not be unreasonably withheld: general office/administrative and related business purposes. Tenant shall not use or allow the Premises to be used for any improper, immoral, unlawful or objectionable purpose or for any purpose which would violate any recorded covenant or restriction affecting the Premises. Tenant shall not cause or maintain or permit any nuisance or commit or suffer the commission of any waste in, on or about the Premises.

## Section 2. - Premises and Term

2.01 Premises. Landlord hereby leases to Tenant, and Tenant hereby leases from Landlord, the Premises upon the conditions contained in this Lease.

2.02 Term. The term of this Lease shall begin on the Commencement Date and shall continue thereafter until the Termination Date, unless sooner terminated as provided herein. The term of this Lease shall also terminate upon the consummation and successful closing of Tenant's (or Tenant's affiliate, Partners in Health Care Association, Inc.'s) pending offer to purchase from Landlord with respect to the real property at 518 South Westland Drive, Town of Grand Chute, Outagamie County, Wisconsin.

### Section 3. - Rent

3.01   Rent.   As set forth in paragraph 1.06 hereof, on or before the commencement of this Lease on October 15, 2013, Tenant shall pay Landlord the prorated sum of $1,250.00 for October 2013 rent.   On or before the 1st day of each month, commencing as of November 1, 2013, Tenant agrees to pay to Landlord at Landlord's address, or at such other place designated by Landlord in writing from time to time, without prior demand and without deduction or set-off, the Monthly Rent and any other additional payments due under this Lease.

### Section 4. - Miscellaneous Provisions

4.01   Repairs, Maintenance, Improvement and Alterations.   Landlord shall have the obligation to maintain and repair the structural portions of the building on the Premises, consisting of the walls, roof, foundation and their supporting components, and all central heating fixtures, plumbing pipes and fixtures, electrical system components, and air conditioning equipment; provided, however, that Landlord shall not be responsible for any maintenance, repair or replacement caused or created by the willful or intentional acts or omissions of Tenant or its employees, agents, or representatives.   Landlord shall keep the parking area and all sidewalks, landscaped areas, and other areas adjacent thereto, reasonably safe, secure, clean, and sanitary (including but not limited to lawn maintenance and snow and ice removal).   Tenant shall have the obligation for all other maintenance and repair of the Premises, including but not limited to interior maintenance and janitorial service, glass repair (interior glass only) and replacement, replacement of bulbs and ballasts, and any mechanical systems owned by Tenant which are solely serving Tenant's Premises.   Notwithstanding anything to the contrary in the foregoing provisions, Tenant shall not be responsible for any maintenance, repair or replacement caused or created by the willful or intentional acts or omissions of Landlord or its employees, agents, or representatives.   Tenant shall not permit any garbage, waste, or refuse of any kind to accumulate in, on, or about the Premises.   Tenant shall use all reasonable precautions to prevent waste, damage or injury to the Premises.

Tenant shall have the right to remodel or redecorate the interior of the Premises at its own expense, after first obtaining written permission of Landlord.   Any remodeling of the Premises shall not reduce the size or weaken any of the structural portions of the building.   Any remodeling of the Premises constituting leasehold improvements shall become part of the Premises and Landlord's building and property upon the termination of this Lease.   Tenant shall not make any alterations or additions to the Premises including walls, roofs, floors, ceilings, or any other parts of the building without first obtaining written consent of and approval by Landlord.

4.02   Limitation of Landlord's Liability/Hold Harmless.   Landlord shall not be liable for any damage caused by any mechanical failures, plumbing failures, pipes bursting or leaking thereof, nor for any damages occasioned by water, snow or ice coming through the roof, doors or any other part of the Premises unless such damage is related to or resulting from Landlord's negligence and/or failure to maintain the building and/or Tenant's Premises in good working order. Tenant agrees to defend, indemnify and hold Landlord harmless from any loss, damage or expense arising out of the use and maintenance of the land and buildings or improvements on the Premises or out of any accident or other occurrence causing injury to any person or property due directly or

3

indirectly to the use of the Premises or any part thereof unless such loss, damage or expense is related to or resulting from Landlord's negligence and/or intentional acts or omissions and/or Landlord's failure to maintain the building and/or Tenant's Premises in good working order.

