Approved by the Wisconsin Real Estate Examining Board
03-1-12 (Optional Use Date)  07-1-12 (Mandatory Use Date)

**J. Ross & Associates, LLC**
**WISCONSIN REALTORS® ASSOCIATION**
4801 Forest Run Road
Madison, Wisconsin 53704
Page 1 of 9, WB-15

## WB-15 COMMERCIAL OFFER TO PURCHASE

1  LICENSEE DRAFTING THIS OFFER ON _____ September 11, 2013 _____ [DATE] IS (AGENT-OF-BUYER)
2  (AGENT OF SELLER/LISTING BROKER) (AGENT-OF-BUYER-AND-SELLER) | STRIKE THOSE NOT APPLICABLE |
3  GENERAL PROVISIONS  The Buyer, Partners in Healthcare , and or assigns
4  _____, offers to purchase the Property known as [Street Address] 518 South Westland Ave
5  _____ in the _____ Town
6  of _____ Grand Chute _____, County of _____ Outagamie _____, Wisconsin
7  (Insert additional description, if any, at lines 109-115 or 277-286 or attach as an addendum per line 4'9), on the following terms:
8  ■ PURCHASE PRICE: Four Hundred Thousand
9  _____ Dollars ($ 400,000.00 ).
10  ■ EARNEST MONEY OF $ ------- _____ accompanies this Offer and earnest money of $ 2,500.00 will be
11  mailed, or commercially or personally delivered within _____ 10 _____ days of acceptance to listing broker or
12  -------
13  ■ THE BALANCE OF PURCHASE PRICE will be paid in cash or equivalent at closing unless otherwise provided below.
14  ■ INCLUDED IN PURCHASE PRICE: Seller is including in the purchase price the Property, all Fixtures on the Property on the date of this Offer
15  not excluded at lines 20-22, and the following additional items: All personal property owned by Seller on the premises as of the
16  date of this offer
17  _____
18  All personal property included in purchase price will be transferred by bill of sale or ----------------
19  _____
20  ■ NOT INCLUDED IN PURCHASE PRICE: ----------------
21  _____
22  _____
23  CAUTION: Identify trade fixtures owned by tenant, if applicable, and Fixtures that are on the Property (see lines 303-310) to be excluded
24  by Seller or which are rented and will continue to be owned by the lessor.
25  NOTE: The terms of this Offer, not the listing contract or marketing materials, determine what items are included/excluded.
26  ACCEPTANCE  Acceptance occurs when all Buyers and Sellers have signed one copy of the Offer, or separate but identical copies of the Offer.
27  CAUTION: Deadlines in the Offer are commonly calculated from acceptance. Consider whether short term deadlines running from
28  acceptance provide adequate time for both binding acceptance and performance.
29  BINDING ACCEPTANCE  This Offer is binding upon both Parties only if a copy of the accepted Offer is delivered to Buyer on or before
30  _____ September 16, 2013 _____. Seller may keep the Property on the market and accept
31  secondary offers after binding acceptance of this Offer.
32  CAUTION: This Offer may be withdrawn prior to delivery of the accepted Offer.
33  OPTIONAL PROVISIONS  TERMS OF THIS OFFER THAT ARE PRECEDED BY AN OPEN BOX ( ☐ ) ARE PART OF THIS OFFER ONLY IF
34  THE BOX IS MARKED SUCH AS WITH AN "X." THEY ARE NOT PART OF THIS OFFER IF MARKED "N/A" OR ARE LEFT BLANK.
35  DELIVERY OF DOCUMENTS AND WRITTEN NOTICES  Unless otherwise stated in this Offer, delivery of documents and written notices to a
36  Party shall be effective only when accomplished by one of the methods specified at lines 37-54.
37  (1)  Personal Delivery: giving the document or written notice personally to the Party, or the Party's recipient for delivery if named at line 38 or 39.
38  Seller's recipient for delivery (optional): _____
39  Buyer's recipient for delivery (optional): _____
40  ☐ (2) Fax: fax transmission of the document or written notice to the following telephone number:
41  Seller: ( _____ ) _____ Buyer: ( _____ ) _____
42  ☐ (3) Commercial Delivery: depositing the document or written notice fees prepaid or charged to an account with a commercial delivery
43  service, addressed either to the Party, or to the Party's recipient for delivery if named at line 38 or 39, for delivery to the Party's delivery address at
44  line 47 or 48.
45  ☐ (4) U.S. Mail: depositing the document or written notice postage prepaid in the U.S. Mail, addressed either to the Party, or to the Party's
46  recipient for delivery if named at line 38 or 39, for delivery to the Party's delivery address at line 47 or 48.
47  Delivery address for Seller: _____
48  Delivery address for Buyer: _____
49  ☒ (5) E-Mail: electronically transmitting the document or written notice to the Party's e-mail address, if given below at line 53 or 54. If this is a
50  consumer transaction where the property being purchased or the sale proceeds are used primarily for personal, family or household purposes,
51  each consumer providing an e-mail address below has first consented electronically to the use of electronic documents, e-mail delivery and
52  electronic signatures in the transaction, as required by federal law.
53  E-Mail address for Seller (optional): rlondre@hotmail.com
54  E-Mail address for Buyer (optional): jbunjovac@jrossassoc.com
55  PERSONAL DELIVERY/ACTUAL RECEIPT  Personal delivery to, or Actual Receipt by, any named Buyer or Seller constitutes personal delivery
56  to, or Actual Receipt by, all Buyers or Sellers.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Page 2 of 9, WB-15

