UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 1:14-cv-23109-RNS

FEDERAL TRADE COMMISSION,

    Plaintiff,

v.

PARTNERS IN HEALTH CARE
ASSOCIATION, INC., *et al.,*

    Defendants.
_____/

**RECEIVER'S *EX PARTE* MOTION FOR AN ORDER
TO SHOW CAUSE WHY GARY KIEPER AND GRUMER & MACALUSO, P.A.
SHOULD NOT BE HELD IN CONTEMPT OF COURT**

Peter D. Russin, in his capacity as receiver (the "***Receiver***") of Partners in Health Care Association, Inc.; United Solutions Group Inc.; and their subsidiaries, affiliates, successors and assigns (collectively the "***Receivership Entities***"),[1] appointed pursuant to this Court's Temporary Restraining Order dated August 25, 2014 [ECF No. 9] (the "***TRO***"); the Stipulated Preliminary Injunction Against United Solutions Group Inc., Constanza Gomez Vargas, and Walter S. Vargas [ECF No. 31] (the ***"USGI Injunction"***); and the Corrected Preliminary Injunction Against Partners In Health Care Association, Inc., and Gary L. Kieper [ECF No. 36] (the ***"PIHC Injunction"***)[2] files this *ex parte* motion for the entry of an order to show cause why Grumer & Macaluso, P.A. and Gary Kieper (***"GM"*** and ***"Kieper,"*** respectively, and collectively, the ***"Respondents"***) should not be held in contempt (the ***"Motion"***) and states:

---

[1] The administration of the Receivership Entities is referred to herein as the ***"Estate."***
[2] Collectively the USGI Preliminary Injunction and PIHC Preliminary Injunction are referred to as the ***"Preliminary Injunctions."***

{Firm Clients/5522/5522-1/01523106.DOCX.}

**BACKGROUND**

1.	On September 22, 2014, the Receiver filed the *Receiver's Motion for Turnover of Receivership Funds Transferred to Grumer and Macaluso, P.A. and Funds Withdrawn from the Tri Resource Group, Ltd Account* [ECF No. 46] (the **"Turnover Motion"**). The background is adequately set forth in the Turnover Motion, and the Receiver reincorporates the entirety of the Turnover Motion, as if fully set forth herein.

2.	On October 1, 2014, the Respondents filed their response [ECF No. 51] (the **"Turnover Response"**). On October 7, 2014, the Receiver filed his reply [ECF No. 53] (the **"Turnover Reply"**).

3.	As set forth in the Turnover Motion and Turnover Reply, transferring of $20,000.00 from the Tri Resource Group, Ltd. account to Grumer & Macaluso, P.A., as well as the withdrawals of $5,500.00 from that account by Gary Kieper, violated the clear and unambiguous directives of the TRO and PIHC Preliminary Injunction.

4.	On October 16, 2014, the Court found that the Respondents violated[3] the TRO, and granted the Motion. The Court ordered as follows:

> Accordingly, the Court grants the Motion (ECF No. 46). Grumer and Macaluso, P.A. must turn over the $20,000 transferred from the Associated Bank account along with any other receivership assets. Gary Kieper must likewise turn over the $5,500.00

---

[3] The Court held that:

> Tri Resource Group, Ltd. is an affiliate of Defendant Partners In Health; **therefore, it was a violation of the Court's order to remove those funds**. Specifically, the TRO, which was in effect at the time of the transfers at issue, stated that "'Defendants' means . . . in any combination, all of the Individual Defendants and the Corporate Defendants." (ECF No. 9 at 5). "'Corporate Defendants' means . . . PIHC, and [its] subsidiaries, affiliates, successors, and assigns." (Id.). Accordingly, Partners In Health Care Association's affiliate, Tri Resources Group, Ltd., was covered under the TRO.

(emphasis added)

{Firm Clients/5522/5522-1/01523106.DOCX.}

>   in funds withdrawn from the Associated Bank account along with any other receivership assets. The Court reserves jurisdiction to determine contempt and sanctions for violation of the TRO and the Preliminary Injunction.

