UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14- 23109-CIV-SCOLA

FEDERAL TRADE COMMISSION,

        Plaintiff,

v.

PARTNERS IN HEALTH CARE ASSOCIATION, INC. (also d/b/a/ Partners In Health Care, Inc.),
GARY L. KIEPER (individually and as officer or director of Partners In Health Care Association, Inc.),
UNITED SOLUTIONS GROUP INC. (also d/b/a Debt Relief Experts, Inc.),
WALTER S. VARGAS (individually and as an officer or director of United Solutions Group Inc.),
CONSTANZA GOMEZ VARGAS (individually and as a director or manager of United Solutions Group Inc.),

        Defendants.

_____/

**DEFENDANTS' MOTION FOR LIMITED RELIEF FOR PAYMENT OF ATTORNEY'S FEES FROM FROZEN ASSETS
AND INCORPORATED MEMORANDUM OF LAW**

        Defendants PARTNERS IN HEALTH CARE ASSOCIATION, INC. and GARY L. KIEPER, and their counsel, Grumer & Macaluso, P.A., move for limited relief from the asset freeze as set forth in the Corrected Preliminary Injunction Order [DE36], and in the ex-parte Temporary Restraining Order [DE 9], as follows:

1.    <u>Summary of Motion</u>:   Defendants and their counsel seek limited relief from the asset freeze as contained in the Court's Orders to authorize payment of attorney's fees and costs. The

relief consists of (1) the payment by Defendants to their counsel, Grumer & Macaluso, P.A., of $17,455.50 [1] as a for legal services already provided through the date of the Temporary Injunction hearing of September 4, 2014; (2) payment of $14,481.00 for additional sums earned for services provided through September 30, 2014; and (3) out of pocket costs of $1,281.46 consisting largely of costs associated with copying ($759.20) and mailing ($116.48) the Preliminary Injunction Order to employees of Defendants and the related companies, as well as the third party telemarketing entities, in further compliance with the Preliminary Injunction Order.   Defendants further request the payment of $10,000.00 for anticipated legal services in connection with ongoing efforts to amicably resolve this matter with Plaintiff without undue delay.

2.   <u>Summary of Claims</u>:  The FTC alleges that Defendants Partners in Health, Inc. and its principal, Gary Kieper, violated federal consumer telemarketing laws when marketing their product, a medical benefit discount service plan, by misrepresenting the plan as an insurance product.  Mr. Kieper, who was formerly an insurance professional, believed he had taken the appropriate measures in regards to the marketing of the product to avoid such confusion by the consumer.  The discount plan offered discounted medical services, through third party providers such as Teladoc, and negotiated medical discounts directly with other providers and diagnostic services on a case by case basis.   Defendants had in force several controls to ensure consumers knew they were *not* purchasing a major medical insurance product, including a recorded verification call before any charges were incurred, and the written plan documents stated the product was not an insurance plan.  Historically, Defendants marketed the medical discount plan

---

[1] On September 26, 2014 Grumer & Macaluso received a legal retainer of $20,000.00 from the account of Tri Resource Group Ltd., a non-party, based upon a good faith belief of counsel at the time that this entity was excluded from the asset freeze. Due to that entity's affiliation with Defendants, this Court determined the payment was improper, and the payment is subject to the Court's Order Granting Motion for Turnover of Receivership Funds ("Turnover Order") of October 16, 2014 [DE 57].  That Order authorized the filing of this Motion.

off-site, via third party telephone marketing companies located throughout the country, who were paid on a commission basis. The telemarketing entities were under contract with Partners in Health, and were prohibited from representing the plan as an insurance product. Defendants trained, re-trained and monitored the off-site telemarketing operations and when these were found to be non-compliant, the telemarketing relationship was severed. In the months prior to the FTC's filing, Mr. Kieper had repeatedly visited the Miami offices of the co-Defendant, UNITED SOLUTIONS GROUP, INC., for re-training and to ensure their compliance. In January, 2014, Mr. Kieper set up an in-house telemarketing operation through an affiliated entity, Senior Advantage of Wisconsin d/b/a The Health Center to begin the process of terminating all off-site telemarketing efforts. A third entity also owned by Mr. Kieper, Tri-Resource Group Ltd., performed no telemarketing functions whatsoever, and its operations consisted solely of customer service and support to existing customers, including the negotiation of the discounts with medical providers.

3. <u>Asset Freeze</u>: The asset freeze is far-reaching and captured all assets and accounts of any kind wherever located belonging to the Defendants and the related entities. Unlike other FTC TRO orders which provide for releases of frozen funds for reasonable legal expenses and non-luxury living expenses, the Orders at issue do not so provide. All of the accounts of the named Defendants were immediately frozen by the Receiver, and in time all the accounts of related entities were also affected, and Defendants have no access to any funds. In addition to the Defendants' accounts, the accounts ultimately frozen by the Receiver included two operating accounts of the related entities, Senior Advantage of Wisconsin d/b/a The Health Center and Tri County Resource Group. Among the frozen funds were proceeds wholly unrelated to the sales or operation of the medical benefit discount service plan at issue here.

