UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>  Plaintiff,<br><br>v.<br><br>PARTNERS IN HEALTH CARE<br>  ASSOCIATION, INC., *et al.*,<br><br>  Defendants. | Case No. 1:14-cv-23109 RNS<br><br>**PLAINTIFF FEDERAL TRADE COMMISSION'S RESPONSE TO THE PIHC DEFENDANTS' MOTION FOR PAYMENT OF ATTORNEY'S FEES FROM FROZEN ASSETS** |

After bilking at least $8.1 million from vulnerable consumers seeking health insurance, Defendants Partners In Health Care Association, Inc. and Gary L. Kieper (the "PIHC Defendants") and their counsel, Grumer & Macaluso, P.A. ask the Court to release $43,127.96 of their illicit gains to pay their attorneys' fees and costs. As explained below, Plaintiff Federal Trade Commission ("FTC") does not object to a limited release of frozen assets to pay certain *reasonable* attorneys' fees incurred through the issuance of the preliminary injunction. The FTC firmly opposes, however, the release of any frozen funds to pay the PIHC Defendants' attorneys' fees and costs incurred *after* the preliminary injunction because: (1) the FTC is likely to prevail on the merits; (2) the amount of frozen funds is dwarfed by the amount of injury the PIHC Defendants have caused; (3) the PIHC Defendants have no automatic right to use fraudulently obtained funds for their defense; (4) the PIHC Defendants may have access to alternative assets; and (5) counsel for the PIHC Defendants assumed the risk of not getting paid.

I.   FACTUAL AND PROCEDURAL BACKGROUND

On August 25, 2014, the FTC filed its Complaint alleging that the defendants, including the PIHC Defendants, violated the FTC Act and the Telemarketing Sales Rule ("TSR") by deceptively marketing and selling medical discount cards as health insurance. [ECF No. 1.]

Based on the evidence and pleadings submitted by the FTC, this Court entered a temporary restraining order ("TRO"), which included a freeze of the defendants' assets and appointment of Peter Russin, Esq. (the "Receiver") as temporary receiver for the corporate defendants. [ECF No. 9.]  A preliminary injunction hearing occurred on September 4, 2014, after which this Court determined that the evidence demonstrates that the FTC is likely to prevail on the merits, and entered a preliminary injunction order ("PI") against the PIHC Defendants. [ECF No. 32, Prelim. Inj. Order; ECF No. 36, Corrected Prelim. Inj. Order.] On September 22, 2014, the Receiver filed a Motion for Turnover of Receivership Funds, seeking an order requiring Grumer & Macaluso, P.A. and defendant Gary L. Kieper to return $25,500 which was improperly transferred and withdrawn by Mr. Kieper in violation of the TRO and PI. [ECF No. 46.] After reviewing the Motion for Turnover, the PIHC Defendants' Response [ECF No. 51] and the Receiver's Reply [ECF No. 53], on October 16, 2014, this Court determined that the PIHC Defendants had violated the TRO and PI, and entered an Order granting the Receiver's Motion for Turnover. [ECF No. 59.]  To date, however, the PIHC Defendants have refused to return the funds in further violation of this Court's orders.

On October 24, 2014, the PIHC Defendants, through their counsel Grumer & Macaluso, P.A., filed a Motion for Limited Relief for Payment of Attorney's Fees from Frozen Assets, asking this Court to unfreeze (1) $17,455.50 for legal fees incurred through the September 4, 2014 preliminary injunction hearing; (2) $14,481.00 for legal fees incurred through September 30, 2014; (3) $1,281.46 for legal costs associated with complying with the PI; and (4) $10,000.00 for anticipated future legal fees associated with this matter. [ECF No. 60.]

