UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 1:14-cv-23109-RNS

FEDERAL TRADE COMMISSION,

    Plaintiff,

v.

PARTNERS IN HEALTH CARE
ASSOCIATION, INC., *et al.,*

    Defendants.
_____/

## THIRD REPORT OF RECEIVER

Peter D. Russin, in his capacity as receiver (the "***Receiver***") of Partners in Health Care Association, Inc.; United Solutions Group Inc.; and their subsidiaries, affiliates, successors and assigns (collectively the "***Receivership Entities***"),[1] appointed pursuant to this Court's Temporary Restraining Order dated August 25, 2014 [ECF No. 9] (the "***TRO***"); the Stipulated Preliminary Injunction Against United Solutions Group Inc., Constanza Gomez Vargas, and Walter S. Vargas [ECF No. 31] (the ***"USGI Preliminary Injunction"***); and the Corrected Preliminary Injunction Against Partners In Health Care Association, Inc., and Gary L. Kieper [ECF No. 36] (the ***"PIHC Preliminary Injunction"***)[2] submits his Third Report of Receiver:

This report is prepared and submitted by the Receiver to assist the Court and all parties in interest. The Receiver filed a Preliminary Report on September 3, 2014 [ECF No. 19] covering the Receiver's efforts from his appointment until that date. The Receiver also filed his Report Regarding Banestral Group [ECF No. 33] on September 9, 2014. This report covers the time

---

[1] The administration of the Receivership Entities is referred to herein as the ***"Estate."***
[2] Collectively the USGI Preliminary Injunction and PIHC Preliminary Injunction are referred to as the ***"Preliminary Injunctions."***

since the Preliminary Report, other than those matters set forth in the Report Regarding Banestral Group. The items and information set forth herein are to the best of the Receiver's information and belief.

### A.  The Preliminary Injunction Hearing

Immediately following the filing of the Preliminary Report, the parties prepared for and attended the September 4, 2014 hearing, at which the Court granted the FTC's request for a preliminary injunction against Partners In Health Care Association, Inc., United Solutions Group, Inc., and their affiliates. The parties expressed differing views as to the scope of the entities subject to the receivership, but the Court ultimately decided that all related entities, including Banestral Group USA Inc.; PIHC, Inc.; Tri Resource Group, Ltd.; and Senior Advantage of Wisconsin, Inc., were affiliates, and were included in the Estate.

The Court requested that the parties agree as to a disposition of Banestral Group USA, Inc. As set forth in the Report Regarding Banestral Group, following the representations made by Walter Vargas and Constanza Gomez Vargas, the Receiver determined that Banestral Group USA, Inc. was operated independently from United Solutions Group, Inc., and that the finances of the companies were separate.  This led to the Receiver's agreement to the Order Relinquishing Temporary Restraining Order with Regard to Banestral Group USA, Inc [ECF No. 34].

### B.  Notice to plan beneficiaries and employees.

Following the entry of the Preliminary Injunctions, the Receiver took steps to provide notice to the 1700+ beneficiaries of the plans sold or administered by the Receivership Entities. First, the Trustee took steps to replace the website with an informational site, while preserving the existing web pages, as required by the Preliminary Injunctions. This proved difficult, as the

Receiver lacked administrative access to the websites, and the websites were administered by four different companies, one of which was located in Australia.

After finally gaining access, the Receiver redirected all traffic from the Receivership Entities' websites to the informational site created. There, plan beneficiaries have access to the pleadings filed in the case, and can post questions in the public forum. To date, most comments posted express displeasure in what at least one poster has described as a 'scam.'

The Receiver also sought the Court's approval of the form of notice to be sent to plan beneficiaries. *See* [ECF No. 38]. Because the Receiver determined that the Receivership Entities targeted mostly prospective clients of limited means, the Receiver decided that notice via U.S. Mail was most appropriate.

As has been the case repeatedly since the Preliminary Injunction Hearing, Gary Kieper, principal of the Wisconsin Receivership Defendants, opposed the Receiver's efforts, on (unsupported) grounds that the Court had not shut down the Receivership Entities. *See* [ECF No. 44]. The Court ultimately decided that notices proposed by the Receiver were accurate and appropriate, and directed the Receiver to mail them to plan beneficiaries. [ECF No. 47].

After mailing the notices, the Receiver and his staff fielded many calls from upset clients. Nearly all (if not all) the callers expressed discontent with the products they had purchased, and many were happy that the Court had intervened to cease the Receivership Entities operations.[3] The callers commonly reported that they had been duped into purchasing the plans because the sales personnel had convinced the callers that the purchase of the plan was necessary to avoid penalties under "Obamacare."[4]

---

[3] To the best of the Receiver's knowledge, not a single person called to report that they had been happy with the plan.
[4] The Patient Protection and Affordable Care Act (PPACA), Pub.L. 111–148, 124 Stat. 119

Additionally, following the entry of the Preliminary Injunctions, the Receiver provided notice to the employees of the Receivership Defendants that the companies were shut down indefinitely, and that they would not be returning to work. The Receiver has not opposed applications for unemployment compensation by any former employees, including Gary Kieper.

### C. Administration of the Estate

On a day-to-day basis, the Receiver receives voluminous forwarded mail (medical bills; explanations of benefits; authorization forms; requests for termination of services; and correspondence from vendors, taxing authorities, and victims of the fraud) from the Wisconsin Receivership Entities. The Receiver and his staff regularly reviews this correspondence, and replies to alert the appropriate parties of the existence of the Receivership and the effect thereof.

