UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14- 23109-CIV-SCOLA

FEDERAL TRADE COMMISSION,

        Plaintiff,

v.

PARTNERS IN HEALTH CARE ASSOCIATION, INC. (also d/b/a/ Partners In Health Care, Inc.),
GARY L. KIEPER (individually and as officer or director of Partners In Health Care Association, Inc.),
UNITED SOLUTIONS GROUP INC. (also d/b/a Debt Relief Experts, Inc.),
WALTER S. VARGAS (individually and as an officer or director of United Solutions Group Inc.),
CONSTANZA GOMEZ VARGAS (individually and as a director or manager of United Solutions Group Inc.),

        Defendants.

_____/

## DEFENDANTS' MOTION FOR LIMITED RELIEF FROM ASSET FREEZE AND FOR PAYMENT OF LIVING EXPENSES FROM FROZEN ASSETS, AND OTHER RELIEF, AND INCORPORATED MEMORANDUM OF LAW

Defendants PARTNERS IN HEALTH CARE ASSOCIATION, INC. and GARY L. KIEPER, move for limited relief from the asset freeze as set forth in the Preliminary Injunction Order [DE 32] and the Corrected Preliminary Injunction Order [DE 36] and as set forth in the ex-parte Temporary Restraining Order ("TRO") [DE 9], as follows:

1.    <u>Summary of Motion</u>:  Defendants seek limited relief from the asset freeze as contained in the TRO and the Preliminary Injunction Order to (a) authorize release of funds for interim

living expenses[1] to Defendant GARY KIEPER based upon hardship and (b) authorize partial relief from two of the accounts (Senior Advantage Group of Wisconsin & Tri-Resource Group Ltd.) for continued deposit of funds from revenue sources unrelated to the enjoined conduct or any telemarketing sales, i.e., monthly deposits approximating $4,000.00 of residual insurance commissions earned from earlier insurance sales. The living expenses sought consist of the sum of $4,000.00 per month for non-luxury living expenses from September 1 through October 31, 2014, and each month until this matter is concluded. In support of this Motion, Defendants rely upon the Declaration of Gary Kieper [DE 72].

2. <u>Summary of Claims</u>: The FTC alleges that Defendants PARTNERS IN HEALTH ASSOCIATION, INC., and its principal, Defendant GARY KIEPER, violated federal consumer telemarketing laws when marketing their product, a medical benefit discount service plan, by misrepresenting the plan as an insurance product. Mr. Kieper, who was formerly an insurance professional, believed he had taken the appropriate measures in regards to the marketing of the product to avoid such confusion by the consumer. The discount plan offered discounted medical services, through third party providers such as Teladoc, and negotiated medical discounts directly with other providers and diagnostic services on a case by case basis. Defendants had in force several controls to ensure consumers knew they were *not* purchasing a major medical insurance product, including a recorded verification call before any charges were incurred, and the written plan documents stated the product was not an insurance plan. Historically,

---

[1] On September 4 & 5, 2014 Defendant GARY KIEPER withdrew $5,500.00 for living expenses from the account of Tri Resource Group Ltd., a non-party, based upon his good faith belief, and belief of counsel, at the time that this entity was excluded from the asset freeze. Due to that entity's affiliation with Defendants, this Court determined the withdrawal was improper, and the payment is subject to the Court's Order Granting Motion for Turnover of Receivership Funds ("Turnover Order") of October 16, 2014 [DE 57] and Corrected Turnover Order of November 7, 2014 [DE 65].

Defendants marketed the medical discount plan off-site, via third party telephone marketing companies located throughout the country, who were paid on a commission basis. The telemarketing entities were under contract with Partners in Health, and were prohibited from representing the plan as an insurance product. Defendants trained, re-trained and monitored the off-site telemarketing operations and when these were found to be non-compliant, the telemarketing relationship was severed. In the months prior to the FTC's filing, Mr. Kieper had repeatedly visited the Miami offices of the co-Defendant, UNITED SOLUTIONS GROUP, INC., for re-training and to ensure their compliance. In January, 2014, Mr. Kieper set up an in-house telemarketing operation through an affiliated entity, Senior Advantage of Wisconsin d/b/a The Health Center to begin the process of terminating all off-site telemarketing efforts. A third entity also owned by Mr. Kieper, Tri-Resource Group Ltd., performed no telemarketing functions whatsoever, and its operations consisted solely of customer service and support to existing customers, including the negotiation of the discounts with medical providers.

