# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>PARTNERS IN HEALTH CARE<br>    ASSOCIATION, INC., *et al.*,<br><br>    Defendants. | Case No. 1:14-cv-23109 RNS<br><br>**PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO DEFENDANTS' MOTION FOR LIMITED RELIEF FROM ASSET FREEZE FOR PAYMENT OF LIVING EXPENSES FROM FROZEN ASSETS, AND OTHER RELIEF** |

Defendant Gary L. Kieper should not be permitted to spend frozen assets because those assets are the only hope of returning to consumers even a fraction of the money he scammed from them. Accordingly, this Court should deny in full the Motion For Limited Relief From Asset Freeze And For Payment Of Living Expenses From Frozen Assets, And Other Relief (the "Motion") [ECF No. 74] filed by Defendants Partners In Health Care Association, Inc. and Gary L. Kieper (the "PIHC Defendants"). The PIHC Defendants, whose fraudulent scheme bilked consumers out of more than $8 million, request that this Court authorize a release of frozen funds and the continued deposit of residual insurance commissions into bank accounts subject to the asset freeze, so that Defendant Gary L. Kieper may use these funds for "living expenses" throughout the duration of this case. As explained below, Plaintiff Federal Trade Commission ("FTC") opposes the release of any frozen funds to pay Mr. Kieper's expenses because (1) the amount of frozen funds is dwarfed by the amount of injury the PIHC Defendants have caused; (2) Mr. Kieper may have access to alternative assets; and (3) the requested amount is unreasonable. The FTC also opposes the PIHC Defendants' request that this Court authorize insurance commissions allegedly unrelated to the enjoined conduct be deposited into frozen

accounts and subsequently excluded from the asset freeze because there is no requirement that assets must be traceable to fraudulent conduct in order to remain frozen.

## I.      PROCEDURAL HISTORY

On August 25, 2014, the FTC filed its Complaint alleging that the defendants, including the PIHC Defendants, violated the FTC Act and the Telemarketing Sales Rule ("TSR") by deceptively marketing and selling medical discount cards as health insurance. [ECF No. 1.] The Court subsequently entered a temporary restraining order ("TRO") with an asset freeze against all defendants [ECF No. 9], and following a preliminary injunction ("PI") hearing on September 4, 2014, issued a PI Order against the PIHC Defendants. [ECF No. 32, Prelim. Inj. Order; ECF No. 36, Corrected Prelim. Inj. Order.]

On September 22, 2014, the Receiver filed a Motion for Turnover of Receivership Funds, seeking an order compelling the return $25,500, withdrawn by Mr. Kieper—ostensibly to pay for legal representation and living expenses—in violation of the TRO and PI. [ECF No. 46.] On November 7, 2014, in compliance with this Court's Turnover Order [ECF No. 57] and Amended Turnover Order [ECF No. 65], counsel for the PIHC Defendants issued a check in the amount of the $20,000 legal retainer to the Receiver. Mr. Kieper, however, has failed and/or refused to return the remaining $5,500, declaring that he is unable to do so because he has already spent those funds on living expenses. [ECF No. 72, Notice of Filing Dec. of G. Kieper.]

On October 24, 2014, the PIHC Defendants, filed a Motion for Limited Relief for Payment of Attorney's Fees from Frozen Assets, asking this Court to unfreeze $43,217.96 to cover legal fees associated with this matter. [ECF No. 60.] With continued disregard for the possibility of consumers redress in this matter, the PIHC Defendants filed the instant Motion

2

seeking further relief from the asset freeze to fund expenses for Mr. Kieper in the amount of $4,000 per month.

## II.   ARGUMENT

A district court may, within its discretion, limit or refuse payment of living expenses out of frozen assets. *See SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th Cir. 2005) ("[T]he asset freeze is justified as a means of preserving funds for the equitable remedy of disgorgement."); *FTC v. Premier Precious Metals, Inc. et al.*, No. 12-60504-Civ-SCOLA (S.D. Fla. May 10, 2012) (denying defendants' motion to unfreeze assets for living expenses and legal fees), attached as Exhibit A; *FTC v. IAB Mktg. Assocs., LP*, 972 F. Supp. 2d 1307, 1313 (S.D. Fla. Sep. 8, 2013) (same).

### A.   This Court Should Deny PIHC Defendants' Request For The Release Of Frozen Funds To Pay For Defendant Gary L. Kieper's Expenses

The frozen funds, improperly obtained by the PIHC Defendants by deceiving consumers, should not be used to pay for Mr. Kieper's expenses because: (1) the frozen assets fall far short of the amount needed to compensate consumers for their losses, (2) non-frozen assets are available for Mr. Kieper's living expenses, and (3) the amount of "living" expenses requested is unreasonable.