4.03  Tenant's Right to Remove Fixtures.  Tenant shall have no right to remove any fixtures or improvements from the Premises at the date of the termination of this Lease or following the expiration of any permitted extension or renewal thereof.  In the event Tenant removes any fixtures or improvements from the Premises at the termination of this Lease or any permitted extension or renewal thereof, then Landlord reserves all legal recourse, rights, and remedies with respect thereto notwithstanding Tenant's wrongful removal thereof.

4.04  Insurance and Indemnification.

a.  Landlord agrees to procure and maintain insurance against fire, vandalism, malicious mischief, and such other hazards as are from time to time included in a standard extended coverage endorsement, insuring the real estate improvements on the subject property in an amount determined by Landlord in its sole discretion.

b.  Tenant shall, during the entire term of this Lease, keep in full force and effect a policy of comprehensive general public liability insurance with respect to Tenant's use, possession, occupancy, and tenancy of the Premises, and the business operated by Tenant in the Premises, in which the primary coverage per accident or occurrence is not less than One Million and NO/100 Dollars ($1,000,000.00) for bodily injury (including death) arising out of the Premises or Tenant's use thereof and not less than Five Hundred Thousand and No/100 Dollars ($500,000.00) for property damage relating thereto.  Tenant agrees to indemnify and save Landlord harmless against and from any and all claims, damages, losses, liabilities and expenses (including reasonable attorney fees), arising out of Tenant's use, possession, occupancy, and tenancy of the Premises or from the conduct or management of the business conducted by Tenant in the Premises, or from any act or omission of Tenant, its agents, contractors, employees, permitted subleases, or licensees in or about the Premises, except to the extent caused by the negligent or intentional acts or omissions of Landlord, its employees, agents, or representatives.  Tenant shall promptly and timely pay when due such amounts sufficient to pay reasonably anticipated insurance premiums.

c.  Landlord shall be named as an additional insured with respect to the insurance procured and maintained by Tenant and such insurance shall contain a cross liability endorsement with respect to the comprehensive general public liability insurance.  Tenant shall furnish to Landlord satisfactory proof that such insurance is in effect prior to the Commencement Date of this Lease.

4.05  Waiver of Subrogation.  Landlord and Tenant agree that they hereby release each other and each other's agents and employees from responsibility for loss or damage occurring on or to the Premises, the contents thereof, or personal property contained therein, caused by fire or other hazards ordinarily covered by insurance policies and each waives all right of recovery against the other for such loss or damage; negligence lawfully attributable to either party, whether in whole or in part contributing to the cause of the casualty, giving rise to the loss or damage, shall

4

not affect the foregoing release and waiver. Tenant shall cause its policies of insurance to contain effective waivers of subrogation for the benefit of Landlord.

    4.06 Sign. Tenant may install, display, use and maintain suitable signs and other advertising or identifying media which may be affixed to the exterior of the Premises, subject to Landlord's prior written consent, which consent shall not be unreasonably withheld. Any and all signs and other advertising or identifying media installed, displayed, used or maintained by Tenant upon the Premises shall comply with any and all governmental laws, regulations, ordinances and rules and all recorded restrictions and covenants. At the termination of this Lease, Tenant shall be responsible for all costs of removal of signs and restoring the Premises to its original condition.

    4.07 Landlord's Permission to Enter. Landlord or its agents shall have the right to enter upon the Premises to inspect the same or exhibit them to prospective tenants, purchasers, or others, at all reasonable times upon prior written notice given via email addressed to Tenant designated agent at alison@pihc1.com and kassina@pihc1.com. Provided Tenant pays the Rent required under this Lease and performs and observes all of the covenants and provisions hereof, Tenant shall quietly enjoy the Premises, subject to the terms of this Lease.

    4.08 Assignment. Tenant shall not assign this Lease or sublet any or all of the Premises without the prior written consent of Landlord, which consent shall not be unreasonably withheld.