57 **PROPERTY CONDITION REPRESENTATIONS** Seller represents to Buyer that as of the date of acceptance Seller has no notice or knowledge
58 of Conditions Affecting the Property or Transaction (lines 181-215) other than those identified in Seller's disclosure report dated _____ _____
59 and Real Estate Condition Report, if applicable, dated _____ _____, which was/were received by Buyer prior to Buyer
60 signing this Offer and which is/are made a part of this offer by reference | COMPLETE DATES OR STRIKE AS APPLICABLE | and
61 Seller to provide condition report within 5 days of acceptance
62 | INSERT CONDITIONS NOT ALREADY INCLUDED IN THE DISCLOSURE OR CONDITION REPORT(S). |
63 **CAUTION:** If the Property includes 1-4 dwelling units, a Real Estate Condition Report containing the disclosures provided in Wis. Stat. §
64 709.03 may be required. Excluded from this requirement are sales of property that has never been inhabited, sales exempt from the real
65 estate transfer fee, and sales by certain court-appointed fiduciaries, (for example, personal representatives who have never occupied
66 the Property). Buyer may have rescission rights per Wis. Stat. § 709.05.
67 **CLOSING** This transaction is to be closed no later than _____ January 3, 2014 _____
68 _____, at the place selected by Seller, unless otherwise agreed by the Parties in writing.
69 **CLOSING PRORATIONS** The following items, if applicable, shall be prorated at closing, based upon date of closing values: real estate taxes,
70 rents, prepaid insurance (if assumed), private and municipal charges, property owners association assessments, fuel and _____ _____
71 _____
72 **CAUTION: Provide basis for utility charges, fuel or other prorations if date of closing value will not be used.**
73 Any income, taxes or expenses shall accrue to Seller, and be prorated at closing, through the day prior to closing.
74 Real estate taxes shall be prorated at closing based on [CHECK BOX FOR APPLICABLE PRORATION FORMULA]:
75 [x] The net general real estate taxes for the preceding year, or the current year if available (Net general real estate taxes are defined as
76 general property taxes after state tax credits and lottery credits are deducted) (NOTE: THIS CHOICE APPLIES IF NO BOX IS CHECKED)
77 [ ] Current assessment times current mill rate (current means as of the date of closing)
78 [ ] Sale price, multiplied by the municipality area-wide percent of fair market value used by the assessor in the prior year, or current year if
79 known, multiplied by current mill rate (current means as of the date of closing)
80 [ ] _____
81 **CAUTION:** Buyer is informed that the actual real estate taxes for the year of closing and subsequent years may be substantially
82 different than the amount used for proration especially in transactions involving new construction, extensive rehabilitation, remodeling
83 or area-wide re-assessment. Buyer is encouraged to contact the local assessor regarding possible tax changes.
84 [ ] Buyer and Seller agree to re-prorate the real estate taxes, through the day prior to closing based upon the taxes on the actual tax bill for
85 the year of closing, with Buyer and Seller each owing his or her pro-rata share. Buyer shall, within 5 days of receipt, forward a copy of the bill
86 to the forwarding address Seller agrees to provide at closing. The Parties shall re-prorate within 30 days of Buyer's receipt of the actual tax
87 bill. Buyer and Seller agree that is a post-closing obligation and is the responsibility of the Parties to complete, not the responsibility of the real
88 estate brokers in this transaction.
89 **OCCUPANCY** Occupancy of the entire Property shall be given to Buyer at time of closing unless otherwise provided in this Offer at lines 109-115
90 or 277-286 or in an addendum attached per line 479. At time of Buyer's occupancy, Property shall be broom swept condition and free of all
91 debris and personal property except for personal property belonging to current tenants, or that sold to Buyer or left with Buyer's consent.
92 Occupancy shall be given subject to tenant's rights, if any.
93 **LEASED PROPERTY** If Property is currently leased and lease(s) extend beyond closing, Seller shall assign Seller's rights under said lease(s)
94 and transfer all security deposits and prepaid rents thereunder to Buyer at closing. The terms of the (written) (oral) | STRIKE ONE | lease(s), if any,
95 are to be supplied to Buyer within 10 days of acceptance of this offer
96 . Insert additional terms, if any, at lines 109-115 or 277-286 or attach as an addendum per line 479.
97 [ ] ESTOPPEL LETTERS: Seller shall deliver to Buyer no later than _____ _____ days before closing, estoppel letters dated within
98 _____ days before closing, from each non-residential tenant, confirming the lease term, rent instalment amounts, amount of security
99 deposit, and disclosing any defaults, claims or litigation with regard to the lease or tenancy.
100 **RENTAL WEATHERIZATION** This transaction (is) (is not) | STRIKE ONE | exempt from Wisconsin Rental Weatherization Standards (Wis. Admin.
101 Code Ch. SPS 367). If not exempt, (Buyer) (Seller) | STRIKE ONE | ("Buyer" if neither is stricken) shall be responsible for compliance, including all
102 costs, with Wisconsin Rental Weatherization Standards. If Seller is responsible for compliance, Seller shall provide a Certificate of Compliance at
103 closing.
104 **TIME IS OF THE ESSENCE** "Time is of the Essence" as to: (1) earnest money payment(s); (2) binding acceptance; (3) occupancy; (4) date of
105 closing; (5) contingency Deadlines | STRIKE AS APPLICABLE | and all other dates and Deadlines in this Offer except: _____
106 _____. If "Time
107 is of the Essence" applies to a date or Deadline, failure to perform by the exact date or Deadline is a breach of contract. If "Time is of the Essence"
108 does not apply to a date or Deadline, then performance within a reasonable time of the date or Deadline is allowed before a breach occurs.
109 **ADDITIONAL PROVISIONS/CONTINGENCIES** _____
110 _____
111 _____
112 _____
113 _____
114 _____
115 _____

Property Address: 518 South Westland Ave, _____    Page 3 of 9, WB-15

116 ☐ **PROPOSED USE CONTINGENCIES:** Buyer is purchasing the Property for the purpose of: _ _ _ _ _
117 _____
118 _____ [insert proposed use and type and size of building, if applicable; e.g.
119 restaurant/tavern with capacity of 350 and 3 second floor dwelling units]. The optional provisions checked on lines 123-139 shall be deemed
120 satisfied unless Buyer delivers to Seller by the deadline(s) set forth on lines 123-139 written notice specifying those items which cannot be
121 satisfied and written evidence substantiating why each specific item included in Buyer's notice cannot be satisfied. Upon delivery of Buyer's notice,
122 this Offer shall be null and void. Seller agrees to cooperate with Buyer as necessary to satisfy the contingencies checked at lines 123-139.
123 ☐ **EASEMENTS AND RESTRICTIONS:** This Offer is contingent upon Buyer obtaining, within _____ days of acceptance, at
124 (Buyer's) (Seller's) STRIKE ONE ("Buyer's" if neither is stricken) expense, copies of all public and private easements, covenants and
125 restrictions affecting the Property and a written determination by a qualified independent third party that none of these prohibit or significantly
126 delay or increase the costs of the proposed use or development identified at lines 116 to 118.
127 ☐ **APPROVALS:** This Offer is contingent upon Buyer obtaining, at (Buyer's) (Seller's) STRIKE ONE ("Buyer's" if neither is stricken) expense,
128 all applicable governmental permits, approvals and licenses, as necessary and appropriate, or the final discretionary action by the granting
129 authority prior to the issuance of such permits, approvals and licenses, for the following items related to Buyer's proposed use:
130 _____
131 or delivering written notice to Seller if the item(s) cannot be obtained or can only be obtained subject to conditions which significantly increase
132 the cost of Buyer's proposed use, all within _____ days of acceptance of this Offer.
133 ☐ **ACCESS TO PROPERTY:** This Offer is contingent upon Buyer obtaining, within _____ days of acceptance, at (Buyer's) (Seller's)
134 STRIKE ONE ("Buyer's" if neither is stricken) expense, written verification that there is legal vehicular access to the Property from public roads.
135 ☐ **LAND USE APPROVAL:** This Offer is contingent upon Buyer obtaining, at (Buyer's) (Seller's) STRIKE ONE ("Buyer's" if neither is stricken)
136 expense, a ☐ rezoning; ☐ conditional use permit; ☐ license; ☐ variance; ☐ building permit; ☐ occupancy permit; ☐ other _____
137 _____ CHECK ALL THAT APPLY , for the Property for its proposed use described
138 at lines 116-118 or delivering written notice to Seller if the item(s) cannot be obtained or can only be obtained subject to conditions which
139 significantly increase the cost of Buyer's proposed use, all within _____ days of acceptance.
140 ☐ **MAP OF THE PROPERTY:** This Offer is contingent upon (Buyer obtaining) (Seller providing) STRIKE ONE ("Seller providing" if neither is
141 stricken) a _____ survey (ALTA/ACSM Land Title Survey if survey type is not
142 specified) dated subsequent to the date of acceptance of this Offer and prepared by a registered land surveyor, within _____ days of
143 acceptance, at (Buyer's) (Seller's) STRIKE ONE ("Seller's" if neither is stricken) expense. The map shall show minimum of _____ acres,
144 maximum of _____ acres, the legal description of the Property, the Property's boundaries and dimensions, visible encroachments upon
145 the Property, the location of improvements, if any, and: _____
146 _____ STRIKE AND COMPLETE AS APPLICABLE . Additional map features
147 which may be added include, but are not limited to: staking of all corners of the Property; identifying dedicated and apparent streets; lot
148 dimensions; total acreage or square footage; utility installations; easements or rights-of-way. Such survey shall be in satisfactory form and
149 accompanied by any required surveyor's certificate sufficient to enable Buyer to obtain removal of the standard survey exception on the title policy.
150 **CAUTION: Consider the cost and the need for map features before selecting them. Also consider the time required to obtain the map**
151 **when setting the deadline.**
152 This contingency shall be deemed satisfied unless Buyer, within five (5) days of the earlier of: (1) Buyer's receipt of the map; or (2) the deadline for
153 delivery of said map, delivers to Seller a copy of the map and a written notice which identifies: (1) a significant encroachment; (2) information
154 materially inconsistent with prior representations; (3) failure to meet requirements stated within this contingency; or (4) the existence of conditions
155 that would prohibit the Buyer's intended use of the Property described at lines 116-118. Upon delivery of Buyer's notice, this Offer shall be null and
156 void.
157 ☒ **DOCUMENT REVIEW CONTINGENCY:** This Offer is contingent upon Seller delivering the following documents to Buyer within
158 ____5____ days of acceptance: CHECK THOSE THAT APPLY; STRIKE AS APPROPRIATE
159 ☐ Documents evidencing that the sale of the Property has been properly authorized, if Seller is a business entity.
160 ☐ A complete inventory of all furniture, fixtures, equipment and other personal property included in this transaction which is consistent with
161 representations made prior to and in this Offer.
162 ☐ Uniform Commercial Code lien search as to the personal property included in the purchase price, showing the Property to be free and clear
163 of all liens, other than liens to be released prior to or at closing.
164 ☐ Rent roll.
165 ☒ Other **Property condition report and written lease documents** _____
166 _____
167 Additional items which may be added include, but are not limited to: building, construction or component warranties, previous environmental site
168 assessments, surveys, title commitments and policies, maintenance agreements, other contracts relating to the Property, existing permits and
169 licenses, recent financial operating statements, current and future rental agreements, notices of termination and non-renewal, and assessment
170 notices.
171 All documents Seller delivers to Buyer shall be true, accurate, current and complete. Buyer shall keep all such documents confidential and
172 disclose them to third parties only to the extent necessary to implement other provisions of this Offer. Buyer shall return all documents (originals
173 and any reproductions) to Seller if this Offer is terminated.
174 ☒ **CONTINGENCY SATISFACTION:** This contingency shall be deemed satisfied unless Buyer, within _____15_____ days of the earlier of
175 receipt of the final document to be delivered or the deadline for delivery of the documents, delivers to Seller a written notice indicating that this