[ECF No. 57] (the ***"Turnover Order"***).

5. On October 20, 2014, counsel for the Receiver wrote[4] to Keith Grumer (principal of GM and counsel to Kieper), as follows:[5]

>   Mr. Grumer,
>
>   By now, I am sure you have seen the attached order on the turnover motion. Please forward us a check by no later than this Friday (10/24) for $20,000.00, and please ask Mr. Kieper to do the same concerning the $5,500.00 referenced in the order. Additionally, please note that the order requires that you turn over any other receivership assets of which you are in receipt. Please advise us if you or Mr. Kieper is in receipt of any other receivership assets or (if not) please represent to us that neither you nor Mr. Kieper is in possession of any assets which might be considered assets of the receivership estate.
>
>   -Larry

6. Later that evening, Keith Grumer responded as follows:

>   Mr. Pecan:
>
>   I am not certain that we are reading the same Order. The Order contains no time deadline requiring turnover, and invites our petition for fees though the injunction hearing; that petition is being drafted as we exchange our emails. We are also in discussions with the FTC concerning various matters and advised them that our fees are frozen, and cannot participate without some relief; Mr. Ivers indicated

---

[4] A copy of this email is attached as Exhibit A.

[5] The Receiver apologizes for burdening this Court with inter-counsel emails, which are ordinarily irrelevant and the filing of which is typically disfavored by the Court. Such emails, however, are necessary to demonstrate the Respondents refusal to comply with the orders of this Court.

{Firm Clients/5522/5522-1/01523106.DOCX.}

today we could separately apply for those fees , and we intend to do so. As alluded to in our response to the Receiver's motion, we do not have the ability to repay these sums at the current time.

We find your email needlessly harsh, and maybe premature. In light of our anticipated motion and this Court's prior treatment of defense counsel in similar proceedings, we expect to retain the entire sum earned. Mr. Russin, the Receiver, should plan and for potentially additional fees. Mr. Russin should also plan on receivership funds paying the employees he engaged during his initial investigation; Mr. Kieper will also request living expenses from non-telemarking funds. These funds are residual commissions paid monthly from non-telemarketing, non-Partners in Health activities.

Be further advised that our petition shall reflect earned fees through the date of the injunction hearing as $17,480.50. Please advise whether you will oppose our efforts. Our further services on behalf of Mr. Kieper and Tri-Resource Group are legitimate in their efforts to negotiate with the FTC and counsel is required.

To respond to the balance of your email, we are not in possession of any further receivership assets nor could we be as we were retained after Mr. Russin was in control of the office facilities; we are unaware of Mr. Kieper's removal of any other assets as he was traveling when Mr. Russin seized control of the offices and all of his visits were monitored by Mr. Russin or his agents. Mr. Kieper reports that his employee's personal property, comprising a K-Bar (phonetic) military knife is unaccounted for and all of the employees must be compensated for their services to the Receiver.

Contrary to the tenor of your email, we are prepared to work with you, Mr. Russin, and the FTC for the immediate resolution of all telemarketing claims. We conceded the injunction at the hearing on Partners in Health immediately and only looked to perpetuate the non-telemarking activities of Tri-Resource Group; the Court declined. To resolve the remaining issues with the FTC, Mr. Kieper needs

> counsel; we trust you will work with us towards conclusion and permit our reasonable compensation without further contest.
>
> Regards,
>
> Keith Grumer

(the *"Grumer Email")*. A copy of the Grumer Email is attached as Exhibit B. In sum, Mr. Grumer has indicated that neither GM nor Kieper will comply with the Turnover Order.

7. Moreover, Mr. Grumer misstates this Court's holding. The Court ordered that "while the funds must be returned, the Court does note, however, that counsel for Defendants is entitled to seek leave of court to obtain reasonable fees up through the preliminary injunction hearing." Mr. Grumer ignores the plain language that "the funds must be returned." Instead, Mr. Grumer baldly asserts that because this Court's order lacked a time for compliance, and suggested that GM *might* be awarded reasonable fees, that the clear language directing turnover can be disregarded.