These unrelated proceeds consist of monthly deposits for earned residual insurance commissions of approximately $4,000.00 per month. The asset freeze over these accounts has halted any further deposits of these monthly commissions.

Defendant seeks relief from the asset freeze portion of the Court's Orders, as the Orders prevent Defendants from accessing any sums for their own legal defense. The Orders make no provision for Defendants' legal defense, or for retention of counsel to prepare for and attend the temporary injunction hearing of September 4, 2014, as was required in the TRO, or for complying with the remainder of the Court's directives. The Court required production of extensive personal and corporate financial records and financial statements to Plaintiff and the Receiver, as well as the dissemination by mail of the Temporary Injunction Order to all employees and telemarketers, which was also accomplished through counsel.

4.     <u>Relief as to Legal Expenses</u>:     The Court's Orders authorized the Receiver to take control over the assets and accounts of Defendants and affiliated entities, leaving no other funds or assets available to Defendants for payment of their legal defense or for compliance with required financial disclosures. Although the Orders made no exclusion or allowance for payments for legal expenses, in the October 16, 2014 Turnover Order, the Court invited an application for relief from the asset freeze for payment of attorney's fees incurred through the temporary injunction hearing of September 4, 2014.

The corporate Defendants are Wisconsin entities, and the individual Defendant, Mr. Kieper is a Wisconsin resident. The TRO, which was entered without notice, contained preliminary findings based upon the one-sided presentation of the FTC. The preliminary findings were not final or conclusive, and Wisconsin Defendants were ordered to appear in Florida and defend against the allegations at the temporary injunction hearing. The TRO placed

a great burden on Defendants not only to defend against the charges, attend and present evidence at the temporary injunction hearing, and show cause why a temporary injunction and other relief should not be entered, but also required numerous financial disclosures.  The TRO (as does the Preliminary Injunction Order) contained rigorous financial reporting and compliance requirements.  Defendant were obligated to retain local Florida counsel in order to, on the one hand, evaluate the claims and commence their defense against the allegations supporting the TRO, and, on the other hand, comply with the financial disclosures and other Court directives.

Attendance at the September 4 hearing required significant preparation by counsel and investigation of the legal and factual issues presented by Plaintiff in the Ex Parte Motion for a Temporary Restraining Order [DE 4] and supporting materials, conferences with Mr. Kieper, and with telemarketing industry consultants.  As a result of counsel's involvement, investigation and numerous conferences with Mr. Kieper, Defendants' presentation at the September 4 hearing was narrowly focused on permitting the continued operations of a non-Defendant, Tri-County Resource Group, and exclude it from the scope of the injunction, so as to permit that entity to continue to service existing customers who were satisfied with the discount plan.  Defendants did not contest the temporary injunction as it applied to Partners in Health, and to the in-house telemarketing entity, Senior Advantage Group d/b/a The Health Center.  The Court rejected Defendants' presentation, and entered the Temporary Injunction Order.

Following the September 4 hearing, Defendants secured supervised access to the Wisconsin offices from the Receiver, and the Defendants and counsel continued their efforts to comply with the disclosure requirements. Defendants located the necessary financial documentation for production and for preparation of the required financial statements and certifications, and these were submitted on behalf of the individual and corporate Defendants and

5
GRUMER & MACALUSO, P.A.
ONE EAST BROWARD BOULEVARD, SUITE 1501, FORT LAUDERDALE, FLORIDA 33301 • TELEPHONE (954) 713-2700
PLEADINGS SERVICE E-MAIL: SERVICE@GRUMERLAW.COM

five related entities. In further compliance with the Preliminary Injunction Order, Defendants, through counsel, also undertook a mass mailing of the Temporary Injunction Order to all employees and telemarketing agencies notifying them of the injunction, and fielded their phone calls.

5. <u>Full Financial Disclosure</u>: Defendants and the related entities have produced exhaustive financial disclosures to FTC counsel and the Receiver. The financial disclosures confirm that Defendants have no other source of funds from which to pay for their legal defense. The accounts frozen by the Receiver are believed to be in excess of $200,000.00.