2

## II.     ARGUMENT

A district court may, within its discretion, forbid or limit payment of attorneys' fees out of frozen assets. *See FTC v. Worldwide Factors*, *Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989) ("Courts regularly have frozen assets and denied attorney fees or limited the amount for attorney fees.") (citation omitted); *CFTC v. Morse*, 762 F.2d 60, 63 (8th Cir. 1985) (upholding district court's discretion to deny defendant's request for attorneys' fees to be paid out of frozen assets). A defendant bears the burden of establishing that the release of frozen funds is appropriate. *CFTC v. Am. Metals Exch. Corp.*, 775 F. Supp. 767, 788 (D. N.J. 1991).

### A.  The FTC Does Not Oppose The Release Of Frozen Funds To Pay Certain *Reasonable* Attorneys' Fees Incurred Up To The Preliminary Injunction Hearing

The FTC does not oppose the release of funds from the asset freeze for payment of certain *reasonable* attorney's fees incurred by the PIHC Defendants up to and including the preliminary injunction hearing. As this Court states in its Order granting the Receiver's Motion for Turnover of Receivership Funds, "while the funds must be returned, the Court does note, however, that counsel for Defendants is entitled to seek leave of court to obtain reasonable fees up through the preliminary injunction hearing." [ECF No. 57.] In so stating, the Court cited its decision in *FTC v. IAB Marketing Associates, LP*, 2013 WL 2433214 *3 (S.D. Fla. June 4, 2013), in which it authorized the release of a limited amount of funds from an FTC asset freeze to pay for reasonable attorney's fees necessary to take the defendants up to the entry of the preliminary injunction. In that case, this Court reasoned that it was appropriate to release such frozen funds to help the Court determine whether it should enter a preliminary injunction, reasoning that such a determination is aided when defendants are given an opportunity to retain

counsel for "legal work leading up to [a preliminary injunction hearing] . . . to show that the FTC is not likely to prevail on the merits." *Id*.

Here, the PIHC Defendants have provided documentation indicating that they incurred attorneys' fees in the amount of $17,455.50 from the date of retention of counsel through September 4, 2014, the date of the preliminary injunction hearing.  During this period, Keith T. Grumer, lead counsel on the case, claims to have expended 18.2 hours at a rate of $550 per hour, for a total amount of $10,010.00.  Maidenly Macaluso, another lawyer on the case, claims to have spent 13.3 hours at a rate of $535 per hour, for a total amount of $7,115.50.  Sandra Lopez, a paralegal at Grumer & Macaluso, P.A., avers that she spent a total of 2.2 hours on the case, at an hourly billable rate of $150 per hour, for a total of $330.  Based on its review of the billing documentation of the PIHC Defendants' counsel, the FTC opposes as unreasonable the release of frozen assets to pay attorneys' fees for unnecessarily redundant and duplicative work described below:

(1) On August 28, 2014, Mr. Grumer spent 3.5 hours and Ms. Macaluso spent 3.6 hours reviewing the TRO and in conference calls with defendant Gary L. Kieper and other legal counsel.  The FTC contends that Ms. Macaluso's fees in the amount of $1,926 are unreasonable because her work is duplicative of work performed by Mr. Grumer.

(2) On August 29, 2014 and September 3, 2014, Mr. Grumer and Ms. Macaluso, respectively, both spent 2.5 hours conferring with defendant Gary L. Kieper and preparing for the preliminary injunction hearing. The FTC contends that Ms. Macaluso's fees in the amount of $1,337.50 are unnecessarily duplicative, and that it is unreasonable to release frozen assets to pay for her "preparation" for the preliminary injunction hearing, particularly when the oral argument was presented entirely by Mr. Grumer.

(3) On September 4, 2014, Mr. Grumer spent 6.8 hours and Ms. Macaluso spent 4 hours conferring with defendant Gary L. Kieper and attending the preliminary injunction hearing.  The FTC contends that Ms. Macaluso's fees in the amount of $2,140 are unnecessarily duplicative, and that it is unreasonable to release frozen assets to pay for her attendance at the preliminary injunction hearing, particularly when Mr. Grumer presented the entire oral argument.