The Receiver and his staff regularly speak with victims and former employees seeking information and inquiring about a claims process. The Receiver has also coordinated with counsel for the FTC and other governmental personnel in an attempt to facilitate a claims process, should there be sufficient funds after the payment of administrative expenses.

The Receiver took control, and maintained a copy of all data retrieved from the Receivership Entities' computer system, such that it may be used by the FTC or state regulatory bodies if the sharing of such information is approved by this Court. Finally, the Receiver has created and maintained a consolidated creditor body table to provide (if necessary) notice to all possible claimants.

### D. Securing Control of the Receivership Defendant's Assets and Financial Affairs

Both prior to and after entry of the Preliminary Injunctions, the Receiver took steps to take control of the Receivership Defendant's assets. The Receiver served the Preliminary Injunction on (and extensively coordinated with) numerous banks holding funds for the

Receivership Defendants. Through these efforts, the Receiver gained control of the following funds, which are now being held in separate Receivership Accounts:

- $13,096.25 -  Senior Advantage of Wisconsin, Inc.
- $53,040.84 - United Solutions Group, Inc.
- $141,430.61- PIHC, Inc.
- $26,273.24 - Tri Resource Group, Ltd.

Additionally, the Receiver worked with the Receivership Defendants' payment processors (such as echeck.net) and its merchant account providers (such as WorldPay) to settle any remaining balances, and consistent with the Court's directives, ensure that no further payments were accepted which might be the fruits of impermissible telemarketing activity.

As part of the Receiver's efforts to take control of the funds, the Receiver discovered that after the entry of the TRO, Grumer & Macaluso, P.A., and Gary Kieper, transferred or used approximately $25,500.00 in funds previously held in Tri Resource Group, Ltd.'s account at Associated Bank.

Following a demand for return of the monies (which was unanswered), the Receiver filed the *Motion for Turnover of Receivership Funds Transferred to Grumer and Macaluso, P.A. and Funds Withdrawn from the Tri Resource Group, Ltd. Account* [ECF No. 46], which was opposed by Mr. Kieper and Grumer & Macaluso, P.A. [ECF No. 48]. The Court ultimately ordered Mr. Kieper and Grumer & Macaluso, P.A. to turn over the funds [ECF No. 57], which they have declined to do. The Receiver has sought a finding of contempt and sanctions, which remains pending before the Court [ECF No.  59].

### E. Control and Disposition of Property

a. Florida

United Solutions Group, Inc. leased space from Banestral Group USA, Inc. Accordingly, when the Court entered the Order Relinquishing Temporary Restraining Order With Regard to Banestral Group USA, Inc. on September 10, 2014, the Receiver gave control of the leased premises back to Banestral. Banestral offered (and the Court approved) allowing the Receiver to store United Solutions Group, Inc. assets, comprising a desk, a cabinet/credenza, a rolling desk chair, two guest chairs (white) and two old chairs, for no charge at the leased premises, in one locked room for a period of six (6) months, with an option to extend for another six (6) months with no payment required unless otherwise agreed upon.

Since that time, the Receiver has offered to sell United Solutions Group, Inc.'s personal property to Constanza Vargas, which she declined to purchase. The Receiver also solicited proposals for auction of the personal property, but the auctioneer to be engaged informed the Receiver that the costs of an auction would outweigh the proceeds from an auction. Accordingly, the Receiver contemplates abandoning the Florida personal property.

b. Wisconsin

The entire office formerly occupied by Partners in Health Care Association, Inc. remains under the Receiver's control. PIHC, Inc. is the lessee of the space at 518 South Westland Drive, Appleton, WI 54912 (the ***"Facility"***). The week-to-week lease payment is $1,000.00.

Because the Receiver believes that the continued payment of such amount for the non-operating PIHC Companies to have possession of the Facility is detrimental to the Estate, the Receiver filed a motion for the entry of an order approving the settlement with Business Bank and the auction sale of the Receivership Entities' personal property [ECF No. 58].

Separately, PIHC, Inc. is a party to a contract to purchase the Facility from Business Bank. The Receiver and the Business Bank have agreed, subject to this Court's approval, to allow Business Bank to retain the $5,000.00 deposit, and set such amount off against the arrearage in rent on the Lease (currently approximately $8,000.00). In exchange, Business Bank will return the $2,500.00 security deposit it holds under the lease, waive any claim against the Receivership estate other than past-due base rent, and the lease will terminate without penalty.

Since the lease will terminate, the Receiver will need to move, store, or sell the personal property located at the facility. As set forth in the Receiver's motion, the Receiver has obtained a proposal for the auction of the personal property located at the Facility from a Wisconsin-based auctioneer, Hansen & Young Auctioneers, Inc. The auction will, in essence, liquidate all the assets of the Estate. Given the FTC's high probability of success on the merits, the Receiver believes this is appropriate under the circumstances.

## **CONCLUSION**

The Receiver has taken control of all of the known Receivership Entities' assets. Through the settlement and auction process which the Receiver has set up (and the FTC does not oppose), the Receiver is poised to liquidate the remaining assets of the Receivership Estate, pay the costs of administration, and (if sufficient funds exist) pay claims in accordance with the priorities under applicable law, and close the Receivership Estate.

Dated: November 7, 2014.

By:

 s/ Peter D. Russin
Peter D. Russin, Receiver
prussin@melandrussin.com
200 South Biscayne Blvd., Ste. 3200
Miami, Florida  33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

*The Receiver*

--and--

 s/ Lawrence E.  Pecan
Lawrence E. Pecan, Esquire
Florida Bar No. 99086
lpecan@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
200 South Biscayne Blvd., Ste. 3200
Miami, Florida  33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

*Attorneys for Peter D. Russin, Receiver*