3. <u>Asset Freeze</u>: The Court-ordered asset freeze is far-reaching and captured all assets and accounts of any kind wherever located belonging to the Defendants and the related entities. Unlike other FTC TRO orders which provide for releases of frozen funds for reasonable legal expenses and non-luxury living expenses, the Orders at issue do not so provide. All of the accounts of the named Defendants were immediately frozen by the Receiver, and in time all the accounts of related entities were also affected, and Defendants have no access to any funds. In addition to the Defendants' accounts, the accounts ultimately frozen by the Receiver included two operating accounts of the related entities, the non-parties Senior Advantage of Wisconsin d/b/a The Health Center and Tri County Resource Group. Among the frozen funds were proceeds wholly unrelated to the sales or operation of the medical benefit discount service plan

at issue here.  These unrelated proceeds consist of monthly deposits for earned residual insurance commissions of approximately $4,000.00 per month.  The asset freeze over these accounts has halted any further deposits of earned residual insurance commissions, which are unpaid as of the Receiver's takeover in late August, 2014.  The discontinuation of the operations of the non-parties also resulted in the interruption of the unrelated insurance business and the estimated loss of $30,000.00 in new commissions from lost sales during the most recent enrollment period.

4. <u>Relief as to Living Expenses & Deposits for Residual Insurance Commissions</u>: Defendants seek limited relief for KIEPER's non-luxury living expenses, as the Orders impose an undue hardship upon KIEPER, who has no other present means of supporting himself; the Receiver took control over Mr. Kieper's checking account which had an approximate $5,000.00 balance when the account was frozen.  Defendants also seek limited relief directing the Receiver to release the frozen account to permit continued payment and deposits of the residual commissions, in order that these funds may be used by KIEPER for living expenses for the duration of this proceeding.

5. <u>Full Financial Disclosure & Hardship</u>:  Defendants and the related entities have produced exhaustive financial disclosures to FTC counsel and the Receiver.  The financial disclosures confirm that there is no other source of funds available to Mr. Kieper from which to pay Mr. Kieper's basic living expenses.  As is set forth in the Declaration of Gary Kieper filed on November 10, 2014 [DE 72], KIEPER is destitute.  Since the asset freeze, Mr. Kieper has lived off of unemployment compensation, together with the $5,500.00 he withdrew from the account of Tri Resource Group Ltd. before that account was frozen.  Mr. Kieper qualified for four (4) weeks of unemployment compensation in the weekly sum of $370.00 per week, of which $98.00 per week was applied to child support obligations.  The unemployment benefits ceased on

October 14, 2014. Mr. Kieper also contacted the United Way and Veterans Administration for assistance. Mr. Kieper has applied for and was awarded food stamps. Mr. Kieper has applied for public assistance towards his utilities to prevent his power and gas from being disconnected but has not been approved for any assistance as of yet.. Mr. Kieper does not have a source of funds to pay rent and utilities, with November 1, 2014 rent overdue- he has received a notice of eviction. Mr. Kieper's cell phone has been disconnected due to non-payment.

Since the Receiver's takeover, Mr. Kieper has attempted unsuccessfully to secure new employment, but continues to search. Even so, any job to be secured requires transportation and Mr. Kieper is unsure as to status of his personal vehicle vis a vis the asset freeze and is fearful that any employment he secures will be lost if the vehicle is also seized.

6. <u>Non-Luxury Personal Expenses:</u>   As is set forth in his Declaration, Mr. Kieper's basic monthly living expenses amount to approximately $4,000.00 for rent, food, utilities, gasoline and other transportation expenses, and cell phone.