#### 1.   *The Frozen Assets Fall Far Short Of The Amount Needed To Compensate Consumers For Their Losses*

This Court should deny the PIHC Defendants' request for frozen funds to pay Mr. Kieper's expenses because the frozen funds are greatly exceeded by the amount of consumer harm in this matter. In enforcement actions such as this, courts often consider whether frozen funds will be sufficient to pay defendants' anticipated liability. *See Premier Precious Metals*, No. 12-60504-Civ-SCOLA, slip op. at 6 (denying defendants' motion to unfreeze assets for

3

living expenses and legal fees where funds fell short of potential injury); *FTC v. U.S. Mortgage Funding*, 2011 U.S. Dist. LEXIS 31148, *17-18 (S.D. Fla. March 1, 2011) (same); *FTC v. RCA Credit Services, LLC*, 2008 WL 5428039, * 4 (M.D. Fla. Dec. 31, 2008) ("if the frozen assets fall short of the amount needed to compensate consumers for their losses, a court is within its discretion to deny an application for living expenses and attorney fees").

The evidence indicates that the PIHC Defendants made at least *$8.1 million* in ill-gotten gains. Unfortunately, only approximately *$234,000* in liquid assets have been frozen pursuant to the TRO.[1] As in previous cases where this Court denied defendants' request to unfreeze additional assets, the amount available in this case to satisfy consumer injuries is a drop in the bucket compared to the defendants' likely liability. *See IAB Mktg. Assoc.,* 972 F. Supp. 2d at 1313; *Premier Precious Metals,* No. 12-60504-Civ-SCOLA, slip op. at 7. If the Court allows Mr. Kieper to use these assets for his expenses, the already inadequate assets will be further diminished. The Court should preserve the meager frozen assets to increase the likelihood of meaningful consumer redress and deny the PIHC Defendants' request for expenses.

2. *Non-Frozen Assets Are Available For Mr. Kieper's Usage*

This Court should also deny the PIHC Defendants' request for release of frozen funds to pay for Mr. Kieper's expenses because he is free to access alternative assets independent of his fraudulent business activities in order to pay his expenses. *See FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1032 (7th Cir. 1988) (noting defendant's access to alternative assets as a consideration in determining whether to release frozen assets); *FTC v. Jeremy Johnson*, 2:10-cv-02203-RLH, slip op. at 1 (D. Nev. June 17, 2011) (same), attached as Exhibit B. The PI does not bar Mr. Kieper from pursuing gainful employment or seeking the assistance

---

[1] This information is based on the PIHC Defendants' sworn financial statements and data received from financial institutions pursuant to the TRO.

4

of family and friends. [ECF No. 36, Corrected Prelim. Inj. Order, ¶ VI.] Despite Mr. Kieper's representation that he has yet to secure new employment [ECF No. 74, ¶ 5], there is no reason to believe that he will remain unable to do so. As stated in his Declaration, Mr. Kieper was a licensed insurance agent for over 30 years "without incident," and his agents generated no less than $30,000 from that line of work during each annual enrollment period [ECF No. 72-1, ¶¶ 14, 15]. In addition, his insurance related operations allegedly continue to generate $4,000 in residual commissions. [*Id.*, ¶ 18.] While the asset freeze may cause some hardship on Mr. Kieper, "it is axiomatic that an asset freeze, set forth in the interest of preserving illegal proceeds from dissipating . . . may have unpleasant consequences for the defendant . . . and other personal hardship." *SEC v. Schiffer*, 1999 U.S. Dist. LEXIS 9723, at \*3 (S.D.N.Y. June 30, 1999) (denying motion to enjoin foreclosure resulting from defendant's mortgage default resulting from asset freeze). For these reasons, the PIHC Defendants' request for the release of frozen assets to pay living expenses should be denied.

       3. *The PIHC Defendants Have Requested An Unreasonable Amount For Living Expenses*

As discussed above, the PIHC Defendants are not entitled to any release of frozen funds, given the huge amount of money they took from consumers. Even if the Court were to consider releasing frozen funds to pay Mr. Kieper's expenses, Mr. Kieper's request is unreasonable on its face. Mr. Kieper is not entitled to live off the proceeds of his unlawful activity. *See ETS Payphones, Inc.*, 408 F.3d at 734 (asset freezes are justified as a means of preserving funds for equitable relief). In those instances where courts release frozen funds to pay for living expenses, however, the expenses are typically limited to amounts that are reasonable and absolutely necessary. *See e.g.*, *CFTC v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 775, fn. 8 (9th Cir. 1995). Mr. Kieper requests the release of "$4,000.00 [per month] for rent, food, utilities, gasoline and

other transportation expenses, and cell phone." [ECF No. 74, ¶ 6.]  Mr. Kieper's Declaration in support of these items, however, reveals a monthly budget closer to $3,100 [ECF No. 72-1, ¶ 24.][2]  But even this reduced monthly budget includes amounts that are excessive or unreasonable.  For example, Mr. Kieper appears to request: (i) $650 per month for food—presumably solely for himself; (ii) $582 per month for utilities for a rental residence that costs $1,000 per month; and (iii) $200 per month for car repair [*Id*.].  The circumstances of this case do not warrant the release of any additional ill-gotten gains.  But should the Court conclude that Mr. Kieper is entitled to use some of his ill-gotten gains for living expenses, the FTC respectfully requests that the instant Motion be denied unless and until Mr. Kieper provides a clear monthly budget—sworn under oath—for living expenses limited to meet basic needs, not luxuries or inflated calculations.