    4.09 Damage or Destruction.

        a. Partial Destruction. If the Building or Premises are damaged or destroyed by fire or other casualty to the extent of less than 10% of their value, Landlord shall at its expense repair and restore the same with reasonable diligence. Rent payments shall be reduced proportionately to the extent that such damage or destruction renders the Premises untenantable, and such rent shall abate on the date of damage until the restoration of the Premises.

        b. Substantial Destruction. If the Building or Premises are damaged or destroyed to the extent of over 10% of their value by fire or other casualty, Landlord shall have the option to terminate this Lease by giving Tenant written notice within thirty (30) days after such destruction and any unearned rent shall be apportioned and returned to Tenant. If Landlord does not elect to cancel this lease, then it shall continue in effect and the rebuilding or repairing shall be completed by Landlord within a reasonable time with rent payments to be reduced as provided in paragraph (a) above.

    4.10 Condemnation. If the entire Premises are taken under the exercise of the right of eminent domain, then this Lease shall terminate on the date title vests in the condemning authority and all rent shall be paid up to that date. Tenant shall not be entitled to any part of any award made by the condemning authority for the fair market value of the property taken and shall have no claim against Landlord for the value of any unexpired term of this Lease. Tenant shall have the right, to the extent that the same shall not reduce Landlord's award, to claim from the condemnor such compensation as may be recoverable by Tenant in its own right for relocating payments and business replacement payments. In the event of a partial condemnation not rendering the Premises unsuitable for the business of Tenant, Landlord shall promptly restore the Premises to a

condition comparable to its condition at the time of the condemnation, less the portion lost by condemnation, and this Lease shall continue in full force without any reduction of rent, however if the Premises are not comparable to the pre-taking Premises, rent shall be reduced from the date of the taking in direct proportion to the reduction in usefulness of the Premises to Tenant. In any event, Landlord shall not be required to spend on restoration any amounts in excess of the condemnation proceeds it receives.

4.11  Compliance with Laws.  Tenant shall comply with all applicable laws, ordinances and regulations in connection with the conduct of its business and the occupancy and use of the Premises.

4.12  Surrender of Possession on Termination of Lease. Tenant, upon termination of this Lease in any manner (other than the consummation and successful closing of Tenant's pending offer to purchase of the real property at 518 South Westland Drive), will surrender to Landlord possession of the Premises in good condition and repair, ordinary wear and tear excepted and loss through fire or other insurance risks except and will deliver up the keys to Landlord. Leasehold improvements other than free standing trade fixtures, made by or placed on the Premises by Tenant, shall remain and become the property of Landlord.

4.13  Rules and Regulations.  Tenant shall abide by all current rules and regulations of the Building and such rules and regulations as modified by Landlord from time to time, to insure the cleanliness, good appearance, proper maintenance, good order and reasonable use of the Premises and the Building and as may be necessary for the proper enjoyment by all tenants and their clients, customers and employees.

4.14  Events of Default.  Each of the following shall constitute an event of default by Tenant under this Lease:

  a. Tenant fails to pay any installment of rent within five (5) days after the payment is due.

  b. Tenant fails to observe or perform any of the other covenants, conditions or provisions of this Lease and fails to cure such default within fifteen (15) days after written notice to Tenant.

  c. The interest of Tenant in this Lease is levied upon through execution or other legal process.

  d. A petition is filed by or against Tenant to declare Tenant bankrupt or seeking a plan of reorganization or arrangement under any Chapter of the Bankruptcy Code, or any amendment, replacement or substitution therefor, or to delay payment of, reduce or modify Tenant's debts, or any petition is filed or other action taken to reorganize or modify Tenant's capital structure or upon the dissolution of Tenant.

  e. Tenant is declared insolvent by law or any assignment of Tenant's property is made for the benefit of creditors.

   f. A receiver is appointed for Tenant or Tenant's property.

   g. Tenant abandons the Premises.

   h. Tenant ceases doing business.

 4.15 Late Charges. If not paid within the grace period specified in paragraph 4.14, all payments due Landlord under this Lease shall bear interest at the rate of two percent (2%) per month from the date due (prior to any grace period) until paid. The payment of such interest shall not excuse or cure the default upon which such interest accrued.