176 contingency has not been satisfied. Such notice shall identify which document(s) have not been timely delivered or do not meet the standard set
177 forth for the document(s). Upon delivery of such notice, this Offer shall be null and void.

178 DEFINITIONS

179 ■ ACTUAL RECEIPT: "Actual Receipt" means that a Party, not the Party's recipient for delivery, if any, has the document or written notice
180 physically in the Party's possession, regardless of the method of delivery.

181 ■ CONDITIONS AFFECTING THE PROPERTY OR TRANSACTION: "Conditions Affecting the Property or Transaction" are defined to include:

182 a.  Defects in structural components, e.g. roof, foundation, basement or other walls.

183 b.  Defects in mechanical systems, e.g. HVAC, electrical, plumbing, septic, well, fire safety, security or lighting.

184 c.  Underground or aboveground storage tanks presently or previously on the Property for storage of flammable or combustible liquids, including
185    but not limited to gasoline and heating oil.

186 d.  Defect or contamination caused by unsafe concentrations of, or unsafe conditions relating to, lead paint, asbestos, radon, radium in water
187    supplies, mold, pesticides or other potentially hazardous or toxic substances on the premises.

188 e.  Production of or spillage of methamphetamine (meth) or other hazardous or toxic substances on the Property.

189 f.  Zoning or building code violations, any land division involving the Property for which required state or local permits had not been obtained,
190    nonconforming structures or uses, conservation easements, rights-of-way.

191 g.  Special purpose district, such as a drainage district, lake district, sanitary district or sewer district, that has the authority to impose
192    assessments against the real property located within the district.

193 h.  Proposed, planned or commenced public improvements which may result in special assessments or otherwise materially affect the Property
194    or the present use of the Property.

195 i.  Federal, state or local regulations requiring repairs, alterations or corrections of an existing condition.

196 j.  Flooding, standing water, drainage problems or other water problems on or affecting the Property.

197 k.  Material damage from fire, wind, floods, earthquake, expansive soils, erosion or landslides.

198 l.  Near airports, freeways, railroads or landfills, or significant odor, noise, water intrusion or other irritants emanating from neighboring property.

199 m.  Portion of the Property in a floodplain, wetland or shoreland zoning area under local, state or federal regulations.

200 n.  Property is subject to a mitigation plan required under administrative rules of the Department of Natural Resources related to county
201    shoreland zoning ordinances, which obligates the owner of the Property to establish or maintain certain measures related to shoreland
202    conditions and which is enforceable by the county.

203 o.  Encroachments; easements, other than recorded utility easements; access restrictions; covenants, conditions and restrictions;  shared
204    fences, walls, wells, driveways, signage or other shared usages; or leased parking.

205 p.  High voltage electric (100 KV or greater) or steel natural gas transmission lines located on but not directly serving the Property.

206 q.  Structure on the Property designated as a historic building, any part of the Property located in a historic district, or burial sites or
207    archeological artifacts on the Property.

208 r.  All or part of the land has been assessed as agricultural land, the owner has been assessed a use-value conversion charge or the payment
209    of a use-value conversion charge has been deferred.

210 s.  All or part of the Property is subject to, enrolled in or in violation of a certified farmland preservation zoning district or a farmland preservation
211    agreement, or a Forest Crop, Managed Forest (see disclosure requirements in Wis. Stat. § 710.12), Conservation Reserve or comparable
212    program.

213 t.  A pier is attached to the Property that is not in compliance with state or local pier regulations.

214 u.  Government investigation or private assessment/audit (of environmental matters) conducted.

215 v.  Other Defects affecting the Property.

216 ■ DEADLINES: "Deadlines" expressed as a number of "days" from an event, such as acceptance, are calculated by excluding the day the event
217 occurred and by counting subsequent calendar days. The deadline expires at midnight on the last day. Deadlines expressed as a specific number
218 of "business days" exclude Saturdays, Sundays, any legal public holiday under Wisconsin or Federal law, and other day designated by the
219 President such that the postal service does not receive registered mail or make regular deliveries on that day. Deadlines expressed as a specific
220 number of "hours" from the occurrence of an event, such as receipt of a notice, are calculated from the exact time of the event, and by counting 24
221 hours per calendar day. Deadlines expressed as a specific day of the calendar year or as the day of a specific event, such as closing, expire at
222 midnight of that day.

223 ■ DEFECT: "Defect" means a condition that would have a significant adverse effect on the value of the Property; that would significantly impair
224 the health or safety of future occupants of the Property; or that if not repaired, removed or replaced would significantly shorten or adversely affect
225 the expected normal life of the premises.

226 (Definitions Continued on page 6)

Property Address: <u>518 South Westland Ave, ,</u>                 Page 5 of 9, WB-15

227 **IF LINE 228 IS NOT MARKED OR IS MARKED N/A LINES 264-269 APPLY.**

228 [x] **FINANCING CONTINGENCY:** This Offer is contingent upon Buyer being able to obtain a written _____ **commercial loan**

229 [INSERT LOAN PROGRAM OR SOURCE] first mortgage loan commitment as described below, within _____ **60** _____ days of acceptance of this

230 Offer. The financing selected shall be in an amount of not less than $ **360,000.00** _____ for a term of not less than __ **20** __ years,

231 amortized over not less than __ **20** __ years. Initial monthly payments of principal and interest shall not exceed $ **2,600.00** _____ . Monthly

232 payments may also include 1/12th of the estimated net annual real estate taxes, hazard insurance premiums, and private mortgage insurance

233 premiums. The mortgage may not include a prepayment premium. Buyer agrees to pay discount points and/or loan origination fee in an amount

234 not to exceed _____ **- - - -** _____ % of the loan. If the purchase price under this Offer is modified, the financed amount, unless otherwise provided, shall

235 be adjusted to the same percentage of the purchase price as in this contingency and the monthly payments shall be adjusted as necessary to

236 maintain the term and amortization stated above.

237 **CHECK AND COMPLETE APPLICABLE FINANCING PROVISION AT LINE 238 OR 239.**

238 [X] **FIXED RATE FINANCING:** The annual rate of interest shall not exceed __ **6.000** __ %.

239 [ ] **ADJUSTABLE RATE FINANCING:** The initial annual interest rate shall not exceed _____ %. The initial interest rate shall be

240 fixed for _____ months, at which time the interest rate may be increased not more than _____ % per year. The maximum

241 interest rate during the mortgage term shall not exceed _____ %. Monthly payments of principal and interest may be adjusted to

242 reflect interest changes

243 **If Buyer is using multiple loan sources or obtaining a construction loan or land contract financing, describe at lines 109-115 or 277-286**

244 **or in an addendum attached per line 479.**

245 **NOTE: If purchase is conditioned on buyer obtaining financing for operations or development consider adding a contingency for that**

246 **purpose.**

247 ▪ **BUYER'S LOAN COMMITMENT:** Buyer agrees to pay all customary loan and closing costs, to promptly apply for a mortgage loan, and to

248 provide evidence of application promptly upon request of Seller. If Buyer qualifies for the loan described in this Offer or another loan acceptable to

249 Buyer, Buyer agrees to deliver to Seller a copy of the written loan commitment no later than the deadline at line 229. Buyer and Seller agree that

250 delivery of a copy of any written loan commitment to Seller (even if subject to conditions) shall satisfy Buyer's financing contingency if,

251 after review of the loan commitment, Buyer has directed, in writing, delivery of the loan commitment. Buyer's written direction shall

252 accompany the loan commitment. Delivery shall not satisfy this contingency if accompanied by a notice of unacceptability.