**RELIEF REQUESTED**

8. The Receiver requests this Court enter an Order to show cause why GM and Kieper should not be held in contempt for their violation of the TRO, the PIHC Injunction, and the Turnover Order and enter sanctions against GM and Kieper.

**MEMORANDUM OF LAW**

9. "A finding of civil contempt must be based on clear and convincing evidence that a court order was violated." *Tom James Co. v. Morgan*, 141 Fed. Appx. 894, 897 (11th Cir. 2005). To hold a party in civil contempt for failure to comply with an order, the moving party must show, by clear and convincing evidence, that "(1) the allegedly violated order was valid and lawful; (2) the order was clear, definite and unambiguous; and (3) the alleged violator had the ability to comply with the order." *National Fire Ins. Co. of Pittsburgh, Pa. v. Olympia*

*Holding*, 140 Fed. Appx. 860, 863 (11th Cir. 2005); *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1296 (11th Cir.2002).

10. Once such a showing is made, the burden shifts to the alleged contemnor and "[t]he focus of the court's inquiry in civil contempt proceedings is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." *See Howard Johnson Co., Inc., v. Khimani*, 892 F. 2d 1512, 1516 (11th Cir. 1990). "The Supreme Court has made clear that the absence of willfulness is not a defense to a charge of civil contempt." *F.T.C. v. Leshin*, 618 F.3d 1221, 1232 (11th Cir. 2010). *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949).

**A. Violation of the TRO and PIHC Injunction**.

11. As to the TRO and the PIHC Injunction, all three of the above factors are clearly met. As to the first two elements, that (1) the allegedly violated order was valid and lawful; and (2) the order was clear, definite and unambiguous, the Receiver (and the Respondents) adequately briefed those issues in the Turnover Motion, Turnover Response and Turnover Reply, and the Court ruled upon those issues in the Turnover Order. The Receiver will not burden this Court by reiterating those arguments, and instead incorporates the Turnover Motion and Turnover Reply as if fully set forth herein.

12. As set forth in the Turnover Reply, though not necessary for contempt, GM and Kieper's violation of the TRO was obviously knowing and willful, as GM and Kieper's alleged justification for violation of the TRO was that they did not believe Tri Resource Group, Ltd. was an 'affiliate.' However, as the Receiver noted in the Turnover Reply, at the time of the transfers which violated the TRO, GM and Kieper could easily have made the determination that (1) Tri

Resource Group, Ltd. has common ownership with Partners In Health Care Association, Inc.; (2) the companies have a common location; (3) the companies have common control; (4) the companies have a common involvement in the medical discount plan industry; (5) the companies serviced the same customers upon which they were both dependent for revenue; and (6) the FTC and Receiver believed Tri Resource Group, Ltd. to be an affiliate, by virtue of the fact that Receiver directed that Tri Resource Group, Ltd. cease operations on August 27, 2014, and sent all of its employees home. Instead, Kieper and GM chose to ignore the TRO because the Associated Bank account had not yet been frozen by the bank.

13. As to the third element, that the violator had the ability to comply with the order, the violation of the TRO and PIHC Injunction was the *acceptance* and failure to return the $25,500.00 transferred. It is axiomatic that one always has the ability *not to accept* funds, thus, the existence of the third element is self-evident.

14. A finding of contempt is warranted. After learning of the unauthorized transfer and withdrawals on Friday, September 12, 2014, on Monday, September 15, 2014, counsel for the Receiver wrote to Mr. Grumer, demanding return of the amounts transferred via wire transfer by September 19, 2014 (the ***"Letter"***). Instead of responding and seeking leave of the Court[6] for a fee carveout, GM and Kieper decided to just ignore the Letter (and the TRO), and did not even respond. This forced the Receiver to incur significant expense, first to obtain an order compelling turnover of the funds, and now to enforce that order by seeking a finding of contempt. Accordingly, contempt for violation of the TRO and PIHC Injunction is appropriate.