6. <u>Relief for Payment of Legal Services</u>: The disallowance of reasonable legal expenses is untenable, and the implications are onerous. Due process considerations dictate that Defendants be allowed to fully participate and defend against the FTC allegations with counsel. As signaled out in the Turnover Order, this Court has previously authorized the release of a reasonable amount from an FTC frozen assets to pay attorney's fees through the preliminary injunction hearing, in that case authorizing the release of $75,000.00 due to fairness considerations. *FTC v. IAB Marketing Associates PL*, 2013 WL 2433214 *3 (S.D. Fla. June 4, 2013)("The Court believed it was fair to provide this money because in deciding whether to enter a preliminary injunction, the Court must evaluate the likelihood that the FTC will prevail on the action's merits and balance the equities."); *S.E.C. v. Dowdell*, 175 F. Supp. 2d 850, 856 (W.D. Va. 2001)("The Court does not believe that it could achieve a fair result at the preliminary injunction hearing were it to deny defendants the ability to retain counsel.") This Court should not presume the Defendants' wrongdoing or pre-judge the allegations of wrongdoing, and then cutoff the Defendants' ability to defend themselves. "The basis of our adversary system is threatened when one party gains control of the other party's defense. . . ." *FSLIC v. Dixon*, 835 F.2d 554, 565 (5th

Cir. 1987)(citing *United States v. Thier*, 801 F. 2d 1463 (1986); *United States v. Payment Processing Center LLC,* 439 F.Supp.2d 435, 440-41 (E.D.Pa. 2006)(fundamental fairness required that defendants be allowed to defend themselves although funds available for restitution would be limited); *United States v. Jaime*, 2011 WL 145196 (S.D. W. Va. 2011)("In determining whether restrained funds should be used to pay attorneys' fees, the Court is instructed to balance the "government's justification for restraining property with the defendant's legal interest in a full and fair hearing on the merits.") It is not uncommon in FTC injunction cases to make allowances to permit frozen assets to pay attorney's fees. *FTC v. QT, Inc.,* 467 F. Supp.2d 863, 867 (N.D. Ill. 2006) (describing considerations relevant). Where the order freezes all assets and makes no provision for payment to counsel whose services are required to defend, the Defendants' rights are trampled.

Similarly, the TRO and Preliminary Injunction Order imposed additional requirements upon Defendants, which were complied with in full following the September 4, 2014 hearing, but not without the participation of counsel, including but not limited to costs of compliance with the mass mailing of the Preliminary Injunction Order. Fairness considerations dictate the authorization for the release of the funds through the temporary injunction hearing, as well as fees incurred through the end of September 30, 2014. This Court should exercise its discretion to grant relief from the asset freeze imposed by the TRO and the Preliminary Injunction Order.

7. <u>Attorney's Fees Incurred & Sought</u>:   Attorney's fees already incurred for which payment is requested is as follows:  (1) $17,455.50 for services rendered from date of retention through the September 4, 2014 temporary injunction hearing; (2) $14,481.0 for services rendered from September 4, 2014 through September 30, 2014; (3) out of pocket costs of $1,281.46 consisting largely of costs associated with copying ($759.20) and mailing ($116.48) the

Temporary Injunction Order to employees of Defendants and the related companies, as well as the third party telemarketing entities, in further Compliance with the Temporary Injunction Order; the balance of the costs are attributable to Westlaw research charges ($362.98) and a courier charge for a pickup from the Receiver's office. ($42.80).  *See the Affidavit of Keith T. Grumer together with Exhibits filed in support of this Motion.*   Defendants request an additional $10,000.00 in advance sums for legal services anticipated in recently commenced discussions with FTC counsel that could potentially result in the resolution of this matter.

8. <u>Certificate of Counsel</u>:  Undersigned counsel certifies that he has twice attempted to confer with Receiver's counsel, via an email of October 20, 2014, and then emailed a copy of the instant Motion to counsel for the Receiver on October 23, 2014 at 4:39 p.m., but received no response.  Instead, at 7:41 p.m. that evening, the Receiver's office filed a Motion for Order to Show Cause Why Grumer & Macaluso P.A. and Gary Kieper should not be held in contempt, which Motion speaks for itself.  Counsel for the FTC advises the FTC does not agree to the relief requested.

9. <u>Conclusion</u>:  For these reasons, Defendants request this Court authorize limited relief from the asset freeze for payment of legal expenses in accordance with this motion.  To the extent that the Court grants relief, and should the Court authorize payment of sums up to $20,000.00 already received but ordered to be re-delivered by Defendants' counsel in the Turnover Order, then Defendants request this amount be offset and the funds permitted to be retained.

WHEREFORE, Defendants request this Court grant limited relief for payment of attorney's fees from the asset freeze contained in the Temporary Restraining Order and

Preliminary Injunction Order, and grant such other and further relief as this Court deems just and proper.

          Respectfully submitted,
          GRUMER & MACALUSO, P.A.
          Attorneys for DEFENDANTS
          One East Broward Boulevard, Suite 1501
          Fort Lauderdale, Florida 33301
          (954) 713-2700
          (954) 713-2713 (fax)
          Primary Email:     Service@grumerlaw.com
          Secondary Emails:  kgrumer@grumerlaw.com
                                 slopez@grumerlaw.com

          By: __/s/ Keith T. Grumer_____
               KEITH T. GRUMER
               FLORIDA BAR No.: 550416

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 24th day of October, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties either via transmission of Notices of Electronic Filing generated by CM/ECF or vial U.S. Mail for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

          By: /s/ Keith T. Grumer_____