4

An attorney like Mr. Grumer that commands a high rate of compensation should not require an additional review by another attorney that commands a similarly high rate of compensation. The Court, therefore, should find the 10.1 duplicative hours billed by Ms. Macaluso (for a total of $5,403.50) to be unreasonable and reduce the overall attorneys' fees requested through the preliminary injunction to $12,052.00.

### B. This Court Should Deny PIHC Defendants' Request For The Release Of Frozen Funds To Pay For Attorneys' Fees Billed *After* The Preliminary Injunction

The frozen funds improperly obtained by the PIHC Defendants deceiving consumers, should not be used to pay for fees incurred after the preliminary injunction hearing. The PIHC Defendants' argue that "[f]airness considerations dictate" that this Court authorize the release of frozen funds to pay their attorneys' fees incurred after the preliminary injunction hearing. [ECF No. 60.] The PIHC Defendants cite no authority for this assertion, which is directly contradicted by this Court's decision in *FTC v. IAB Marketing Associates, LP*, 2013 WL 2433214 *3 (S.D. Fla. June 4, 2013) citing *Sec v. Lauer*, 445 F.Supp.2d 1362, 1368-69 (S.D. Fla. 2006) (Marra, J.) (reasoning that due process does not require unfreezing funds to pay for counsel). The PIHC Defendants' request for fees incurred after the preliminary injunction hearing should be denied because: (1) the FTC is likely to prevail on the merits, (2) the frozen assets fall far short of the amount needed to compensate consumers for their losses, (3) the PIHC Defendants are not entitled to use victims' money to pay attorneys' fees, (4) non-frozen assets may be available for the PIHC Defendants' use, and (5) counsel for the PIHC Defendants assumed the risk of not getting paid.

1. *The FTC Is Likely To Prevail On The Merits*

In cases such as this, district courts have taken into account the FTC's likelihood of success on the merits in determining whether to release frozen funds for payment of defendants' attorneys' fees. *See e.g., IAB Marketing Associates, LP*, 2013 WL 2433214 *3; *FTC v. Jeremy Johnson et al.*, 2:10-cv-02203-RLH (D. Nev. June 17, 2011). This Court has previously evaluated the merits of this case in its order granting the FTC's motion for preliminary injunction. The Court stated:

> There is good cause to believe that the PIHC Defendants have engaged in and are likely to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FTC's Trade Regulation Rule entitled "Telemarketing Sales Rule" ("TSR"), 16 C.F.R. Part 310, and that the FTC is therefore likely to prevail on the merits of this action.

[ECF No. 36, Corrected Prelim. Inj. Order, Findings ¶ 2.] This Court, therefore, should deny the PIHC Defendants' request for frozen funds to pay their attorneys' fees incurred after the preliminary injunction because it has determined that the FTC is likely to prevail on the merits of this case. *See IAB Marketing Associates, LP*, 2013 WL 2433214 *3 (refusing to unfreeze funds to pay legal fees incurred after the preliminary injunction, in part, because of the FTC's likelihood of success on the merits); *Jeremy Johnson*, 2:10-cv-02203-RLH (D. Nev. June 17, 2011) (denying defendants' request for attorneys' fees, in part, because of FTC's likelihood of success on the merits).

2. *The Frozen Assets Fall Far Short Of The Amount Needed To Compensate Consumers For Their Losses*

This Court should also deny the PIHC Defendants' request for frozen funds to pay attorneys' fees incurred after the preliminary injunction hearing because the frozen funds fall far short of the amount needed for consumer redress in this matter. In enforcement actions such as this, courts often consider whether frozen funds will be sufficient to pay defendants' anticipated liability. *See CFTC v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995) ("courts