7. <u>Residual Insurance Commissions Unrelated to Prohibited Telemarketing Activities</u>:  As a result of business efforts completely unrelated to the sale of the discount medical plan offered by Defendant PARTNERS IN HEALTH, and unrelated to any of the sales or telemarketing activities at issue in this action, two of the related entities received monthly deposits of residual insurance commissions. The source of the insurance commissions is the sale of Medicare advantage plans and related Medicare plans, and other insurance sales, which commissions are being paid from numerous entities. Until the takeover by the Receiver and Court-ordered asset freeze, the payments were deposited directly into the account of Senior Advantage of Wisconsin, Inc. at North Shore Bank and the account of Tri-Resource Group Ltd. at Associated Bank. The monthly deposits into each of the two accounts averaged $2,000.00 for total deposits $4,000.00.

Immediately upon the takeover by the Receiver, Mr. Kieper notified the Receiver of the need to allow the accounts remain operational if only to preserve the continued automatic deposits of the residual insurance commissions, and explained to the Receiver that the commissions were unrelated to the barred activity, to no avail.

8. <u>Legal Standard</u>:   Although the TRO and Temporary Injunction Order do not carve exemptions for reasonable living expenses, living expenses have been allowed in other FTC actions. *See FTC v. Bishop*, 425 Fed. Appx. 796 (11th Cir. 2011) The district court enjoys the inherent, equitable authority to freeze assets as an incident to its express statutory authority to issue a permanent injunction under Section 13 of the Federal Trade Commission Act. *FTC v. AIB Marketing Associates, LP*, 972 F. Supp. 2d 1307, 1313 (S.D. Fla. 2013)(citing *FTC v. U.S. Oil & Gas Corp.,* 748 F.2d 1431, 1432 (11th Cir.1984). The corollary to this rule is that a court may also unfreeze those assets when equity requires.  *Id.* (citing *FTC v. RCA Credit Services, LLC,* 2008 WL 5428039, at *4 (M. D. Fla. December 31, 2008). The purpose of the asset freeze is to preserve the defendant's ill gotten gains in order to ensure availability of funds for the dual remedies of disgorgement and restitution to consumers.  *FTC v. World Travel Vacation Brokers, Inc*. 861 F. 2d 1020, 1031 (7th Cir. 1988).

In this case, the asset freeze must be modified as it (a) does not carve out an exception for living expenses and (b) extends to assets consisting of insurance sales and commissions that are unrelated to the telemarketing misconduct alleged by the FTC. The insurance sales and commissions that until August 2014 were regularly deposited into the accounts of Tri Resource Group and Senior Advantage of Wisconsin, should be excluded from the Receiver's reach and from the FTC's asset freeze.  Each year during the enrollment period these entities secured more than $30,000 in renewals and new insurance sales, which resulted in the commissions.

There is no relationship between the insurance commissions and telemarketing of the Partners in Health discount health plan.  Assuming the deposits of the commissions can be reinstated, the monthly insurance commissions alone should be adequate to cover the cost of KIEPER's monthly living expenses.  Both tasks can be accomplished with little or no detriment to any allegedly injured consumers, who will be unaffected from the limited relief sought herein.

WHEREFORE, Defendant GARY KIEPER requests this Court grant limited relief from the asset freeze to (a) authorize payment of non-luxury living expenses of $4,000 per month and (b) authorize relief from the Court-Ordered asset freeze to permit the insurance renewals and sales and permit the ongoing deposits of residual insurance commissions as set forth herein, and for such other and further relief as this Court deems just.

Respectfully submitted,
GRUMER & MACALUSO, P.A.
Attorneys for DEFENDANTS
One East Broward Boulevard, Suite 1501
Fort Lauderdale, Florida 33301
(954) 713-2700; (954) 713-2713 (fax)
Primary Email:         Service@grumerlaw.com
Secondary Emails:   kgrumer@grumerlaw.com
                                  slopez@grumerlaw.com

By: __/s/ Keith T. Grumer_____
       KEITH T. GRUMER
       FLORIDA BAR No.:  550416

**CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with Plaintiff's counsel and Receiver's counsel in an attempt to resolve the Motion, and represents that they oppose the requested relief.

By: __/s/ Keith T. Grumer_____
       KEITH T. GRUMER

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on 13th day of November, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties either via transmission of Notices of Electronic Filing generated by CM/ECF or vial U.S. Mail for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Keith T. Grumer