### B. This Court Should Deny PIHC Defendants' Request That It Authorize The Deposit Of Insurance Commissions Into Frozen Accounts To Be Subsequently Released For Defendant Gary L. Kieper's Living Expenses

The PIHC Defendants represent that, until the asset freeze ordered in this case, $4,000 in residual insurance commissions from "the sale of Medicare advantage plans and related Medicare plans, and other insurance sales . . . [were] being paid from numerous entities" and deposited monthly into accounts now subject to the asset freeze. [ECF No 74, ¶ 7.]  Therefore, the PIHC Defendants contend that this Court should modify the asset freeze to permit the continued deposit of these commissions for Mr. Kieper to use for his living expenses, arguing that the commissions are unrelated to fraudulent activity alleged in this case. [*Id*.]  The PIHC Defendants cite no authority for this assertion, which is directly contradicted by the Eleventh

---

[2] Mr. Kieper's Declaration does not provide a clear and unambiguous monthly budget.  Rather, it provides a breakdown of how Mr. Kieper spent the $5,500 he withdrew in violation of the Court's TRO and PI. The FTC's approximation of a $3,100 monthly budget is a generous estimate derived from various line items in this breakdown.

Circuit's holding in *SEC v. ETS Payphones, Inc.*, which affirmed an asset freeze that froze all of the defendant's personal assets over objections that the assets were not traceable to the scheme. 408 F.3d at 734-36. As explained by this Court, per the Eleventh Circuit's holding in *ETS Payphones*, "[t]he amount of assets to be frozen . . . is determined not by whether the funds themselves are traceable to the . . . activity underlying the lawsuit, but by showing a reasonable approximation of the amount, with interest, the defendant was unjustly enriched." *SEC v. Lauer*, 445 F. Supp. 2d 1362, 1370 (S.D. Fla. 2006). Indeed, there is good reason to reject the PIHC Defendants' proposed "traceability requirement." Under this requirement, "a defendant who was careful to spend all the proceeds of his fraudulent scheme, while husbanding his other assets, would be immune from an [asset freeze]." *Lauer*, 445 F. Supp. 2d at 1369 (quoting *SEC v. Banner Fund International, et al.*, 211 F.3d 602, 617 (D.C. Cir. 2000)). As this Court has held, "[t]he better rule is that the amount of assets that should be frozen before liability is conclusively established 'is determined not by whether the funds themselves are traceable to the fraudulent activity underlying the lawsuit, but by showing a reasonable approximation of the amount, with interest, [that] the defendant was unjustly enriched.'" *FTC v. IAB Mktg. Assocs., LP*, 972 F. Supp. 2d 1307, 1316 (S.D. Fla. Sep. 18, 2013) (quoting *Lauer*, 445 F. Supp. 2d at 1370). Thus, even if the insurance commissions are unrelated to the PIHC Defendants' fraudulent conduct, they are not exempt from the asset freeze. Since the value of the frozen assets is dwarfed by the defendants ill-gotten gains, the insurance commissions may be properly frozen, and the PIHC Defendants' request that they be released for Mr. Kieper's living expenses should be denied.

### III. CONCLUSION

Neither the facts nor the law support the release of frozen assets to the PIHC Defendants for payment of Gary L. Kieper's expenses. Thus, the FTC respectfully requests that the Court

deny in full Defendants' Motion For Limited Relief From Asset Freeze And For Payment Of Living Expenses From Frozen Assets, And Other Relief.

Respectfully submitted,

s/ *Christopher E. Brown*
Gary L. Ivens (Special Bar No. A5500671)
Christopher E. Brown (Special Bar No. A5501993)
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW, CC-8528
Washington, DC  20580
(202) 326-2330, givens@ftc.gov (Ivens)
(202) 326-2825, cbrown3@ftc.gov (Brown)
(202) 326-3395 (Fax)

CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send a notice of electronic filing to the following:

KEITH T. GRUMER
Grumer & Macaluso PA
1 East Broward Blvd., Suite 1501
Fort Lauderdale, FL  33301
Email: kgrumer@grumerlaw.com

LAWRENCE E. PECAN
Meland Russin & Budwick, P.A.
200 South Biscayne Blvd., Suite 3200
Miami, FL  33131
Email: lpecan@melandrussin.com

BRUCE S. ROGOW
TARA A. CAMPION
Bruce A. Rogow PA
500 East Broward Blvd., Suite 1930
Fort Lauderdale, FL  33394
Email: brogow@rogowlaw.com
Email: tcampion@rogowlaw.com

s/ *Christopher E. Brown*
Christopher E. Brown