 4.16 Landlord's Remedies. Upon the occurrence of an event of default by Tenant under this Lease, Landlord may, without further notice or demand to Tenant and in addition to all other rights and remedies provided in this Lease, at law or in equity, at Landlord's option:

  a. Terminate this Lease and Tenant's right of possession of the Premises, and recover all damages to which Landlord is entitled under law, specifically including, without limitation, all Landlord's expenses of reletting (including repairs, alterations, improvements, additions, decorations, legal fees and brokerage commissions) to the extent provided for in Chapter 704, Wis. Stats.

  b. Terminate Tenant's right of possession of the Premises without terminating this Lease, in which event Landlord shall be entitled to all remedies available under Wisconsin law and equity, including without limitation, Section 704.29, Wis. Stats., provided Landlord shall use reasonable efforts to relet the Premises, or any part thereof for the account of Tenant, for such rent and term and upon such terms and conditions as are then reasonably obtainable. For purposes of such reletting Landlord is authorized to redecorate, repair, alter and improve the Premises to the extent provided for by Chapter 704, Wis. Stats. Until Landlord does relet the Premises, Tenant shall pay Landlord monthly on the first day of each month during the period that Tenant's right of possession is terminated, a sum equal to the amount of rent due under this Lease for such month. If an when the Premises are relet and a sufficient sum is not realized from such reletting after payment of all Landlord's expenses of reletting permitted under Chapter 704, Wis. Stats. (including repairs, alterations, improvements, additions, decorations, legal fees and brokerage commissions) to satisfy the payment of rent due under this Lease for any month, Tenant shall pay Landlord any such deficiency monthly upon demand. Tenant agrees that Landlord may file suit to recover any sums due to Landlord under this Section from time to time and that such suit or recovery of any amount due Landlord shall not be any defense to any subsequent action brought for any amount previously reduced to judgment in favor of Landlord. If Landlord elects to terminate Tenant's right to possession only without terminating this Lease, Landlord may, at its option, enter into the Premises, remove Tenant's signs and other evidences of tenancy, and take and hold possession thereof; provided, however, that such entry and possession shall not terminate this Lease or release Tenant, in whole or in part, from Tenant's obligation to pay the rent reserved hereunder for the full term or from any other obligation of Tenant under this Lease. Nothing contained herein shall be deemed to affect Landlord's obligation to mitigate damages.

c. Upon the filing of a petition by or against Tenant under the Bankruptcy Code, Tenant, as debtor and as debtor-in-possession, and any trustee who may be appointed agree as follows: (a) to perform each and every obligation of Tenant under this Lease until such time as this Lease is either rejected or assumed by order of the United States Bankruptcy Court; (b) to pay monthly in advance on the first day of each month as reasonable compensation for use and occupancy of the Premises an amount equal to all rent and other charges otherwise due pursuant to this Lease; (c) to reject or assume this Lease within sixty (60) days of the filing of such petition; (d) to give Landlord at least forty-five (45) days prior written notice of any proceeding relating to any assumption of this Lease; (e) to give at least thirty (30) days prior written notice of any abandonment of the Premises; any such abandonment to be deemed a rejection of this Lease; (f) to do all other things of benefit to Landlord otherwise required under the Bankruptcy Code; (g) to be deemed to have rejected this Lease in the event of the failure to comply with any of the above; and (h) to have consented to the entry of an order by an appropriate United States Bankruptcy Court providing all of the above, waiving notice and hearing of the entry of same. No default of this Lease by Tenant, either prior to or subsequent to the filing of such a petition, shall be deemed to have been waived unless expressly done so in writing by Landlord.

4.17  Tenant to Pay Costs of Enforcing Lease.  Tenant shall pay all of Landlord's costs, including reasonable attorney fees, incurred in enforcing Tenant's obligations hereunder, or incurred by Landlord in any litigation, negotiation or transaction in which Tenant causes Landlord, without Landlord's fault, to become involved or concerned.

4.18  Landlord may Cure Tenant Defaults.  In the event of any breach hereunder by Tenant, and in lieu of Landlord's terminating this Lease as provided above, Landlord may, after having given Tenant the required notice to correct the same and the time for such correction having passed, cure such breach for the account and at the expense of Tenant. If Landlord at any time, by reason of such breach, is compelled to pay, or elects to pay, any sum of money or do any act which will require the payment of any sum of money, or incur any expense, including reasonable attorney fees paid or incurred in enforcing Landlord's rights hereunder, the sum or sums so paid or incurred by Landlord, together with interest at the rate of twelve percent (12%) per annum, shall be deemed to be additional rent hereunder and shall be due to Landlord within thirty (30) days of Tenant's receipt of Landlord's bill. This option shall not release Tenant from its obligation to perform under this Lease or deprive Landlord of any legal rights which it may have by reason of any default of Tenant.