253 **CAUTION: The delivered commitment may contain conditions Buyer must yet satisfy to obligate the lender to provide the loan. BUYER,**

254 **BUYER'S LENDER AND AGENTS OF BUYER OR SELLER SHALL NOT DELIVER A LOAN COMMITMENT TO SELLER OR SELLER'S**

255 **AGENT WITHOUT BUYER'S PRIOR WRITTEN APPROVAL OR UNLESS ACCOMPANIED BY A NOTICE OF UNACCEPTABILITY.**

256 ▪ **SELLER TERMINATION RIGHTS:** If Buyer does not make timely delivery of said commitment, Seller may terminate this Offer if Seller delivers

257 a written notice of termination to Buyer prior to Seller's Actual Receipt of a copy of Buyer's written loan commitment.

258 ▪ **FINANCING UNAVAILABILITY:** If financing is not available on the terms stated in this Offer (and Buyer has not already delivered an

259 acceptable loan commitment for other financing to Seller), Buyer shall promptly deliver written notice to Seller of same including copies of

260 lender(s)' rejection letter(s) or other evidence of unavailability. Unless a specific loan source is named in this Offer, Seller shall then have 10 days

261 to deliver to Buyer written notice of Seller's decision to finance this transaction on the same terms set forth in this Offer, and this Offer shall remain

262 in full force and effect, with the time for closing extended accordingly. If Seller's notice is not timely given, this Offer shall be null and void. Buyer

263 authorizes Seller to obtain any credit information reasonably appropriate to determine Buyer's credit worthiness for Seller financing.

264 ▪ **IF THIS OFFER IS NOT CONTINGENT ON FINANCING:** Within 7 days of acceptance, a financial institution or third party in control of Buyer's

265 funds shall provide Seller with reasonable written verification that Buyer has, at the time of verification, sufficient funds to close. If such written

266 verification is not provided, Seller has the right to terminate this Offer by delivering written notice to Buyer. Buyer may or may not obtain mortgage

267 financing but does not need the protection of a financing contingency. Seller agrees to allow Buyer's appraiser access to the Property for

268 purposes of an appraisal. Buyer understands and agrees that this Offer is not subject to the appraisal meeting any particular value, unless this

269 Offer is subject to an appraisal contingency, nor does the right of access for an appraisal constitute a financing contingency.

270 [x] **APPRAISAL CONTINGENCY:** This Offer is contingent upon the Buyer or Buyer's lender having the Property appraised at Buyer's expense

271 by a Wisconsin licensed or certified independent appraiser who issues an appraisal report dated subsequent to the date of this Offer indicating an

272 appraised value for the Property equal to or greater than the agreed upon purchase price. This contingency shall be deemed satisfied unless

273 Buyer, within _____ **60** _____ days of acceptance, delivers to Seller a copy of the appraisal report which indicates that the appraised value is not

274 equal to or greater than the agreed upon purchase price, accompanied by a written notice of termination.

275 **CAUTION: An appraisal ordered by Buyer's lender may not be received until shortly before closing. Consider whether deadlines provide**

276 **adequate time for performance.**

277 **ADDITIONAL PROVISIONS/CONTINGENCIES**

278 _____

279 _____

280 _____

281 _____

282 _____

283 _____

284 _____

285 _____

286 _____

**DEFINITIONS CONTINUED FROM PAGE 4**

■ ENVIRONMENTAL SITE ASSESSMENT: An "Environmental Site Assessment" (also known as a "Phase I Site Assessment") (see lines 379-395) may include, but is not limited to: (1) an inspection of the Property; (2) a review of the ownership and use history of the Property, including a search of title records showing private ownership of the Property for a period of 80 years prior to the visual inspection; (3) a review of historic and recent aerial photographs of the Property, if available; (4) a review of environmental licenses, permits or orders issued with respect to the Property (5) an evaluation of results of any environmental sampling and analysis that has been conducted on the Property; and (6) a review to determine if the Property is listed in any of the written compilations of sites or facilities considered to pose a threat to human health or the environment including the National Priorities List, the Department of Nature Resources' (DNR) Registry of Waste Disposal Sites, the DNR's Contaminated Lands Environmental Action Network, and the DNR's Remediation and Redevelopment (RR) Sites Map including the Geographical Information System (GIS) Registry and related resources. Any Environmental Site Assessment performed under this Offer shall comply with generally recognized industry standards (e.g. current American Society of Testing and Materials "Standard Practice for Environmental Site Assesments"), and state and federal guidelines, as applicable.

**CAUTION: Unless otherwise agreed an Environmental Site Assessment does not include subsurface testing of the soil or groundwater or other testing of the Property for environmental pollution. If further investigation is required, insert provisions for a Phase II Site Assessment (collection and analysis of samples), Phase III Environmental Site Assessment (evaluation of remediation alternatives) or other site evaluation at lines 109-115 or 277-286 or attach as an addendum per line 479.**

■ FIXTURE: A "Fixture" is an item of property which is physically attached to or so closely associated with land or improvements so as to be treated as part of the real estate, including, without limitation, physically attached items not easily removable without damage to the premises, items specifically adapted to the premises and items customarily treated as fixtures, including, but not limited to, all: garden bulbs; plants; shrubs and trees; screen and storm doors and windows; electric lighting fixtures; window shades; curtain and traverse rods; blinds and shutters; central heating and cooling units and attached equipment; water heaters and treatment systems; sump pumps; attached or fitted floor coverings; awnings; attached antennas; garage door openers and remote controls; installed security systems; central vacuum systems and accessories; in-ground sprinkler systems and component parts; built-in appliances; ceiling fans; fences; storage buildings on permanent foundations and docks/piers on permanent foundations. A Fixture does not include trade fixtures owned by tenants of the Property.

**CAUTION: Exclude Fixtures not owned by Seller such as rented fixtures. See lines 20-22.**

■ PROPERTY: Unless otherwise stated, "Property" means the real estate described at lines 4-7.

**DISTRIBUTION OF INFORMATION** Buyer and Seller authorize the agents of Buyer and Seller to: (i) distribute copies of the Offer to Buyer's lender, appraisers, title insurance companies and any other settlement service providers for the transaction as defined by the Real Estate Settlement Procedures Act (RESPA); (ii) report sales and financing concession data to multiple listing service sold databases; and (iii) provide active listing, pending sale, closed sale and financing concession information and data, and related information regarding seller contributions, incentives or assistance, and third party gifts, to appraisers researching comparable sales, market conditions and listings, upon inquiry.

**EARNEST MONEY**

■ HELD BY: Unless otherwise agreed, earnest money shall be paid to and held in the trust account of the listing broker (Buyer's agent if Property is not listed or Seller's account if no broker is involved), until applied to purchase price or otherwise disbursed as provided in the Offer.

**CAUTION: Should persons other than a broker hold earnest money, an escrow agreement should be drafted by the Parties or an attorney. If someone other than Buyer makes payment of earnest money, consider a special disbursement agreement.**

■ DISBURSEMENT: If negotiations do not result in an accepted offer, the earnest money shall be promptly disbursed (after clearance from payor's depository institution if earnest money is paid by check) to the person(s) who paid the earnest money. At closing, earnest money shall be disbursed according to the closing statement. If this Offer does not close, the earnest money shall be disbursed according to a written disbursement agreement signed by all Parties to this Offer. If said disbursement agreement has not been delivered to broker within 60 days after the date set for closing, broker may disburse the earnest money: (1) as directed by an attorney who has reviewed the transaction and does not represent Buyer or Seller; (2) into a court hearing a lawsuit involving the earnest money and all Parties to this Offer; (3) as directed by court order; or (4) any other disbursement required or allowed by law. Broker may retain legal services to direct disbursement per (1) or to file an interpleader action per (2) and broker may deduct from the earnest money any costs and reasonable attorneys fees, not to exceed $250, prior to disbursement.