---

[6] If the Respondents had responded to the Letter and filed such a motion, the Receiver would likely have objected, but he certainly would not have incurred the expense of the Turnover Motion and this Motion.

B. **Violation of the Turnover Order.**

15. Contempt is also appropriate for the Respondents' brazen decision not to comply with the Turnover Order. The Turnover Order was entered after the Turnover Motion was fully briefed, and the Respondents had an adequate opportunity to be heard. Accordingly the Turnover Order was valid and lawful.

16. Moreover, it is hard to imagine an order could be more clear and unambiguous than "Grumer and Macaluso, P.A. must turn over the $20,000 transferred from the Associated Bank account along with any other receivership assets [and] Gary Kieper must likewise turn over the $5,500.00 in funds withdrawn from the Associated Bank account along with any other receivership assets." Respondents refusal to do exactly that is puzzling.

17. Finally, as to the ability to comply, Gary Kieper has not indicated he cannot comply. Grumer & Macaluso, P.A. upon information and belief, is a successful law firm, with the means and ability to return the funds, especially considering it received the funds less than 60 days prior to the Turnover Order. Accordingly, in addition to contempt for violations of the TRO and PIHC Injunction, a finding of contempt for violation of the Turnover Order is appropriate as well.

## CONCLUSION

18. In the event the Court finds the Respondents in contempt, the Court should award sanctions to the Estate. In doing so, this Court has broad discretion in fashioning sanctions as a result of a civil contempt finding. *See Tom James*, 141 Fed. Appx. at 899; *see also Sizzler Family Steak Houses v. W. Sizzlin Steak House, Inc.*, 793 F. 2d 1529, 1536 (11th Cir. 1986)("once a district court finds a party in contempt, it has broad discretion in fashioning a contempt sanction"). Furthermore, the Trustee requests an additional award of attorneys' fees and costs

for having to prosecute the Turnover Motion and this Motion, neither of which would have been necessary had the Respondents complied with the orders of this Court.[7]

WHEREFORE, the Receiver requests this Court enter an Order to show cause why Grumer & Macaluso, P.A. and Gary Kieper should not be held in contempt; enter sanctions in favor of the Estate against Grumer & Macaluso, P.A. and Gary Kieper including, but not necessarily limited to, the Estate's attorney fees and costs in prosecuting the Turnover Motion and this Motion; and that the Court enter such other and further relief as is just and appropriate.

Respectfully submitted,

/s/ Lawrence E. Pecan
Lawrence E. Pecan, Esquire
Florida Bar No. 99086
lpecan@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
200 South Biscayne Blvd., Ste. 3200
Miami, Florida  33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

*Attorneys for Peter D. Russin, Receiver*

---

[7] Or perhaps even merely responded to the Letter.

{Firm Clients/5522/5522-1/01523106.DOCX.}

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing is being delivered to the following parties via transmission of Notices of Electronic Filing this 23rd day of October 2014.

/s/ Lawrence E. Pecan
Lawrence E. Pecan, Esquire

**Gary L. Ivens**
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
202-326-2230
Fax: 326-3395
Email: givens@ftc.gov

**Christopher E. Brown**
U.S. Federal Trade Commission
600 Pennsylvania Ave NW
Mail Stop CC-8509
Washington, DC 20580
202-326-2825
Email: cbrown3@ftc.gov

**Keith Thomas Grumer**
Grumer & Macaluso PA
1 East Broward Boulevard
Suite 1501
Fort Lauderdale, FL 33301
954-713-2700
Fax: 954-713-2713
Email: kgrumer@grumerlaw.com

**Bruce S. Rogow**
Bruce S. Rogow PA
500 East Broward Boulevard
Suite 1930
Fort Lauderdale, FL 33394
954-767-8909
Fax: 954-764-1530
Email: brogow@rogowlaw.com

**Tara A Campion**
Bruce S. Rogow, P.A.
500 East Broward Blvd.
Suite 1930
Fort Lauderdale, FL 33394
(954) 767-8909
Fax: (954) 764-1530
Email: tcampion@rogowlaw.com