regularly have frozen assets and denied attorney fees or limited the amount for attorney fees" to protect the integrity of disputed assets and ensure that such assets are available for final monetary redress) (quoting *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989)); *IAB Marketing Associates, LP*, 2013 WL 2433214 *3 (refusing to unfreeze funds to pay legal fees incurred after the preliminary injunction, in part, because of "vast discrepancy between the amount of frozen assets and the…Defendants' likely ill-gotten gains"); *FTC v. Premier Precious Metals, Inc. et al*, No. 12-60504-Civ-SCOLA (S.D. Fla. May 10, 2012) (denying defendants' motion to unfreeze assets for living expenses and legal fees where funds fell short of potential injury); *FTC v. U.S. Mortgage Funding*, 2011 U.S. Dist. LEXIS 31148, *17-18 (S.D. Fla. March 1, 2011) (same); *FTC v. RCA Credit Services, LLC*, 2008 WL 5428039, * 4 (M.D. Fla. Dec. 31, 2008 ) ("if the frozen assets fall short of the amount needed to compensate consumers for their losses, a court is within its discretion to deny an application for living expenses and attorney fees").

Based on the evidence collected to date, the FTC approximates the PIHC Defendants' ill-gotten gains to be at least *$8.1 million*. Unfortunately, only approximately *$200,000* in liquid assets have been frozen pursuant to the TRO.[1] As in previous cases where this Court denied defendants' request to unfreeze additional assets, the amount available in this case to satisfy consumer injuries is a drop in the bucket compared to the defendants' potential liability. *See IAB Marketing Associates, LP*, 2013 WL 2433214 *3; *Premier Precious Metals, Inc. et al*, No. 12-60504-Civ-SCOLA. Every released dollar would be a dollar that could not be returned to victims, many of whom were targeted by the PIHC Defendants because they were in dire financial straits. Under these circumstances, the PIHC Defendants' request for the release of

---

[1] This information is based on PIHC Defendants' sworn financial statements and data received from financial institutions pursuant to the TRO.

additional frozen assets to pay attorneys' fees incurred after the preliminary injunction should be denied.

### 3. *PIHC Defendants Are Not Entitled To Use Victims' Money To Pay Attorneys' Fees*

This Court should refuse to authorize the release of frozen funds to pay attorneys' fees incurred after the preliminary injunction hearing because the PIHC Defendants have no automatic right or entitlement to the release of frozen assets to pay their attorneys' fees. *See Caplin & Drysdale, Chartered v.U.S.*, 491 U.S. 617, 626 (1989) ("A defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that the defendant will be able to retain the attorney of his choice."); *SEC v. Quinn*, 997 F. 2d 287, 289 (7th Cir. 1993) ("Just as a bank robber cannot use the loot to wage the best defense money can buy, so a swindler…cannot use the victims' assets to hire counsel who will help him retain the gleanings of crime."); *Worldwide Factors*, *Ltd.*, 882 F.2d at 347 (upholding constitutionality of asset freeze and preclusion of defendant's use of frozen assets for attorneys' fees). "[W]hile parties to litigation generally may spend their resources as they see fit to retain counsel, they may not use their victims' assets to hire counsel to help them retain the fruits of their violations." *RCA Credit Servs., LLC*, 2008 WL 5428039, *4 (M.D.Fla. Dec. 31, 2008) citing *Quinn*, 997 F.2d at 289. Here, the frozen funds from which the PIHC Defendants seek attorneys' fees constitute the proceeds of their fraud and they are held for the benefit of defrauded consumers to enable the Court to provide full and effective final relief in this case. Therefore, PIHC Defendants' request for release of additional frozen funds should be denied.

### 4. *Non-Frozen Assets May Be Available For PIHC Defendants' Usage*

This Court should deny the PIHC Defendants' request for release of frozen funds to pay for attorneys' fees incurred after the preliminary injunction because the PIHC Defendants are free to access alternative assets independent of their fraudulent business activities in order to pay attorneys' fees. *See FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1032 (7th Cir. 1988) (noting defendant's access to alternative assets as a consideration in determining whether to release frozen assets); *Jeremy Johnson*, 2:10-cv-02203-RLH (D. Nev. June 17, 2011) (same). The preliminary injunction does not bar Defendant Gary L. Kieper from pursuing gainful employment with other businesses, using personal credit cards, or seeking the assistance of family and friends to pay attorneys' fees (so long as the funds are not derived from the PIHC Defendants' business activities). [ECF No. 36, Corrected Prelim. Inj. Order, ¶ VI.]  Mr. Kieper has not demonstrated that he is unable to acquire funds from sources other than the assets being preserved for potential consumer redress.  To permit the PIHC Defendants to use the frozen funds for their legal representation would add insult to the injury already inflicted upon consumers.