4.19  Notices.  Any notice required or permitted under the Lease shall be deemed sufficiently given or served if personally delivered or if sent by certified mail, return receipt requested to Landlord or Tenant at the address contained in Section 1.02 or 1.03 respectively; however, any party may by like notice at any time and from time to time designate a different address to which notices shall be sent. Notices given in accordance with these provisions shall be deemed received when mailed.

4.20  Entire Agreement.  There are no agreements between the parties except as stated in this Lease. No amendments hereof shall be effective unless in writing and signed by both parties.

4.21 Waiver. One or more waivers of any provision of this lease by either party shall not be construed as a waiver of a further breach of the same provision.

4.22 Binding Effect. This Lease shall be binding upon and shall inure to the benefit of the respective parties and their successors and assigns, provided that this Lease shall not inure to the benefit of any assignee, transferee or successor of Tenant except upon the written consent of Landlord. This Lease shall be construed in accordance with the laws of the State of Wisconsin. Time is of the essence with the respect to this Lease and the performance of all obligations hereunder.

4.23 Subordination. Tenant's interest under this Lease and the leasehold estate hereby created shall be subject and subordinate to the lien of any mortgage or similar lien which Landlord may now or hereafter place upon the Premises and to all the terms, conditions and provisions thereof, and to all modifications or replacements thereof; provided, however, that if the Lease is otherwise in full force and effect and there are no defaults hereunder on the part of Tenant, such mortgagee shall agree that upon any foreclosure or sale of the premises pursuant to the exercise of any remedy provided for in the mortgage, this Lease shall not be terminated nor affected by such foreclosure or sale, and the mortgagee shall agree that any foreclosure or sale of the Premises pursuant to the exercise of any rights and remedies under the mortgage, or otherwise, shall be made subject to this Lease and the right of Tenant hereunder. Tenant agrees to attorn to any mortgagee or such person as may have purchased the Premises upon sale, and the Lease shall continue in a full force and effect as a direct Lease between Tenant and the mortgagee or such other person upon all the terms, covenants, and agreements set forth in this Lease. The parties hereto agree to execute such documents as may be reasonably necessary to effectuate such subordination.

4.24 Limitation of Landlord's Liability. Anything contained in this Lease to the contrary notwithstanding, Tenant agrees that it shall look solely to the interest of Landlord in the Building for the collection of any judgment (or other judicial process) requiring the payment of money by Landlord for any default or breach by Landlord of any of its obligations under this Lease, subject to the prior rights of any mortgage covering the Building. No other assets of Landlord shall be subject to levy, execution or other judicial process for the satisfaction of Tenant's claim. This provision shall not be deemed, construed or interpreted to be or constitute an agreement, express or implied, between Landlord and Tenant that Landlord's interest hereunder and in the Building shall be subject to impressment of an equitable lien or otherwise. Nothing herein contained shall be construed to limit any right of injunction against Landlord, where appropriate.

4.25 Transfer of Landlord's Interest. In the event of the sale, assignment or transfer by Landlord of its interest in the Building or in this Lease (other than a collateral assignment to secure a debt of Landlord) to a successor in interest who expressly assumes the obligations of Landlord hereunder, Landlord shall thereupon be released or discharged from all of its covenants and obligations hereunder, except such obligations as shall have accrued prior to any such sale, assignment or transfer; and Tenant agrees to look solely to such successor in interest of Landlord for performance of such obligations. Any securities given by Tenant to Landlord to secure performance by Tenant of its obligations hereunder may be assigned by Landlord to such successor in interest of Landlord; and, upon acknowledgment by such successor of receipt of such

security and its express assumption of the obligation to account to Tenant for such security in accordance with the terms of the Lease. Landlord shall thereby be discharged of any further obligation relating thereto. Landlord's assignment of the Lease or of any or all of its rights herein shall in no manner affect Tenant's obligations hereunder. Tenant shall thereafter attorn and look to such assignee, as Landlord, provided Tenant has first received written notice of such assignment of Landlord's interest. Landlord shall have the right to freely sell, assign or otherwise transfer its interest in the Building and/or this Lease.