■ LEGAL RIGHTS/ACTION: Broker's disbursement of earnest money does not determine the legal rights of the Parties in relation to this Offer. Buyer's or Seller's legal right to earnest money cannot be determined by broker. At least 30 days prior to disbursement per (1) or (4) above, broker shall send Buyer and Seller notice of the disbursement by certified mail. If Buyer or Seller disagree with broker's proposed disbursement, a lawsuit may be filed to obtain a court order regarding disbursement. Small Claims Court has jurisdiction over all earnest money disputes arising out of the sale of residential property with 1-4 dwelling units and certain other earnest money disputes. Buyer and Seller should consider consulting attorneys regarding their legal rights under this Offer in case of a dispute. Both Parties agree to hold the broker harmless from any liability for good faith disbursement of earnest money in accordance with this Offer or applicable Department of Safety and Professional Services regulations concerning earnest money. See Wis. Admin. Code Ch. REEB 18.

Property Address: 518 South Westland Ave, , _____ Page 7 of 9, WB-15

**340** | TITLE EVIDENCE |

**341** ▪ **CONVEYANCE OF TITLE**: Upon payment of the purchase price, Seller shall convey the Property by warranty deed (trustee's deed if
**342** Seller is a trust, personal representative's deed if Seller is an estate or other conveyance as provided herein) free and clear of all liens and
**343** encumbrances, except: municipal and zoning ordinances and agreements entered under them, recorded easements for the distribution of utility
**344** and municipal services, recorded building and use restrictions and covenants, present uses of the Property in violation of the foregoing disclosed
**345** in Seller's disclosure report, and Real Estate Condition Report, if applicable, and in this Offer, general taxes levied in the year of closing and
**346** -------------------------------------------------------------------
**347** _____
**348** _____ which constitutes merchantable title for purposes of this transaction. Seller shall complete and execute the documents
**349** necessary to record the conveyance at Seller's cost and pay the Wisconsin Real Estate Transfer Fee.
**350** **WARNING: Municipal and zoning ordinances, recorded building and use restrictions, covenants and easements may prohibit certain**
**351** **improvements or uses and therefore should be reviewed, particularly if Buyer contemplates making improvements to Property or a use**
**352** **other than the current use.**
**353** ▪ **TITLE EVIDENCE**: Seller shall give evidence of title in the form of an owner's policy of title insurance in the amount of the purchase price on a
**354** current ALTA form issued by an insurer licensed to write title insurance in Wisconsin. Seller shall pay all costs of providing title evidence to Buyer.
**355** Buyer shall pay all costs of providing title evidence required by Buyer's lender.
**356** ▪ **GAP ENDORSEMENT**: Seller shall provide a "gap" endorsement or equivalent gap coverage at (Seller's) (Buyer's) | STRIKE ONE | ("Seller's" if
**357** neither stricken) cost to provide coverage for any liens or encumbrances first filed or recorded after the effective date of the title insurance
**358** commitment and before the deed is recorded, subject to the title insurance policy exclusions and exceptions, provided the title company will issue
**359** the endorsement. If a gap endorsement or equivalent gap coverage is not available, Buyer may give written notice that title is not acceptable for
**360** closing (see lines 365-371).
**361** ▪ **PROVISION OF MERCHANTABLE TITLE**: For purposes of closing, title evidence shall be acceptable if the required title insurance
**362** commitment is delivered to Buyer's attorney or Buyer not more than _____15_____ days after acceptance ("15" if left blank), showing title to the
**363** Property as of a date no more than 15 days before delivery of such title evidence to be merchantable per lines 341-348, subject only to liens which
**364** will be paid out of the proceeds of closing and standard title insurance requirements and exceptions, as appropriate.
**365** ▪ **TITLE NOT ACCEPTABLE FOR CLOSING**: If title is not acceptable for closing, Buyer shall notify Seller in writing of objections to title within
**366** _____15_____ days ("15" if left blank) after delivery of the title commitment to Buyer or Buyer's attorney. In such event, Seller shall have a
**367** reasonable time, but not exceeding _____5_____ days ("5" if left blank), from Buyer's delivery of the notice stating title objections, to deliver
**368** notice to Buyer stating Seller's election to remove the objections by the time set for closing. In the event that Seller is unable to remove said
**369** objections, Buyer may deliver to Seller written notice waiving the objections, and the time for closing shall be extended accordingly. If Buyer does
**370** not waive the objections, Buyer shall deliver written notice of termination and this Offer shall be null and void. Providing title evidence acceptable
**371** for closing does not extinguish Seller's obligations to give merchantable title to Buyer.
**372** ▪ **SPECIAL ASSESSMENTS/OTHER EXPENSES**: Special assessments, if any, levied or for work actually commenced prior to the date of this
**373** Offer shall be paid by Seller no later than closing. All other special assessments shall be paid by Buyer.
**374** **CAUTION: Consider a special agreement if area assessments, property owners association assessments, special charges for current**
**375** **services under Wis. Stat. § 66.0627 or other expenses are contemplated. "Other expenses" are one-time charges or ongoing use fees**
**376** **for public improvements (other than those resulting in special assessments) relating to curb, gutter, street, sidewalk, municipal water,**
**377** **sanitary and storm water and storm sewer (including all sewer mains and hook-up/connection and interceptor charges), parks, street**
**378** **lighting and street trees, and impact fees for other public facilities, as defined in Wis. Stat. § 66.0617(1)(f).**
**379** | x | **ENVIRONMENTAL EVALUATION CONTINGENCY**: This Offer is contingent upon a qualified independent environmental consultant of
**380** Buyer's choice conducting an Environmental Site Assessment of the Property (see lines 288-302), at (Buyer's) (Seller's) expense | STRIKE ONE |
**381** ("Buyer's" if neither is stricken), which discloses no Defects. For the purpose of this contingency, a Defect (see lines 223-225) is defined to also
**382** include a material violation of environmental laws, a material contingent liability affecting the Property arising under any environmental laws, the
**383** presence of an underground storage tank(s) or material levels of hazardous substances either on the Property or presenting a significant risk of
**384** contaminating the Property due to future migration from other properties. Defects do not include conditions the nature and extent of which Buyer
**385** had actual knowledge or written notice before signing the Offer.
**386** ▪ **CONTINGENCY SATISFACTION**: This contingency shall be deemed satisfied unless Buyer, within _____60_____ days of acceptance,
**387** delivers to Seller a copy of the Environmental Site Assessment report and a written notice listing the Defect(s) identified in the Environmental Site
**388** Assessment report to which Buyer objects (Notice of Defects).
**389** **CAUTION: A proposed amendment is not a Notice of Defects and will not satisfy this notice requirement.**
**390** ▪ **RIGHT TO CURE**: Seller (shall) (shall not) | STRIKE ONE | ("shall" if neither is stricken) have a right to cure the Defects. If Seller has the right to
**391** cure, Seller may satisfy this contingency by: (1) delivering written notice to Buyer within 10 days of Buyer's delivery of the Notice of Defects stating
**392** Seller's election to cure Defects, (2) curing the Defects in a good and workmanlike manner and (3) delivering to Buyer a written report detailing the
**393** work done within 3 days prior to closing. This Offer shall be null and void if Buyer makes timely delivery of the Notice of Defects and written
**394** Environmental Site Assessment report and: (1) Seller does not have a right to cure or (2) Seller has a right to cure but: (a) Seller delivers written
**395** notice that Seller will not cure or (b) Seller does not timely deliver the written notice of election to cure.

396 **DEFAULT** Seller and Buyer each have the legal duty to use good faith and due diligence in completing the terms and conditions of this Offer. A
397 material failure to perform any obligation under this Offer is a default which may subject the defaulting party to liability for damages or other legal
398 remedies.

399    If Buyer defaults, Seller may:

400    (1)  sue for specific performance and request the earnest money as partial payment of the purchase price; or

401    (2)  terminate the Offer and have the option to: (a) request the earnest money as liquidated damages; or (b) sue for actual damages.

402    If Seller defaults, Buyer may:

403    (1)  sue for specific performance; or

404    (2)  terminate the Offer and request the return of the earnest money, sue for actual damages, or both.