### 5. *Counsel For PIHC Defendants Assumed The Risk Of Not Getting Paid*

Finally, this Court should refuse the release of frozen funds to pay the PIHC Defendants' attorneys' fees incurred after the preliminary injunction hearing because counsel for the PIHC Defendants assumed the risk of not being paid when they agreed to represent the PIHC Defendants while knowing that their assets were subject to a judicial freeze.  In cases such as this, a district court may presume that attorneys who are aware of a defendant's asset freeze will also know that payment of attorneys' fees from the frozen assets is not guaranteed, but subject to the court's discretion.  *FTC v. Sharp*, 1991 WL 214076, at *1 (D. Nev. Jul. 23, 1991); *see also*

*FTC v. Image Sales and Consultants, Inc.*, 1997 U.S. Dist. LEXIS 18905, at * 7 (N.D. Ind. Nov. 14, 1997) (noting that "an attorney who knowingly consents to represent a defendant whose assets have been frozen assumes the risk of not being paid").  Here, it is undisputed that Grumer & Macaluso, P.A. were aware of the asset freeze prior to agreeing to represent the PIHC Defendants in this case.  Indeed, counsel admittedly received the legal retainer of $20,000.00 from the account of Tri-Resource Group *after* reviewing the TRO. [ECF No. 60, PIHC Def. Mot. for Atty's Fees, at 2 fn. 1.]  Thus, Grumer & Macaluso, P.A. assumed the risk of non-payment when they agreed to represent the PIHC Defendants.  Accordingly, the PIHC Defendants' request for release of additional frozen funds should be denied. *See Sharp*, 1991 WL 214076, at *1 (denying request for fees, in part, because defense counsel should have known when retained that payment for his services was not guaranteed, but subject to the Court's approval); *Jeremy Johnson*, 2:10-cv-02203-RLH (same).

### III. CONCLUSION

Neither the facts nor the law support the release of frozen assets to the PIHC Defendant for payment of attorneys' fees incurred *after* the preliminary injunction hearing.  Thus, the FTC respectfully requests that the Court deny, in part, the PIHC Defendants' Motion for Payment of Attorneys' Fees, and limit the release of frozen funds to reasonable attorneys' fees incurred through the issuance of the preliminary injunction in the amount of $12,052.00.

Respectfully submitted,

s/    *Christopher E. Brown*
Gary L. Ivens (Special Bar No. A5500671)
Christopher E. Brown (Special Bar No. A5501993)
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW, CC-8528
Washington, DC  20580

              (202) 326-2330, givens@ftc.gov (Ivens)
              (202) 326-2825, cbrown3@ftc.gov (Brown)
              (202) 326-3395 (Fax)

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send a notice of electronic filing to the following:

KEITH T. GRUMER
Grumer & Macaluso PA
1 East Broward Blvd., Suite 1501
Fort Lauderdale, FL  33301
Email: kgrumer@grumerlaw.com


BRUCE S. ROGOW
TARA A. CAMPION
Bruce A. Rogow PA
500 East Broward Blvd., Suite 1930
Fort Lauderdale, FL  33394
Email: brogow@rogowlaw.com
Email: tcampion@rogowlaw.com


LAWRENCE E. PECAN
Meland Russin & Budwick, P.A.
200 South Biscayne Blvd., Suite 3200
Miami, FL  33131
Email: lpecan@melandrussin.com


              s/     *Christopher E. Brown*
              Christopher E. Brown