4.26 Authority of Parties. Each party warrants that the party is authorized to enter into this Lease, that the person signing on said party's behalf is duly authorized to execute the Lease, and that no other signatures are necessary for this Lease to be binding upon said party.

4.27 Holdover by Tenant. This Lease may only be extended and continued beyond the Termination Date if Landlord and Tenant mutually agree in writing to such ongoing tenancy. Otherwise, Tenant shall vacate and surrender the Premises as provided under paragraph 4.12. If Tenant otherwise continues to occupy and possess the Premises after the Termination Date, then Tenant shall pay Landlord according to the following Holdover Rent schedule:

  A. For the first four (4) weeks following the Termination Date, Holdover Rent shall be $800.00 per week. The first week's rent will be due on or before the first (1st) day after the Termination Date and each subsequent week's Holdover Rent shall be due thereafter on the same day of the week on an ongoing weekly basis.
  B. After the expiration of the first four (4) weeks following the Termination Date, the weekly Holdover Rent shall increase to $1,000.00 per week and shall continue to be paid on an ongoing weekly basis.
  C. Tenant's liability and responsibility for payment of Holdover Rent following the Termination Date shall continue until Tenant vacates and surrenders the Premises.

In addition to Holdover Rent, Tenant shall pay Landlord an additional security deposit of $1,000.00 on or before the first (1st) day after the Termination Date to cover the first four (4) weeks of Tenant's Holdover tenancy. If Tenant continues to occupy and possess the Premises through a four (4) week period following the Termination Date, then Tenant shall pay Landlord a further security deposit of $1,500.00 on or before the first (1st) day after the expiration of the first four (4) weeks following the Termination Date to continue to cover subsequent weeks of Tenant's Holdover tenancy.

*(signature page follows)*

IN WITNESS WHEREOF the parties have executed this Lease as of the date set forth in paragraph 1.01.

**LANDLORD**
The Business Bank

By: _____
Matthew K. Kasdorf,
Senior Vice President/Chief Credit Officer

**TENANT**
PIHC Inc.

By: _____
Gary Lee Kieper, President

11

Floor Plan
518 South Westland Dr.





## *LEASE AMENDMENT #1 (the "Amendment")*

RE: Lease dated October 15, 2011 by and between THE BUSINESS BANK (Landlord) and PIHC INC. (Tenant) for the leased premises at 518 South Westland Drive, Town of Grand Chute, Outagamie County, Wisconsin (the "Lease").

This Amendment #1 of the Lease (the "Amendment") is made on October 31, 2013, by and between Landlord and Tenant.

NOW THEREFORE, in consideration of the mutual terms and conditions contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the parties hereto, the Lease shall be amended as follows:

1. Any terms not otherwise defined herein shall take on the meaning as set forth in the Lease.

2. Landlord and Tenant agree that the Date of Lease shall be October 15, 2013 rather than October 15, 2011.

3. Landlord and Tenant agree that the correct physical or mailing address of the Premises is 520 South Westland Drive rather than 518 South Westland Drive.

4. All other terms in and conditions of the Lease shall remain unchanged.

5. This Amendment shall be governed by, construed and enforced in accordance with the laws of Wisconsin, applicable as though it were made wholly performed therein, and without giving effect to the principles of conflict or choice of laws thereof.

6. This Amendment may be executed in one or more counterparts, all of which shall be considered but one and the same agreement, and shall become effective when one or more such counterparts have been signed by each of the parties and delivered to the other party. Signatures to this Amendment transmitted by facsimile, by electronic mail in portable document format (pdf), or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document (e.g., .jpg or .tif formats) will have the same effect as physical delivery of the paper document bearing the original signature.

*[Signatures on the following page]*

IN WITNESS WHEREOF the parties have executed this Lease Amendment #1 as of the date set forth above.

**LANDLORD**
The Business Bank

By: _____
Matthew K. Kasdorf,
Senior Vice President/Chief Credit Officer

**TENANT**
PIHC Inc.

By: _____
Gary Lee Kieper, President