405    In addition, the Parties may seek any other remedies available in law or equity.

406 The Parties understand that the availability of any judicial remedy will depend upon the circumstances of the situation and the discretion of the
407 courts. If either Party defaults, the Parties may renegotiate the Offer or seek nonjudicial dispute resolution instead of the remedies outlined above.
408 By agreeing to binding arbitration, the Parties may lose the right to litigate in a court of law those disputes covered by the arbitration agreement.

409 **NOTE: IF ACCEPTED, THIS OFFER CAN CREATE A LEGALLY ENFORCEABLE CONTRACT. BOTH PARTIES SHOULD READ THIS**
410 **DOCUMENT CAREFULLY. BROKERS MAY PROVIDE A GENERAL EXPLANATION OF THE PROVISIONS OF THE OFFER BUT ARE**
411 **PROHIBITED BY LAW FROM GIVING ADVICE OR OPINIONS CONCERNING YOUR LEGAL RIGHTS UNDER THIS OFFER OR HOW TITLE**
412 **SHOULD BE TAKEN AT CLOSING. AN ATTORNEY SHOULD BE CONSULTED IF LEGAL ADVICE IS NEEDED.**

413 **ENTIRE CONTRACT** This Offer, including any amendments to it, contains the entire agreement of the Buyer and Seller regarding the
414 transaction. All prior negotiations and discussions have been merged into this Offer. This agreement binds and inures to the benefit of the Parties
415 to this Offer and their successors in interest.

416 **PROPERTY DIMENSIONS AND SURVEYS** Buyer acknowledges that any land, building or room dimensions, or total acreage or building square
417 footage figures, provided to Buyer by Seller or by a broker, may be approximate because of rounding, formulas used or other reasons, unless
418 verified by survey or other means.

419 **CAUTION: Buyer should verify total square footage or acreage figures and land, building or room dimensions, if material to Buyer's**
420 **decision to purchase.**

421 **BUYER'S PRE-CLOSING WALK-THROUGH** Within 3 days prior to closing, at a reasonable time pre-approved by Seller or Seller's agent, Buyer
422 shall have the right to walk through the Property to determine that there has been no significant change in the condition of the Property, except for
423 ordinary wear and tear and changes approved by Buyer, and that any Defects Seller has agreed to cure have been repaired in the manner agreed
424 to by the Parties.

425 **PROPERTY DAMAGE BETWEEN ACCEPTANCE AND CLOSING** Seller shall maintain the Property until the earlier of closing or occupancy of
426 Buyer in materially the same condition as of the date of acceptance of this Offer, except for ordinary wear and tear. If, prior to closing, the Property
427 is damaged in an amount of not more than five percent (5%) of the selling price, Seller shall be obligated to repair the Property and restore it to
428 the same condition that it was on the day of this Offer. No later than closing, Seller shall provide Buyer with lien waivers for all lienable repairs and
429 restoration. If the damage shall exceed such sum, Seller shall promptly notify Buyer in writing of the damage and this Offer may be canceled at
430 option of Buyer. Should Buyer elect to carry out this Offer despite such damage, Buyer shall be entitled to the insurance proceeds, if any, relating
431 to the damage to the Property, plus a credit towards the purchase price equal to the amount of Seller's deductible on such policy, if any. However,
432 if this sale is financed by a land contract or a mortgage to Seller, any insurance proceeds shall be held in trust for the sole purpose of restoring the
433 Property.

434 **NOTICE ABOUT SEX OFFENDER REGISTRY** You may obtain information about the sex offender registry and persons registered with the
435 registry by contacting the Wisconsin Department of Corrections on the Internet at http://www.widocoffenders.org or by telephone at
436 (608) 240-5830.

437 **INSPECTIONS AND TESTING** Buyer may only conduct inspections or tests if specific contingencies are included as a part of this Offer. An
438 "inspection" is defined as an observation of the Property which does not include an appraisal or testing of the Property, other than testing for
439 leaking carbon monoxide, or testing for leaking LP gas or natural gas used as a fuel source, which are hereby authorized. A "test" is defined as
440 the taking of samples of materials such as soils, water, air or building materials from the Property and the laboratory or other analysis of these
441 materials. Seller agrees to allow Buyer's inspectors, testers, appraisers and qualified third parties reasonable access to the Property upon
442 advance notice, if necessary to satisfy the contingencies in this Offer. Buyer and licensees may be present at all inspections and testing. Except
443 as otherwise provided, Seller's authorization for inspections does not authorize Buyer to conduct testing of the Property.

444 **NOTE: Any contingency authorizing testing should specify the areas of the Property to be tested, the purpose of the test, (e.g., to**
445 **determine if environmental contamination is present), any limitations on Buyer's testing and any other material terms of the**
446 **contingency.**

447 Buyer agrees to promptly restore the Property to its original condition after Buyer's inspections and testing are completed unless otherwise agreed
448 to with Seller. Buyer agrees to promptly provide copies of all inspection and testing reports to Seller. Seller acknowledges that certain inspections
449 or tests may detect environmental pollution which may be required to be reported to the Wisconsin Department of Natural Resources.

Property Address: 518 South Westland Ave, ,  Page 9 of 9, WB-15

450 [x] **INSPECTION CONTINGENCY:** This contingency only authorizes inspections, not testing (see lines 437-449). This Offer is contingent upon
451 a qualified independent inspector(s) conducting an inspection(s) of the Property which discloses no Defects. This Offer is further contingent upon
452 a qualified independent inspector or qualified independent third party performing an inspection of **All mechanical systems and building**
453 **structure** _____ (list any Property feature(s) to be separately inspected, e.g., dumpsite, etc.) which
454 discloses no Defects. Buyer shall order the inspection(s) and be responsible for all costs of inspection(s). Buyer may have follow-up inspections
455 recommended in a written report resulting from an authorized inspection performed provided they occur prior to the deadline specified at line 461.
456 Each inspection shall be performed by a qualified independent inspector or qualified independent third party.
457 **CAUTION: Buyer should provide sufficient time for the primary inspection and/or any specialized inspection(s), as well as any follow-up**
458 **inspection(s).**
459 For the purpose of this contingency, Defects (see lines 223-225) do not include conditions the nature and extent of which Buyer had actual
460 knowledge or written notice before signing the Offer.
461 ▪ **CONTINGENCY SATISFACTION:** This contingency shall be deemed satisfied unless Buyer, within _____ 60 _____ days of acceptance,
462 delivers to Seller a copy of the inspection report(s) and a written notice listing the Defect(s) identified in the inspection report(s) to which Buyer
463 objects (Notice of Defects).
464 **CAUTION: A proposed amendment is not a Notice of Defects and will not satisfy this notice requirement.**
465 ▪ **RIGHT TO CURE:** Seller (shall)(shall not) [STRIKE ONE] ("shall" if neither is stricken) have a right to cure the Defects. If Seller has the right to
466 cure, Seller may satisfy this contingency by: (1) delivering written notice to Buyer within 10 days of Buyer's delivery of the Notice of Defects stating
467 Seller's election to cure Defects, (2) curing the Defects in a good and workmanlike manner and (3) delivering to Buyer a written report detailing the
468 work done within 3 days prior to closing. This Offer shall be null and void if Buyer makes timely delivery of the Notice of Defects and written
469 inspection report(s) and: (1) Seller does not have a right to cure or (2) Seller has a right to cure but: (a) Seller delivers written notice that Seller will
470 not cure or (b) Seller does not timely deliver the written notice of election to cure.
471 [  ] **CLOSING OF BUYER'S PROPERTY CONTINGENCY:** This Offer is contingent upon the closing of the sale of Buyer's property located at
472 _____ , no later than _____ . If Seller accepts a bona fide secondary offer,
473 Seller may give written notice to Buyer of acceptance. If Buyer does not deliver to Seller a written waiver of the Closing of Buyer's Property
474 Contingency and _____
475 _____
476 [INSERT OTHER REQUIREMENTS, IF ANY (e.g., PAYMENT OF ADDITIONAL EARNEST MONEY, WAIVER OF ALL CONTINGENCIES, OR
477 PROVIDING EVIDENCE OF SALE OR BRIDGE LOAN, etc.)] within _____ hours of Buyer's Actual Receipt of said notice, this Offer shall be
478 null and void.
479 [x] **ADDENDA:** The attached _____ Addendum A _____ is/are made part of this Offer.
480 This Offer was drafted by [Licensee and Firm] / _____ Jim Bunjovac J. Ross & Associates, LLC
481 _____ on _____ 09/11/2013
482 Buyer Entity Name (if any): _____
483 (X) _____ (President) Gary Krieger    9/12/2013
484 Buyer's/Authorized Signature  ▲ Print Name/Title Here  ► Partners in Healthcare    Date ▲
485 (X) _____
486 Buyer's/Authorized Signature  ▲ Print Name/Title Here  ► and or assigns    Date ▲
487 [EARNEST MONEY RECEIPT] Broker acknowledges receipt of earnest money as per line 10 of the above Offer.
488 _____ Broker (By) _____
489 **SELLER ACCEPTS THIS OFFER. THE WARRANTIES, REPRESENTATIONS AND COVENANTS MADE IN THIS OFFER SURVIVE CLOSING**
490 **AND THE CONVEYANCE OF THE PROPERTY. SELLER AGREES TO CONVEY THE PROPERTY ON THE TERMS AND CONDITIONS AS**
491 **SET FORTH HEREIN AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS OFFER.**
492 Seller Entity Name (if any): _____
493 (X) _____
494 Seller's/Authorized Signature  ▲ Print Name/Title Here  ►    Date ▲
495 (X) _____
496 Seller's/Authorized Signature  ▲ Print Name/Title Here  ►    Date ▲
497 This Offer was presented to Seller by [Licensee and Firm] _____ Jim Bunjovac J. Ross & Associates, LLC
498 _____ on _____ at _____ a.m./p.m.
499 This Offer is rejected _____  This Offer is countered [See attached counter]
500     Seller Initials ▲    Date ▲         Seller Initials ▲    Date ▲

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    518 South West

J. Ross & Associates, LLC

## Addendum ___A___ to the Offer to Purchase

Addendum attached to and made part of the Offer to Purchase dated _____**September 11, 2013**_____ made by the Buyer,

_____ with respect to the Property at <u>518 South Westland Ave</u>

_____ , Wisconsin.

**Assuming there is an accepted offer, Buyer to lease space (4900+- SF) from Seller beginning October 1 2013 to the date of closing for $2,500.00 per month (modified gross). Buyer is responsible for all utilities. Buyer and Seller to execute a mutually agreeable lease document on the date of occupancy. J. Ross & Associates to receive commission on lease.**

_____ 9-12-2013 _____
(Buyer's Signature) ▲ **Partners in Healthcare**   (Date) ▲   (Seller's Signature) ▲                    (Date) ▲

_____          _____
(Buyer's Signature) ▲ **and or assigns**   (Date) ▲   (Seller's Signature) ▲                    (Date) ▲

Copyright 2000 by Wisconsin REALTORS® Association

J. Ross & Associates, LLC 103 W College Ave., Ste 611 Appleton, WI 54911
Phone: (920)470-9198          Fax:          James Bunjovac                                518 South West

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Approved by Wisconsin Department of Regulation and Licensing
11-1-09 (Optional Use Date)  3-1-10 (Mandatory Use Date)                                          **DeWitt Londre LLC**

## WB-44 COUNTER-OFFER

Counter-Offer No. ___1___ by (Buyer/Seller)  | STRIKE ONE |

1 The Offer to Purchase dated ___09/11/2013___ and signed by Buyer _____ Partners in Healthcare _____,
2 for purchase of real estate at _____ 518 South Westland Ave. _____
3 is rejected and the following Counter-Offer is hereby made. **All terms and conditions remain the same as stated in the**
4 **Offer to Purchase except the following: [CAUTION: This Counter-Offer does not include the terms or conditions in**
5 **any other Counter-Offer unless incorporated by reference.]**
6 Purchase price to be $475,000.00
7
8 Buyer will lease the building from Seller from 10-01-13 through 1-03-14.
9
10 WB-15 Commercial Offer to Purchase please remove Lines 14 through 17.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30 Any warranties, covenants and representations made in this Counter-Offer survive the closing of this transaction.
31 This Counter-Offer is binding upon Seller and Buyer only if a copy of the accepted Counter-Offer is delivered to the Party
32 making the Counter-Offer on or before _____ September 19, 2013 _____ (Time is of the
33 Essence). Delivery of the accepted Counter-Offer may be made in any manner specified in the Offer to Purchase, unless
34 otherwise provided in this Counter-Offer.
35 **NOTE: The Party making this Counter-Offer may withdraw the Counter-Offer prior to acceptance and delivery as**
36 **provided at lines 31-34.**
37 This Counter-Offer was drafted by _____ Ryan Londre  DEWITT LONDRE LLC _____ on _____.
38                                                         Licensee and Firm ▲                                      Date ▲
39 ___Scott Zukel___                        9-17-13
40 Signature of Party Making Counter-Offer ▲            Date ▲        Signature of Party Making Counter-Offer ▲        Date ▲
41 Print name ▶ Scott Zukel                                          Print name ▶
42
43 Signature of Party Accepting Counter-Offer ▲         Date ▲        Signature of Party Accepting Counter-Offer ▲      Date ▲
44 Print name ▶                                                      Print name ▶
45 This Counter-Offer was presented by _____ on _____.
46                                                         Licensee and Firm ▲                                      Date ▲
47 This Counter-Offer is (rejected) (countered) | STRIKE ONE | (Party's Initials) _____ (Party's Initials) _____
48 **NOTE: Provisions from a previous Counter-Offer may be included by reproduction of the entire provision or**
49 **incorporation by reference. Provisions incorporated by reference may be indicated in the subsequent Counter-Offer**
50 **by specifying the number of the provision or the lines containing the provision. In transactions involving more than**
51 **one Counter-Offer, the Counter-Offer referred to should be clearly specified.**
52 **NOTE: Number this Counter-Offer sequentially, e.g. Counter-Offer No. 1 by Seller, Counter-Offer No. 2 by Buyer, etc.**

DeWitt Londre LLC 113 Brookview Pl Combined Locks, WI 54113-1240          Phone: 920.740.6660        Fax: .                    Westland
Ryan Londre                          Produced with ZipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

Approved by Wisconsin Department of Regulation and Licensing
11-1-09 (Optional Use Date)  3-1-10 (Mandatory Use Date)                                    J. Ross & Associates, LLC

## WB-44 COUNTER-OFFER

Counter-Offer No. ___2___ by (Buyer/Seller) | STRIKE ONE |

1 The Offer to Purchase dated __09/11/2013__ and signed by Buyer _Partners in Healthcare , and or assig_ ,
2 for purchase of real estate at _____ 518 South Westland Ave, _____
3 is rejected and the following Counter-Offer is hereby made. All terms and conditions remain the same as stated in the
4 **Offer to Purchase except the following: [CAUTION: This Counter-Offer does not include the terms or conditions in**
5 **any other Counter-Offer unless incorporated by reference.]**
6 Purchase price to be $425,000.00
7 _____
8 Buyer will lease the building from 10-15-13 through 02-15-14
9 _____
10 _____
11 _____
12 _____
13 _____
14 _____
15 _____
16 _____
17 _____
18 _____
19 _____
20 _____
21 _____
22 _____
23 _____
24 _____
25 _____
26 _____
27 _____
28 _____
29 _____
30 Any warranties, covenants and representations made in this Counter-Offer survive the closing of this transaction.
31 This Counter-Offer is binding upon Seller and Buyer only if a copy of the accepted Counter-Offer is delivered to the Party
32 making the Counter-Offer on or before _____ September 23, 2013 _____ (Time is of the
33 Essence). Delivery of the accepted Counter-Offer may be made in any manner specified in the Offer to Purchase, unless
34 otherwise provided in this Counter-Offer.
35 **NOTE: The Party making this Counter-Offer may withdraw the Counter-Offer prior to acceptance and delivery as**
36 **provided at lines 31-34.**
37 This Counter-Offer was drafted by _____ Jim Bunjovac,  J.Ross & Associates _____ on _09/19/2013_ .
38 _____ Licensee and Firm ▲ _____ Date ▲
39 _____ 9/19/2013 _____
40 Signature of Party Making Counter-Offer ▲ _____ Date ▲ ___ Signature of Party Making Counter-Offer ▲ ____ Date ▲
41 Print name ▶ _____ Print name ▶ _____
42 _____
43 Signature of Party Accepting Counter-Offer ▲ _____ Date ▲ ___ Signature of Party Accepting Counter-Offer ▲ __ Date ▲
44 Print name ▶ _____ Print name ▶ _____
45 This Counter-Offer was presented by _____ on _____
46 _____ Licensee and Firm ▲ _____ Date ▲
47 This Counter-Offer is (rejected) (countered) | STRIKE ONE | (Party's Initials) _____ (Party's Initials) _____
48 **NOTE: Provisions from a previous Counter-Offer may be included by reproduction of the entire provision or**
49 **incorporation by reference. Provisions incorporated by reference may be indicated in the subsequent Counter-Offer**
50 **by specifying the number of the provision or the lines containing the provision. In transactions involving more than**
51 **one Counter-Offer, the Counter-Offer referred to should be clearly specified.**
52 **NOTE: Number this Counter-Offer sequentially, e.g. Counter-Offer No. 1 by Seller, Counter-Offer No. 2 by Buyer, etc.**

J. Ross & Associates, LLC 103 W College Ave, Ste 611 Appleton, WI 54911                Phone: (920)470-9198        Fax:                     518 South West
James Bunjovac
                    Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Approved by Wisconsin Department of Regulation and Licensing
11-1-09 (Optional Use Date)  3-1-10 (Mandatory Use Date)                                    DeWitt Londre LLC

## WB-44 COUNTER-OFFER

Counter-Offer No. ___3___ by (Buyer/Seller) | STRIKE ONE |

1  The Offer to Purchase dated __09/11/2013__ and signed by Buyer _____ Partners in Healthcare _____,
2  for purchase of real estate at _____ 518 South Westland Ave. _____
3  is rejected and the following Counter-Offer is hereby made. All terms and conditions remain the same as stated in the
4  Offer to Purchase except the following: [CAUTION: This Counter-Offer does not include the terms or conditions in
5  any other Counter-Offer unless incorporated by reference.]
6  Purchase price to be $450,000.
7  _____
8  Buyer will lease the vacant portion of building from Seller from 10-15-13 through 02-15-14
9  at a monthly rental rate of $2,500.00 per month.+ 40% of utilities.
10 _____
11 WB-15 Commercial Offer to Purchase please remove Lines 14 through 17.
12 _____
13 _____
14 _____
15 _____
16 _____
17 _____
18 _____
19 _____
20 _____
21 _____
22 _____
23 _____
24 _____
25 _____
26 _____
27 _____
28 _____
29 _____
30 Any warranties, covenants and representations made in this Counter-Offer survive the closing of this transaction.
31 This Counter-Offer is binding upon Seller and Buyer only if a copy of the accepted Counter-Offer is delivered to the Party
32 making the Counter-Offer on or before _____ September 23, 2013 _____
33 Essence). Delivery of the accepted Counter-Offer may be made in any manner specified in the Offer to Purchase, unless (Time is of the
34 otherwise provided in this Counter-Offer.
35 NOTE: The Party making this Counter-Offer may withdraw the Counter-Offer prior to acceptance and delivery as
36 provided at lines 31-34.
37 This Counter-Offer was drafted by _____ Ryan Londre DEWITT LONDRE LLC _____ on _____.
38                                        Licensee and Firm ▲                                    Date ▲
39 _____ VP   4/20/13
40 Signature of Party Making Counter-Offer ▲      Date ▲      Signature of Party Making Counter-Offer ▲      Date ▲
41 Print name ▶ Scott Yukel                                  Print name ▶
42
43 Signature of Party Accepting Counter-Offer ▲   Date ▲      Signature of Party Accepting Counter-Offer ▲   Date ▲
44 Print name ▶                                              Print name ▶
45 This Counter-Offer was presented by _____ on _____
46                                        Licensee and Firm ▲                                    Date ▲
47 This Counter-Offer is (rejected) (countered) | STRIKE ONE | (Party's Initials) _____ (Party's Initials) _____
48 NOTE: Provisions from a previous Counter-Offer may be included by reproduction of the entire provision or
49 incorporation by reference. Provisions incorporated by reference may be indicated in the subsequent Counter-Offer
50 by specifying the number of the provision or the lines containing the provision. In transactions involving more than
51 one Counter-Offer, the Counter-Offer referred to should be clearly specified.
52 NOTE: Number this Counter-Offer sequentially, e.g. Counter-Offer No. 1 by Seller, Counter-Offer No. 2 by Buyer, etc.

DeWitt Londre LLC 113 Brookview Pl Combined Locks, WI 54113-1240
Ryan Londre
Phone: 920.740.6660          Fax: .
Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.ziplogix.com          Westland

Approved by Wisconsin Department of Regulation and Licensing
11-1-09 (Optional Use Date)  3-1-10 (Mandatory Use Date)                    J. Ross & Associates, LLC

## WB-44 COUNTER-OFFER

### Counter-Offer No. __4__ by (Buyer/Seller) [STRIKE ONE]

1  The Offer to Purchase dated __09/11/2013__ and signed by Buyer <u>Partners in Healthcare , and or assig.</u>
2  for purchase of real estate at _____ <u>518 South Westland Ave,</u> _____
3  is rejected and the following Counter-Offer is hereby made. All terms and conditions remain the same as stated in the
4  Offer to Purchase except the following: [CAUTION: This Counter-Offer does not include the terms or conditions in
5  any other Counter-Offer unless incorporated by reference.]
6  <u>Purchase price to be 427,500.00</u>
7  
8  <u>Buyer will lease the building from 11-01-13 through 03-01-14 for $2500 per month (modified</u>
9  <u>gross) with Buyer to pay 40% of the utilities for their leased area or until Buyer attains</u>
10 <u>its commercial loan.  In the event Buyer is not able to attain a commercial loan before</u>
11 <u>03-01-14 a written lease is to be negotiated between Buyer and Tenant until commercial</u>
12 <u>loan is attained.</u>
13 
14 <u>WB-15 Commercial Offer to Purchase please remove lines 14 through 17.</u>
15 
16 <u>J. Ross & Associates is to receive commission on any lease agreement</u>
17 
18 
19 
20 
21 
22 
23 
24 
25 
26 
27 
28 
29 
30 Any warranties, covenants and representations made in this Counter-Offer survive the closing of this transaction.
31 This Counter-Offer is binding upon Seller and Buyer only if a copy of the accepted Counter-Offer is delivered to the Party
32 making the Counter-Offer on or before _____ 09-26-13 _____ (Time is of the
33 Essence). Delivery of the accepted Counter-Offer may be made in any manner specified in the Offer to Purchase, unless
34 otherwise provided in this Counter-Offer.
35 NOTE: The Party making this Counter-Offer may withdraw the Counter-Offer prior to acceptance and delivery as
36 provided at lines 31-34.
37 This Counter-Offer was drafted by _____ on _____ .
38                                              Licensee and Firm ▲                              Date ▲
39 
40 __Ray Snyder 9/24/13__                                  _____
   Signature of Party Making Counter-Offer ▲    Date        Signature of Party Making Counter-Offer ▲   Date ▲
41 Print name ▶     VP                                     Print name ▶
42 
43 __X__ _____ The Bus. Bank 9.26.13    _____
   Signature of Party Accepting Counter-Offer ▲  Date        Signature of Party Accepting Counter-Offer ▲   Date ▲
44 Print name ▶                                            Print name ▶
45 This Counter-Offer was presented by _____ on _____ .
46                                              Licensee and Firm ▲                              Date ▲
47 This Counter-Offer is (rejected) (countered) [STRIKE ONE] (Party's initials) _____ (Party's initials) _____
48 NOTE: Provisions from a previous Counter-Offer may be included by reproduction of the entire provision or
49 incorporation by reference. Provisions incorporated by reference may be indicated in the subsequent Counter-Offer
50 by specifying the number of the provision or the lines containing the provision. In transactions involving more than
51 one Counter-Offer, the Counter-Offer referred to should be clearly specified.
52 NOTE: Number this Counter-Offer sequentially, e.g. Counter-Offer No. 1 by Seller, Counter-Offer No. 2 by Buyer, etc.